**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Cincinnati Division**

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | Case No.: 1:22-cv-00084 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

**PLAINTIFFS' MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH DECLARATIONS AND THE APPENDIX, WHICH INCLUDES THE ADMINISTRATIVE RECORD IN SUPPORT**

This is not the first case where these Defendants ("the Government Defendants") will seek to defend their indefensible decisions. The undisputed evidence will show that the Government Defendants created a process, purportedly via the federal Religious Freedom Restoration Act ("RFRA"), by which servicemembers can apply for religious exemptions to military vaccination requirements, but then Defendants routinely and systematically deny such applications in relation to the COVID-19 vaccine mandate, while simultaneously approving thousands of administrative and medical exemptions, all in contravention of RFRA and the First Amendment's Free Exercise Clause, and Supreme Court and Sixth Circuit case law that clearly indicates what the Government Defendants are doing is illegal.

This motion involves two requests: 1) a request for a temporary restraining order as to four of the Plaintiffs, who face imminent adverse punitive actions, to prevent such imminent punitive actions; and, 2) more broadly as to all of the Plaintiffs, a request for a preliminary injunction that their religious accommodations be granted and their rights vindicated, including enjoining the Government Defendants from taking punitive actions against all Plaintiffs. Simply

put, Plaintiffs seek this Court's aid to put them on equal grounds with those receiving medical and administrative exemptions which the Government Defendants have routinely granted.

The restraining order request: Having denied the Plaintiffs' requests for religious accommodations, the Government Defendants have commenced punitive actions against Plaintiffs SSgt Adam Theriault and A1C McKenna Colantanio, drafting and issuing them letters of reprimand that will be followed by proceedings under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, to include the possibility of restriction on their liberty, reduction in grade, and forfeiture of pay, and follow-on separation from the Air Force.  (Pl.'s Ver. Compl., DE#1, ¶¶ 42-43). Because such action can be taken as soon as Monday February 28, 2022, we seek relief prior to that date.

Further, the Government Defendants are going to transfer both SMSgt Christopher Schuldes and SRA Dills to the individual ready reserves and the loss of retirement as a consequence. (Pl.'s Ver. Compl. ¶ 47; Schuldes Admin Materials, DE#11-18; Pl.'s Ver. Compl. ¶ 44; Dills Admin. Materials; DE#11-5). The same is true for SRA Dills. (). We seek a restraining order preventing those transfers until full adjudication can occur in the context of a preliminary injunction. Although it is unclear when this action will occur (it is possible it already has occurred in the last couple days), it is clear that this action is imminent.

Proposed Orders outlining the scope of the requested relief are attached.

In support, Plaintiffs offer: (i) the verified complaint in this matter; (ii) certain declarations filed by Government witnesses in related litigation which prove their ongoing, illegal religious discrimination; (iii) the declarations of Dr. Peter McCullough, MD, MPH and Lt. Doster; and (iv) the administrative appendix previously filed in this matter. Plaintiffs also incorporate by reference the accompanying memorandum, and tender the proposed orders.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas B. Bruns
Thomas B. Bruns (OH 0051512)
4555 Lake Forest Drive, Suite 330
Cincinnati OH 45242
tbruns@bcvalaw.com
513-312-9890
**Attorneys for Plaintiffs**

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth Brehm (admitted PHV)
Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

## CERTIFICATION UNDER FRCP 65

Pursuant to FRCP 65(b)(1)(A), the Temporary Restraining Order, limited only to preserving the *status quo*, and precluding Defendants from taking punitive actions against the certain of the Plaintiffs during the pendency of this matter, which is set to be taken at Monday February 28, 2022, herein should be granted without notice because the rights involved are irreparable, as explained in the attached Memorandum in Support and Verified Complaint, and the institution of punitive actions, including criminal charges against the Plaintiffs through trial by Court Martial and/or Article 15, by the Defendants during the pendency of this matter will result in the possibility of conflicting rulings, could create thorny jurisdictional issues; further, pursuant to FRCP 65(b)(1)(B), I sent a copy of the foregoing to SAF.GCA.Workflow@us.af.mil which is the working email address for the General Counsel of the Air Force, and to andrew.e.carmichael@usdoj.gov and courtney.d.enlow@usdoj.gov who are each known to the undersigned to be attorneys who defend these Defendants in related matters, on February 22, 2022, as soon as these moving papers were ready, and that this email notification is reasonably calculated to provide notice to the Defendants. Given time constraints and the significant consequences to this Plaintiff at stake, additional notice was not feasible.

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

### I.       FACTS

On or about September, 2021, Defendant Kendall, Secretary of the Air Force, issued an order to members of the Air Force and Space Force to be vaccinated for COVID-19. (Pl.'s Ver. Compl., DE#1, ¶ 24; DE#11-2). On November 29, 2021, the Air Force placed a hold on any Permanent Change of Stations for unvaccinated members of the Air and Space Force, effectively pausing duty changes, and career progression, for personnel who had pending vaccination exemptions. (Pl.'s Ver. Compl., DE#1, ¶ 25; DE#11-3). Many of the Plaintiffs who are currently pursuing Masters or PhD work at Air University at AETC at Wright Patterson Air Force Base received an email to this effect soon thereafter.  *Id.*

All of the Plaintiffs have sought religious exemptions from the vaccination requirement, as outlined in the following paragraphs, and pursuant to the federal Religious Freedom Restoration Act ("RFRA") (42 USC 2000bb), and its implementing regulations, including, without limitation, Department of Defense Instruction ("DoDI") 1300.17.  (Pl.'s Ver. Compl., DE#1, ¶ 26).[1]

### The Plaintiffs' Religious Accommodation Requests

The chart below summarizes the submittals and processing of the Plaintiffs' timely religious accommodation requests, for all of which an Air Force Chaplain confirmed the sincerity of their beliefs.

---

[1] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited 2/16/2022).  Page 10 of this Instruction contains processing timelines for religious accommodation requests, that require action within 30 days for Active-Duty Personnel, and 60 days for Reservists from the relevant action authority (i.e. the General Court Martial Convening Authority); and, for appeals, 60 days from submission.

| Plaintiff Name and Rank | Active or Reserve? | Date accommodation submitted to Command and Commander | Date accommodation denied | Date appeal taken to Air Force Surgeon General | Date Surgeon General Denied Appeal |
|---|---|---|---|---|---|
| 2LT Hunter Doster[2] | Active | 9/7/2021, LTG Webb | 1/6/2022 | 1/18/2022 | Pending |
| Col. Jason Anderson[3] | Active | 9/2021, LTG Webb | Pending | N/A | N/A |
| Maj. Paul Clement[4] | Active | 9/28/2021, LTG Webb | Pending | N/A | N/A |
| A1C McKenna Colantonio[5] | Active | 9/20/2021, LTG Slife | 12/2/2021 | 12/9/2021 | 1/6/2022 |
| Maj. Benjamin Leiby[6] | Active | 9/20/2021, updated 11/29/2021, LTG Webb | Pending | N/A | N/A |
| 2LT Brett Martin[7] | Active | 9/22/2021, LTG Webb | Pending | N/A | N/A |
| 2LT Connor McCormick[8] | Active | 9/8/2021, LTG Webb | Pending | N/A | N/A |

---

[2] (Pl.'s Ver. Compl., DE#1, ¶ 27; Admin. Materials, DE#11-4).

[3] (Pl.'s Ver. Compl., DE#1, ¶ 28; Admin. Materials, DE#11-6). In contravention of the timelines contained in DodI 1300.17, Colonel Anderson's request remains pending with Lt. General Webb as of today. *Id.*

[4] (Pl.'s Ver. Compl., DE#1, ¶ 29; Admin. Materials, DE#11-8). In contravention of the timelines contained in DodI 1300.17, Major Clement's request remains pending with Lt. General Webb as of today. *Id.*

[5] (Pl.'s Ver. Compl., DE#1, ¶ 30; Admin. Materials, DE#11-7).

[6] (Pl.'s Ver. Compl., DE#1, ¶ 31; Admin. Materials, DE#11-9). In contravention of the timelines contained in DodI 1300.17, Major Leiby's request remains pending with Lt. General Webb as of today. *Id.*

[7] (Pl.'s Ver. Compl., DE#1, ¶ 32; Admin. Materials, DE#11-10). In contravention of the timelines contained in DodI 1300.17, Lieutenant Martin's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[8] (Pl.'s Ver. Compl., DE#1, ¶ 33; Admin. Materials, DE#11-11). In contravention of the timelines contained in DodI 1300.17, Lieutenant McCormick's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

| | | | | | | |
|---|---|---|---|---|---|---|
| Capt. Peter Norris[9] | Active | 9/28/2021, LTG Webb | Pending | N/A | N/A | N/A |
| 2LT Alex Ramsperger[10] | Active | 9/3/2021, LTG Webb | Pending | N/A | N/A | N/A |
| Maj. Daniel Reineke[11] | Active | 9/20/2021, LTG Webb | 1/28/2022 | 2/11/2022 | Pending | |
| Capt. Benjamin Rinaldi[12] | Active | 9/14/2021, LTG Webb | Pending | N/A | N/A | N/A |
| Lt. Col. Douglas Ruyle[13] | Active | 9/27/2021, LTG Webb | Pending | N/A | N/A | N/A |
| Lt. Col. Edward Spanon, III[14] | Active | 9/21/2021, LTG Webb | Pending | N/A | N/A | N/A |
| SSgt Adam Theriault[15] | Active | 9/3/2021, LTG Slife | 11/5/2021 | 11/19/2021 | 1/21/2022 | |
| SRA Joe Dills[16] | Reserve | 10/2/2021, LTG Scobee | 11/2021 | 12/2021 | 12/2021 | |
| Maj. Heidi Mosher[17] | Reserve | 10/16/2021, LTG Scobee | 1/31/2022 | 2/7/2022 | Pending | |
| Maj. Patrick Pottinger[18] | Reserve | 9/13/2021, LTG Scobee | 1/7/2022 | 1/19/2022 | Pending | |

[9] (Pl.'s Ver. Compl., DE#1, ¶ 34; Admin. Materials, DE#11-13). In contravention of the timelines contained in DodI 1300.17, Captain Norris' request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[10] (Pl.'s Ver. Compl., DE#1, ¶ 35; Admin. Materials, DE#11-15). In contravention of the timelines contained in DodI 1300.17, Lt. Ramsperger's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[11] (Pl.'s Ver. Compl., DE#1, ¶ 36; Admin. Materials, DE#11-16).

[12] (Pl.'s Ver. Compl., DE#1, ¶ 37; Admin. Materials, DE#11-17). In contravention of the timelines contained in DodI 1300.17, Captain Rinaldi's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[13] (Pl.'s Ver. Compl., DE#1, ¶ 38; Admin. Materials, DE#11-18). In contravention of the timelines contained in DodI 1300.17, Lt. Colonel Ruyle's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[14] (Pl.'s Ver. Compl., DE#1, ¶ 39; Admin. Materials, DE#11-20). In contravention of the timelines contained in DodI 1300.17, Lt. Colonel Stapanon's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[15] (Pl.'s Ver. Compl., DE#1, ¶ 40; Admin. Materials, DE#11-21).

[16] (Pl.'s Ver. Compl., DE#1, ¶ 44; Admin. Materials, DE#11-5).

[17] (Pl.'s Ver. Compl., DE#1, ¶ 45; Admin. Materials, DE#11-12).

[18] (Pl.'s Ver. Compl., DE#1, ¶ 46; Admin. Materials, DE#11-14).

| SMSgt Chris Schuldes[19] | Reserve | 10/2/2021, LTG Scobee | 10/22/2021 | 10/30/2021 | 12/16/2021 |
|---|---|---|---|---|---|

**Plaintiffs Colantonio, Dills, Schuldes, and Theriault face imminent, irreparable harm**

Having denied the Plaintiffs' requests and appeals for religious accommodations, the Government Defendants have begun punitive actions against Plaintiffs SSgt Adam Theriault and A1C McKenna Colantanio, drafting and issuing them letters of reprimand that will be followed by proceedings under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815. (Pl.'s Ver. Compl., DE#1, ¶¶ 42-43). This includes the possibility of restriction on their liberty, reduction in grade, and forfeiture of pay, and follow-on separation from the Air Force. *Id.* We seek immediate relief to prevent the Government Defendants from imposing these measures until full adjudication can occur in the context of a preliminary injunction. <u>We understand that such action can be taken as soon as Monday February 28, 2022, and seek relief prior to that date</u>.

Further, the Government Defendants have denied Plaintiff SMSgt Christopher Schuldes' religious accommodation, and he now faces imminent transfer to the individual ready reserves and the loss of retirement as a consequence. (Pl.'s Ver. Compl., DE#1, ¶ 47). The same is true for SRA Dills. (Pl.'s Ver. Compl., DE#1 ¶ 44; Dills Admin. Materials; DE#11-5).

**Many of the Plaintiffs have documented natural immunity from prior infection from COVID-19**

In addition to the foregoing, many of the Plaintiffs have previously been infected with and overcome COVID-19, and now have antibody tests demonstrating their robust, ongoing, natural immunity. (Pl.'s Ver. Compl., DE#1, ¶ 48). Specifically, Plaintiffs Lt. Hunter Doster, Major Paul Clement, Lt. Brett Martin, Lt. Connor McCormick, Major Heidi Mosher, Lt. Alex Ramsperger, Captain Benjamin Rinaldi, Lt. Colonel Douglas Ruyle, Major Patrick Pottinger, and

---

[19] (Pl.'s Ver. Compl., DE#1, ¶ 47; Admin. Materials, DE#11-19).

Lt. Colonel Edward Stapanon all overcame COVID-19, and have natural immunity as a result. *Id.*

## The Air Force employs a double standard for exemption requests, granting thousands of medical and administrative requests, while denying all but a handful of religious exemptions

As of February 8, 2022, the Air Force has received 12,623 requests for religious accommodation, has only approved 8, has denied 3,222, has had 1,176 appeals of denials, and has denied 443 of those, while approving only one. [Dec. Holbrook]. In the meantime, the Air Force has granted 1,513 medical exemptions, and 2,314 administrative exemptions. *Id.* The granting of thousands of medical and administrative exemptions belies any assertion that vaccination is mission-critical and that no exemptions can be granted.

In related litigation, the Air Force defended its position, in part, based on the Declaration of Colonel James Poel, which we refiled here. [Dec. Poel]. In it, Colonel Poel admits that the Government is deliberately engaged in the systemic denial of religious exemptions because, he contends, they do so to allow for more medical and administrative exemptions. [*Id.* ¶ 7]. This is despite the fact that Colonel Poel admits that the "necessity" supporting forced vaccinations of previously infected and recovered airmen, like many of these Plaintiffs, is belied by scientific proof that previous infection likely provides thirteen times greater protection against reinfection or breakthrough infection than vaccination alone. *Id.* ¶24. Colonel Poel suggests that the number of vaccination exemptions are a zero-sum game when it comes to allowing the Air Force's clearly favored exemptions, but he fails to explain why that is so. He also suggests that people who have natural immunity have greater protection if they are also vaccinated, but he ignores the fact that the Air Force is not requiring its airmen to become infected and vaccinated to have this robust immunity. Ultimately, Colonel Poel gives the game away when he admits the "studies

vary" behind trying to determine whether reinfection rates are equivalent, lower, or higher between those who have overcome prior infection and those who are "fully vaccinated." *Id.* at ¶24.

Colonel Poel's declaration supports the notion that Defendant Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy. (Pl.'s Ver. Compl., DE#1, ¶ 51).

Defendants Kendall, Scobee, Miller, Webb, and Slife each have failed to grant (or even meaningfully consider) numerous religious accommodation requests, while simultaneously processing and approving medical and/or administrative accommodations for airmen with job duties entailing similar risk from a COVID-19 perspective to the job duties of these Plaintiffs. Consequently, each of these defendants, in violation of RFRA, have taken, continue to take, and threaten to take additional actions against the Plaintiffs, including the threat of punitive actions such as court-martial. (Pl.'s Ver. Compl., DE#1, ¶ 52). Because the order in question violates Plaintiffs' fundamental right to the free exercise of their religion, they are unable to comply with it even if it means federal prison through the UCMJ process. (Pl.'s Ver. Compl., DE#1, ¶ 53).

To be clear, the Air Force has accommodated thousands of airmen, at least from a medical or administrative perspective, thus belying any claim that vaccination is a must for mission accomplishment. (Pl.'s Ver. Compl., DE#1, ¶ 54).

Among other methods, the Air Force could accommodate the Plaintiffs' requests for exemption by, without limitation: (a) Requiring testing to determine infection; (b) Temperature checks and/or other screening to determine infection; (c) Permitting the Plaintiffs to demonstrate they have robust and long-lasting natural immunity; (d) Provide an exemption in that vaccination will not guarantee immunity, and there are members who are currently serving who are not

6

immune to diseases they were vaccinated for, yet they remain able to serve and deploy; (e) Requiring isolation to keep Plaintiffs away from those with the disease; or (f) Place Plaintiffs in a position and/or Air Force Specialty Code that is available for remote work or telework, and not in contact with other airmen.

Given the significant level of vaccine compliance within the military, accommodating, as outlined above, the few numbers of religious exemption requests (which they are already doing for medical and administrative exemptions), is not a burden. Even then, a second to last final option would involve placing Plaintiffs in non-deployable status and/or assignment to a unit that does not deploy overseas. A final option would be to honorably discharge Plaintiffs and waive any active-duty service commitments they may owe or relief from any bonus payments they have already received. (Pl.'s Ver. Compl., DE#1, ¶ 58).

<u>**There is no medical justification for the Air Force's position**</u>

Attached to this motion is the Declaration of Dr. Peter McCullough, MD, MPH. (Declaration McCullough). He has an extensive resume including impressive educational credentials, board certifications, teaching positions, scholarly research and publications (including peer reviewed publications on COVID-19), and the like, and is engaged in the practice of medicine. *Id.* at ¶¶ 2-12. In addition to his medical credentials, he also has public health credentials. *Id.*

He provides evidence that the current vaccines are not effective at preventing the spread of the disease, or in protecting any particular group or community against the spread of the virus (part of that is due to mutations in the virus, in which breakthrough infections are increasingly occurring). *Id.* at ¶¶ 17-20. He also opines that, using herd immunity calculations, we should have

achieved this already, and predicts no further benefits from further vaccination efforts. *Id.* at 21-22.

Dr. McCullough adds:

> In my expert medical opinion which is and is within a reasonable degree of medical certainty, despite the prior Delta variant outbreak, and the present Omicron variant outbreak, the increasing likelihood of herd immunity to COVID-19, the low risk to children and adolescents of serious complications or death due to COVID-19, the negligible risk of asymptomatic spread of COVID-19, the vastly improved COVID-19 treatments currently available all make the risks inherent in COVID-19 significantly lower than they were in 2020. *Id.* at ¶ 23.

And, he concludes that:

> It is my expert medical opinion that the COVID-19 vaccines are progressively losing efficacy over the prevention of COVID-19 and in widely vaccinated countries (Israel, Iceland, Singapore) up to 80% of COVID-19 cases have been previously vaccinated implying the vaccines have become obsolete with antigenic escape or resistance to variants (e.g., Delta, Omicron) that have evolved to infect persons who were vaccinated against the now extinct wild-type SARS-CoV-2 strain. *Id.* at ¶ 24.

He concludes by stating that current studies support that natural immunity is more protective than vaccine-derived immunity. *Id.* at ¶ 25. As is relevant to the Plaintiffs, this evidence provides no scientific evidence to support the governments compelling governmental interest is being furthered by the vaccine requirements (and penalties for failure to do so) at issue.

## II. LAW AND ARGUMENT

### A. Standard

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998);

8

*Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp*., 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). *See, also, Elrod v. Burns*, 427 U. S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

U.S. Supreme Court precedent suggests that the same standards apply to RFRA claims as apply to constitutional claims, viz., a collapsing of the standards when the government is the Defendant to look at the question of the merits. *Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). And Sixth Circuit precedent clearly compels the same collapsed analysis. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (analyzing identical Kentucky RFRA statute and noting that the issues collapse under RFRA).

### B. Law and Argument

1. <u>The directives and policies violate RFRA as applied to Plaintiffs, and others similarly situated</u>

Pursuant to 42 U.S.C. 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." Pursuant to 42 U.S.C. 2000bb-1(b), "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

The Government Defendants have substantially burdened Plaintiffs' exercise of religion, in light of (i) their vaccine mandates; and (ii) their refusal to timely process certain of the Plaintiffs' accommodation request to that requirement (even though this is required by applicable regulation). Further, these mandates are not in furtherance of a compelling governmental interest, and requiring them of these Plaintiffs is not the least restrictive means of furthering any compelling governmental interest. All of that gives rise to a claim under 42 U.S.C. 2000bb-1(c).

Compelling a medical procedure, involving as it does the invasion on personal autonomy, and in violation of conscience formed from sincerely held religious belief, is certainly a substantial burden on religious practice. *Gonzales*, 546 U.S. 418, 428-32; *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009); *Holt*, 574 U.S. 352; *Burwell*, 573 U.S. 682.

We anticipate that the Government Defendants will assert that they have a "a compelling interest in preventing the spread of a novel, highly contagious, sometimes fatal virus." *Maryville*, 957 F.3d 610, 613. However, in *Maryville*, as here, the "likelihood-of-success inquiry instead turns on whether [the challenged] orders were 'the least restrictive means' of achieving

these public health interests." *Id.* "That's a difficult hill to climb, and it was never meant to be anything less." *Id.* Defendants cannot, and do not, meet that burden here.

The Sixth Circuit's most recent decision that touches on RFRA is *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021). *Ackerman* was a RLUIPA case, but, as explained by the Sixth Circuit in Ackerman, the analysis is (with one exception, which accounts for unique prison condition expertise issues) largely identical. *Id.* at 180, fn.5. The sincerity prong just requires courts "'to determine whether the line drawn' by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs 'reflects an honest conviction.'" *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018). Here, the Air Force tested sincerity through interviews with Chaplains, and Plaintiffs unquestionably have sincerely held beliefs that have been impacted. Plaintiffs have also demonstrated a substantial burden on their beliefs. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019).

Thus, the burden shifts to the Government Defendants to "justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test.'" *Ackerman*, 16 F.4th 170, 179.[20] This "standard is 'exceptionally demanding,' and requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364 (alterations in original) (*quoting Hobby Lobby*, 573 U.S. at 728).

The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored.

---

[20] The aspect of the RLUIPA claim that requires "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," is not applicable in RFRA case. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Similarly, RFRA requires the same narrow tailoring. 42 U.S.C. 2000bb–1. "[N]arrow tailoring **requires the government to show** that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-1297 (2021) (emphasis added). "Where the government permits other activities to proceed with precautions [as the Air Force does here], **it must show** that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.* (Emphasis added). "Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.*

The Government must prove that a military member who does not receive a vaccine due to a religious objection is a greater risk to the military mission than someone who does not receive a vaccine due to a medical or administrative reason. Logically, the Government could never meet this burden as the risks would always be the same.[21] "Risks of contagion turn on [the failure to receive the vaccine]; the virus does not care why they [did not do so]. So long as that is the case, why do the orders permit people who [have medical or administrative exemptions to avoid the requirement, but not permit religious exemptions]"? *Maryville*, 957 F.3d 610, 615.

Sixth Circuit precedent precludes the Government from merely saying that no religious exemptions can be accommodated because vaccinations of all personnel are a compelling necessity. Instead, the Government must prove why its granting of thousands of medical or administrative exemptions, and merely a handful of belated, suspect,[22] religious exemptions, is

---

[21] *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67, Order for Temporary Restraining Order; ("The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence)").

[22] We do not mean suspect in the context that the exemptions are not warranted, but rather mean suspect in the context that these exemptions came after litigation in multiple forums, after the

something other than its preference of secular concerns over all religious concerns (which is what Colonel Poel admits is the case, Declaration Poel at ¶ 7). *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021).

Given the Government's burden of proof, the Court should require the Government to address, by way of evidence, the context of the mere handful (0.07% of those requested) religious exemptions that it has granted, and the context of the medical or administrative exemptions that it has granted (i.e. to whom, what their job duties were, etc.). Recent litigation in Florida suggests that these few religious exemptions were granted only for service members about to exit the service. *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#111 (attached). Absent such a comparison, the Government cannot meet its burden, and injunctive relief should be granted.

In *Dahl*, as here, the defendant "requires [persons] to be vaccinated against COVID-19, but it considers individual requests for medical and religious exemptions on a discretionary basis. [Plaintiff] applied for religious exemptions. The [defendants] ignored or denied their requests…" *Id.* And, to be clear, in *Dahl*, it was not even the denial of an educational benefit, a scholarship, or even membership on a particular sport team but, instead, merely the denial of participation in team sport activities. *Id.* In contrast, the consequences to Plaintiffs are far more severe.

As for any argument by the Government Defendants that Plaintiffs do not have a right to continuation in the service of this nation, we respond by quoting the Sixth Circuit: "[a] party may mount a free exercise challenge, it bears noting, even where it does not have a constitutional right

---

entry of a temporary restraining order in the Middle District of Florida that excoriated the Government for its discrimination (*NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67), and were like the handful of Marine Corps exemptions that were granted but later turned out to be service members that were at the end of their terms of service.

to the benefit it alleges is being improperly denied or impaired." *Id.* at 731-732. That is because "a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights." *Id.* at 731, quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021). Further, as here, where the Government "extends discretionary exemptions to a policy, **it must grant exemptions** for cases of 'religious hardship' **or present compelling reasons not to do so**." 15 F.4th 728, 731 (Emphasis added).

In *Dahl*, the governmental actor at least made the argument that it also refused to grant *any* medical exemptions (as noted, and unlike in *Dahl*, the Air Force has granted thousands of medical and administrative exemptions to its policy). But even that was not sufficient to avoid triggering strict scrutiny. *Id.* at 734-735. And in terms of strict scrutiny, and whether the *Dahl* defendants could meet it, the Sixth Circuit found significant that others either were not subject to, **or were exempt from**, the vaccination policy. *Id.* at 735. So too here. The Air Force has approved, as of February, 2022, at least 1,513 medical exemptions and 2,314 administrative exemptions. [Dec. Holbrook].

In *Dahl*, the defendants also presented the district court with "an affidavit stating that COVID-19 vaccines are 'the most effective and reasonable way to guard against' the virus." *Dahl* 15 F.4th 728, at 735 (In contrast, here the Government concedes that "studies vary". [Declaration Poel ¶24].) However, for purposes of its ruling, the Sixth Circuit did not "dispute that assessment." *Id.* Nevertheless, it found that "the question before us 'is not whether the [defendant] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exception' to plaintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Id.* That is precisely the issue here.

14

The granting of thousands of medical or administrative exemptions while denying all but a handful of religious exemptions (and those only at the eleventh hour, apparently prompted by litigation), and the continuation of a sham process of purporting to legitimately consider these religious exemptions is a stunning admission and is dispositive of the Government's failure to meet the requirements of RFRA and the First Amendment. *Maryville Baptist Church*, 957 F.3d 610 at 614-615; *Roberts*, 958 F.3d 409, 413-415; *Fulton*, 141 S. Ct. 1868, 1882 (the government has no "compelling reason why it has a particular interest in denying an exception to [plaintiff] while making them available to others."). The Government's own proof is nothing more than an acknowledgment of official discrimination against religious exercise so as maximize the protection of other concerns. [Declaration Poel at ¶ 7]. This alone warrants granting relief to Plaintiffs (and others) who are being subjected to this unlawful discrimination.

The fact that thousands of exceptions have been granted for medical and administrative reasons, on a case-by-case basis, establishes that strict scrutiny is warranted under *Maryville*, *Roberts*, and *Fulton.* The fact that a mere handful of suspect religious exemptions have been or will be granted establishes that the Government cannot pass that strict scrutiny test. The United States Supreme Court has made clear that a policy is not neutral and generally applicable "whenever [it] treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. 1294, 1296 (emphasis in original). The granting of *any* secular exemptions from the vaccination policy for secular reasons, no matter how appropriate or warranted (including for severe medical reactions to the vaccine), treats "*any* comparable secular activity more favorably than religious exercise," and triggers strict scrutiny. *Id.*

The Government Defendants have not demonstrated, and cannot demonstrate, that none of the less restrictive steps work (starting with least burdensome on Plaintiffs and others

similarly situated and extending to most burdensome). Of course, given Dr. McCullough's opinions, there is *no governmental interest* that is actually furthered by the COVID-19 vaccine mandate. The current vaccinations are not preventing the spread of the current mutated and original strains of COVID-19. (Dec. McCullough).

This case follows decisions and injunctions that have been granted on the same subject matter, largely on the same facts involving the same discriminatory treatment, and the same legal claims, against the same Department of Defense, and in one case the same Defendants, by the Northern District of Texas, *U.S. Navy Seals 1-26 v. Biden*, NDTX Case No. 4:21-cv-01236, DE#66; the Middle District of Florida, *Navy Seal 1 v. Austin*, MDFL Case No. 8:21-cv-02429, DE#111 and DE#67; and the Middle District of Georgia, *Air Force Officer v. Austin*, MDGA Case No. 5:22-cv-00009, DE#51. We attach these decisions.

And, to be clear, Plaintiffs here seek not only that their exemptions be processed and accepted, but that the Government Defendants discontinue their current practice of systemically denying religious exemptions, while apparently processing administrative and medical exemptions in the ordinary manner. Treating those who seek religious accommodations as second-class citizens is an additional substantial burden on their religious practices that is unwarranted and illegal under RFRA. RFRA, 42 U.S.C. 2000bb-1(a), has been violated, and Plaintiffs have demonstrated a likelihood of success on the merits.

2. The directives and policies violate the First Amendment as applied to Plaintiffs, and others similarly situated

In addition to RFRA, the same requirements, particularly with the secular exceptions in the vaccination policy, give rise to a free exercise challenge. This is also not traveling new ground. Government is not permitted to treat religious activity worse than it treats comparable secular activity. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). And the existence of

exceptions for, e.g., medical exemptions or administrative exemptions (which Plaintiff has plead have been granted and have, in fact, been granted), from the vaccination policy at issue, demonstrate that religious accommodations must be permitted as well. *Id.*, *see, also, Maryville*, 957 F.3d 610, 614; *Roberts v. Neace*, 958 F.3d 409; *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

*Fulton* teaches that "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877. Further, "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* That is especially true here, where requests for religious accommodation are routed through the Surgeon General, who makes an individual, case-by-case assessment. Here, as in *Fulton*, the Air Force's vaccine exemption regime "incorporates a system of individual exemptions, made available in this case at the 'sole discretion' of the [Surgeon General]." *Id.* at 1878.

Also here, as in *Fulton*, that official has granted various secular exemptions, but denied all but a handful of religious exemptions. However, the Constitution requires and provides that he "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Id.* As with the RFRA claim, the Government must demonstrate narrow tailoring, a task which is impossible if "the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.* at 1881.

In fact, the Government Defendants certainly *know* that they have violated the law and cannot make the requisite showing. There is another term for this: a hostility to religious exemptions, running to the top levels of the Air Force and the named Defendants. And that, as it

turns out, is patently unconstitutional. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U. S. ___, 138 S. Ct. 1719 (2018). The First Amendment has been violated, and Plaintiffs demonstrated a likelihood of success on the merits.

### 3. A nationwide preliminary injunction should issue

In *Califano v. Yamasake*, 442 U.S. 682 (1979), the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." Indeed, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087, 198 L. Ed. 2d 643 (2017) (per curiam); *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

Plaintiffs request an preliminary injunction (and have proposed an order) that: (i) requires the immediate processing and acceptance of Plaintiffs' religious accommodation requests under RFRA; (ii) requires timely and good faith processing of other religious accommodation requests in accordance with the timelines contained in current Department of Defense instructions, and appropriately considers whether such requests can be accommodated within the framework of RFRA and its least restrictive means (as well as a fulsome consideration of alternatives to denial of such request);[23] and (iii) ceases the Defendants' current policy of engaging in a double

---

[23] Because each of these requests necessarily depends on the facts and circumstances of each request, we do not, at present, go beyond these general requirements as pertains to others. For instance, in some cases, the chaplains may determine that a request is not motivated by a sincerely held belief, which is markedly different than Plaintiffs' request.

standard between, on the one hand, granting, where appropriate, medical and administrative

exemptions but, on the other hand, almost never granting religious exemptions.

### III.    CONCLUSION

Plaintiff seeks a preliminary injunction and temporary restraining order as prayed for.  A

proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest_____                    /s/Aaron Siri_____
Christopher Wiest (OH 0077931)                      Siri Glimstad, LLP
Chris Wiest, Atty at Law, PLLC                      Aaron Siri (admitted PHV)
25 Town Center Blvd, Suite 104                      Elizabeth Brehm (admitted PHV)
Crestview Hills, KY 41017                           Wendy Cox (admitted PHV)
513/257-1895 (c)                                    200 Park Avenue, 17th Floor
859/495-0803 (f)                                    New York, NY 10166
chris@cwiestlaw.com                                 (212) 532-1091 (v)
                                                    (646) 417-5967 (f)
/s/Thomas B. Bruns_____                       aaron@sirillp.com
Thomas B. Bruns (OH 0051512)
4555 Lake Forest Drive, Suite 330
Cincinnati OH 45242
tbruns@bcvalaw.com
513-312-9890
*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon each Defendant at their addresses (and the United States by service upon the U.S. Attorney and U.S. Attorney General), by priority U.S. mail, as well by CM/ECF, this 22 day of February, 2022, and representatives of the Department of Justice by email this same date.

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)