**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Western Division at Cincinnati**

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | Case No. 1:22-CV-84 |
| Plaintiffs | : | |
| **v.** | : | |
| **FRANK KENDALL, et. al.** | : | |
| Defendants | : | |

<u>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**</u>

TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

   **A.** **Response to the Government's Initial Statements Regarding Precedent** ..................... 1

   **B.** **The Government's Evidence is Significant in that it Supports Plaintiffs' Claims** ....... 3

   **C.** **The Claims are Ripe; Exhaustion is Not Required for a RFRA Claim; Many**

   **Plaintiffs Have Fully Exhausted and, For Those Who Haven't, Futility and Other**

   **Exhaustion Exceptions Apply** ........................................................................ **7**

      1.   Plaintiffs' claims are ripe ......................................................................... 7

      2.   Exhaustion is not required for RFRA Claims ............................................. 9

      3.   Many of the Plaintiffs have fully exhausted and, for those who have not, futility and

      other exceptions apply ........................................................................... 12

   **D.** **Standard For Preliminary Injunction** ............................................................. **18**

   **E.** **Plaintiffs' RFRA and Free Exercise Claims are Likely to Succeed on the Merits** .... **18**

   **F.** **Plaintiffs Face Irreparable Harm** .................................................................. **30**

   **G.** **The Equities and Public Interest Warrant the Issuance of Relief** ........................... **32**

   **H.** **The Scope of the Relief Should Track the Scope of the Constitutional and Statutory**

   **Violations** ................................................................................................ **34**

 **Conclusion** ................................................................................................. 35

TABLE OF AUTHORITIES

**Cases**

*Adair v. England,*
  183 F. Supp. 2d 31 (D.D.C. 2002) .................................................................................. 11, 29

*Air Force Officer v. Austin,*
  --- F. Supp.3d ---, No. 5:22-cv-00009-TES, 2022 U.S. Dist. LEXIS 26660, 2022 WL 468799
  (M.D. Ga. Feb. 15, 2022)....................................................................................................... 3, 16

*Autocam Corp. v. Sebelius,*
  2012 U.S. App. LEXIS 26736 (6th Cir. 2012) ......................................................................... 30

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979).................................................................................................................... 7

*Berry v. Schmitt,*
  688 F.3d 290 (6th Cir. 2012) ..................................................................................................... 9

*Bostock v. Clayton County,*
  140 S. Ct. 1731 (2020)............................................................................................................... 10

*Brannum v. Lake,*
  311 F.3d 1127 (D.C. Cir. 2002) ................................................................................................ 11

*Brown v. Ent. Merchs. Ass'n,*
  564 U.S. 786 (2011).................................................................................................................... 25

*BST Holdings, LLC v. OSHA,* 17 F.4th 604 (5th Cir. 2021).................................................. 25, 26

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014).................................................................................................................... 18

*Califano v. Yamasake,*
  442 U.S. 682 (1979).................................................................................................................... 34

*Carr v. Saul,*
  141 S. Ct. 1352 (2021)............................................................................................................... 14

*Catholic Diocese of Nashville v. Sebelius*,
  2013 U.S. App. LEXIS 25936 (6ᵗʰ Cir. 2013) .................................................. 17, 30

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) .......................................................................................... 30

*Church v. Biden*,
  2021 U.S. Dist. LEXIS 215069 (DCD 2021) ...................................................... 2

*City of Lakewood v. Plain Dealer Publ'n Co.*,
  486 U.S. 750 (1988) ............................................................................................ 8

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981) .......................................................................................... 10

*Cont'l Training Servs., Inc. v. Cavazos*,
  709 F. Supp. 1443 (S.D. Ind. 1989), *aff'd in part, rev'd in part*,
  893 F.2d 877 (7th Cir. 1990) ............................................................................ 24

*Dahl v. Bd. of Trustees of W. Mich. Univ.*,
  15 F.4th 728 (6th Cir. 2021) .................................................................. 20, 21, 22

*Darby v. Cisneros*,
  509 U.S. 137 (1993) .......................................................................................... 13

*De Beers Consol. Mines Ltd. v. United States*,
  325 U.S. 212 (1945) .......................................................................................... 34

*DeOtte v. Azar*,
  393 F. Supp. 3d 490 (N.D. Tex. 2019) .............................................................. 30

*Dilley v. Alexander*,
  603 F.2d 914 (D.C. Cir. 1979) ......................................................................... 10

*Doe v. Bolton*,
  410 U.S. 179 (1973) ............................................................................................ 8

iv

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ............................................................................ 7

*Downen v. Warner*,
   481 F.2d 642 (9th Cir. 1973) ............................................................ 11

*Dr.A v Hochul*,
   142 S. Ct. 552, 211 L. Ed. 2d 414, 2021 U.S. LEXIS 6279,
   90 U.S.L.W. 3181, 29 Fla. L. Weekly Fed. S 53, 2021 WL 5873126 ................................... 31

*Dunn v. Austin*,
   Ninth Cir. Case No. 22-15286 ...................................................... 2, 3

*East Brooks Books, Inc. v. Shelby Cnty. Tenn.*,
   588 F.3d 360 (6th Cir. 2009) ............................................................ 8

*Elrod v. Burns*,
   427 U.S. 347, (1976) ............................................................ 17,18, 30

*Faith Baptist Church v. Waterford Twp.*
   , 522 Fed. Appx. 322 (6th Cir. 2013) .............................................. 8

*Forest Guardians v. Thomas*,
   967 F. Supp. 1536 (D. Az. 1997) .................................................. 33

*Fulton v. City of Phila.*,
   141 S. Ct. 1868 (2021) ................................................ 21, 22, 23, 28

*G & V Lounge v. Mich. Liquor Control Comm'n*,
   23 F.3d 1071 (6th Cir. 1999) ........................................................ 33

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .............................................................. 18, 24

*Guettlein v. United States Merch. Marine Acad.*,
   2021 U.S. Dist. LEXIS 244966, --- F.Supp.3d --- (EDNY 2021) ........................... 2

*H.D.V. - Greektown, LLC v. City of Detroit*,
   568 F.3d 609 (6th Cir. 2009) ........................................................ 18

*Harkness v. Sec'y of the Navy*,
    858 F.3d 437 (6th Cir. 2017) ............................................................................... 13

*Hartmann v. Stone*,
    68 F.3d 973 (6th Cir. 1995) ............................................................................... 29

*Hitchcock v. Cumberland Univ.*,
    *403(b) DC Plan*, 851 F.3d 552 (6th Cir. 2017)........................................................... 9

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ......................................................................... 14, 16

*Holt v. Hobbs*,
    574 U.S. 352 (2015)................................................................................. 18, 20, 33

*John Doe #1 #14 & Jane Doe #1 #2 v. Austin*,
    2021 U.S. Dist. LEXIS 236327, --- F.Supp.3d --- (NDFL 2021) .............................. 2

*Katcoff v. Marsh*,
    755 F.2d 223 (2nd Cir. 1985)............................................................................. 10

*Kentucky, Educ. & Workforce Dev. Cabinet, Office for the Blind v. United States*,
    759 F.3d 588 (6th Cir. 2014) ............................................................................. 14

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ........................................................................... 30

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1970).......................................................................................... 7

*Maryville Baptist Church, Inc. v. Beshear*,
    957 F.3d 610 (6th Cir. 2020) ....................................................... 17, 18, 20, 22, 30

*Mass. Mut. Life Ins. Co. v. Russel*,
    473 U.S.  (1985).............................................................................................. 12

*McCarthy v. Madigan*,
    503 U.S. 140 (1992)........................................................................................ 16

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ............................................................ 10, 13, 16, 18

*Navy Seal 1 v. Austin*,
    2022 U.S. Dist. LEXIS 31640 (MDFL 2022) .......................................... 2

*NAVY SEAL #1, et al. v. Biden, et. al.*,
    MDFL Case No. 8:21-cv-02429 ...................................................... 20, 21

*Oklahoma v. Biden*,
    2021 U.S. Dist. LEXIS 246534, --- F. Supp.3d --- (WDOK 2021) ........................... 2

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
    676 F.3d 829 (9th Cir. 2012) ............................................................ 9

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ............................................................ 30

*Parisi v. Davidson*,
    405 U.S. 34 (1972) .................................................................... 11, 17

*Poffenbarger v. Kendall*,
    2022 U.S. Dist. LEXIS 34133, --- F. Supp.3d --- (SDOH 2022 ....................... 1, 3, 7, 15

*Robert v. Austin*,
    2022 U.S. Dist. LEXIS 5399 (D. Col. 2022) .............................................. 2

*Roberts v. Neace*,
    958 F.3d 409 (6th Cir. 2020) ....................................................... passim

*Seepe v. Department of Navy*,
    518 F.2d 760 (6th Cir. 1975) ........................................................... 14

*Short v. Berger*,
    2:22-cv-1151 (CD Cal. Mar. 3, 2022) .................................................... 2

*Singh v. Carter*,
    168 F. Supp. 3d 216 (DCD 2016) ....................................................... 9

*Singh v. McHugh*,
   185 F. Supp. 3d 201 (D.D.C. 2016)……………………………………………………19, 20, 29

*Sambrano v. United Airlines, Inc.*,
   2021 U.S. App. LEXIS 36679 (5th Cir. 2021) ........................................................................ 31

*Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*,
   20 F.3d 1418 (6th Cir. 1994) ..................................................................................................... 14

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ........................................................................................................................ 7

*Suster v. Marshall*,
   149 F.3d 523 (6th Cir. 1998) ..................................................................................................... 18

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) .................................................................................................... 19, 23, 30

*Trump v. Int'l Refugee Assist. Project*,
   137 S. Ct. 2080 (2017) ................................................................................................................. 34

*U.S. Navy Seals 1-26 v. Biden*,
   2022 U.S. App. LEXIS 5262, ---F.4th --- (5th Cir. 2022) ............................................... 3, 10, 15

*United States v. Sterling*,
   75 M.J. 407 (C.A.A.F. 2016), cert. *denied*, *Sterling v. United States*,
   137 S. Ct. 2212, 198 L. Ed. 2d 657 (2017) ............................................................................ 10

*Usn Seals 1-26 v. Biden*,
   2022 U.S. Dist. LEXIS 2268 (TXND 2022) .................................................... 3, 15, 16, 24, 27

*Villegas de la Paz v. Holder*,
   614 F.3d 605 (6th Cir. 2010) ..................................................................................................... 12

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) ......................................................................................................................... 8

*Von Hoffburg v Alexander,*
    615 F.2d 633 ................................................................................................ 14, 16, 17

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................................... 33

*Winter v. Wolnitzek,*
    834 F.3d 681 (6th Cir. 2016) .................................................................................... 9

**Statutes**

42 U.S. Code § 2000bb ........................................................................................ 9, 19, 25

## INTRODUCTION

Plaintiffs, by and through Counsel, provide this Reply in Support of their Motion for Preliminary Injunction.

In its Memorandum in Opposition, the Government (all Defendants are collectively referred to as "the Government" for purposes of this Reply) makes several admissions, implicitly conceding several points: (i) natural immunity is a less restrictive means of protecting the Air Force; (ii) there are additional less restrictive means of accommodating Plaintiffs' religious accommodation requests; and (iii) it is systemically discriminating against the exercise of religion by granting thousands of medical and administrative exemptions, while denying nearly every single religious exemption.   Under the First Amendment and RFRA, governmental accommodation of secular concerns over religious beliefs cannot stand.

### A.  Response to the Government's Initial Statements Regarding Precedent

Before turning to the Government's arguments, some additional information regarding potentially relevant case law bear mentioning as this information either directly refutes the Government's arguments or gives necessary context. For instance, the Government cites to a decision from another District Court in this District denying a Motion for a Temporary Restraining Order but omits the critical fact that the same District Court, in the same case, ultimately granted a preliminary injunction.  *Poffenbarger v. Kendall*, 2022 U.S. Dist. LEXIS 34133, --- F. Supp.3d --- (SDOH 2022). The Government also points out that no Court has granted a nationwide injunction but omits the critical fact that either those particular cases were not filed as a class action, which this matter was [Cf. Complaint, DE#1], or that class certification was not sought in those cases, where a motion for such certification is now pending in this Court.  [Pl.'s Mtn. Class Cert., DE#21].

1

The failure to grant a nationwide class here will result in serial filings (and motions to intervene in this matter) for no less than fifty Air Force members who have contacted the undersigned, creating unwieldy case management issues that class certification was meant to, and does, avoid. [Dec. Wiest, attached hereto].

The Government then points out that other Courts have denied relief, but fails to apprise this Court that in at least one of those cases, the Ninth Circuit Court of Appeals granted an injunction pending appeal (*Dunn v. Austin,* Ninth Cir. Case No. 22-15286).[1] The Government also fails to acknowledge that all but two[2] of those cases are factually distinguishable (and in fact have been distinguished by the Fifth Circuit Court of Appeals among other courts).[3] Likewise, the Government fails to acknowledge that relief has been granted by at least four District Courts.[4] In

---

[1] Attached hereto as an Exhibit.

[2] *Short v. Berger*, 2:22-cv-1151 (CD Cal. Mar. 3, 2022) is factually similar, but legally distinguishable. The District Court's decision in that case, for reasons explained below, directly contradicts on-point Sixth Circuit and U.S. Supreme Court precedent. *Dunn v. Austin* is factually similar, but legally distinguishable. Again, the Ninth Circuit has already cast doubt on the validity of the decision by the District Court's decision by granting interim relief from it.

[3] For instance, in *Church v. Biden*, 2021 U.S. Dist. LEXIS 215069 (DCD 2021) and *Robert v. Austin*, 2022 U.S. Dist. LEXIS 5399 (D. Col. 2022), <u>none</u> of the Plaintiffs had their initial requests resolved, much less any Plaintiffs with appeals resolved, and there was no evidence of record of systemic denials suggesting the futility exception to exhaustion applied as is the case here, thus the Court found exhaustion of remedies barred the claims. Defendants also cite to several cases that did not involve a RFRA or First Amendment claim at all, and involved challenges to the vaccine requirement on a more generalized level, rather than failure to accommodate an exception – again, this case does not raise those issues at all. *John Doe #1 #14 & Jane Doe #1 #2 v. Austin*, 2021 U.S. Dist. LEXIS 236327, --- F.Supp.3d --- (NDFL 2021); *Guettlein v. United States Merch. Marine Acad.*, 2021 U.S. Dist. LEXIS 244966, --- F.Supp.3d --- (EDNY 2021); *Oklahoma v. Biden*, 2021 U.S. Dist. LEXIS 246534, --- F. Supp.3d --- (WDOK 2021) (this case, in footnote 3, was clear that it did not involve religious accommodations, recognizing religious accommodations present different issues).

[4] *Navy Seal 1 v. Austin*, 2022 U.S. Dist. LEXIS 31640 (MDFL 2022) (granting preliminary injunction, finding that military's denial of religious accommodation to vaccination requirements was a violation of RFRA and the First Amendment, that administrative exhaustion did not apply

fact, every Circuit Court that has addressed the issue to date found relief to be appropriate.  *U.S. Navy Seals 1-26 v. Biden*, 2022 U.S. App. LEXIS 5262, ---F.4[th] --- (5th Cir. 2022); *Dunn v. Austin*, Ninth Cir. Case No. 22-15286 (order attached).

**B.  The Government's Evidence is Significant in that it Supports Plaintiffs' Claims**

Much of the Government's proffered evidence actually supports Plaintiffs' claims, with some of its admissions being dispositive of the Plaintiffs' claims. For instance, in informing about the risks of COVID-19, Colonel Tonya Rans (DE#25-10) admits that co-morbidities affect outcomes and cites to (irrelevant for the Air Force) studies about 54-year-olds and cancer patients. Of course, these Plaintiffs, and all Air Force members, are required to be physically fit.[5] She also admits that there have been no deaths in the Air Force since November 2021, COVID-19 case counts are trending downwards, (*Id.* at ¶14), scientific studies show natural immunity lasts at least six months following infection, (*Id.* at ¶ 28), some scientific studies show prior infection and resulting natural immunity are better than vaccine-derived immunity. (*Id.* at ¶ 38), and the Omicron variant is resistant to both vaccines and natural immunity, (*Id.* at¶ 32), with the still allowed Johnson & Johnson vaccine being particularly bad with respect to preventing Omicron infection. *Id.* at ¶ 28.  Each of these admissions cuts against any compelling need to vaccinate Plaintiffs against their religious beliefs.

---

to RFRA cases, and that exceptions applied if it did); *Usn Seals 1-26 v. Biden*, 2022 U.S. Dist. LEXIS 2268 (TXND 2022) (same); *Air Force Officer v. Austin*, 2022 U.S. Dist. LEXIS 26660 (MDGA 2022) (granting preliminary injunction, finding that military's denial of religious accommodation to vaccination requirements was a violation of RFRA and the First Amendment); *Poffenbarger v. Kendall*, 2022 U.S. Dist. LEXIS 34133, --- F. Supp.3d --- (SDOH 2022) (same).

[5]   https://static.e-publishing.af.mil/production/1/af_a1/publication/dafman36-2905/dafman36-2905.pdf (last visited 3/12/2022).

3

Also, as part of its Response in this case, the Government submitted the Declaration of Colonel James Poel. In it, Colonel Poel admits that the Government is deliberately engaged in the systemic denial of religious exemptions because, he contends, they have to in order to accommodate medical exemptions. [Declaration Poel, DE#25-17 at ¶ 7]. This is despite the fact that Colonel Poel admits the purported "necessity" supporting forced vaccinations of previously infected and recovered airmen, like many of the Plaintiffs, is belied by scientific proof that previous infection likely provides thirteen times greater protection against reinfection or breakthrough infection than vaccination alone. *Id.* at ¶23.[6] Colonel Poel erroneously suggests that the total number of vaccination exemptions are a zero-sum game (i.e. that to grant more medical exemptions, which are preferred, religious exemptions must be denied), but provides **no evidence** why that is so. Likewise, and without evidentiary support, he suggests that people who have natural immunity, like most of the Plaintiffs, purportedly have greater protection if they are also vaccinated. Even if true, it ignores the fact that the Air Force is not requiring all its airmen both to become infected and vaccinated in order to have this allegedly more robust immunity.

Ultimately, Colonel Poel gives the game away when he admits the "studies vary" behind trying to determine whether reinfection rates are equivalent, lower, or higher among those who have overcome prior infection and now have natural immunity, versus those whose immunity derives solely from being "fully vaccinated."  *Id.* ¶23. Simply put, this evidence conclusively demonstrates the Government cannot meet its burden in this case of establishing a compelling interest which would allow it to impede on religious liberty; it plainly cannot prove there are no less restrictive means available other than vaccinating everyone with no exceptions (aside from

---

[6] "Both natural and vaccine immunity decrease the risk of re-infection." Declaration Poel.

administrative and medical) allowed. Clearly, natural immunity is one of the less restrictive means of accommodating closely held religious beliefs.

Colonel Poel also argues that studies from the UK and Israel, two countries with some of the highest rates of vaccination in the world, show that "herd immunity" is not a realistic basis upon which to allow Plaintiffs to obtain a religious exemption. *Id.* at ¶29. Put another way, what the Government actually proves with this evidence is that mass vaccination doesn't work in light of the emerging variants. *Id.* Unfortunately for the Government, and in light of its very high burden of proof, this evidence of the futility of mass vaccination in light of emerging variants demonstrates that there is no compelling interest in forcing vaccinations at the price of religious liberty.

Significantly, Colonel Artemio Chapa testified that the Air Force has granted and continues to grant robust medical exemptions for things such as: (i) persons receiving antibody therapy; (ii) persons suffering multi-system inflammatory syndrome; (iii) pregnancy; (iv) myocarditis; (v) anaphylaxis from vaccination; and (vi) allergies to vaccine components; yet grants almost no religious accommodation requests whose accommodations would be no different than those granted medical or administrative exemptions. [DE#25-12]. The Air Force grants temporary medical exemptions of up to a year for these, and other conditions, awaiting a vaccine that may potentially become available that would not present risks to these populations. *Id.* He also testified that persons who receive medical exemptions are determined to be medically fit for duty. *Id.* at ¶ 7. Persons who receive these exemptions do not necessarily lose their eligibility for deployment, because such determinations are made on a case-by-case basis by the relevant commander. *Id.* at ¶ 14. Moreover, administrative exemptions are granted for individuals, including for those who are participating in vaccine studies and even those who may have received a placebo in a study and thus may **have no immunity at all**. *Id.* at ¶¶ 17-18. (emphasis added).

Consistent with how the Air Force has admittedly treated administrative and medical exemption requests, almost all Plaintiffs have submitted declarations that demonstrate they too seek **temporary exemptions** from the Air Force's vaccination requirements until a non-objectionable vaccine comes to market. [Declarations of Plaintiffs, Exhibits 3-20 hereto].  Further, based on the March 8, 2022 COVID-19 statistics published by the Department of the Air Force,[7] 132,401 Air Force members have recovered from COVID-19 thus conferring natural immunity. And, the Air Force has an active-duty vaccination rate of 97.9%, a reserve vaccination rate of 93.2%, and a total force vaccination rate of 96.3%. *Id.* In light of these immunity numbers, any Air Force personnel Plaintiffs would interact with in their duties are almost certainly either vaccinated or naturally immune, and thus Plaintiffs would pose no risk to them. *Id.* In case of any doubt about this conclusion, the fact the Air Force has granted 1,202 medical exemptions and 1,604 administrative exemptions, and counting, makes clear there is no compelling reason to require these Plaintiffs to be vaccinated despite their sincerely held religious beliefs.

Each of the foregoing Plaintiffs also testified that from March 2020 through August 2021, the Air Force, Plaintiffs' units, and those in Plaintiffs' career fields and with their duties were able to fully perform their duties and accomplish mission objectives notwithstanding the lack of a COVID-19 vaccine, or the occurrence of COVID-19 generally in the community and in the Air Force. *Id.* Despite being unvaccinated, Plaintiffs still were able to deploy and operate in forward locations and accomplish their missions. *Id.* The same is true for those in any potential or projected follow-on assignments. *Id.* Simply put, the Air Force, and Plaintiffs' units, were able to adapt and overcome the challenges of COVID-19. *Id.* Despite this record evidence, Plaintiffs have also

---

[7]    https://www.af.mil/News/Article-Display/Article/2959594/daf-covid-19-statistics-march-8-2022/ (last visited 3/9/2022).

adduced proof that *not one single religious exemption* has been granted without being eligible for an administrative exemption.  [Dec. Wiest, attached as Exhibit 2, with transcript of hearing in *Poffenbarger v. Kendall* attached].

      C.  **The Claims are Ripe; Exhaustion is Not Required for a RFRA Claim; Many Plaintiffs Have Fully Exhausted and, For Those Who Haven't, Futility and Other Exhaustion Exceptions Apply**

The claims are ripe, exhaustion is not required, many Plaintiffs have fully exhausted, and for those that have not, the futility and other exceptions apply.

    1.  Plaintiffs' claims are ripe

The Government contends that this matter and the claims in it are not ripe. Like other claims, a RFRA claim becomes ripe if the plaintiff faces an "actual or imminent" injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1970), which occurs if the plaintiff confronts an actual or imminent burden on religious practice. Put simply, "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

"If the rule were otherwise, the contours of regulation would have to be hammered out case by case – and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of the regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Under that scenario, the First Amendment – "of transcendent value to all society, and not merely those exercising their rights – might be the loser." *Id.*

7

The Supreme Court made clear that where there is an actual and well-founded fear that a requirement will be enforced against a plaintiff, the claim is ripe and they have standing. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). That is true even if they have never been prosecuted or threatened with prosecution. *Doe v. Bolton*, 410 U.S. 179, 188 (1973). And where, as here, a government policy with exemptions vests "unbridled discretion in a government official over whether to permit or deny" First Amendment protected activity, one who is subject to the law or policy may challenge it facially without the necessity of first applying for, **and being denied**, that same exemption. *City of Lakewood v. Plain Dealer Publ'n Co.*, 486 U.S. 750, 755-56 (1988); *see also East Brooks Books, Inc. v. Shelby Cnty. Tenn.*, 588 F.3d 360, 369 (6th Cir. 2009) (finding that plaintiff had standing based on the suppression of his future protected speech even where his license was not actually revoked); *Faith Baptist Church v. Waterford Twp.*, 522 Fed. Appx. 322 (6th Cir. 2013) (mere threat of potential prosecution was sufficient to establish that the claim was ripe and standing existed).

Further, given the Government's failure to grant a single exemption other than those at the end of their careers to date, it is a certainty that all exemption requests and appeals will be denied,[8] and equally certain that harm will immediately come to them when they refuse to be vaccinated notwithstanding their appeal denials. Indeed, the Air Force specifically threatened Plaintiffs with punitive action. (Ver. Compl, ¶52, DE#1). And the Government's own evidence, from Colonel Hernandez, reveals that these Plaintiffs face punitive actions for refusal that include the possibility

---

[8] "The Air Force Surgeon General concluded that there are no lesser restrictive means than vaccination of these individual service members to further the military's compelling interests in readiness and ensuring the health and safety of all service members." (Def.['s] Table of Contents B. 2.)

of court martial (i.e., a federal felony conviction) and administrative discharges. (Dec. Hernandez, DE#25-14).

This matter is plainly ripe under Circuit precedent. *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012). In *Berry*, a letter from a body with authority to act, telling the plaintiff that his actions were unlawful, was sufficient to establish ripeness. Clearly, we are well beyond that here. (Ver. Complaint, DE#1). *See, also, Winter v. Wolnitzek*, 834 F.3d 681, 687-688 (6th Cir. 2016) (any communication directed at a plaintiff that threatens that plaintiff with enforcement, even if it is contingent upon future events, sufficiently establishes ripeness).

2. Exhaustion is not required for RFRA Claims

Exhaustion is not required for a statutory claim that does not contain an exhaustion requirement. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552 (6th Cir. 2017) (declining to read an exhaustion requirement into a statute that did not contain such a requirement). RFRA does not contain an exhaustion requirement. To the contrary, 42 U.S. Code § 2000bb–1(c) permits an action for any person whose "religious exercise has been burdened in violation of this section," subject only to Article III standing. Several cases support the proposition that administrative exhaustion simply does not apply to RFRA. *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (DCD 2016) (exhaustion is not required for a RFRA claim); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition, see 42 U.S.C. §§ 2000bb– 2000bb–4, and the Supreme Court has not imposed one.").

The Fifth Circuit just explained this very fact in the context of military vaccine requirements: "Congress rendered justiciable Plaintiffs' claims under RFRA, which applies to every 'branch, department, agency, instrumentality, and official (or other person acting under color

9

of law) of the United States[.]'" *U.S. Navy Seals 1-26 v. Biden*, 2022 U.S. App. LEXIS 5262, ---
F.4th --- (5th Cir. 2022)*, citing* 42 U.S.C. § 2000bb-2(1). "RFRA, in turn, sets the standards binding
every department of the United States to recognize and accommodate sincerely held religious
beliefs." *Id*. "It undoubtedly 'applies in the military context.'" *Id., citing United States v. Sterling*,
75 M.J. 407, 410 (C.A.A.F. 2016), cert. *denied, Sterling v. United States,* 137 S. Ct. 2212, 198 L.
Ed. 2d 657 (2017). "This makes sense because service members 'experience increased needs for
religion as the result of being uprooted from their home environments, transported often thousands
of miles to territories entirely strange to them, and confronted there with new stresses that would
not otherwise have been encountered if they had remained at home.'" *Id., citing Katcoff v. Marsh*,
755 F.2d 223, 227 (2nd Cir. 1985). "Federal courts are therefore empowered to adjudicate RFRA's
application to these Plaintiffs." *Id.*

The Fifth Circuit also observed that "it is likely that, following RFRA's enactment,
abstention based on the *Mindes* test is no longer permissible." That is because "RFRA 'operates
as a kind of super statute, displacing the normal operation of other federal laws[.]'" *Id., citing
Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020). "It would not be a stretch to conclude
that RFRA must also displace a judge-created abstention doctrine." *Id.* "[W]hen Congress
addresses a question previously governed by a decision rested on federal common law the need
for such an unusual exercise of lawmaking by federal courts disappears." *Id.*, *citing City of
Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981).

Consistent with the textual evidence, other courts have refused to read an exhaustion
requirement into RFRA, even in cases involving the military. *Dilley v. Alexander*, 603 F.2d 914,
920 (D.C. Cir. 1979); *see id*. ("It is a basic tenet of our legal system that a government agency is
not at liberty to ignore its own laws and that agency action in contravention of applicable statutes

and regulations is unlawful . . . The military departments enjoy no immunity from this proscription." (citations omitted)).

Even if military operations require some deference from courts, "'resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board.'" *Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (quoting *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973)). In *Adair*, the court rejected the military's argument that plaintiffs with free-exercise claims should have "first exhausted their administrative remedies by raising their personnel claims with the Board for Correction of Naval Records ('BCNR') before coming to federal court." *Id*. Indeed, "the Supreme Court . . . [has] heard numerous [constitutional] challenges to military policies." *Brannum v. Lake*, 311 F.3d 1127, 1130 (D.C. Cir. 2002).

Beyond this authority, in the religious freedom context, the U.S. Supreme Court has been clear that exhaustion is not required before obtaining relief in the District Court. *Parisi v. Davidson*, 405 U.S. 34 (1972). In *Parisi*, as here, the service member had a religious objection to aspects of military service – namely combat duties – and claimed conscientious objector status. And, like the RFRA statute here, a federal statute gave the service member the right to claim that status. The Supreme Court found, contrary to the Government's arguments here, that resorting to the Board of Corrections for Military Records, or to court martial appeals, and to anything other than claiming the exemption under applicable Army regulations was not necessary. *Id.* at 41-42. The Supreme Court held that "we no more than recognize the historic respect in this Nation for valid [religious accommodation] to military service." *Id.* at 45. "As the Defense Department itself has recognized, 'the Congress . . . has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces.'" *Id.* That observation by the Supreme Court has

11

equal weight in the administrative exhaustion context to RFRA claims – namely that no such exhaustion requirement exists under that statute.

Also relevant to the inquiry is Plaintiffs' non-compliance with Department of Defense Instruction 1300.17.[9] The Government failed to comply with that instruction, which requires mandatory timelines for processing accommodation requests, with exceptions to be explicitly set forth in service regulation, and in any event within 30 days of the submission of a servicemember's appeal to the service secretary with all review and action taken within 60 days of that date. *Id.* at ¶3.2.c. There is nothing else Plaintiffs can do. The governments' non-compliance with Department of Defense Instruction 1300.17 has resulted in those awaiting decisions on their religious accommodation requests to be removed from career enhancing assignments and promotions.

Consequently, the Government's failure to comply with the relevant regulation that requires timely processing of the accommodation request obviates and excuses any arguments it now makes regarding administrative exhaustion and irreparable harm. *Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985) (administrative exhaustion does not apply where the Defendant fails to comply with its own timely processing rules); *Villegas de la Paz v. Holder*, 614 F.3d 605, 608 (6th Cir. 2010) (calling the Government's failure to comply with processing requirements and attempts to deprive a court of jurisdiction thereby a "perversion" of justice and refusing to apply administrative exhaustion in such circumstances).

3. Many of the Plaintiffs have fully exhausted and, for those who have not, futility and other exceptions apply

Lt. Doster, SRA Dills, SMSgt Schuldes, SSgt Theriault, and A1C Colantonio have completed all available military appeals. One other Plaintiff has his appeal pending with the

---

[9] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited 3/12/2022).

Surgeon General (Lt. Colonel Stapanon). They have all exhausted. *Darby v. Cisneros*, 509 U.S. 137 (1993).

Even if exhaustion of administrative remedies were required, the Sixth Circuit has adopted the Fifth Circuit's reasoning concerning administrative remedy exhaustion. *Harkness v. Sec'y of the Navy*, 858 F.3d 437 (6th Cir. 2017), *citing Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). In *Mindes*, the Fifth Circuit articulated a test for determining the reviewability of a particular military decision. As a threshold matter, the *Mindes* court held that an internal military decision is unreviewable unless two initial requirements are satisfied: "(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Id.* at 201. Clearly, here the first element is met.[10]

---

[10] Once the threshold step of *Mindes* is satisfied, the next step is weighing the following four factors to determine the justiciability of a claim regarding internal affairs: the nature and strength of the plaintiff's challenge to the military determination; the potential injury to the plaintiff if review is refused; the type and degree of anticipated interference with the military function; and the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201-2. Application of these factors favors review of Plaintiff's claims by this Court.

As set forth below, under the first factor, the nature and strength of Plaintiff's challenge favors judicial review. Second, without review, Plaintiffs faces serious, irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The third factor, type and degree of anticipated military function, provides a caveat: "[i]nterference *per se* is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief." *Mindes*, 453 F.2d at 201. Granting review of whether the Air Force has properly followed the law in the evaluation of religious accommodation requests does not pose a threat to its performance of vital duties. Further, there is no evidence that the relief requested by these Plaintiffs would cause significant interference with the operations of the Air Force – the granting of secular accommodations and exemptions by the Government belies any such conclusion. Therefore, the "traditional deference" cited by the Government in applying *Mindes* to "internal military decisions" is inapplicable, as Plaintiffs **make an argument based on legal sufficiency, not military expertise**. Therefore, because each of the four factors weigh in favor of review, *Mindes* does not serve as a procedural bar to Plaintiffs' claims, even if it applied here.

Also, the Sixth Circuit recognizes exceptions to exhaustion where administrative remedies are inadequate or not efficacious; where pursuit of administrative remedies would be a futile gesture; and where irreparable injury will result unless immediate judicial review is permitted. *Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20 F.3d 1418, 1424 (6th Cir. 1994); *see, also*, *Seepe v. Department of Navy*, 518 F.2d 760, 762 (6th Cir. 1975) (recognizing exceptions to exhaustion for futility, an exception for where the *status quo* under the administrative decision pending review would itself constitute a hardship or leave the complainant in an emergency situation, and where the complaint involved a matter of law only and did not require or involve application of military expertise); *Kentucky, Educ. & Workforce Dev. Cabinet, Office for the Blind v. United States*, 759 F.3d 588, 598 (6th Cir. 2014) (recognizing exceptions where (1) requiring exhaustion will result in irreparable harm; (2) the administrative remedy is wholly inadequate; or (3) that the administrative body is biased, making recourse to the agency futile.) The Fifth Circuit likewise has identified at least four such exceptions to military exhaustion: futility, inadequacy of administrative remedies, irreparable injury, and a substantial constitutional question. *Von Hoffburg v Alexander*, 615 F.2d 633 at 638. All of these exceptions clearly apply here.

For futility, such exhaustion is only necessary where remedies "provide a real opportunity for adequate relief." *Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974); *Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) ("[T]his Court has consistently recognized a futility exception to exhaustion requirements."). Although that "is not usually a reason for bypassing" the exhaustion requirement, *id.*, when the record all but compels the conclusion that the military process will deny relief, "exhaustion is inapposite and unnecessary," *Id.*

As with the Navy in *Usn Seals 1-26 v. Biden*, 2022 U.S. Dist. LEXIS 2268 (TXND 2022), "[t]he facts overwhelmingly indicate that the [Air Force] will deny the religious accommodations." "Outside of Plaintiffs' requests, the [Air Force] has, to date, never granted a religious accommodation request for the COVID-19 vaccine." *Id.* In fact, the Air Force Surgeon General himself has already predetermined the denial of religious accommodation appeals demonstrating that the entire religious accommodation process is nothing more than an exercise in futility. There will be no approvals. Finally, the Government already admitted in the record in *Poffenbarger v. Kendall* that all of these requests will be denied – none of them are end-of-service individuals who otherwise would qualify for administrative exemptions. [Dec. Wiest, attaching transcript]. Therefore, exhausting remedies in this scenario provides no real opportunity for adequate relief.

The Fifth Circuit recently was clear that "exhaustion is unnecessary if, *inter alia*, the administrative remedy is futile and plaintiffs raise substantial constitutional claims." *U.S. Navy Seals 1-26*, 2022 U.S. App. LEXIS 5262, --- F.4th ---. There, as here:

> The [Air Force] has not accommodated any religious request to abstain from any vaccination in seven years [other than those who otherwise were eligible for administrative exemptions], and to date it has denied all religiously based claims for exemption from COVID-19 vaccination [other than those who otherwise qualified for administrative exemptions]. It is true that futility is not a function of the likely ultimate success of administrative exhaustion. But evidence, recited previously and not meaningfully challenged here, suggests that the [Air Force] has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains. This is sufficiently probative of futility. Further, as explained more fully below, Plaintiffs raise substantial, legally clear-cut questions under RFRA. Courts are specifically equipped to address RFRA claims and, by the same token, the issues are less suitable for administrative adjudication.

Ultimately, the Fifth Circuit found that *Mindes* justiciability was met. Here, as there, "if the [Air Force]'s plan is to ignore RFRA's protections, as it plainly appears to be on the record before us, courts must intervene because '[g]enerals don't make good judges—especially when it comes to nuanced constitutional issues.' *citing Air Force Officer v. Austin*, --- F. Supp.3d ---, No.

15

5:22-cv-00009-TES, 2022 U.S. Dist. LEXIS 26660, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) at *8. Further, given the systemic denial of *every single exemption request other than those otherwise eligible for administrative exemptions*, the Government hardly comes to this Court with clean hands to argue that there is any chance that any request will be granted. But that the Air Force could hypothetically grant a request does not, on this record, "provide a real opportunity for adequate relief." *Hodges*, 499 F.2d at 420.

To be sure, "courts must – at least initially – indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations." *Hodges*, 499 F.2d at 424. "But they need not indulge that presumption to the point of absurdity." *Usn Seals 1-26*, 2022 U.S. Dist. LEXIS 2268. "The record overwhelmingly demonstrates that the [Air Force's] religious accommodation process is an exercise in futility." *Id.* "Plaintiff need not wait for the [Air Force] to rubber stamp a constitutional violation before seeking relief in court." *Id.*

Second, Plaintiffs need not exhaust military remedies when "available administrative remedies are inadequate" to grant him the relief they seek. *Von Hoffburg*, 615 F.2d at 640. For example, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). That exception for inadequate remedies is met because, make no mistake, the exemption requests here are predetermined, and the harm, as explained below, is ongoing.

The third exception is that "exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies." *Von Hoffburg*, 615 F.2d at 638. That resembles the second *Mindes* factor, which considers "[t]he potential injury to the plaintiff if review is refused." *Mindes*, 453 F.2d at 201. Again, the burdening of Plaintiffs'

16

religious beliefs, which is occurring today, *is* irreparable harm. *Elrod v Burns*, 427 U.S. 347, 373; *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610; *Catholic Diocese of Nashville v. Sebelius*, 2013 U.S. App. LEXIS 25936 (6th Cir. 2013).

Not surprisingly, the Government argues that the injury is not irreparable at present. Shockingly, it contends the injury may never be irreparable in the sense that they argue confinement in the Leavenworth U.S. Disciplinary Barracks (prison) for not following an order that violates Plaintiffs' sincerely held religious beliefs is not irreparable, because they still can appeal over the course of years through the military justice system. Such a contention could only be made by callous individuals who have never been threatened to choose between their liberty and their sincerely held religious beliefs. Thankfully, such a contention is directly contradicted by applicable case law. *Maryville Baptist Church, Inc.*, 957 F.3d 610; *Parisi*, 405 U.S. 34..

The Government casually ignores the effects of the myriad steps it indicates it will take, all designed to coerce, threaten, and pressure individuals such as Plaintiffs to violate their religious beliefs and cave to the Government's demands. That is no different than sending State Police into churches and denying individuals the ability to engage in corporate worship, which was irreparable harm. *Maryville Baptist Church, Inc.*, 957 F.3d 610.

The fourth exception to exhaustion is when "the plaintiff has raised a substantial constitutional question." *Von Hoffburg*, 615 F.2d at 638. That inquiry raises the same issues as the first *Mindes* factor, the "nature and strength of the plaintiff's challenge to the military

determination," which generally favors review of substantial constitutional questions. *Mindes*, 453 F.2d at 201. Here, there is no question a substantial Constitutional question exists.

### D.  Standard For Preliminary Injunction

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm; (3) whether issuance would cause substantial harm to others; and (4) whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998).

In fact, Sixth Circuit law clearly establishes that where constitutional rights are infringed, the likelihood of success factor is dispositive and the remaining factors are met. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (remaining injunction factors collapse where violation of rights occurs); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights).

U.S. Supreme Court precedent supports applying the same injunction standard to RFRA claims as to constitutional claims, viz., a collapsing of the standards when the government is the defendant and looking primarily at the likelihood of success on the merits. *Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

### E.  Plaintiffs' RFRA and Free Exercise Claims are Likely to Succeed on the Merits

Given there is no dispute that Plaintiffs possess sincerely held religious beliefs, nor is there any dispute that the Government's mandate substantially burdens these beliefs, we turn next to

18

whether the Government has a compelling interest and uses the least restrictive means of furthering that compelling government interest.[11]

### 1. The Government Does Not State a Compelling Governmental Interest for Requiring the Vaccination of these Plaintiffs

The First Amendment's Free Exercise Clause prohibits the Government from enacting non-neutral and non-generally applicable laws or policies unless the same are narrowly tailored. Similarly, RFRA requires the same narrow tailoring. 42 U.S.C. 2000bb–1. "[N]arrow tailoring **requires the government to show** that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-1297 (2021) (emphasis added). "Where the government permits other activities to proceed with precautions [as the Air Force does here], **it must show** that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.* (Emphasis added). "Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.* In enacting RFRA, Congress "expressed its clear understanding that the heightened standard of review" (closely scrutinizing Government action) applies to the military. *Singh v. McHugh*, 185 F. Supp. 3d 201, 218 (D.D.C. 2016) (citing House and Senate reports).

Sifting through all its proof compels the conclusion that the Government wholly fails to meet its burden under *Tandon.* At no point in its submissions does the Government prove that a military member who does not receive a vaccine due to a religious objection is a greater risk to the military mission than someone who does not receive a vaccine due to a medical or administrative reason. Logically, the Government could never meet this burden as the risks would always be the

---

[11] Religious Freedom Restoration Act of 1993, Pub. L. 103-141, Nov. 16, 1993, 107 Stat. 1488 (42 U.S.C. 2000bb *et seq.*).

same.[12] "Risks of contagion turn on [the failure to receive the vaccine]; the virus does not care why they [did not do so]. So long as that is the case, why do the orders permit people who [have medical or administrative exemptions to avoid the requirement, but not permit religious exemptions]"? *Maryville*, 957 F.3d 610, 615. When applying a parallel statute that "mirrors RFRA" in the prison context, the Supreme Court unanimously rejected a similar request for "a degree of deference that [wa]s tantamount to unquestioning acceptance." *Holt v. Hobbs*, 574 U.S. 352, 357, 364 (2015). Instead, the Court applied strict scrutiny to hold that the prison's failure to provide a religious accommodation violated the statute. *Id.* at 369–70. *Holt* provides the proper framework for resolving RFRA claims against the military. *Singh*, 185 F. Supp. 3d at 221-22.

Applying this framework, the Government's unsupported assertion that its vaccine requirement complies with RFRA and with the First Amendment is just that: unsupported. As noted, its own proof establishes the contrary conclusion. Sixth Circuit precedent precludes the Government from merely saying that no religious exemptions can be accommodated because vaccinations of all personnel are a compelling necessity. Instead, the Government must prove why it is granting thousands of medical or administrative exemptions, and merely a handful of religious exemptions all of whom otherwise qualify for administrative exemptions; further, it must be some reason other than its preference of secular concerns over all religious concerns (which is what Colonel Poel admits is the case, Declaration Poel, DE#25-17, ¶ 7). *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021).

---

[12] *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67, Order for Temporary Restraining Order; ("The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence)").

Given the Government's burden of proof, the Court should require the Government to address, among other things, by way of evidence, the context of the medical or administrative exemptions that it has granted (i.e., to whom, what their job duties were, etc.). Recognizing the relevance of this information, the District Court in the Middle District of Florida litigation directed the Government to do exactly that by February 16, 2022. *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#90.  But absent such a comparison, the Government cannot meet its burden, and injunctive relief should be granted.

In *Dahl*, as here, the defendant "requires [persons] to be vaccinated against COVID-19, but it considers individual requests for medical and religious exemptions on a discretionary basis. [Plaintiff] applied for religious exemptions.  The [defendants] ignored or denied their requests…" *Id.* And, to be clear, in *Dahl*, it was not even the denial of an educational benefit, a scholarship, or even membership on a particular sport team but, instead, merely the denial of participation in team sport activities. *Id.* In contrast, the consequences to Plaintiffs here are far more severe.

As for any argument by the Government that Plaintiffs do not have a right to continuation in the service of this nation, we respond by quoting the Sixth Circuit: "[a] party may mount a free exercise challenge, it bears noting, even where it does not have a constitutional right to the benefit it alleges is being improperly denied or impaired." *Id.* at 731-732. That is because "a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights." *Id.* at 731, quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021). Further, as here, where the Government "extends discretionary exemptions to a policy, **it must grant exemptions** for cases of 'religious hardship' **or present compelling reasons not to do so**." *Dahl* 15 F.4th 728, 731 (Emphasis added).

21

In *Dahl*, the governmental actor at least made the argument that it also refused to grant *any* medical exemptions (as noted, and unlike in *Dahl*, the Air Force has granted thousands of medical and administrative exemptions to its policy). But even that was not sufficient to avoid triggering strict scrutiny. *Id.* at 734-735. And in terms of strict scrutiny, and whether the *Dahl* defendants could meet it, the Sixth Circuit found significant that others either were not subject to, **or were exempt from**, the vaccination policy. *Id.* at 735. So too here. The Air Force has approved, as of March 2022, thousands of medical and administrative exemptions.

In *Dahl*, the defendants also presented the district court with "an affidavit stating that COVID-19 vaccines are 'the most effective and reasonable way to guard against' the virus." *Dahl* 15 F.4th 728, at 735 (In contrast, here the Government concedes that "studies vary" insofar as natural immunity is concerned, Declaration Poel, DE#25-17 at ¶24). However, for purposes of its ruling, the Sixth Circuit did not "dispute that assessment." *Id.* Nevertheless, it found that "the question before us 'is not whether the [defendant] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exception' to plaintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Id.* That is precisely the issue here with each of these Plaintiffs.

The granting of thousands of medical or administrative exemptions while denying all but a handful of religious exemptions which also qualify for administrative exemptions is dispositive of the Government's failure to meet the requirements of RFRA and the First Amendment. *Maryville Baptist Church*, 957 F.3d 610 at 614-615; *Roberts*, 958 F.3d 409, 413-415; *Fulton*, 141 S. Ct. 1868, 1882 (the government has no "compelling reason why it has a particular interest in denying an exception to [plaintiff] while making them available to others."). The Government's own proof is nothing more than an acknowledgment of official discrimination against religious

exercise so as maximize the protection of other, secular concerns. [Declaration Poel, DE#25-17 at ¶ 7]. This alone warrants granting relief under the First Amendment and RFRA to Plaintiffs who are being subjected to this unlawful discrimination.

The fact that thousands of exceptions have been granted for medical and administrative reasons, on a case-by-case basis, establishes that strict scrutiny is warranted under *Maryville*, *Roberts*, and *Fulton*. The fact that exceptions are granted for medical and administrative reasons, but not religious reasons, establishes that the Government cannot pass that strict scrutiny test. The United States Supreme Court has made clear that a policy is not neutral and generally applicable "whenever [it] treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. 1294, 1296 (emphasis in original). The granting of *any* secular exemptions from the vaccination policy for secular reasons, no matter how appropriate or warranted (including for severe medical reactions to the vaccine), treats "*any* comparable secular activity more favorably than religious exercise," and triggers strict scrutiny. *Id.*

Nor does the Government's arguments about near to end-of-service exemptions or medical exemptions hold water. The point is that the Government permits the member to remain in service, unvaccinated, to perform military duties. That evidence undermines every argument the Government raises about its purported inability to grant religious exemptions to the same policy. As noted, recent U.S. Supreme Court precedent forecloses that possibility anyway where secular exemptions have been granted from the same policy, but where religious accommodation is being denied. *Fulton*, 141 S. Ct. 1868, 1882. Resolving all doubt, the Government has granted administrative exemptions for participants in vaccine studies who receive the placebo. Tellingly, the Government offers no good explanation at all for this specific exemption.

23

Thankfully, this Court is not bound by the Government's illogic or unsupported arguments. "[R]ather than rely on 'broadly formulated interests,' courts must 'scrutinize the asserted harm of granting specific exemptions to particular religious claimants.'" *Fulton,* 141 S. Ct. 1868, 1881 (2021) (*quoting Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S.418, 431 (2006)).

To meet its burden, the Government must articulate a compelling interest in vaccinating (1) healthy and fit Air Force members, most in their 20s to mid-40s, (2) many of whom have had prior bouts with COVID-19 and now have natural immunity, (3) in a force that is nearly 98% vaccinated, and (4) where pending and granted exemptions (including medical exemptions) account for only about 1% of the total force of nearly 400,000 members on active duty or in the Air Force Reserve. And that "compelling" interest must hold up to scrutiny where (5) the Government admits that the required vaccines do not prevent either infection or transmission (with the still allowed single-dose Johnson & Johnson vaccine providing next to no immunity), and (6) the dominant strain of COVID-19 produces mild cold-like symptoms in the vast majority of healthy individuals.

Significantly, the Government did not impose vaccine mandates until August 2021, long after vaccines became widely available. That "substantial delay" seriously undermines any "assertion of a compelling interest" in obtaining 100% vaccination of all Air Force personnel. *See Cont'l Training Servs., Inc. v. Cavazos*, 709 F. Supp. 1443, 1453 (S.D. Ind. 1989), *aff'd in part, rev'd in part*, 893 F.2d 877 (7th Cir. 1990). Moreover, as the declarations of Plaintiffs, attached hereto, demonstrate that the Air Force was able to accomplish its mission from March 2020 to August 2021 with little to no interruption. With few isolated exceptions, military operations were uninterrupted. *See U.S. Navy SEALs*, 2022 WL 34443, at *10. If vaccination over religious

24

objection is as necessary as the Government claims, the fact that 98% of the force is vaccinated belies any claims that a handful of even a couple thousand exemptions could be detrimental *today*. Further, it is now clear that vaccinated individuals can both contract and transmit the disease, *see BST Holdings, LLC v. OSHA*, 17 F.4th 604, 616 n.19 (5th Cir. 2021); Eric Sykes, CDC Director: Covid vaccines can't prevent transmission anymore, MSN (Jan. 10, 2022), https://tinyurl.com/uu3h9bs4.

The Government's action of permitting purely secular exceptions to its mandate is an admission that: 1) it does not believe that no exceptions can be granted, and 2) less restrictive means to accomplish the Government's claimed interest are available, it simply refuses to apply those means to religious believers. Simply put, the Government, admittedly, can and should treat those with a valid religious objection to the vaccine the same way it treats those with a valid medical or administrative accommodation request. So far, and in violation of RFRA and the Constitution, it has chosen not to do so.

The Government substantially burdened Plaintiffs' religious exercise while failing to demonstrate that doing so is necessary to achieve a compelling governmental interest. 42 U.S.C. §2000bb–1(b). Instead, the Government illogically argues that because Plaintiffs perform duties in a career field that requires interaction, the compelling government interest is to achieve 100% vaccination compliance for the sake of overall health and safety. This is despite its acknowledgment of the science supporting the efficacy of natural immunity, and the hypocrisy of granting thousands of medical and administrative exemptions resulting in less than 100% compliance. As the Supreme Court has explained, the government "does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011).

Tellingly, the Government also fails to explain why it delayed imposing its mandate for eleven months in the face of a supposed compelling necessity. The Government's casual response to Plaintiffs' arguments against any true compelling necessity ignores that substantial delays in imposing a vaccine mandate fatally undermine the Government's asserted justification. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 611 & n.10–11 (5th Cir. 2021).

The Government illogically contends it has a compelling necessity to create a crisis of conscience, even for those service members who have recovered from COVID-19 infection and developed natural antibodies, because it claims there is insufficient data concerning natural immunity, and that studies vary. [DE#22 at p.36]. Perhaps it only makes this argument because it must concede the reliable scientific data establishing that prior infection is likely thirteen times more effective than vaccination alone in preventing reinfection and/or breakthrough infection.[13] This is consistent with recent CDC findings that support the efficacy of prior infection in preventing reinfection.[14] However, all of its cited "data" only proves that the Government cannot meet its burden of proving a "compelling necessity" when the data, admittedly is conflicting. Instead, the fact that the Air Force continues to approve medical and administrative exemptions while refusing to accommodate all but a handful of religious exemptions simply establishes that the Government is enforcing the vaccine mandate in an arbitrary and capricious manner. *Id.*

**2. Even if the Court Finds that the Government has a Compelling Interest, the Government Fails to Realistically Consider Lesser Restrictive Means for Accommodation**

The Government also fails to demonstrate that compulsory vaccination is the least restrictive means of achieving its purported compelling government interest, particularly where it

---

[13] https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1 (last visited 2/12/22).

[14] https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w#contribAff (last visited 2/11/2022).

has granted thousands of exemptions to its policy for medical and administrative reasons, but only a handful of eleventh-hour exemptions for religious reasons that also meet administrative reason. It is undisputed that Plaintiffs are willing to adhere to numerous longstanding mitigation measures such as masking, teleworking, and social distancing, as well as reasonable COVID-19 screening testing that is presently advertised as an acceptable alternative to vaccination by the Department of Defense and the CDC.

Given the Air Force's blanket denial of nearly 100% of religious exemption requests, the Government cannot claim that they considered whether lesser restrictive means were available. In fact, to justify its argument that there are no lesser restrictive means available and in arguing that the ability of these Plaintiffs to deploy is at issue, the Government relies on sustained speculation through a series of unlikely events: that Plaintiffs might be deployed on short notice, might become infected with COVID-19 just before or during deployment, possibly resulting in severe illness, possibly without antivirals or other treatments on hand, possibly making them unable to perform their duties, and possibly infecting enough other (98% vaccinated) airmen to render their units unable to achieve its mission.

Each event is unlikelier than the last. First, for most of the Plaintiffs, their natural immunity makes it unlikely that they will become infected with COVID-19 at all, let alone at a critical time for deployment. Second, given their youth and health, any new infection is unlikely to disable them. Third, oral antivirals – which can be taken at home without access to medical facilities – should be available to a deployed unit. *See U.S. Navy SEALs*, 2022 WL 34443, at *10. Fourth, for most Plaintiffs, their natural immunity and the 98% vaccination rate (if vaccination is a compelling necessity, it can only be so because it actually works) make infection of other members of Plaintiffs' units unlikely. Fifth, it is still less likely that a vaccinated member of their unit, if

infected by a Plaintiff, would experience more than mild symptoms if the vaccines work. And sixth, the military's track record before the vaccine mandate makes it far-fetched that the unit would fail to complete its mission due a handful of unvaccinated Plaintiffs.

The Government also maintains that Plaintiffs could not be deployed to countries that require vaccination. Any such restrictions would be subject to a Status of Forces Agreement; those agreements are negotiated and renegotiated as conditions change. *See, generally*, U.S. Dep't of State, International Security Advisory Board, Report on Status of Forces Agreements (Jan. 16, 2015), https://tinyurl.com/2ptcs32m. Those agreements cover a variety of criminal, civil and regulatory requirements such as "special entry and exit arrangements," "driving and other licenses," and "applicability of local labor and environmental laws." *Id.* at 20. The United States could and should ensure religious protections for the servicemembers it deploys. *Id.* at 8 ("The United States has leverage in SOFA negotiations, and should be prepared to use it.").

Not surprisingly, the Government scoffs at and/or outright rejects these mitigation measures. Perhaps this is simply further proof of the Government's admittedly hostile view of Plaintiffs' sincerely held religious beliefs. But before the rollout of vaccines, these measures were used successfully throughout the pandemic by ***these very Defendants*** as they carried on their normal military responsibilities. Now, during a time when, admittedly, vaccine effectiveness is waning (for Johnson & Johnson it has waned), such measures should not be foreclosed and would certainly be a less restrictive means of reducing transmission of COVID-19 than requiring Plaintiffs, most of whom have natural immunity, to violate their deeply held beliefs. "[S]o long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton,* 141 S. Ct. at 1881.

The Government also utterly fails to explain how its rejection of natural immunity as a substitute for the COVID vaccination squares with their acceptance of the Johnson & Johnson vaccine, which during clinical trials – before the rise of the Delta and Omicron variants – proved only 66.3% effective in preventing infection.[15]  The J&J shot now produces "virtually no antibody protection against the omicron coronavirus variant."[16] **Yet remaining unexplained is why the Johnson & Johnson vaccine still fulfills the Air Force's vaccination requirement**, **while natural immunity does not**.

Finally, the Government's fallback argument that discrimination against religious exercise is permitted in the military – or at least accorded a more deferential First Amendment review than strict scrutiny – is as meritless as its other arguments. Contrary to their unsupported assertion, multiple courts have applied strict First Amendment scrutiny to military regulations and actions that burden the free exercise of religion – including the Sixth Circuit Court of Appeals. *See, e.g.*, *Hartmann v. Stone*, 68 F.3d 973, 978–79 (6th Cir. 1995) (applying *Lukumi* standard to Army regulation that prohibited religious practices by on-base family childcare providers); *accord Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) (applying the *Lukumi* standard to Army's refusal to accommodate Sikh religious practices); *Adair*, 183 F. Supp. 2d at 53 (applying the *Lukumi* standard to free exercise claim by chaplains against the Navy). These decisions align with the Supreme Court's categorically clear instruction that "[t]he principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by

---

[15]   https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html   (last visited 2/11/2022).

[16]   https://www.biorxiv.org/content/10.1101/2021.12.14.472719v1.full.pdf   (last   visited 2/11/2022).

religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

### F. **Plaintiffs Face Irreparable Harm**

Incredibly, the Government claims there is no irreparable harm. But there is never an adequate remedy at law for even a brief deprivation of religious liberty rights. The Sixth Circuit has been clear that violations of First Amendment and RFRA rights satisfy the irreparable harm requirement. *Maryville Baptist Church, Inc.*, 957 F.3d 610, 615-616 (finding restriction that burdened religion "assuredly inflicts irreparable harm"); *Autocam Corp. v. Sebelius*, 2012 U.S. App. LEXIS 26736 (6th Cir. 2012) (same); *Catholic Diocese of Nashville v. Sebelius*, 2013 U.S. App. LEXIS 25936 (6th Cir. 2013) (same); *Roberts*, 958 F.3d 409, 416 (restriction "assuredly inflicts irreparable harm by prohibiting them from worshiping how they wish"). Unquestionably, the loss of First Amendment freedoms, for even minimal periods of time, "constitutes irreparable injury." *Elrod*, 427 U.S. at 373. The Supreme Court recently echoed this in the context of religious liberty, finding that burdens on Free Exercise rights "for even minimal periods of time" constitute irreparable harm. *Tandon*, 141 S. Ct. 1294, 1297.

Other Circuits are in accord. *Opulent Life Church v. City of Holly Springs, Miss*., 697 F.3d 279, 295 (5th Cir. 2012) (citing *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("[C]ourts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA.")); *accord DeOtte v. Azar*, 393 F. Supp. 3d 490, 511 (N.D. Tex. 2019). And as Justices Gorsuch and Alito recently agreed, the *threat* of loss of employment and unemployment benefits and the deprivation of religious liberty rights each satisfy the irreparable harm prong of the preliminary-injunction standard. *Dr.A v Hochul*, 142 S. Ct. 552, 211 L. Ed. 2d 414, 2021 U.S. LEXIS 6279, 90

U.S.L.W. 3181, 29 Fla. L. Weekly Fed. S 53, 2021 WL 5873126, at *3 (Gorsuch, J., dissenting from the denial of application for injunctive relief).

Also, the Air Force's mandate causes irreparable harm because of its coercive effect, which forces a "crisis of conscience" that is itself a harm for the religious objector. As Judge Ho said, "it is a quintessentially irreparable injury, warranting preliminary injunctive relief." *Sambrano v. United Airlines, Inc.*, 2021 U.S. App. LEXIS 36679 (5th Cir. 2021) (Ho, J., dissenting from denial of injunction pending appeal). "It is difficult to imagine how a crisis of conscience, whether instigated by government or industry, could be remedied by an award of monetary damages." *Id.* at *3.

In the Government's response to Plaintiffs' claims of irreparable harm, it shockingly claims that Plaintiffs' "contention is meritless, as military administrative and **disciplinary actions**, including separation, are not irreparable injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim." (Response, DE#25 at 34). Beyond the objective falsity of this statement, and the fact this further proves the Government's openly hostile view of Plaintiffs' sincerely held religious beliefs, it also proves the Government will violate its own policies and regulations in order to trample over Plaintiffs' religious beliefs. Department of the Air Force Instruction 52-201, paragraph 2.7, states that "If, after a thorough analysis of the above facts, the religious accommodation of Airmen or Guardian cannot be met, administrative actions that may be considered include reassignment, reclassification, or voluntary separation."[17] Also see, Department of Defense Instruction 1300.17 where it states, "**[A]n expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may**

---

[17] Department of the Air Force Instruction 52-201, paragraph 2.7, June 23, 2021. Available at https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf (last visited 2/12/2022).

not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment."[18]  Nowhere does it state that service members, such as these Plaintiffs,  or those in a similar situation, should be given a letter of reprimand that will be filed in their official military personnel records, or harmed in other ways including a court martial (the Government calls them the "potential range of disciplinary consequences…") by taking away their pay and their ability to serve in the Air Force. *Id.*  When drafting current policy and regulations, it is clear the intent was not to punish or discipline service members whose requests for religious accommodation were denied.  The intent of the instruction was to look for other ways to accommodate the service members' religious exercise without the use of a "disciplinary consequence."  *Id.*  It would appear that the Air Force has instead turned this religious accommodation request process into an eradication of religious believers in its ranks through punitive means.

### G.  <u>The Equities and Public Interest Warrant the Issuance of Relief</u>

As Plaintiffs already noted, these factors usually collapse when we deal with the Government's violation of statutory and constitutional law. To be sure, the Sixth Circuit is clear there can be no harm to others as a result of granting an exception for religious liberty when the Government already allows secular exceptions to its policy, and those secular exceptions impose similar risks. *Roberts*, 958 F.3d 409, 416. But even more than that, and cutting against harm to others (and harm that the Government alleges it will suffer without continuing to discriminate on the basis of religious belief) is the fact that: 1) the Government and Air Force successfully operated without these mandates for over a year into the pandemic; 2) the Air Force has already achieved an over 97% vaccination rate, belying any claims that granting a religious exemption to a few

---

[18] *Id.* at ¶ 1.2 e.

service members could harm its mission where it already accommodates thousands of medical and administrative exemptions; and 3) other mitigation measures exist, and previously were implemented by the Air Force with no small degree of success. All of this cuts against harm to others. As for the final factor, the public interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999).

In an attempt to justify their public interest argument, the Government misleadingly asserts that this Court "must 'give great deference' to the 'professional military judgments' of [military] leaders when it comes to what is needed to ensure military readiness." Quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008)). But the quotation is seriously misleading where *Winter* involved balancing the potential harm to marine mammals against the Navy's ability to continue conducting sonar training. When applying a parallel statute that "mirrors RFRA" in the prison context, the Supreme Court unanimously rejected a similar request for "a degree of deference that [wa]s tantamount to unquestioning acceptance." *Holt v. Hobbs*, 574 U.S. 352, 357, 364 (2015). Simply put, there were no constitutional rights at issue in *Winter*. *Winter* itself noted that "military interests do not always trump **other considerations**." *Winter* 555 U.S. at 26. (emphasis added).

For months, the Government stayed the most significant enforcement consequences of its unconstitutional mandate to permit service members to go through the Potemkin[19] exercise of seeking never-to-be-granted religious exemptions. Consequently, the question needs to be asked: if this requirement is such that 100% compliance must be achieved immediately for critical military objectives, why wouldn't the Government simply announce there would be no religious

---

[19] Potemkin villages were erected as façades in Russia and were false and illusory. *Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1561, fn. 22 (D. Az. 1997). It is an adequate descriptor of the Government's consideration of religious exemptions.

exemptions (unless you are about to separate from the service anyways) rather than staying its hand to process illusory efforts at never-to-be-granted religious exemptions? To pose the question is to answer the question.

**H.** **The Scope of the Relief Should Track the Scope of the Constitutional and Statutory Violations**

The violation of RFRA and the First Amendment by the Government is not limited to these Plaintiffs. The record evidence is unmistakable that the Government has a general policy of evaluating medical and administrative exemptions with a clear-eyed, case-by-case review of whether they are appropriate, while simultaneously engaging in an overwhelming denial of all religious exemptions.

In *Califano v. Yamasake*, 442 U.S. 682 (1979), the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." Indeed, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam); *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

True, no court has yet granted a national class action. But the cases the Government cites in that regard do not (with one exception) involve a pending class certification motion as is present here. Thus, the class should be certified, and a preliminary injunction should be granted to Plaintiffs and to the entirety of those in the Air Force's religious exemption process whose beliefs have been found to be sincere, as well as those who have already had their requests denied despite their sincerely held beliefs. The alternative, which is to force to Court thousands of parallel RFRA

34

cases, on almost identical facts, using identical law, is likely to be a serious misuse of Court and government resources. In 2020, when the Governor of Kentucky engaged in a widespread violation of religious freedom, as the Air Force does here, the Sixth Circuit extended relief to the scope of the violation and issued a blanket injunction against the continued enforcement of unconstitutional orders statewide – it was not limited to the named Plaintiffs. *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).

As it stands, the Government continues to violate the Constitutional rights of numerous service members, and the relief should extend to the scope of its ongoing violations. In the alternative, an injunction should extend to all such service members stationed in Ohio, or those who have as their Home of Record an address in Ohio.

## **CONCLUSION**

Plaintiffs' request for a preliminary injunction should be granted.

Respectfully submitted,

/s/ *Christopher Wiest*
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/*Thomas Bruns*
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890
**Attorneys for Plaintiffs**

/s/*Aaron Siri*
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth Brehm (admitted PHV)
Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

35

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the foregoing by CM/ECF, this 16 day of March, 2022.

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)