IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO – Cincinnati Division

| | | |
|---|---|---|
| **HUNTER DOSTER**, et. al. | : | Case No.: 1:22-cv-00084 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEVER**

Defendants, outrageously, and misleadingly, have filed a Motion to Sever [DE#35]. As a basis for their Motion, they spin a false narrative that might well make Pinocchio blush, failing to articulate the relevant facts, and then make a (baseless) comparison to a literal apples-and-oranges scenario in a Florida Court.

**I.      Factual Background and Claims**

Before we undertake to analyze the severance issue, it is important to lay out the facts that Defendants do not (understandably) grapple with. First, unlike other cases that involve widespread omnibus challenges to the Department of Defense's vaccine mandate, raising various disparate claims and involving Plaintiffs from different branches of the military, *e.g. Crosby v. Austin*, 8:21-CV-2730, DE#1, this matter involves only one Department of the military: the Department of the Air Force. *See* Complaint, DE#1.

This action involves the systematic effort of the Defendants, and those who report to them, to flagrantly violate federal law, and specifically the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 ("RFRA"), in a concerted and deliberate effort to violate the rights of members of the Air and Space Force. *See* Verified Complaint, DE#1 ¶1.

1

All of the Plaintiffs have documented, sincerely held religious beliefs from the Defendants' COVID-19 vaccination requirement. *Id.* None of them have had their requests accommodated. In several cases, they face imminent irreparable harm. *Id.* All of the Plaintiffs have had their requests processed by and through their chain of command. *Id.* As part of that process, all of them were interviewed at least once by an Air Force Chaplain to determine the sincerity of their beliefs and that the mandates substantially burdened those beliefs. *Id.* The result of each interview confirmed the sincerity of their beliefs and that the Department of the Air Force's vaccination policy substantially burdened those beliefs. *Id.*

On a perfunctory basis, requests for the religious exemption were denied, citing an ever-changing array of compelling interests from decreasing transmission, to health and safety, etc.; in fact, the Department of the Air Force has failed to approve all but a small handful of religious accommodation requests, and those requests, upon information and belief, are for airmen who are close to the terminal end of their service. *Id.* While at the same time, the Department of the Air Force has approved thousands of administrative or medical exemptions to the same requirements. *Id.*

Each of the 18 Plaintiffs in this matter are Department of Air Force Members (17 members of the Air Force, one member of the Space Force). *Id.*, DE#1 ¶¶ 3-20. The vast majority of them reside and are stationed in this District – specifically they are stationed at Wright-Patterson Air Force Base (Doster, Anderson, Clement, Leiby, Martin, McCormick, Norris, Ramsperger, Rinaldi, Ruyle, and Dills). *Id.*, DE#1 ¶¶ 3-5, 7-11, 13-14, 17.

All of the Plaintiffs are subject to the same vaccination requirement. *Id.*, DE#1 ¶24. All of them were subject to the same Permanent Change of Station restriction. *Id.*, DE#1 ¶25. All of the Plaintiffs have sought religious exemptions from that vaccination requirement, as outlined in

2

the following paragraphs, and pursuant to the federal Religious Freedom Restoration Act ("RFRA") (42 USC 2000bb), and its implementing regulations, including, without limitation, Department of Defense Instruction ("DoDI") 1300.17. *Id.*, DE#1 ¶26.

General Webb, and his staff, handled and were responsible for deciding the initial religious accommodation requests for Lt. Doster, Colonel Anderson, Major Clement, Major Leiby, Lt. Martin, Lt. McCormick, Lt Norris, Lt. Ramsperger, Major Reineke, Captain Rinaldi, Lt. Colonel Ruyle, and Lt. Colonel Stapanon. *Id.*, DE#1 ¶¶ 27-29, 31-39. In other words, they were subject to the same initial reviewing processes, by the same personnel, and each will involve the same exact witnesses who Plaintiffs will, ultimately, cross-examine.

General Scobee, and his staff, handled and were responsible for deciding the initial religious accommodation requests for SRA Dills, Major Mosher, Major Pottinger, and SMSgt Schuldes. *Id.*, DE#1 ¶¶ 44-47. Again, they were subject to the same initial reviewing processes, by the same personnel, and each will involve the same exact witnesses who Plaintiffs will, ultimately, cross-examine.

True, A1C Colantanio and SSgt Theriault[1] were initially processed by General Slife, and his staff. *Id.*, DE#1 ¶¶30, 40. But for the reasons we are about to explain, common questions of law and fact predominate across all of the Plaintiffs.

All of the Plaintiffs had confirmation of the sincerity of their beliefs confirmed by the Air Force and its personnel. *Id.*, DE#1 ¶¶ 27-41; 44-47. Many of the Plaintiffs are also similar in that they have natural immunity. *Id.*, DE#1 ¶ 48.

---

[1] As an aside, it is likely that SSgt Theriault's claims may become moot, because he has agreed to receive the Novavax vaccine and its approval, as we understand it, is forthcoming from the FDA in the next 60-90 days.

3

But other common issues of fact permeate this matter. *Id.*, DE#1. A critical common question of fact is that, at the time of the filing of the Complaint, the Air Force has received 12,623 requests for religious accommodation, has only approved 8, has denied 3,222, has had 1,176 appeals, and has denied 443 of those, while approving only one. *Id.*, DE#1, ¶49. In the meantime, the Air Force has granted 1,476 medical exemptions, and 1,837 administrative exemptions.[2] *Id.* The Air Force has begun discharging such religious believers.[3] *Id.* These facts are also subject to cross examination – and involve the same facts and same witnesses.

The common question of fact that the Air Force's granting of more than one thousand medical and administrative exemptions belies any assertion that vaccination is mission-critical and that no exemptions can be granted. *Id.*, DE#1, ¶50.

Upon information and belief, Defendant Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy. *Id.*, DE#1, ¶51. The evidence for this includes, without limitation, a declaration filed in a related matter, in which an Air Force Colonel testified that the Air Force was reserving its exemptions for medical and administrative reasons. *Id.* Those are critical common questions of fact. Cross examining Secretary Kendall and Surgeon General Miller is yet another common area of necessary ultimate proof in this matter – and it is common to all Plaintiffs.

Defendants Kendall, Scobee, Miller, Webb, and Slife each have failed to grant (or even meaningfully consider) numerous religious accommodation requests, while processing and

---

[2] https://www.af.mil/News/Article-Display/Article/2919591/daf-covid-19-statistics-feb-8-2022/ (last visited 2/14/2022).
[3] *Id.*; https://www.cnn.com/2021/12/13/politics/air-force-troops-discharged-covid-19-vaccine/index.html (last visited 1/2/2022).

approving medical and/or administrative accommodations, including for job duties similar in risk from the COVID-19 perspective to the Plaintiffs; but each, in violation of RFRA nevertheless have taken, continue to take, and threaten to take additional actions against the Plaintiffs, including the threat of punitive actions including court-martial. *Id.*, DE#1, ¶52. Again, more common questions fact and law. Again, all the same witnesses who need to be cross examined.

Yet another common issue of fact is that because the order in question violates each of the Plaintiffs' fundamental dictates of religion, they are unable to comply with it, and cannot adhere to it, even if it means federal prison through the UCMJ process. *Id.*, DE#1, ¶53.

Demonstrating yet more common issues of fact, the Air Force has accommodated numerous airmen, at least from a medical or administrative perspective. *Id.*, DE#1, ¶54. The Air Force has granted medical waivers to vaccination requirements, belying any claim that vaccination is a must for mission accomplishment. *Id.* Furthermore, the vaccination requirement, including with respect to COVID-19, does not prevent infection, as breakthrough cases are increasingly becoming more prevalent. *Id.*, DE#1, ¶55.

In terms of less restrictive measures that the Air Force could have, but failed, to pursue, for all of the Plaintiffs, the Air Force could accommodate the Plaintiffs' requests for accommodation by, without limitation: (a) require testing to determine infection; (b) temperature checks and/or other screening to determine infection; (c) permit the Plaintiffs to demonstrate they have robust and long-lasting natural immunity; (d) provide an exemption anyways in that vaccination will not guarantee immunity, and there are members who are currently serving who are not immune to diseases they were vaccinated for, yet they remain able to serve and deploy; (e) require isolation to keep Plaintiffs away from those with the disease; (f) place Plaintiffs in a position and/or Air Force Specialty Code that is available for remote work or telework, and not

5

in contact with other airmen; (g) given the significant level of vaccine compliance within the military, accommodate the few numbers of religious exemption requests by providing an exemption (which they *are* already doing for medical and administrative exemptions), which is not a burden; (h) as a second to last final option, place Plaintiffs in non-deployable status and/or assignment to a unit that does not deploy overseas; and/or (i) as a final option, Honorably Discharge Plaintiffs and waive any active-duty service commitments they may owe. *Id.*, DE#1, ¶58.

As it turns out, the Plaintiffs in this matter have identical issues of law. All of them seek injunctive relief. *Id.*, DE#1, ¶59. All of them have brought the same, exact, two claims, one under RFRA, and one under the First Amendment, based on identical *operative* facts. *Id.*, DE#1, ¶¶ 65-75.

So what facts are *operative*? (1) the Defendants are systemically and universally denying all religious accommodation requests unless the particular Plaintiff otherwise meets an administrative exemption and Defendants, through Counsel, have admitted as much on the record in federal court – regardless of job description, duty, working condition, location, base, command, or other individual factor [See Declaration Wiest with Transcript attached; DE#30-2]; (2) the Defendants have and continue to grant thousands of medical and administrative exemptions, demonstrating that a "no accommodation" policy is not necessary [Declaration Holbrook, DE13-2], and Defendants treat, by their own admission, religious accommodations in a seriously disfavored status [Declaration of James Poel, 13-3, ¶7]; (3) the fact that the Air Force was able to accomplish its mission without the vaccine mandate from March, 2020 through August, 2021 when the mandate was first enacted [Declarations of the Plaintiffs, DE#30-3 through DE#30-20]; and (4) the fact that the Air Force permitted each of these Plaintiffs to all go

6

for months without being vaccinated while their accommodation requests and appeals were processed.

The Defendants' arguments indicating that the only thing Plaintiffs have in common is that they are in the Air Force and subject to the same mandate is, thus, patently false.

## II.     LAW AND ARGUMENT

The analysis of severance is part and parcel with the analysis of joinder, and both FRCP 20 and FRCP 21 must be examined. Under FRCP 20, "(1) Plaintiffs. Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Under FRCP 21, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

"Courts consider a number of factors when determining whether to sever claims, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018).

### A.  The claims arise out of the same transaction or occurrence

Defendants argue that, here, the claims do not arise out of the same transaction or occurrence; they are wrong. First, the term "transaction" or "occurrence" is a broadly defined term. "'Transaction' is a word of flexible meaning. It may comprehend a series of many

7

occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926). In *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974), the Court explained that "[t]he analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id.* at 1333. Thus, "[a]bsolute identity of all events is unnecessary." *Id.*

As in *Mosley*, "the plaintiffs have asserted a right to relief arising out of the same transactions or occurrences. Each of the [eighteen] plaintiffs alleged that he [or she] had been injured by the same general policy of discrimination on the part of [Defendants]." *Id.*

In *Brantley v. Cinergy Corp.*, 2007 U.S. Dist. LEXIS 62904 (SDOH 2007), this Court examined similar issues. Namely, in *Brantley*, this Court looked at whether four separate Plaintiffs, all alleging similar patterns of discrimination (just as these Plaintiffs do), who all worked in different locations within the company, with different supervisors, should be severed. There, as here, "[w]hile each Plaintiff alleges some unique facts in support of his claims, Plaintiffs also make some parallel or overlapping allegations relating to [the Air Force's] general work environment and employment practices." *Id.* "These legal and factual parallels suggest both that Plaintiffs' claims are appropriately joined under Rule 20(a) and that severing them under Rule 21 would seriously undermine judicial economy." *Id.*

More recently, this Court reached the same result in *Elchert v. Ohio Ass'n of Foodbanks*, 2018 U.S. Dist. LEXIS 102458 (SDOH 2018). It began with the analysis that "'courts 'liberally permit joinder under Rule 20(a),' due in no small part to the encouragement given by United States Supreme Court precedent in favor of the joinder of claims, parties, and remedies." *Harper v Pilot Travel Ctrs., LLC*, Case No. 2:11-cv-759, 2012 U.S. Dist. LEXIS 15030 (S.D. Ohio Feb.

8

7, 2012) (*citing United Mine Workers of Am. v Gibbs*, 383 U.S. 715, 724 (1966); *see also Brown v. Worthington Steel, Inc*., 211 F.R.D. 320, 324 (S.D. Ohio 2002).

There, as here, "Defendants' move to sever Plaintiffs' claims by honing in on the factual differences between the Plaintiffs' individual claims." *Id.* "Plaintiffs' distinct claims do not preclude them from bringing suit jointly." *Id.*, *citing Harper*, 2012 U.S. Dist. LEXIS 15030, at *10 ("the presence of some material differences between their allegations does not automatically foreclose their claims from being deemed to arise from the same 'transaction or occurrence' for the purposes of permissive joinder."). "Here, as in *Harper*, Plaintiffs allege a series of discriminatory occurrences as well as a common actor "that would make it inappropriate to sever their claims at this early stage of the case." *Id.* at *11.

"While individual facts [may] need to be examined, there are also allegations of a pattern of retaliation affecting all [of the] Plaintiffs." *Id.* "Furthermore, Plaintiffs allege that the same person [Kendall and Miller her] was the responsible decision maker in their [denial of accommodations]." *Id.* "Thus, these legal and factual parallels not only sufficiently allow for permissive joinder, but it also appears that severance under Rule 21 would undermine judicial economy." *Id.* "Finally, Defendants assert that they will suffer undue prejudice if the claims are not severed. The Court is not persuaded." *Id.*

"In the employment discrimination context, courts have found joinder proper when there has been a systematic pattern or practice, or when the plaintiffs have been aggrieved by a common actor." *Harper*, *citing Montgomery v. STG Intl., Inc.*, 532 F. Supp. 2d 29, 35-36 (D.D.C. 2008). We have alleged what is, at bottom, systemic employment discrimination on the basis of religion. Employment cases are analogous. "In the employment discrimination context, courts have found joinder proper when there has been a systematic pattern or practice, or when

9

the plaintiffs have been aggrieved by a common actor." *Harper*, at *11; *citing Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y. 1999). As in *Harper,* "Plaintiffs' Complaint here alleges the sort of discriminatory pattern and common actor that would make it inappropriate to sever their claims at this early stage of the case." *Id.* These religious accommodation denials arise from common Defendants, that terminate with Defendants Miller and Kendall, thus the "discriminatory pattern and common actor that would make it inappropriate to sever their claims at this early stage of the case." "Finally, each of the Plaintiffs is alleged to have been adversely affected by acts perpetrated or directed by [Kendall and Miller themselves] over substantially the same time period, giving a common thread to the various actions that Plaintiffs allege to be unlawful [religious] discrimination." *Id.* "Based on the allegations in the Complaint, there is enough overlap in the factual averments to characterize Plaintiffs' claims as arising from the 'same transaction or occurrence' within the meaning of Rule 20(a)(1)(A)."

      B.  <u>The claims present some (actually many) common questions of law or fact</u>

Here, as in *Harper*, "[t]he allegations of the Plaintiffs' Complaint, which the Court must credit at this stage of the case, shows the specter of a discriminatory pattern or policy that affected the Plaintiffs." 2012 U.S. Dist. LEXIS 15030. "The Plaintiffs have identified [Secretary Kendall and Surgeon General Miller] as a common actor[s] cutting across all of the employment decisions and workplace harassment; they have also alleged facts to suggest that [Kendall and Miller are] the decision maker[s] responsible for creating the [religious]-discriminatory policy that led to Plaintiffs being terminated, constructively discharged, and/or retaliated against." *Id.*

As *Mosley* observed, "[t]he rule does not require that all questions of law and fact raised by the dispute be common." 497 F.2d 1330 at 1334. Further, "with respect to employment

10

discrimination cases … courts have found that the discriminatory character of a defendant's conduct is basic to the class, and the fact that the individual class members may have suffered different effects from the alleged discrimination is immaterial for the purposes of the prerequisite." *Id.*

Thus, "[a]lthough the actual effects of a discriminatory policy may thus vary throughout the class, the existence of the discriminatory policy threatens the entire class." *Id.* "And whether the Damoclean threat of a [religiously] discriminatory policy hangs over the [religious] class is a question of fact common to all the members of the class." *Id.* "The discriminatory character of the defendants' conduct is thus basic to each plaintiff's recovery." *Id.* "The fact that each plaintiff may have suffered different effects from the alleged discrimination is immaterial for the purposes of determining the common question of law or fact." *Id.*

In *Elchert*, 2018 U.S. Dist. LEXIS 102458, as here, "[w]hile individual facts [may] need to be examined, there are also allegations of a pattern of [discrimination] affecting all three Plaintiffs" meaning there are common questions of law and fact. *Id.* In *Brantley*, 2007 U.S. Dist. LEXIS 62904, the Court likewise found common questions of law and fact, because of common discrimination claims. So too here.

The Defendants argue that the analysis should undertake to examine the harm to particular Plaintiffs, weighed against the ability to accommodate that person's religious belief. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 705 (2014). Thankfully, this Court need not weigh into whether or not the mandate at issue substantially burdens the Plaintiffs' religious beliefs, because we have already established that it does, and Air Force Chaplains have done that work for each Plaintiff [Appendix, DE#8, DE#8-1 through DE#8-21], and Air Force leaders have already done that work for each of the Plaintiffs who have had their accommodation requests

11

processed (and systemically denied). [Appendix DE#8-4, 8-5, 8-7, 8-12, 8-14, 8-16, 8-19, 8-21, 38-1, 38-3, 38-5].

Again, the individual nature of Plaintiffs' religious beliefs, is not a central aspect of this case. We have identified those facts, and the evidence that supports them, at page 6, *supra*.

    C. <u>Settlement of the claims or judicial economy is not facilitated by severance</u>

Where, as here, there are common Defendants, common claims, and an alleged systemic pattern of discrimination, courts have not hesitated to find that it does not further judicial economy to sever claims. *Brantley*, 2007 U.S. Dist. LEXIS 62904; *Elchert*, 2018 U.S. Dist. LEXIS 102458. Again, the operative common facts and law are common, *see* page 6, *supra*.

The same witnesses, with perhaps all but a few exceptions, will need to be deposed for each of the Plaintiffs, to establish and prove their claims.

Instead, Defendants seem to suggest that the answer here, to their widespread, systemic, religious discrimination, most of which involves the same facts, same key witnesses, and same course of conduct, is tens of thousands of lawsuits, involving the same factual predicate, and the same law. Of course, with fee shifting applicable to RFRA claims, 42 U.S.C. 1988, it is hard to understand how that is a wise course of action (even if it might provide a steady stream of work to the undersigned at taxpayer expense). But, at bottom, it is hard to understand how *that* approach is even remotely "judicial economy."

    D. <u>Whether prejudice would be avoided if severance were granted</u>

There is significant prejudice here if severance is granted, and no prejudice if it is not. As we express below, and above, severance here will involve serious duplication of witnesses and facts. Common facts predominate over any individualized inquiry.

The prejudice is more significant in this matter though. The Plaintiffs here involve military members, on fixed budgets. Forcing these individuals to bring individual cases throughout the country may make it easier for the Government to violate their rights and the Constitution that the Government, and they, took an oath to defend. But it also works a serious prejudice to the Plaintiffs. Severance here forces many of these Plaintiffs into the unenviable position of facing military prison. Defendants' approach of litigating more than ten thousand cases, in courts all over the country assumes that Plaintiffs can find qualified counsel, who have the ability, experience, and wherewithal, to bring such a claim. Even with fee shifting. That there are not already thousands of such cases already filed demonstrates that what Defendants suggest is impossible. It is hard to imagine a more prejudicial course of action towards religious believers.

  E. <u>Whether different witnesses and documentary proof are required for separate claims</u>

Defendants claim that different witnesses and documentary proof are required, citing *Parchman*, 896 F.3d 728, 733. In that matter, there were no common questions of fact and no common witnesses. Here, Defendants themselves have offered numerous witnesses (in fact the majority of their witnesses) in defense of the preliminary injunction alone, who speak to the general policy at issue, its overarching importance to Defendants, and the like, to try to meet their burden. [Exhibits to PI Response, DE#25-9, DE#25-10, DE#25-11, DE#25-12, DE#25-13, DE#25-14, DE#25-15, DE#25-16, DE#25-17, DE#25-18]. Apparently, Defendants missed their own point about having unique witnesses for each claim.

Again, the operative common facts and law, which are common (and which makes it the antithesis of judicial economy to sever) are: (1) the Defendants are systemically and universally denying all religious accommodation requests unless the particular Plaintiff otherwise meets an

13

administrative exemption and Defendants, through Counsel, have admitted as much on the record in federal court – regardless of job description, duty, working condition, location, base, command, or other individual factor [See Declaration Wiest with Transcript attached; DE#30-2]; (2) the Defendants have and continue to grant thousands of medical and administrative exemptions, demonstrating that a "no accommodation" policy is not necessary [Declaration Holbrook, DE13-2], and Defendants treat, by their own admission, religious accommodations in a seriously disfavored status [Declaration of James Poel, 13-3, ¶7]; (3) the fact that the Air Force was able to accomplish its mission without the vaccine mandate from March, 2020 through August, 2021 when the mandate was first enacted [Declarations of the Plaintiffs, DE#30-3 through DE#30-20]; and (4) the fact that the Air Force permitted each of these Plaintiffs to all go for months without being vaccinated while their accommodation requests and appeals were processed.

      We submit that there are far, far, more generalized facts, involving common witnesses, than there are individual inquiries (Defendants' arguments to the contrary notwithstanding). And that is especially so when one considers that all of the AETC Plaintiffs involve the same witnesses – General Webb and his staff – and are already in this case, which includes General Webb, and his staff, who handled and were responsible for deciding the initial religious accommodation requests for Lt. Doster, Colonel Anderson, Major Clement, Major Leiby, Lt. Martin, Lt. McCormick, Lt Norris, Lt. Ramsperger, Major Reineke, Captain Rinaldi, Lt. Colonel Ruyle, and Lt. Colonel Stapanon. *Id.*, DE#1 ¶¶ 27-29, 31-39. In other words, they were subject to the same initial reviewing processes, by the same personnel, and each will involve the same exact witnesses who Plaintiffs will, ultimately, cross-examine.

And, again, General Scobee, and his staff, handled and were responsible for deciding the initial religious accommodation requests for SRA Dills, Major Mosher, Major Pottinger, and SMSgt Schuldes. *Id.*, DE#1 ¶¶ 44-47. Again, they were subject to the same initial reviewing processes, by the same personnel, and each will involve the same exact witnesses who Plaintiffs will, ultimately, cross-examine. Dills is already in this matter.

That turns us to the case law, easily distinguishable, cited by Defendants: *Coalition for a Sustainable Delta v. United States Fish & Wildlife Serv.*, 2009 U.S. Dist. LEXIS 111743 (CAED 2009), which involved administrative claims brought against wholly separate administrative bodies, involving wholly separate decisions. Here, there are common decision makers with a common practice and pattern of religious discrimination. If there was a less on-point case, it would be *Coalition for a Sustainable Delta*.

Next, *Khaled Abdo Ahmed v. Miller*, 452 F. Supp. 3d 721 (MIED 2020), in which 220 Plaintiffs joined a case about immigration visa processing, and involving "more than 2,300 pages" of pleadings, with "hundreds or thousands more pages of materials that they contend support their claims" and with the submissions of these materials to the government decades apart. *Id.* at 723-724. There, it was "extreme multiplicity of the parties and claims, and the varying individual circumstances, it is impossible within any reasonable span of pages to summarize the factual background of the individual claims of all the petitioners, who now are more than 80 persons involved in more than 40 distinct immigration proceedings." *Id.* Here, we set forth the facts and the law, in a 20-page Complaint. DE#1. There, "[t]he wide-ranging and voluminous allegations of individual circumstances in the pleadings here amply suggest that the plaintiffs' attempt at joinder is improper because their claims do not arise from any single occurrence or series of occurrences, and the merits of their procedural and constitutional claims

15

will turn on the specific circumstances surrounding the adjudication of each of their individual petitions." *Id.* at 726.

"The [operative] evidence indicates that the Air Force has granted virtually zero exemptions to the COVID-19 vaccine mandate on religious grounds—none prior to the time that Poffenberger's final appeal was denied. " *Poffenbarger v. Kendall*, 2022 U.S. Dist. LEXIS 34133, ---F.4th --- (SDOH 2022); *citing Air Force Officer v. Austin*, 2022 U.S. Dist. LEXIS 26660, --- F.3d --- (GAMD 2022). "The current evidence appears to support Poffenbarger's assertion that the Air Force is systematically denying religious exemptions." *Id.* These are common questions of fact – not thousands of disparate facts. And thus *Khaled Abdo Ahmed*, 452 F. Supp. 3d 721 is distinguishable.

F. <u>The Six out-of-District Plaintiffs should not be dismissed</u>

Venue is proper, here, under 28 U.S.C. 1391(e)(1)(C), which permits the federal government to be sued where the Plaintiff resides. But, as it turns out, so long as any single Plaintiff in a multiple Plaintiff case resides in the forum, the Sixth Circuit has been clear that venue is appropriate. *Sidney Coal Co. v. SSA*, 427 F.3d 336, 343-345 (6th Cir. 2005).

We have already addressed Defendants' specious arguments about severance, the commonality of facts, of law, and the economy that is promoted by handling all of this litigation, at once, in this forum. The fact that the same decision-makers are involved in each of these matters strengthens the case for handling this in one forum.

Again, the operative facts and law are common, *see* page 6, *supra*.

Which takes us to Defendants' citation to *Crosby v. Austin*, 8:21-CV-2730, DE#44. In that case, the District Court severed the claims. *Id.* But a quick review of those facts, and the order entered, reveals why. *Id.* Fifteen named Plaintiffs were involved (from all five of the

16

branches), only one of whom lived in the District. And all but one of those Plaintiffs asserted religious beliefs as the basis for the exemption for the vaccine. *Id.* The one who did not assert a religious claim was, ironically, Crosby himself, the first named Plaintiff who was the only Plaintiff who lived in the District – he had a general vaccine exemption claim about Comirnaty, which involved that vaccine, which had FDA approval, not being available. *Id.* The Court pointed that the religious claims involved different facts and law from Crosby's claims. *Id.* And thus the District Court severed. *Id.* Here, the claims only involve religious exemptions, a single branch, and almost identical operative facts.

A better example is the handling by the Middle District of Florida in *Navy Seal 1 et al v. Austin et al*, 8:21-cv-02429, at DE#89 (severing the non-military Plaintiffs from the military Plaintiffs but retaining all military Plaintiffs in the same case – perhaps because of the systemic religious discrimination). *Navy Seal 1* involves Plaintiffs from all of the branches. Here, we only have Department of the Air Force Plaintiffs.

Given Defendants illegal violation of federal law, it might make their lives easier (to continue to the violate the law, the Constitution, and Plaintiffs' rights), on the eve of a Preliminary Injunction hearing, for seven Plaintiffs most of whom have exhausted military remedies and face life altering court-martial and other consequences, to have their claims dismissed. After all, then the Defendants can continue their illegal course of action and court-martial them. But it is hardly just. And the law does not compel it – in fact the Sixth Circuit finds that venue is proper in this forum. *Sidney Coal Co.*, 427 F.3d 336, 343-345.

### III. CONCLUSION

Defendants' Motion to Sever (and to dismiss Plaintiffs Colantanio, Reineke, Stapanon, Mosher, Pottinger, Theriault, and Schuldes) should be denied.

Respectfully submitted,

| | |
|---|---|
| /s/ *Christopher Wiest*_____ | /s/*Aaron Siri*____ |
| Christopher Wiest (OH 0077931) | Siri Glimstad, LLP |
| Chris Wiest, Atty at Law, PLLC | Aaron Siri (admitted PHV) |
| 25 Town Center Blvd, Suite 104 | Elizabeth Brehm (admitted PHV) |
| Crestview Hills, KY 41017 | Wendy Cox (admitted PHV) |
| 513/257-1895 (c) | 200 Park Avenue, 17th Floor |
| 859/495-0803 (f) | New York, NY 10166 |
| chris@cwiestlaw.com | (212) 532-1091 (v) |
| | (646) 417-5967 (f) |
| /s/*Thomas Bruns*_____ | aaron@sirillp.com |
| Thomas Bruns (OH 0051212) | |
| Bruns Connell Vollmar Armstrong LLC | |
| 4555 Lake Forest Drive, Suite 330 | |
| Cincinnati, OH 45242 | |
| tbruns@bcvalaw.com | |
| 513-312-9890 | |
| **Attorneys for Plaintiffs** | |

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 25 day of March, 2022.

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)

18