**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| HUNTER DOSTER, et. al., | : | Case No. 1:22-cv-84 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| Hon. FRANK KENDALL, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. 13)**
**AND ISSUING A PRELIMINARY INJUNCTION**

---

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction (Doc. 13). Defendants filed a response in opposition to Plaintiffs' Motion (Doc. 27), to which Plaintiffs replied (Doc. 30). Additionally, the Court held a preliminary injunction hearing on March 25, 2022. Thus, the motion is fully briefed and ripe for review. As explained below, Plaintiffs' Motion for a Preliminary Injunction is **GRANTED IN PART** and **DENIED IN PART**.

## I. RELIGIOUS LIBERTY

"For centuries now, people have come to this country from every corner of the world to share in the blessing of religious freedom. Our Constitution promises that they may worship in their own way, without fear of penalty or danger, and that in itself is a momentous offering." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 615 (2014) (Kagan, J.,

dissenting). That momentous offering clearly is in great peril as to Plaintiffs herein.

The world as we knew it changed in March of 2020 with COVID-19's inception and the shutdown of most of the world. While a return to normalcy is desired, the cost of the return should never jeopardize religious liberty. As Justice Gorsuch recently explained, "Even if the Constitution has taken a holiday during the pandemic, it cannot become a sabbatical." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). In this Court's opinion, assuming the Constitution has taken a holiday, the holiday is long over, and it needs to get back to work, NOW.

From the time our Founding Fathers signed the Declaration of Independence and, later, the United States Constitution, United States citizens have been provided with the freedom to practice their religious beliefs as they deem fit. Religious liberty was just as important to those who founded this nation as it is today. As John Adams said, "[n]othing is more dreaded than the national government meddling with religion." John Adams, *From John Adams to Benjamin Rush, 12 June 1812*, National Archives: Founders Online, https://founders.archives.gov/documents/Adams/99-02-02-5807 (last viewed Mar. 28, 2022). And, as James Madison explained, "[t]he Religion then of every man must be left to the conviction and conscience of every man: and it is the right of every man to exercise it as these may dictate." James Madison, *Memorial and Remonstrance Against Religious Assessment, [CA. 20 June] 1785*, National Archives: Founders Online, https://founders.archives.gov/documents/Madison/01-08-02-0163 (last visited Mar.

28, 2022).[1]

Since December 15, 1791, when the Bill of Rights was ratified, the Free Exercise Clause of the First Amendment has been a safe haven for this country's religious liberty. "Congress shall make no law respecting an establishment or religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. It has been this way since the beginning of the Nation—even, critically, in the context of military conscription. Consider our own history. In the Colonies, service in the militia was required of able-bodied young men. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1905-06 (2021) (Alito, J., concurring). But Quakers, Mennonites, and other religious groups objected to militia service based on their religious convictions. Conscription would do "violence to their consciences." *Id.* at 1906. Of course, being a new Nation, we were often "desperately in need of soldiers." *Id.* at 1906. Indeed, "the very survival of the new Nation often seemed in danger." *Id.* The stakes were high. Members of Congress faced "bleak personal prospects if the war was lost." *Id.* But that did not stop the early Continental Congress from granting religious accommodations. *Id.*

And the Free Exercise Clause has withstood the test of time. In 1963, Justice Clark wrote, "[t]he Free Exercise Clause . . . withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individuals by prohibiting any invasions thereof by civil authority." *Sch. Dist. of Abington Twp., Pa. v. Schempp,* 374 U.S. 203, 222-23 (1963).

---

[1] James Madison has been credited by many as the Father of Religious Liberty. For a detailed historical discussion of his work, see Rodney K. Smith, James Madison: the Father of Religious Liberty (2019).

In fact, the Religious Freedom Restoration Act ("RFRA") was enacted in 1993 to further protect United States citizens' right to religious liberty. Under the RFRA, "Government shall not substantially burden a person's exercise of religion even if the burden results of general applicability . . ." 42 U.S.C. § 2000bb-1. For when the government saddles an individual with a disadvantage "solely on the basis of religion, it violates the Free Exercise Clause no less than if it had imposed a special tax." *Locke v. Davey*, 540 U.S. 712, 727 (2004) (Scalia, J., dissenting).

Sadly, religious liberty has been called into question time and time again throughout our nation's history.[2] Recently, now District of Columbia Circuit Judge Justin R. Walker noted, "the Free Exercise Clause remains a too-often tested bulwark against discrimination toward people of faith, from religious cakemakers to religious preschoolers." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 907 (W.D. Ky. 2020). However, the importance of religious liberty cannot be understated:

> That's because, as de Tocqueville wrote, religion, which among the Americans never directly takes part in the government of society, must be considered as the first of their political institutions; for if it does not give them the taste of liberty, it singularly facilitates the use of it.

*Id.* (quotations omitted).

Now, in front of the backdrop of this country's emphatic protection of religious liberty, this Court is faced with the specific instances before it.

---

[2] *See* Alexis Miller Buese, Dino LaVerghetta, Abigail Hudson, *2020: COVID-19 versus the First Amendme*nt, Daily Journal (January 22, 2021) for a discussion on court rulings on attacks of individuals' constitutional right to freedom of religion and the Free Exercise Clause during the COVID-19 pandemic.

## II.     FACTS

This action involves eighteen active duty and active reservist Airmen stationed across the United States at Wright-Patterson Air Force Base, Ohio; Hulburt Field, Florida; Randolph Air Force Base and Dobbins Air Reserve Base, Georgia; and March Air Reserve Base, Riverside County, California ("Plaintiffs").   These Plaintiffs seek injunctive relief from being required by the Air Force to receive the COVID-19 vaccines in violation of their sincerely held religious beliefs and despite having applied for religious exemptions from the vaccine.   Plaintiffs bring this action against numerous Air Force officials, including the Secretary and Surgeon General of the Air Force, claiming statutory and constitutional violations of their rights to free exercise of religion.

### A.     The Air Force Mandates the COVID-19 Vaccine

On August 24, 2021, almost 18 months after the beginning of the COVID-19 pandemic and approximately 12 months after the vaccines had been available to the public, "the Secretary of Defense issued a mandate for all members of the Armed Forces under the Department of Defense authority on active duty or in the Ready Reserve, including the National Guard, to immediately begin full vaccination against COVID-19." (Memorandum for Department of the Air Force Commanders, 3 Sept. 2021, Plaintiffs PI Hearing Ex. 2.)   The COVID-19 vaccination mandate, however, allows for medical, administrative, and religious exemptions. (COVID-19 Mandatory Vaccination Implementation Guidance for Service Members, Doc. 27-7, Pg. ID 1676-47, 1649.)   The mandate also provides that, "[u]nless exempted, Active Duty Airmen and Guardians will be fully vaccinated by 2 November 2021.   Unless exempted, Ready Reserve, to include

the National Guard, Airmen and Guardians will be fully vaccinated by 2 December 2021."

(Memorandum for Department of the Air Force Commanders 3 Sept. 2021, Plaintiffs PI

Hearing Ex. 2.)

The Air Force sent a Memorandum relating to vaccination exemptions to Airmen

on December 7, 2021. (Supplemental Coronavirus Disease 2019 Vaccination Policy, Doc.

27-8, Pg. ID 1656-67). This Memorandum provided that:

> Commanders will take appropriate administrative and disciplinary actions
> consistent with federal law and Department of the Air Force (DAF) policy
> in addressing service members who refuse to obey a lawful order to receive
> the COVID-19 vaccine and do not have a pending separation or retirement,
> or medical, religious or administrative exemption. Refusal to comply with
> the vaccination mandate without an exemption will result in the member
> being subject to initiation of administrative discharge proceedings.

(*Id.* at Pg. ID 1656.)

The Memorandum continued:

> Regular service members who continue to refuse to obey a lawful order to
> receive the COVID-19 vaccine after their exemption request or final appeal
> has been denied or retirement/separation has not been approved will be
> subject to initiation of administrative discharge. Discharge characterization
> will be governed by the applicable Department of the Air Force
> Instructions. Service members separated due to refusal of the COVID-19
> vaccine will not be eligible for involuntary separation pay and will be
> subject to recoupment of any unearned special or incentive pays.

(*Id.* at Pg. ID 1657.)

Lastly, regarding unvaccinated reservists, the Memorandum provides:

> Unvaccinated members who request a medical exemption or RAR will be
> temporarily exempt from the COVID-19 vaccination requirement while
> their exemption request is under review. For those members who have
> declined to be vaccinated, or have not otherwise complied with the
> guidance above, they are potentially in violation of the Uniform Code of
> Military Justice (UCMJ) by refusing to obey a lawful order. Commanders

should use their discretion as appropriate when initiating disciplinary action.

(*Id.* at Pg. ID 1658.)

### B.    Potential Consequences For Refusing the Vaccine

Defendants submitted the declaration of Colonel Elizabeth M. Hernandez to explain the consequences Airmen faced if they refused to get vaccinated without receiving an exemption. (Declaration of Colonel Elizabeth M. Hernandez ("Col. Hernandez Dec."), Doc. 27-14, Pg. ID 1940-46.) Col. Hernandez explained that, "[p]otential dispositions for failing to obey a lawful order to receive the COVID-19 vaccination include adverse administrative actions, non-judicial punishment, administrative demotions, administrative discharges, and courts-martial." (*Id.* at Pg. ID. 1941.)   Administrative actions include: "Records of Individual Counseling, Letters of Counseling, Letters of Admonishment, and Letters of Reprimand." (*Id.*)  She continues, stating that those who refuse to comply with the COVID-19 vaccination mandate, "absent an exemption, regular service members will be subject to initiation of administrative discharge proceedings." (*Id.* at Pg. ID 1943.)  Lastly, and most severely, Col. Hernandez outlines the possible sentences in a court-martial, which include "confinement, reduction in grade (enlisted only), and punitive discharges." (*Id.* at Pg. ID 1944.)

### C.    Air Force's General Response to Exemption Requests

The Air Force provides their COVID-19 virus statistics on the Air Force's website. These statistics include the total number of COVID-19 cases, percentage of Airmen vaccinated, approved medical and administrative exemptions, and number of pending, approved, and denied religious exemption requests, both at the initial and appeals stage.

(DAF COVID-19 Statistics – March 22, 2022, Plaintiffs' PI Hearing Ex. 10.) As of March 22, 2022, 98% of activity duty Airmen were fully vaccinated and 93.3% of Guard and Reserve Airmen were fully vaccinated. (*Id*.) Thus, 96.4% of the Air Force was fully vaccinated as of March 22, 2022. (*Id*.) Additionally, as of March 22, 2022, the Air Force had approved 1,129 medical exemptions and 1,426 administrative exemptions, equaling a total of 2,555 total approved medical and administrative exemptions. (*Id*.)

As of March 22, 2022, the Air Force had adjudicated 4,403 religious exemption requests, but of those requests at the initial stage, the Air Force had only granted 21 requests. (*Id*.) That is right—only 21. Thus, at the initial stage, the Air Force had only granted .47% of religious exemptions heard. (*Id*.) The Surgeon General of the Air Force had adjudicated 1,162 appeals of denials of religious exemption requests. (*Id*.) Of those 1,162 appeals adjudicated, the Surgeon General only approved two (2) additional religious exemption requests. (*Id*.) So, at the appeals stage, the Air Force only approved .17% of appeals of denials of religious exemption requests. (*Id*.) Consequently, of the thousands of religious exemptions the Air Force has adjudicated, the Air Force has only approved a shameful number of 23 religious exemptions. (*See id*.)

**D.  Plaintiffs' Requests for Religious Exemption from the Vaccine**

Here, each Plaintiff in this case has, at a minimum, filed a religious exemption request with the Air Force. (Ver. Compl., Doc. 1, Pg. ID 7-11.) Each Plaintiff was interviewed by an Air Force Chaplain, who confirmed (in writing) the sincerity of each Plaintiff's religious belief. (*Id*.) Four Plaintiffs, 2LT Connor McCormick, Maj. Daniel Reineke, Lt. Col. Edward Stapanon, III, and Maj. Patrick Pottinger, have had their

8

religious exemption requests denied and currently have appeals of such denials pending with the Air Force Surgeon General. (*Id.* at Pg. ID 9-10; *see also* Decision Regarding 2LT McCormick Religious Accommodation Request, Doc. 38-5, Pg. ID 2655.)[3] Additionally, six Plaintiffs, 2LT Hunter Doster, Maj. Paul Clement, SSgt Adam Theriault, SRA Joe Dills, Maj. Heidi Mosher, and SMSgt Chris Schuldes, have had their initial religious exemption request and their appeal of such denial to the Air Force Surgeon General denied. (*Id.* at Pg. ID 7-10; *see also* Decision Regarding Maj. Mosher Religious Accommodation Appeal, Doc. 38-1, Pg. ID 2631; Decision Regarding 2LT Doster Religious Accommodation Appeal, Doc. 19-1, Pg. ID 944.)[4]

All Plaintiffs face administrative actions, non-judicial punishment, administrative demotions, administrative discharges, and courts-martial if Plaintiffs continue to refuse to get the COVID-19 vaccine.

During the preliminary injunction hearing, the Court heard testimony from three Plaintiffs. Their individual circumstances are briefly summarized as follows.

### 1. 2LT Hunter Doster

Plaintiff 2LT Hunter Doster submitted a religious exemption request on September 7, 2021. (Doster Religious Accommodation Request, Denial and Subsequent Appeal, Doc. 8-4, Pg. ID 79.) In his request, 2LT Doster explains his religious convictions

---

[3] Plaintiff 2LT McCormick's religious exemption request was denied after Plaintiffs' filed their Verified Complaint and, thus, was filed at a later date. (*See* Decision Regarding 2LT McCormick Religious Accommodation Request, Doc. 38-5.)

[4] Plaintiffs Maj. Mosher and 2LT Doster's appeals of the denial of their religious requests were denied after Plaintiff filed their Verified Complaint and, thus, were filed at a later date. (*See* Decision Regarding Maj. Mosher Religious Accommodation Appeal, Doc. 38-1; Decision Regarding 2LT Doster Religious Accommodation Appeal, Doc. 19-1.)

and the reasons he is seeking an exemption. (*Id*.) Specifically, 2LT Doster stated,

> Two foundational components of this New Covenant are that all life is created by God and is therefore sacred and that I am the Temple of the Lord because God's Spirit, The Holy Spirit, dwells in me. Due to these bedrock principles of my faith, I cannot in good conscience take the COVID-19 Vaccinations because of their ties with aborted fetal tissue, and my beliefs in the spiritual gift of healing.

(*Id*.)

2LT Doster included an attachment with his request, approximately three pages long, that additionally explains his convictions. (*Id*. at Pg. ID 81-83.) He also submitted a letter from Pastor Isaacs, which stated,

> Put simply, being forced to benefit from the taking of a life of a child by taking this vaccine will cause a burden on Hunter's ability to practice his faith with a clear conscience before a Holy God. . . I am asking that you strongly and advisedly afford him the opportunity to live according to his deeply held religious convictions by granting him an exemption to these vaccines.

(*Id*. at Pg. ID 84-85.)

2LT Doster also submitted a letter from Reverend Patrick Tanton that supported his religious exemption request. (*Id*. at Pg. ID 86.) In addition, on October 1, 2021, Air Force Chaplain, Maj. Krista Ingram, also submitted a Memorandum in Support of 2LT Doster's religious exemption request, stating:

> Current vaccination requirements place a substantial burden on Lt Doster's free exercise of religion by requiring him to participate in an activity prohibited by his sincerely held beliefs. He will submit religious accommodation requests for other vaccinations as they are necessary, and he is prepared to choose obedience to God over military service.

(*Id*. at Pg. ID 87.)

Despite the resounding support for 2LT Doster's religious exemption request by

religious leaders within and outside the Air Force, his request was denied on January 6, 2022. (*Id.* at Pg. ID 92.) In a letter signed by Lieutenant General Marshall Webb, this denial stated, "[f]irst, the Air Force's compelling government interest outweighs your individual belief and no lesser means satisfy the government's interest." (*Id.*) The denial continued, stating that the measures the Air Force had taken "for the past 18 months" could no longer be afforded to 2LT Doster because "[c]ontinuing to implement these drastic measures detracts from readiness, efficiency and good order and discipline in the force, and is unsustainable as the long-term solution." (*Id.*)

2LT Doster appealed this decision on January 18, 2022, relying on the same religious covenants as his initial request to establish his sincerely held religious beliefs. (*Id.* at Pg. ID 94.) However, the Air Force denied 2LT Doster's appeal on February 22, 2022. Signed by the Air Force Surgeon General Robert Miller, the denial states,

> The Department of the Air Force has a compelling government interest in requiring you to comply with the requirement for the COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment. In light of your circumstances, your present duty assignment requires intermittent to frequent contact with others and is not fully achievable via telework or with adequate distancing. . . Foregoing the above immunization requirement would have a real adverse impact on military readiness and public health and safety. There are no less restrictive means available in your circumstance as effective as receiving the above immunization in furthering these compelling government interests.

(Doster Appeal Denial, Doc. 19-1, Pg. ID 944.)

Then, following the denial of his appeal, 2LT Doster received a Memorandum, requiring he get vaccinated within five days. (*Id.* at Pg. ID 945.) The memorandum concluded, stating "[f]ailure to comply with the lawful order may result in administrative

11

and/or punitive action for Failing to Obey an Order under Article 92, Uniform Code of Military Justice." (*Id.* at Pg. ID 946.)

### 2. SrA Joseph Dills

Like 2LT Doster, SrA Joseph Dills filed a religious exemption request on October 2, 2021. (SrA Joseph Dills Religious Exemption Request, Doc. 8-5, Pg. ID 131.) In support of his request, SrA Dills stated,

> I am a Patriot and it is an honor to be an Airman. I wear my uniform with pride and I truly want to do my part to give back to my country. . . With that, my faith comes first. I am pro life and believe in protecting the unborn. This vaccine contains used cells originally isolated from fetal tissue often referred to fetal cells. Some of which are derived from aborted fetuses.

(*Id.*)

Dills's religious exemption request was accompanied by a Memorandum from Wing Chaplain Brandon Stephens. (Chaplain Stephens Memorandum in Support of SrA Dills Religious Exemption Request, Doc. 36-2, Pg. ID 2375-77.) Chaplain Stephens, affirming SrA Dills' sincerely held religious beliefs, stated:

> Sr A Joseph Dills has a religious and ethical conviction and believes that any use of a vaccine that uses aborted fetal cell tissue for testing and manufacturing or introduced into a vaccine will be a violation of his religious and ethical conviction of his faith.

(*Id.* at Pg. ID 2375.)

Although the exact date is not provided within the record, SrA Dills's religious exemption request was denied in November of 2021. (Ver. Compl., Doc. 1, Pg. ID 11.) SrA Dills immediately appealed the denial on November 5, 2021. (SrA Appeal and Denial, Doc. 42-2, PG. ID 2800.) Such appeal cited to the same sincerely held religious beliefs as his initial religious exemption request. (*Id.*) SrA Dills's appeal was denied on

12

December 16, 2021. (*Id.* at 2817.) Other than swapping out names and positions, SrA

Dills's appeal denial was identical to 2LT Doster.  (*Id.*)  After the Air Force denied SrA

Dills's appeal, he received a Letter of Reprimand on January 3, 2022 for refusing to get

the COVID-19 vaccine.  (Letter of Reprimand, Doc. 8-5, Pg. ID 135.)

### 3.    LT Col. Edward Stapanon, III

LT Col. Edward Stapanon, III filed a religious exemption request on September 21,

2021.  (LT Col. Edward Stapanon Religious Exemption Requests, Appeals and Denials,

Doc. 33-4, Pg. ID 2174.)  In his religious exemption, LT Col. Stapanon stated:

> This request is based on my sincerely held belief regarding the sanctity of
> innocent human life. This belief stems from my decades-long, deeply-held
> devotion to the Catholic faith and its teachings. . . Based on this belief, I
> believe abortion is the intentional murder of human life. . .  Therefore I
> cannot before God, and in good conscience, accept a vaccine when the
> development, testing, or production of that vaccine has made use of
> morally compromised cell lines derived from aborted babies.
> Unfortunately, each of the three available COVID-19 vaccines in the United
> States used these cell lines at some stage of manufacturing or testing.

(*Id.*)

Although the specifics of such interview and findings are not easily identifiable in

the record, "an Air Force Chaplain interviewed Lt. Colonel Stapanon on September 21,

2021 and confirmed the sincerity of his beliefs[.]"  (Ver. Compl., Doc. 1, Pg. ID 10.)

Despite LT Col. Stapanon's sincerely held religious beliefs, such request was

denied by the Air Force on March 4, 2022.  (Stapanon Denial of Religious Exemption

Request, Doc. 33-3, Pg. ID 2163.)  Again, other than swapping out names and positions,

LT Col. Stapanon's religious exemption request denial is identical to 2LT Doster.  (*Id.*)  LT

Col. Stapanon filed his appeal of such denial on March 13, 2022, and the appeal is still

13

pending before the Air Force Surgeon General. (Stapanon Appeal, Doc. 33-4, Pg. ID 2166.)

## III.    PROCEDURAL HISTORY

Plaintiffs filed the Verified Complaint on February 16, 2022, bringing a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(a)-(b), and violation of the First Amendment of the United States Constitution. (Ver. Compl., Doc. 1, Pg. ID 17-18.) Since filing their Verified Complaint and Motion for a Preliminary Injunction (Doc. 13), the parties have filed multiple Notices of Supplemental Authority (Doc. 32, 41, 43 & 44), Notices of Additional Factual Developments (Docs. 33 & 38), and Notices of Additional Materials (Docs. 42 & 36) regarding Plaintiffs' Motion for injunctive relief. Plaintiffs have also filed, in addition to motions seeks injunctive relief, a Motion to Amend or Correct (Doc. 11) and a Motion for Class Certification (Doc. 21). Defendants have filed a Motion to Sever (Doc. 35). All remain pending before the Court.

## IV.    LAW AND ANALYSIS

### A.    Justiciability

Before the Court can analyze the merits of whether Plaintiffs are entitled to a preliminary injunction, the Court must first confirm the matter is reviewable. The Government argues that this Court lacks jurisdiction over this case because: (1) it is not ripe for the Court's review, and (2) not all Plaintiffs have exhausted their administrative remedies with the Air Force. Part and parcel with the Government's exhaustion argument, however, is whether the Court should review a military decision at issue in this litigation. *See Harkness v. Sec'y of the Navy*, 858 F.3d 437, 444 (6th Cir. 2017).

14

Accordingly, the Court analyzes both the ripeness and judicial reviewability of the Air Force's denial of the religious exemption requests herein.

### 1. Ripeness

The ripeness doctrine "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (citation omitted). Previously, the Supreme Court has instructed courts to evaluate generally "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)).

The Sixth Circuit further identified the following factors to determine if a constitutional violation claim is ripe: "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). Additionally, "[i]n the First Amendment context, we evaluate the likelihood of the harm factor by focusing on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute." *Id.* In this context, the Sixth Circuit has found that the plaintiff established hardship by the denial of judicial relief, stating that "[Plaintiff] is faced with a present quandary—speak now and risk punishment or forever hold his peace." *Id.*

15

A similar conclusion is required in this case. First, there is a substantial likelihood that the harm to Plaintiffs will come to pass. Plaintiffs continue to face serious repercussions by refusing to get the COVID-19 vaccine in light of Defendants' denial of their religious exemptions. Specifically, as Col. Hernandez explained, "[p]otential dispositions for failing to obey a lawful order to receive the COVID-19 vaccination include adverse administrative actions, non-judicial punishment, administrative demotions, admirative discharges, and courts-martial." (Col. Hernandez Dec., Doc. 27-14, Pg. ID 1940.) Further, each of the Plaintiffs who testified at the hearing indicated that they were being threatened with imprisonment for refusing the vaccine without an exemption. Accordingly, an imminent threat of punitive action by Defendants is present and appears likely to come to pass.

Second, the record is sufficiently developed for the Court to fairly adjudicate the merits of Plaintiffs' Motion. Each party provided significant briefing as well as numerous declarations and evidence in support of their positions, and the Court heard several hours of testimony during the preliminary injunction hearing. Thus, the second factor outlined in *Berry* is satisfied.

Finally, Plaintiffs stand to face significant hardship if the Court does not address the issue at this time. Plaintiffs face severe punitive action due to their refusal to receive the COVID-19 vaccine—including prison as made clear during the evidentiary hearing. Like in *Berry*, Plaintiffs are faced with a present quandary—refuse to get vaccinated now and face punishment, including criminal prosecution and prison, or get vaccinated in violation of their sincerely held religious beliefs. *See Berry*, 688 F.3d at 298. Accordingly,

16

the Court concludes that Plaintiffs' claims are ripe for adjudication.

### 2. Judicial Reviewability of a Military Decision

Generally, "[a]n internal military decision is unreviewable unless two initial requirements are satisfied: (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Harkness,* 858 F.3d at 444 (citing *Mindes v. Seaman,* 453 F.2d 197, 201 (5th Cir. 1971)). "If the plaintiff meets both prerequisites, then four factors must be weighed to determine justiciability: (1) the nature and strength of the plaintiff's challenge; (2) the potential injury to the plaintiff of withholding review; (3) the degree of anticipated interference with the military function; and (4) the extent to which military experience or discretion is involved." *Id.*

Here, Plaintiffs undisputedly alleged the deprivation of a constitutional right, (Ver. Compl., Doc. 1, Pg. ID 1, 17-18), and so only the question of exhaustion is at issue as to the identified prerequisites. To that point, Defendants argue Plaintiffs have failed to exhaust their administrative remedies, and thus this Court should refuse to hear this matter.

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 38 (1972). However, the Sixth Circuit has adopted exceptions to this general rule, one being futility, which occurs "where pursuit of administrative

17

remedies would be a futile gesture." *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).

In a factually similar case to this one, the Fifth Circuit analyzed the question of futility using the *Mindes* standard, the same test adopted by the Sixth Circuit. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022). There, that court determined that, when evidence suggests that exhaustion is futile because the military "has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains[,]" the second prerequisite is satisfied. *Id.* at 347.

After hearing the testimony of three Plaintiffs and reviewing the record, there is no question to the Court that exhaustion in this instance is futile. As of March 22, 2022, the Air Force had adjudicated 4,403 religious exemptions. (DAF COVID-19 Statistics – March 22, 2022.) Of those 4,403 religious exemptions, the Air Force granted **only 21**. (*Id.*) Additionally, the Air Force has ruled on 1,162 appeals of the denials of religious exemptions. (*Id.*) And, of those 1,162, the Air Force has granted only **2 appeals**. (*Id.*) In light of these farcical statistics, this Court finds that the Air Force "has effectively stacked the deck" against service members seeking religious exemptions, *see U.S. Navy Seals 1-26*, 27 F.4th at 347, and thus further finds that exhaustion of the Air Force proceedings on any religious exemptions is futile.

Next, the Court turns to the applicable four factors. *Harkness*, 858 F.3d at 444. The first factor, the nature and strength of the plaintiff's challenge, weighs in favor of judicial review. Plaintiffs are challenging the Air Force's administration of its COVID-19

18

vaccination mandate, including the administration of religious exemption.  The challenge involves free exercise of religion protections under both the RFRA and the First Amendment.  As the Northern District of Texas recently explained, because "Plaintiffs move for a preliminary injunction based on specific violations of their constitutional rights under the Free Exercise Clause, plus similar violations of the RFRA[,] Plaintiffs' claims are squarely in the category of claims most favorable for judicial review."  *U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-cv-01235-O, 2022 WL 34443, at *7 (N.D. Tex. Jan. 3, 2022).  Also, as discussed below, this Court finds that Plaintiffs' claims are strong and likely to succeed on the merits. Accordingly, the first factor weighs in favor of justiciability.

The second factor, the potential injury to the plaintiff of withholding review, also weighs in favor of judicial review.  If the Court withholds review, Plaintiffs find themselves in the iniquitous position of choosing between their First Amendment freedoms and their livelihoods and benefits for each of them and their families. *Poffenbarger v. Kendall*, No. 3:22-cv-1, 2022 WL 594810, at *9 (S.D. Ohio Feb. 28, 2022).  Also, Plaintiffs could face criminal charges or even prison due to their refusal to receive the COVID-19 vaccine.  Thus, the second factor weighs in favor of justiciability.

Regarding the third factor, which asks this Court to examine the degree of anticipated interference with the military function, "[i]nterference per se is insufficient since there will always be some interference when review is granted . . . ."  *Mindes*, 453 F.2d at 201.  Thus, "courts ought to abstain only where the interference would be such as to seriously impede the military in the performance of vital duties."  *U.S. Navy Seals 1-26*,

27 F.4th at 348 (internal quotations omitted). Here, the interference with military function would be minimal because only a very small percentage of Air Force service members remain unvaccinated. As of March 22, 2022, 96.4% of the Air Force is fully vaccinated. (DAF COVID-19 Statistics, March 22, 2022.) Of the remaining unvaccinated, as of March 22, 2022, the Air Force has granted 1,129 medical exemptions and 1,426 administrative exemptions. (*Id.*) Thus, "[i]t seems illogical to think, let alone argue, that [Plaintiffs'] religious-based refusal to take a COVID-19 vaccine would seriously impede military function when the Air Force has at least [2,500] other service members still on duty who are just as unvaccinated as [Plaintiffs]." *Air Force Officer v. Austin,* No. 5:22-cv-009, 2022 WL 468799, at *7 (M.D. Georgia Feb. 15, 2022); *see also U.S. Navy Seals 1-26*, 27 F.4th at 349 ("It is therefore 'illogical . . . that Plaintiff[s'] religious-based refusal to take a COVID-19 vaccine would 'seriously impede' military function when the [Navy] has [over 5,000] service members still on duty who are just as unvaccinated as [the Plaintiffs]"). Further, to argue an impediment to military functioning while at the same time threatening disciplinary action to the unvaccinated defies logic and common sense. Thus, the third factor does not weigh against justiciability.

Lastly, the fourth factor asks this Court to examine the extent to which military experience or discretion is involved. While "[c]ourts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions," *see Mendes*, 453 F.2d at 201-02, "the particular issues and constitutional questions presented here are not so foreign to those outside the military as to give the Court serious concern about its ability to decide the

case." *Poffenbarger*, 2022 WL 594810, at *9. And, where the evidence suggests that the military is intentionally ignoring, and will continue to ignore, RFRA and the First Amendment's protections, such as here, "courts must intervene because generals don't make good judges—especially when it comes to nuanced constitutional issues." *U.S. Navy Seals 1-26*, 27 F.4th at 349; *see also Air Force Officer*, 2022 WL 468799, at *8 (". . . judges don't make good generals. . . But, by that same token, it's a two-way street: Generals don't make good judges—especially when it comes to nuanced constitutional issues"). The Constitution appropriately places in Article III judges the duty to defend it and secure its religious liberties to all. Thus, the fourth factor does not weigh against justiciability.

Thus, this Court finds that this matter is reviewable. Plaintiffs assert serious constitutional violations and have either exhausted their administrative remedies or exhaustion is futile. Further, the remaining factors weigh in favor of this Court's present review of these issues. Accordingly, the Court finds that this matter is justiciable.

## V. PRELIMINARY INJUNCTION FACTORS

Federal Rule of Civil Procedure 65(a) allows the Court to issue a preliminary injunction against an adverse party. Fed. R. Civ. P. 65(a). If a Court grants a preliminary injunction, the Court must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often

necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* "A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (internal citation omitted).

In determining whether to impose a preliminary injunction, this Court is required to consider four factors: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "The harm to the opposing party and the public interest factors merge when the Government is the opposing party." *Poffenbarger*, 2022 WL 594810, at *7 (quoting *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020)).

These four factors are "to be balanced and not prerequisites that must be satisfied." *Id.* "In First Amendment cases, however, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). This is because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action." *Id.* (cleaned up). Thus, "a court must not issue a preliminary injunction where the movant presents no likelihood of merits success." *Wilson*, 961 F.3d at 844. "The party seeking the

22

preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success on the merits." *McNeilly*, 684 F.3d at 615.

### A.     Likelihood of Success on the Merits

#### 1.     Religious Freedom Restoration Act

Plaintiffs' first claim is a violation of the RFRA. RFRA was enacted "in 1993 in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). Indeed, "[b]y enacting RFRA, Congress went far beyond what [the Supreme Court] has held is constitutionally required." *Id.* at 706. RFRA, per its plain text, applies to the military.     *See* 42 U.S.C. § 2000bb-1; 42 U.S.C. § 2000bb-2(1); *Poffenbarger*, 2022 WL 594810, at *8.

Specifically, RFRA states that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." 42 U.S.C. § 2000bb-1(a). Subsection (b) provides an exception to this overarching prohibition, providing that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). A court may grant appropriate relief against the government when an individual's religious exercise has been burdened in violation of the RFRA. 42 U.S.C. § 2000bb-1(c).

Defendants concede that Plaintiffs possess sincerely held religious beliefs. Thus, the Court must address whether: (1) Plaintiffs' sincerely held religious beliefs are being

substantially burdened by Defendants; (2) the substantial burden, if it exists, is in furtherance of the Government's compelling interest; and (3) the substantial burden is the least restrictive means of furthering Defendants' compelling interests. The Court analyzes each in turn.

### a. Substantial Burden

"The substantial-burden test asks whether the Government is effectively forcing plaintiffs to choose between engaging in conduct that violates sincerely held religious beliefs and facing a serious consequence." *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 589 (6th Cir. 2018). Indeed, "the Government substantially burdens an exercise of religion when it places substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bars his sincere faith-based conduct." *Id.*

Defendants' single contention that this case does not involve a substantial burden is that "[t]he 'substantial burden' in this case is not forcing the Plaintiffs to choose between their religious beliefs and their jobs, but rather the significantly lesser burden related to traveling internationally to receive one of the several vaccines that does not involve fetal cell testing and therefore does not violate Plaintiffs' religious beliefs." (Def. Resp. in Opp., Doc. 27, Pg. ID 1553 at fn. 12). For the reasons below, Defendants' argument fails.

Here, Plaintiffs must choose between receiving the COVID-19 vaccine, which as approved for use in the United States violate Plaintiffs' sincerely held religious beliefs, or face disciplinary or separation measures including "adverse administrative actions, non-judicial punishment, administration demotions, administrative discharges, and courts-

martial." (Decl. of Col. Hernandez, Doc. 27-14, Pg. ID 1941.) The threat of such severe repercussions can only be seen as requiring Plaintiffs to choose between their religious beliefs and their livelihoods, which is a classic case of "substantial pressure." *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Defendants cite no case law to support their contention that international travel to take a vaccine that is not currently approved in the United States constitutes a "significantly lesser burden." And the Court is unpersuaded by such argument. Mandating that Plaintiff take a vaccine developed in another country and not subject to the same oversight or approval required within the United States cannot reasonably be found to be a "significantly lesser burden." It is patently absurd. Thus, the Court finds that the Air Force Covid Vaccination Mandate constitutes a substantial burden to Plaintiffs' sincerely held religious beliefs.

### b.      Compelling Interests

Thus, the question becomes whether the Air Force can show its vaccine mandate and blanket denial of religious exemptions further a compelling interest as required by subsection (b) of the RFRA statute. *See* 42 U.S.C. § 2000bb-1(b)(1). Importantly, "RFRA . . . contemplates a more focused inquiry: It requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." *Hobby Lobby*, 573 U.S. at 726 (quotation omitted).

Here, the Court must "look beyond formulated interests and to scrutinize the asserted harm of granting specific exemptions to particular religious claimants . . ." *Id*. at

25

726-27 (cleaned up). "That is, [Defendants] must demonstrate a compelling interest supporting the specific denial of [Plaintiffs'] exemptions and the absence of an alternative for [Plaintiffs]." *Navy Seal 1 v. Biden*, No. 8:21-cv-2429, 2021 WL 5448970, at *10 (M.D. Fla. Nov. 21, 2021). And "[a]lthough '[s]temming the spread of COVID-19 is unquestionably a compelling interest," its limits are finite." *U.S. Navy Seals 1-26*, 2022 WL 34443, at *10 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)).

Defendants argue that denying Plaintiffs' religious exemptions, and virtually all religious exemption requests, is in furtherance of two compelling interest: (1) stemming the spread of COVID-19 and (2) military readiness. (*See* Def. Resp. in Opp., Doc. 27, Pg. ID 1432-33); (*see also* Decision on Religious Accommodation Appeal, Plaintiffs Exhibit 8) (noting in denying an airman's appeal of the denied religious exemption request that "[t]he Department of the Air Force has a compelling governmental interest in requiring you to comply with the requirement for the COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment").

None of Defendants' stated interests constitute compelling interests justifying the substantial burden on Plaintiffs' religious liberties. First, RFRA precludes Defendants from relying on broadly formulated interests such as "national security" and "stemming the spread of COVID-19" to overcome Plaintiffs' claims. *Hobby Lobby*, 573 U.S. at 726-27. Rather, Defendants "must articulate a compelling interest in vaccinating" the Plaintiffs before this Court. *Id.* Defendants have failed miserably to do so. Defendants provide no specific compelling interests in denying these Plaintiffs' specific religious exemptions while at the same time granting numerous medical and administrative exemptions.

Second, even the broad formulaic claims of "stemming the spread of COVID-19" and promoting military readiness and national security ring hollow in light of the fact that over 2,500 exempt Airmen are carrying out their respective duties unvaccinated. The only difference between the over 2,500 Airmen who have otherwise received exemptions and the 18 Plaintiffs before this Court is solely the type of exemption they requested. It appears to the Court that the Air Force has freely granted medical and administrative exemptions while denying almost all religious exemption requests. Thus, by permitting certain types of exemptions significantly more often than others, the Air Force's mandate and related grant of exemptions are underinclusive in furtherance of the alleged compelling interest. And "underinclusiveness . . . is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact compelling." *BTS Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 616 (5th Cir. 2021).

Further, the Court cannot ignore that these Airmen served with loyalty and conviction during the pandemic, when there was no vaccine. They complied with all necessary precautionary measures and have continued to do so when required. Defendants have not identified any specific harm resulting from Plaintiffs' unvaccinated status at any time during the pandemic or since the mandate has been in place. Indeed, any such claim would seem manufactured given the thousands of currently exempted, unvaccinated individuals permitted to work in their normal duty stations. As the court in *Air Force Officer* recognized:

> No matter whether one service member is unvaccinated for a medical reason and another unvaccinated for a religious reason, one thing remains the same for both of these service members—they're both unvaccinated. In

other words, both of these service members pose a similar hazard to Defendants' compelling interest in stemming the spread of COVID-19 within the military.

*Air Force Officer*, 2022 WL 468799, at *11 (internal quotations omitted).

Therefore, because Defendants fail to demonstrate a compelling interest supporting the specific denial of Plaintiffs' exemptions, Defendants have failed to establish a compelling interest for substantially burdening Plaintiffs' sincerely held religious beliefs.

### c. Least Restrictive Means

Here, even if Defendants could demonstrate a compelling interest, the Air Force's COVID-19 vaccination mandate is not the least restrictive means to further any compelling interests. "The least-restrictive-means standard is exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. When applying the least-restrictive-means standard, a defendant must show that it "lacks other means of achieving its desired goal without imposing substantial burden on the exercise of religion by the objecting party." *Id*.

First, all Plaintiffs, while unvaccinated, have continued to successfully perform their duties and heroically accomplish their missions during the pandemic. No Airmen was vaccinated until the vaccine became readily available, approximately a year after the pandemic began. The Air Force did not require vaccinations until August of 2021, approximately 18 months after the pandemic began.

Moreover, the Plaintiffs have all received temporary exemptions during the course of their appeal, any disciplinary proceedings, and, potentially, this litigation, meaning that they have been permitted to continue to work as they have always done. They have

not been quarantined or prohibited from working in close proximity to anyone. And during this time, Plaintiffs, and the Air Force, have continued to perform their duties and accomplish their missions. Thus, the Court is unpersuaded by Defendants' argument that the least restrictive way to further their compelling interest of military readiness is by denying almost all religious exemptions while unvaccinated Airmen, including Plaintiffs, continue to perform their duties. *See also U.S. Navy SEALS 1-26*, 2022 WL 34443, at *7 (holding that the Navy's vaccine mandate did not satisfy the least restrictive means standard because it "treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity"); *Poffenbarger*, 2022 WL 594810 at *12 (finding that the Air Force's denial of plaintiff's religious exemption is not the least restrictive means because less restrictive means "are being provided . . . on non-religious grounds").

Because the Air Force has willingly and freely granted administrative and medical exemptions but refuses to grant virtually all religious exemptions, this Court finds that the Air Force has not satisfied the least-restrictive-means standard.

*       *       *       *       *

 Accordingly, Plaintiffs established that the Air Force's COVID-19 vaccination mandate is a substantial burden on Plaintiffs' sincerely held religious beliefs. Defendants failed to establish a compelling interest as to the specific Plaintiffs before the Court to justify the mandate, and, even if they did, Defendants failed to establish that the mandate satisfied the least-restrictive-means standard.

As such, Plaintiffs have a likelihood of success on the merits of their RFRA claim.

2.      **Free Exercise Clause**

Plaintiffs' second claim is that Defendants' policy of denying substantially all religious exemptions violates the Free Exercise Clause of the First Amendment. Defendants argue that the Air Force's COVID-19 vaccination mandate is a "neutral law of general applicability" and, thus, need only survive rational basis review. (Def. Resp. in Opp., Doc. 27, Pg. ID 1547.)  Plaintiffs, on the other hand, argue that the vaccination mandate is neither neutral nor generally applicable and, thus, must survive strict scrutiny, which they argue it cannot.  And, Plaintiffs are correct.

The First Amendment Free Exercise Clause, incorporated by the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I.  "A neutral law of general applicability need not be justified by a compelling governmental interest even if the law incidentally burdens religious practices."  *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 733 (6th Cir. 2021). "But a law that is not neutral and generally applicable must undergo the most rigorous of scrutiny." *Id.*

"A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions."  *Fulton*, 141 S. Ct. at 1877.  A law or mandate "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's interest in a similar way."  *Id.*  "Accordingly, where a state extends discretionary exemptions to a policy, it must grant exemptions for cases of 'religious hardship' or present compelling reasons not to do so."  *Dahl*, 15 F.4th at 733 (quoting

*Fulton*, 141 S. Ct. at 1877).

Here, the Air Force's COVID-19 vaccination mandate is not generally applicable because it allows for medical and administrative exemptions as well as religious exemptions. An esteemed colleague within this district recently held as much because "it distinguishes between religious and non-religious exemptions." *Poffenbarger*, 2022 WL 594810, at *16. Other courts have also held that military COVID-19 vaccination mandates are not neutral and generally applicable. *See Air Force Officer*, 2022 WL 468799 at *12; *see also U.S. Navy Seals 1-26*, 2022 WL 34443 at *11. Thus, because this Court finds the Air Force's vaccination mandate to be neither neutral nor generally applicable, the Air Force must overcome strict scrutiny.

For Defendants to prevail under strict scrutiny, they must "show that [the Air Force's] failure to exempt [Plaintiffs] serves interests of the highest order and is narrowly tailored to achieve those interests." *Dahl*, 15 F.4th at 734-35. Like in *Dahl*, here, "the question before [this Court] is not whether [the Air Force] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exemption to [P]laintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Id*. at 735; *see also Fulton*,141 S. Ct. at 1881 (same).

Defendants do not establish a compelling interest in denying Plaintiffs' exemptions, on the one hand, while granting thousands of medical and administrative exemptions, on the other, relatively none. Like the Sixth Circuit held in *Maryville Baptist Church*, "restrictions inexplicably applied to one group and exempted from another do little to further [Defendants'] goals and do much to burden religious freedoms."

31

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020). And, this Court held above that the Air Force' COVID-19 vaccination mandate is not narrowly tailored. Thus, Defendants fail to satisfy strict scrutiny, because "[w]hile the law may take periodic naps during a pandemic, we will not let it sleep through one." *Id*.

In a last ditch effort to persuade the Court, Defendants rely on the long standing principle of military deference. Whether military deference should be considered "stands as a separate option open to the military to justify [a] regulation" being challenged under the First Amendment. *Poffenbarger*, 2022 WL 594810 at *17 (quoting *Harmann v. Stone*, 68 F.3d 973, n.7 (6th Cir. 1995)). This Court also recognizes that courts have consistently deferred to military decision-making. *See Goldman v. Weinberger*, 475 U.S. 503 (1986); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

However, such deference can only go so far. The Supreme Court has explained that it "neither hold[s] nor impl[ies] that the conduct of [a military division] is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief." *Gilligan v. Morgan*, 413 U.S. 1, 12 (1973). And "some First Amendment protection still exists" beyond military deference. *Hartmann*, 68 F.3d at 984.

The evidence before this Court is sufficient to establish that, at this stage of the litigation, Defendants' overt policy to deny substantially all religious exemptions violates the Free Exercise Clause, as well as RFRA. Here, "Defendants essentially want 'the Court to accord a degree of deference that is tantamount to unquestioning acceptance, which is not the proper function of a court in a RFRA' or First Amendment case." *Poffenbarger*,

2022 WL 594810, at *18 (quoting *Singh v. McHugh*, 185 F.Supp.3d 201, 221 (D.D.C. 2016)).

The Court will not turn a blind eye to such apparent and serious violations of the Free

Exercise clause.

Clearly, Plaintiffs have established a likelihood of success on the merits of their

Free Exercise Clause claim, as well.

### B.      Irreparable Harm

"To merit a preliminary injunction, an injury must be both certain and immediate,

not speculative or theoretical." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019).

First, "[a] plaintiff's harm from the denial of a preliminary injunction is irreparable if it is

not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network,*

*L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). Thus, if monetary damages are

difficult to calculate, then "the injury is not fully compensable by monetary damages."

*Id*. My colleague within this district has previously determined that, in the case where

an airman is facing punitive action for refusing to receive the COVID-19 vaccination in

violation of the Air Force's mandate, "[m]uch of the alleged harm to [plaintiff] is not

irreparable." *Poffenbarger*, 2022 WL 594810 at *18. In *Poffenbarger*, the plaintiff faced the

similar, if not identical, punitive action as Plaintiffs face in this case. *Id*. at *5. Thus, the

punitive action that may be taken against Plaintiffs if they to refuse to get vaccinated

without an exemption does not, alone, establish irreparable harm.

Yet, even if the harm is fully compensable by monetary damages, the Sixth Circuit

has previously found that violations of the First Amendment and RFRA rights satisfy the

irreparable harm requirement. *Maryville Baptist Church, Inc.*, 957 F.3d at 615-16 (finding

restriction that burdened religion "assuredly inflicts irreparable harm"); *Autocam Corp. v. Sebelius*, 730 F.3d 618 (6th Cir. 2013) (same). Unquestionably, the loss of First Amendment freedoms, for even minimal periods of time, "constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "This principle also applies to violation of rights under the RFRA." *Poffenbarger*, 2022 WL 594810 at *19.

Additionally, Courts with similar issues presented to them in the past few months have determined that "the substantial pressure on a religious objecting service member to obey the COVID-19 vaccination order and violate a sincerely held religious belief constitutes an irreparable injury redressable by a preliminary injunction." *Navy Seal 1 v. Austin*, No. 8:21-cv-2429, 2022 WL 534459, at *19 (M.D. Fla. Feb. 18, 2022); *see also Air Force Officer*, 2022 WL 468030 at *12 (finding that the plaintiff established irreparable injury because her religious exemption request was denied by the Air Force and such denial "essentially infringed upon the free exercise of her religion"); *U.S. Navy Seals 1-26*, 2022 WL 34443 at *3 ("But because these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, this Court must conclude that Plaintiffs have suffered irreparable harm").

As such, because this Court finds Plaintiffs have established a likelihood of success on the merits for their RFRA and Free Exercise Clause claims, Plaintiffs have also established irreparable harm.

### C. Substantial Harm to Others & Public Interest

As noted above, the third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the

public interest—"merge when the Government is the opposing party." *Nken v. Holder*,

556 U.S. 418, 435 (2009). Defendants argue that these factors "tilt decisively against

granting a preliminary injunction here." (Def. Resp. in Opp., Doc. 27, Pg. ID 1552.) The

Court acknowledges that weighty public interests are being considered in this case. First,

"it is always in the public interest to prevent the violations of a party's constitutional

rights." *Dahl*, 15 F.4th at 736. However, the Court also acknowledges the strong public

interest in national defense, including military readiness. *See Winter*, 555 U.S. at 24. As

this Court explains in greater detail below, the limited scope of this preliminary

injunction will not cause substantial harm to the Air Force because "[Plaintiffs'] religious-

based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully

vaccinated Air Force's mission to provide a ready national defense." *Air Force Officer*,

2022 WL 468799, at *12.

Therefore, because Plaintiffs' harm and the public interest in preventing

constitutional rights violations outweigh any nominal harm the Air Force may sustain

due to Plaintiffs' vaccination status, the third and fourth factors weigh in favor of a

preliminary injunction.

## VI.    SCOPE OF INJUNCTION

Plaintiffs originally sought a nationwide preliminary injunction granting broad

injunctive relief. Specifically,

> Plaintiffs request a preliminary injunction . . . that (i) requires the immediate
> processing and acceptance of Plaintiffs' religious accommodation requests
> under RFRA; (ii) requires timely and good faith processing of other
> religious accommodation requests in accordance with the timelines [sic]
> contained in current Department of Defense instructions, and appropriately

35

considers whether such requests can be accommodated within the framework of RFRA and its least restrictive means (as well as a fulsome consideration of alternatives to denies of such request); and (iii) ceases the Defendants' current policy of engaging in a double standard between, on the one hand, granting, where appropriate, medical and administrative exemptions but, on the other hand, almost never granting religious exemptions.

(Pl. Motion for Prelim. Inj., Doc. 13, Pg. ID 598-99.)

Defendants argued that "such universal and class-wide injunctive relief" is improper here "even if the Court determined that Plaintiffs were entitled to some individual relief at this stage." (Def. Response in Opp., Doc. 27, Pg. ID 1554.)  However, Plaintiffs have since revised their requested relief and now "seek only the relief that extended to the portion of the lower court judgment [in *U.S. Navy Seals 1-26*, 2022 WL 34443] that the Supreme Court left in place [in *Austin v. U.S. Navy Seals 1-26*, No.21A477, 2022 WL 882559 (Mem) (2022)]: a prohibition against disciplinary or separation measures to these Plaintiffs under RFRA." (Plaintiffs Response to Defendants' Notice of Additional Authority, Doc. 44, Pg. ID 3062.)

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Camenisch*, 451 U.S. at 395. As the Supreme Court recently explained, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents. *Trump v. Int'l Refugee Assistance Project*, 137 S.Ct. 2080, 2087 (2017).  A court should limit its preliminary injunction that "goes beyond a restoration of the status quo and impose new obligations" on a party. *See Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) (finding that a district court's

preliminary injunction that went "beyond the restoration of the status quo and impose[d] new obligations on" the defendant was an abuse of discretion).

The Court finds the targeted relief Plaintiffs now seek is "a prohibition against disciplinary or separation measures to these Plaintiffs under RFRA," and thus the Court grants a preliminary injunction of such scope, enjoining Defendants from taking any adverse or punitive action, including but not limited to disciplinary or separation measures, against the Plaintiffs in this case for their refusal to receive the COVID-19 vaccine, while keeping in place the current temporary exemption.

The Court's conclusion is not affected by the Supreme Court's recent decision in *Austin v. U.S. Navy Seals 1-26*, 2022 WL 882559, or Justice Kavanaugh's concurrence which cautions against intervention in the military's chain of command. That case is distinguishable from the present one, and this Court's injunction. As set forth below, the injunction in this case is limited to solely these Plaintiffs and only maintains the status quo by maintaining the current temporary exemptions and prohibiting adverse or punitive action against those Plaintiffs for their refusal to receive the COVID-19 vaccine. It does not affect the Air Force's ability to make operational decisions, including deployability decisions.

## VII.   FINAL THOUGHTS

This case presents the constitutional collision of brave men and women serving in the Air Force sincerely trying to exercise their religious beliefs and their esteemed superiors who have loaded their weapons against them. During this preliminary injunction hearing the Court watched and heard the testimony of Plaintiffs, some

appearing in their full military uniforms and others also in uniform with their young families, watching for justice to unfold in this case. And, at that moment, the Court wondered what General George Washington would think of this battle between the Executive branch, the First Amendment and RFRA. In fact, the Court asked counsel that question.

As America's first and perhaps finest general, Washington's watchwords completely captured this Court's own thinking in a way that borders the prescient. In a letter dated 27 January 1793 to the New Jerusalem Church of Baltimore, he wrote:

> We have abundant reason to rejoice, that in this land the light of truth and reason have triumphed over the power of bigotry and superstition, and that every person may here worship God according to the dictates of his own heart. In this enlightened age and in this land of equal liberty, it is our boast, that a man's religious tenets will not forfeit the protection of the laws, nor deprive him of the right of attaining and holding the highest offices that are known in the United States.

Founders Online, *From George Washington to the Members of the New Jerusalem Church of Baltimore, 27 January, 1793*, http://founds.archives.gov/documents/Washington/05-12-0027#print_view (last visited March 30, 2022).

Yet here and now, the Air Force has put these Airmen in the unconscionable position of choosing between their faith in an eternal God and their career in the United States military. Indeed, active duty Lt. Col. Edward Joseph Stapanon, III, who logged 174 hours of combat time flown in Operation Iraqi Freedom and earned two air medals, testified in the preliminary injunction hearing in this case as follows:

> Q: Now, you understand the seriousness of things, of the decision that you're making today; correct?

A: Yes, ma'am, I do.

Q: And if pushed, will you in fact go to prison to stand behind your religious beliefs?

A: Yes, Ma'am. I don't see that I have any other alternative. When I meet my maker, I'm going to be held responsible for the decisions I've made, and I'd much rather go to prison. There's been a lot of saints that have gone to prison, so I'm willing to do that.

(Transcript of Excerpt of Preliminary Injunction Hearing, Testimony of Edward Joseph Stapanon, III, Doc. 45, Pg. ID 3076-77.)

As such, decorated Lt. Col. Stapanon, who also testified that there is a shortage of pilots, would rather endure prison than betray his sincerely held religious beliefs. And, the enforcement of this vaccine mandate would take this American hero and his other patriots and discharge them from their hard-earned duty stations.

Accordingly, and with a respectful nod of gratitude to the Father of our great country, this Court, as a sworn guardian of the Constitution, will not order the Air Force personnel at this stage to forfeit the protections of our laws and of the Free Exercise Clause of the First Amendment.

## VIII. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for a Preliminary Injunction. Thus, the Court **ORDERS** the following:

1. Defendants, as well as any persons acting in concert with Defendants, are enjoined and restrained from taking any disciplinary or separation measures against the Plaintiffs named in this action for their refusal to get vaccinated for COVID-19 due to their sincerely held religious beliefs. Such disciplinary or

separation measures include, but are not limited to, "adverse administrative actions, non-judicial punishment, administration demotions, administrative discharges, and courts-martial." (Dec. of Col. Hernandez, Doc. 27-14, Pg. ID 1941);

2. Defendants, as well as any person acting in concert with Defendants, are enjoined and restrained from taking any adverse action against Plaintiffs on the basis of this lawsuit or their request for religious accommodation from the COVID-19 vaccine;

3. Thus, the temporary exemptions from taking the COVID-19 vaccine currently in place for these Plaintiffs shall remain in place during the resolution of this litigation;

4. In accordance with Federal Rule of Civil Procedure 65(d)(2), this Order binds the following who receive actional notice of it by personal service or otherwise: the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with the parties or the parties' officers, agents, servants, employees, and attorneys;

5. Pursuant to Federal Rule of Civil Procedure 65(c), the Court has considered the need for Defendants to post security and concludes that no sum is required under the facts of this case; and

6. Plaintiffs' Emergency Motion for Temporary Restraining Order as to Hunter Doster (Doc. 19) is **DENIED AS MOOT**.

**IT IS SO ORDERED this 31st day of March, 2022.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND