# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### CINCINNATI DIVISION

|  |  |
|---|---|
| **HUNTER DOSTER, _et al._,** | |
| _Plaintiffs_, | No. 1:22-cv-00084 |
| v. | Hon. Matthew W. McFarland |
| **FRANK KENDALL, _et al._,** | |
| _Defendants_. | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT .................................................................................................................... 4

    I.    Plaintiffs' Claims Are Not Ripe............................................................................ 5

        A.    Plaintiffs Without a Final Decision on Religious Accommodation Requests Do Not Have Ripe Claims. ........................................ 6

        B.    Plaintiffs Who Have Not Been Disciplined Do Not Have Ripe Claims. ............................................................................................ 9

    II.    Plaintiffs Have Failed to Exhaust Their Administrative Remedies. ..................... 10

        A.    Plaintiffs Without a Final Decision on Religious Accommodation Requests Have Not Exhausted Their Administrative Remedies............... 12

        B.    Even Plaintiffs Who Have Final Decisions On Religious Accommodation Requests Have Not Exhausted Available Administrative Remedies. ........................................................... 14

            1.    Discharge and Separation Procedures. .......................................... 14

            2.    Reassignment to the Individual Ready Reserve........................... 16

        C.    Exhaustion Means Pursuing Available Appeals, including the AFBCMR. ...................................................................................... 17

    III.    The Court Should Dismiss Claims Arising from Any Alleged Delay in Processing Religious Accommodation Requests.................................................. 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Berry v. Schmitt*,
  688 F.3d 290 (6th Cir. 2012) .......................................................................... 5, 6, 8

*Bickel v. Delaware Air Nat'l Guard*,
  No. 2:18-CV-00119, 2018 WL 2183296 (S.D. Ohio May 11, 2018) ...................................... 18

*Bigelow v. Mich. Dep't of Nat. Res.*,
  970 F.2d 154 (6th Cir. 1992) ................................................................................ 4

*Bois v. Marsh*,
  801 F.2d 462 (D.C. Cir. 1986) .................................................................... 11, 18, 19

*Church v. Biden*,
  --- F. Supp. 3d ---, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) ................................................ 7

*Covill v. United States*,
  959 F.2d 58 (6th Cir. 1992) ................................................................................ 18

*Crawford v. Tex. Army Nat'l Guard*,
  794 F.2d 1034 (5th Cir. 1986) .............................................................................. 19

*Davis v. United States*,
  589 F.3d 861 (6th Cir. 2009) ............................................................................... 18

*Doe v. Ball*,
  725 F. Supp. 1210 (M.D. Fla. 1989), *aff'd sub nom. Doe v. Garrett*, 903 F.2d 1455
  (11th Cir. 1990) ........................................................................................... 11

*Doster v. Kendall*,
  ---F. Supp. 3d---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ............................................ 12

*Giesse v. Sec'y of Dep't of Health & Hum. Servs.*,
  522 F.3d 697 (6th Cir. 2008) ................................................................................ 5

*Gilligan v. Morgan*,
  413 U.S. 1 (1973) .......................................................................................... 11

*Harkness v. Sec'y of Navy*,
  858 F.3d 437 (6th Cir. 2017) ........................................................................... 2, 10

*Hartmann v. Stone*,
   68 F.3d 973 (6th Cir. 1995) ............................................................................... 12

*Heidman v. United States*,
   414 F. Supp. 47 (N.D. Ohio 1976) ............................................................. 11, 18

*Hodges v. Callaway*,
   499 F.2d 417 (5th Cir. 1974) ..................................................................... 13, 19

*Kawitt v. United States*,
   842 F.2d 951 (7th Cir. 1988) ............................................................................ 13

*Layman v. Harvey*,
   No. 8:05-CV-2208-T24EAJ, 2007 WL 430678 (M.D. Fla. 2007) ..................... 19

*Lockhart v. United States*,
   420 F.2d 1143 (9th Cir. 1969) ......................................................................... 15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 19

*McKnight v. Gates*,
   282 F. App'x 394 (6th Cir. 2008) ..................................................................... 10

*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971) ................................................................. 2, 10, 19

*Montgomery v. Sanders*,
   No. 3:07-CV-470, 2008 WL 4546262 (S.D. Ohio Aug. 18, 2008) ..................... 18

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*,
   538 U.S. 803 (2003) ........................................................................................... 4

*Parisi v. Davidson*,
   405 U.S. 34 (1972) ..................................................................................... 10, 11

*Parker v. Levy*,
   417 U.S. 733 (1974) ......................................................................................... 11

*Poffenbarger v. Kendall*,
   --- F. Supp. 3d  ---, 2022 WL 594810 (W.D. Ohio Feb. 28, 2022) .................. 7, 11

*Reno v. Cath. Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ............................................................................................. 7

*Roberts v. Roth*,
   No. CV 21-1797 (ABJ), 2022 WL 834148 (D.D.C. Mar. 21, 2022) ................. 2, 10

*Rostker v. Goldberg*,
  453 U.S. 57 (1981) ................................................................................................ 11, 12

*Rucker v. Sec'y of the Army*,
  702 F.2d 966 (11th Cir. 1983) ..................................................................................... 18

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975) ..................................................................................................... 11

*Seepe v. Dep't of the Navy*,
  518 F.2d 760 (6th Cir. 1975) .................................................................................... 7, 11

*Short v. Berger*,
  No. 22-cv-01151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022), *appeal filed*, No.
  22-55339 (9th Cir. Apr. 5, 2022) ............................................................................... 9, 11

*Short v. Berger, et al.*,
  No. CV-22-00444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022) ................................. 14, 16

*Smith v. Harvey*,
  541 F. Supp. 2d 8 (D.D.C. 2008) ................................................................................... 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................................. 19, 20

*Toilet Goods Association v. Gardner*,
  387 U.S. 158 (1967) ...................................................................................................... 9

*Trump v. New York*,
  141 S. Ct. 530 (2020) ............................................................................................. 1, 4, 6

*United States v. Ritchie*,
  15 F.3d 592 (6th Cir. 1994) ........................................................................................... 5

*Vance v. Wormuth*,
  No. 3:21-CV-730-CRS, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) ........................... *passim*

*Vaughan v. Ky. Army Nat'l Guard*,
  No. 3:12-35, 2013 WL 211075 (E.D. Ky. Jan. 18, 2013) ............................................... 18

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ......................................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ......................................................................................................... 11

**STATUTES**

10 U.S.C. § 1552 ......................................................................................................... 18

42 U.S.C. § 2000bb-1 ................................................................................................. 20

**REGULATIONS**

32 C.F.R. § 865.112 .................................................................................................... 17

**OTHER AUTHORITIES**

AFI 36-2603, Air Force Board for Correction of Military Records,
    https://perma.cc/6HJ5-JUPP ................................................................................ 18

AFI 36-3206, Administrative Discharge Proceedings for Commissioned Officers
    https://perma.cc/75UU-DDE5 ............................................................................. 16

AFI 36-3207, Separating Commissioned Officers,
    https://perma.cc/VDJ4-R8FM ............................................................................. 16

AFI 36-3208, Administrative Discharge for Airmen,
    https://perma.cc/L8VJ-3X82 ........................................................................ 16, 17

Department of Air Force Instruction (DAFI) 52-201 (June 23, 2021),
    https://perma.cc/47QL-2SUM ............................................................................... 3

DAF COVID-19 Statistics – Apr. 19, 2022,
    https://perma.cc/A849-VQMD ...................................................................... 6, 13

## INTRODUCTION

Plaintiffs—18 members of the Air Force—challenge the Air Force's COVID-19 vaccination requirement as inconsistent with their religious beliefs. Plaintiffs' claims, brought pursuant to the Religious Freedom Restoration Act ("RFRA") and the First Amendment, should be dismissed for several reasons.

First, this Court lacks jurisdiction over claims for Plaintiffs who have not yet received a final decision on their religious accommodation request. All of Plaintiffs' claims depend on the Air Force denying their religious accommodation requests. *See* Compl., ECF No. 1 ¶ 2, PageID 3 (alleging that "requests for the religious exemption were denied"); *id.* ¶ 68, PageID 17 (Claim 1 under RFRA); *id.* ¶ 74, PageID 18 (Claim 2 under First Amendment based on "refus[al] to accommodate religious exemptions"). The claims of those Plaintiffs who have not received a final decision from the Air Force must be dismissed because they "depend on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (internal quotation marks omitted). Another district court in this Circuit recently dismissed a similar case challenging the DoD COVID-19 vaccine requirement as unripe because that plaintiff submitted a religious accommodation request but had not yet received a final decision. *Vance v. Wormuth*, No. 3:21-CV-730-CRS, 2022 WL 1094665, at *7 (W.D. Ky. Apr. 12, 2022). The Court should reach the same result here.

Second, Plaintiffs who have received a final denial of their religious accommodation requests still do not have ripe claims until the Air Force makes a final decision on what—if any—discipline or adverse consequence they will face for failure to vaccinate against COVID-19. For Plaintiffs on Active Duty, for example, their claims cannot be ripe until after their separation or discharge is final. As another court considering a RFRA challenge to vaccine requirements put it,

"While plaintiff argues that his discharge is likely, he has not been discharged at this point," so "Plaintiff's claim is not constitutionally ripe because his alleged injury is not certainly impending." *Roberts v. Roth*, No. CV 21-1797 (ABJ), 2022 WL 834148, at *4 (D.D.C. Mar. 21, 2022).

Third, Plaintiffs who have not exhausted their administrative remedies do not have justiciable claims. The Sixth Circuit has held that the factors identified in *Mindes* provide the "proper framework for analyzing the justiciability of [a] First Amendment" claim arising from an internal military decision. *Harkness v. Sec'y of Navy*, 858 F.3d 437, 444 (6th Cir. 2017) (citing *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971)). "[A]n internal military decision is unreviewable unless . . . [Plaintiffs have] exhaust[ed] available intraservice corrective measures." *Id.* (quoting *Mindes,* 453 F.2d at 201). Here, Plaintiffs have not exhausted administrative remedies where (1) the Air Force Surgeon General has not decided whether to approve their religious accommodation requests; (2) the Air Force has not made a final decision on any adverse consequences for an individual who refuses to receive the COVID-19 vaccination after receiving a final decision on appeal; or (3) Plaintiff waived, or otherwise declined to pursue, available appeals or administrative remedies, including to the Air Force Board for Correction of Military Records ("AFBCMR").

Finally, no Plaintiff has standing to advance a claim based on the time it has taken the Air Force to process religious accommodation requests. None has suffered an injury from waiting for a final decision because when awaiting a final decision on their accommodation requests, Plaintiffs are temporarily exempt from the vaccine requirements. In other words, while they wait, they are in the very same position (at least temporarily) as they would be had their request been timely granted.

For these reasons and others described below, the Court should dismiss Plaintiffs' claims.

**BACKGROUND**

Defendants previously set forth in their opposition to Plaintiffs' motion for a preliminary injunction and incorporate into this motion the background on the COVID-19 pandemic, the DoD COVID-19 vaccination directive, as well as the Air Force's implementing guidance. *See* Defs.' Opp'n to Pls.' Emer. Mot., ECF No. 27. Particularly relevant for this motion, all members of the Air Force who have submitted a religious accommodation request to be exempt from COVID-19 vaccination are "temporarily exempted from compliance" with the Air Force's COVID-19 vaccination requirement while their requests are pending. Department of Air Force Instruction (DAFI) 52-201 ¶ 2.12 (June 23, 2021), available at https://perma.cc/47QL-2SUM.

On February 16, 2022, Plaintiffs filed this lawsuit against the Secretary of the Air Force, the Air Force Surgeon General, multiple commanders, and the United States, alleging two claims: (1) a violation of RFRA "in light of [the] vaccine mandates" and for alleged failure to "timely process" some of Plaintiffs' exemption requests; and (2) a violation of the First Amendment for "refusing to accommodate religious exemptions." Compl. ¶¶ 65–75, ECF No. 1, PageID 17–18. On February 22, 2022, Plaintiffs filed a Motion for an Emergency Temporary Restraining Order and Preliminary Injunction. Pls.' Mot. 1, ECF No. 13, PageID 578. Plaintiffs' brief noted that, at the time of filing, only 4 out of 18 Plaintiffs had received a final decision from the Air Force on their religious accommodation requests. *Id.*, PageID 582–84. None had received final notice of any adverse or disciplinary action for failure to take the COVID-19 vaccine. *Id.*

After a hearing on March 25, 2022, the Court partially granted the request for a Preliminary Injunction on March 31, 2022, enjoining Defendants "from taking any disciplinary or separation measures against the Plaintiffs named in this action for their refusal to get vaccinated for COVID-19" or "taking any adverse action against Plaintiffs on the basis of this lawsuit or their request for

3

religious accommodation." Order, ECF No. 47, PageID 3203–04.[1] The injunction applied to all named Plaintiffs, not just those who received a final decision on their accommodation requests.

Plaintiffs moved to certify a nationwide class of members of the Air Force who have submitted a religious accommodation request that have not yet been granted. Pls.' Mot. for Class Cert., ECF No. 21, PageID 952. Defendants opposed the class certification motion. Defs.' Opp'n to Mot. for Class Cert., ECF No. 34, PageID 2194. Defendants also moved to sever pursuant to Rule 21. Defs.' Mot. to Sever, ECF No. 35, PageID 2309. The motions for class certification and to sever are both pending. Defendants now move to dismiss pursuant to Rule 12(b)(1) and (6).

## ARGUMENT

This motion is a factual attack on this Court's jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack is a challenge to the sufficiency of the pleading itself" and when considering that type of motion "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction," "no presumptive truthfulness applies to the factual allegations," and "the court is free to weigh the evidence" outside the pleadings to "satisfy itself as to the existence of its power to hear the case." *Id.* Since this motion to dismiss is a factual attack on the Court's jurisdiction, Defendants refer the Court to applicable Air Force Regulations like DAFI 52-201 and to declarations that contain updated details about the status of each Plaintiffs' religious accommodation request. Decl. of Maj.

---

[1] Defendants acknowledge that this Court, when granting preliminary judgment, initially found that "Plaintiffs' claims are ripe for adjudication" and that Plaintiffs did not need to exhaust military remedies. Order, ECF No. 47, PageID 3181–82. However, Defendants respectfully submit that with the benefit of additional briefing and time, the Court should reconsider those conclusions.

Gen. Sharon R. Bannister, Ex. 1; Decl. of Col. James A. Rigsbee, Ex. 2; Decl. of Col. Jocelyn. J. Schermerhorn, Ex. 3; Decl. of Col. Robert J. Moschella, Ex. 4; Decl. of Lt. Col. James C. Bowers, Ex. 5; Decl. of Lt. Col. Don R. Salvatore, Ex. 6.

## I.    Plaintiffs' Claims Are Not Ripe.

Plaintiffs' claims are not ripe for two reasons: (1) many Plaintiffs have not received a final decision from the Air Force regarding their religious accommodation request; and (2) for those who have received a final decision regarding their accommodation request, they have not received a final decision from the military about what, if any, consequence they might receive for failure to receive the COVID-19 vaccine.

The doctrine of ripeness comes "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 808 (2003) (internal citation and quotation omitted). A case is not ripe when the claim is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *New York*, 141 S. Ct. at 535 (internal quotation marks omitted). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Sec'y of Dep't of Health & Hum. Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

The three factors that "guide the ripeness inquiry" are "(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Berry v. Schmitt*,

688 F.3d 290, 298 (6th Cir. 2012).

### A. Plaintiffs Without a Final Decision on Religious Accommodation Requests Do Not Have Ripe Claims.

Plaintiffs who have not received a final appeal decision on their pending religious accommodation requests from the Air Force do not have ripe claims. This includes those Plaintiffs who have not yet submitted an appeal to the Surgeon General—Brett Martin, Peter Norris, Benjamin Leiby, Douglas Ruyle, and Jason Anderson. Ex. 1, ¶ 8 (Table). It also includes Plaintiffs whose appeals are pending—Edward Stapanon, Alex Ramsperger, Paul Clement, and Benjamin Rinaldi. *Id.* The claims for these Plaintiffs are unripe because the Air Force has not made a final decision and may decide the grant a religious exemption—just as it has already granted at least 46 religious exemption requests. DAF COVID-19 Statistics – Apr. 19, 2022, available at https://perma.cc/A849-VQMD.

Application of the three factors that "guide the ripeness inquiry" to the facts at issue here supports dismissal of Plaintiffs' claims as unripe. *Berry*, 688 F.3d at 298. The first factor of "the likelihood that the harm alleged by the plaintiffs will ever come to pass" considers "how imminent the threat of prosecution is." *Id.* Here, the Plaintiffs who have a pending religious accommodation request do not face any "imminent threat of prosecution," *see id.*, because they are temporarily exempt and Air Force may very well grant their exemption request—and if the Air Force grants the request, they face no consequences for not taking the COVID-19 vaccine, DAFI 52-201 ¶ 2.12. Any purported harms from a future potential denial of the accommodation request (and even then, a subsequent refusal to take a COVID-19 vaccine) "depend[s] on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump*, 141 S. Ct. at 535 (citation omitted). As the court in *Vance* put it: "[Plaintiff's] military future is uncertain not only with respect to the unresolved appeal of the initial denial of his exemption request but also due to other

current independent factors which may entirely moot his request." *Vance*, 2022 WL 1094665, at *7.

The second factor at issue—whether the factual record is sufficiently developed—also counsels in favor of dismissal because presently "the Court has an incomplete factual record and thus could not provide a fair adjudication of the merits of the parties' positions." *Id.* When assessing an accommodation request, the Air Force considers whether there "is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, [or] health or safety of the member [or] the unit." DAFI 52-201 ¶ 2.1. "Any restriction on the expression of sincerely held religious beliefs must use the least restrictive means with respect to the applicant to achieve the compelling government interest." *Id.* ¶ 2.4.

Since the Air Force will apply the facts of each individual case to the same factors that this Court must consider, the Court should await a final decision by the Air Force, which will address, as applicable, whether vaccination is the least restrictive means to serve a compelling governmental interest. "The development of a factual record by [the Air Force] and its interpretation of the law as applied to these particular facts is crucial. The incomplete record in the case weighs against a finding of ripeness." *Vance*, 2022 WL 1094665, at *7 (citing *Seepe v. Dep't of the* Navy, 518 F.2d 760 (6th Cir. 1975)).

Addressing Plaintiffs' claims before the religious accommodation requests of these ten Plaintiffs are finally adjudicated also "would require the Court to adjudicate internal military affairs before the military chain of command has had full opportunity to consider the accommodation requests at issue." *Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021); *see also Poffenbarger v. Kendall*, --- F. Supp. 3d ---, 2022 WL 594810, at *9 (W.D. Ohio Feb. 28, 2022) (citing *Church*, 2021 WL 5179215, at *10); *see also Reno v. Cath.*

7

*Soc. Servs., Inc.*, 509 U.S. 43, 59 (1993) ("[T]he promulgation of the challenged regulations did not itself give each . . . class member a ripe claim; a class member's claim would ripen only once he took the affirmative steps that he could take before the [agency] blocked his path by applying the regulation to him."). The Defendants should be given the opportunity to determine whether to approve each religious accommodation request or, if denied, develop the record as to why there is a compelling government interest in vaccinating the member and no less restrictive means is available. The Court will be unable to determine whether the Defendants have met their burden when the record under review for that determination does not yet exist for these Plaintiffs.

The third factor—"hardship to the parties if judicial relief is denied at this stage in the proceedings"—also counsels in favor of dismissal. *Berry*, 688 F.3d at 298. The facts of *Berry v. Schmitt* offers an on-point contrast. There, plaintiff brought a pre-enforcement challenge to the Kentucky Bar Association's letter informing him that it would punish plaintiff if he criticized the Kentucky Legislative Ethics Commission. The Sixth Circuit found imminent harm and hardship from self-censorship because "Berry alleged an intention to engage in speech prohibited by" the Kentucky Bar Association, "as well as a reasonable fear that he would be punished for doing so." *Id*. The facts of this case are quite different. While Plaintiffs do not intend to receive currently available COVID-19 vaccines, those with pending requests are *exempt* from the requirement and thus cannot reasonably fear that they will be punished for not receiving the COVID-19 vaccines while they await a final decision—a decision which may grant Plaintiffs an exemption. *See Vance*, 2022 WL 1094665, at *7 (noting that "dismissal of the action will work no hardship on Vance at this stage"). Unlike self-censorship harm in *Berry*, there is no harm to Plaintiffs in this case while they wait for a decision from the Air Force. In other words, no Plaintiff whose request is pending currently has a cognizable harm sufficient to give him or her standing.

8

Accordingly, all three *Berry* factors support a finding that Plaintiffs who have not received a final decision from the Air Force do not have ripe claims. Those ten Plaintiffs should be dismissed from this case without prejudice, allowing them to refile if their claims become ripe.

## B. Plaintiffs Who Have Not Been Disciplined Do Not Have Ripe Claims.

Plaintiffs' claims are unripe for the separate reason that none of the Plaintiffs have received final decision from the military on what—if any—consequences they will face for failing to receive the COVID-19 vaccine. The denial of an accommodation request does not constitute a substantial burden on Plaintiffs' purported religious beliefs. It is the potential consequences the Plaintiffs face that may give rise to a substantial burden, but those consequences, if any, are far from certain.

The Supreme Court in *Toilet Goods Association v. Gardner*, 387 U.S. 158 (1967), held a challenged regulation unripe for review when the regulation was permissive rather than mandatory—*i.e.*, one that did not compel the agency to act but only authorized the agency to exercise a discretionary power to act. Similarly, here, Air Force guidance instructs that "service members who continue to refuse to obey a lawful order to receive the COVID-19 vaccine after their exemption request or final appeal has been denied or retirement/separation has not been approved will be subject to *initiation* of administrative discharge." Dec. 7, 2021, Secretary of the Air Force Memo, ECF No. 27-8, PageID 1656–57 (emphasis added). But the Air Force's "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008); *see also Short v. Berger*, 22-cv-01151, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022) (holding that plaintiff challenging denial of religious accommodation request for COVID-19 vaccine had "not exhausted administrative remedies" despite receiving a decision on his appeal because "he still must undergo separation proceedings before any permanent adverse consequences are imposed"), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022). The service

9

member has an opportunity to respond before the discharge recommendation goes to the separation authority, and—depending on the type of separation and the service member's time in service—the decision may move to a higher level, and the service member may be entitled to a formal administrative hearing before a decision is made regarding their discharge. *See infra*, II.B.

Thus, even for the Active Duty Plaintiffs who have completed the appeal process for their religious accommodation requests, their claims are unripe because the Air Force has not yet made a final determination on separation. Ex. 3, ¶¶ 3–4; Ex. 4, ¶ 3; Ex. 5, ¶ 3; Ex. 6, ¶ 3; *see Roberts*, 2022 WL 834148, at *4. And none of the Reserve Plaintiffs who received a decision from the Surgeon General have a ripe claim because none have been separated or reassigned to the IRR. Ex. 2, ¶¶ 2–6.

## II.    Plaintiffs Have Failed to Exhaust Their Administrative Remedies.

Plaintiffs' claims are non-justiciable because they failed to exhaust their administrative remedies. In this Circuit, "a failure to exhaust administrative remedies . . . is not a jurisdictional bar, but rather a condition precedent to an action in federal court." *McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008).[2] "[A]n internal military decision is unreviewable unless two initial requirements are satisfied: (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Harkness*, 858 F.3d at 444 (citing *Mindes*, 453 F.2d at 201). Although Plaintiffs bring constitutional and statutory claims, they have failed to exhaust available intraservice measures and thus do not have justiciable claims. *Id.*

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to

---

[2] Because failure to exhaust is not a jurisdictional bar, the court in *Vance* did "not address the arguments made with respect to the *Mindes* factors" because he found, "at a more basic level, that subject matter jurisdiction is lacking; that is, that the claims are not justiciable as they are not ripe." *Vance*, 2022 WL 1094665, at *4 n.7.

perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). The need to apply exhaustion doctrine is especially acute in the military context, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975)); *Parker v. Levy*, 417 U.S. 733 (1974); *Von Hoffburg v. Alexander*, 615 F.2d 633, 637–38 (5th Cir. 1980) ("The strict application of the exhaustion doctrine in military discharge cases serves to maintain the balance between military authority and the power of federal courts."); *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[T]he salutary rule [is] that an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." (citation omitted)); *Doe v. Ball*, 725 F. Supp. 1210, 1211 (M.D. Fla. 1989) (requiring exhaustion before bringing facial challenge to Navy regulations), *aff'd sub nom. Doe v. Garrett*, 903 F.2d 1455 (11th Cir. 1990).

Courts should give the military the ability, in the first instance, to apply its judgment and expertise to the "[e]valuat[e] the risks to the health and safety of other soldiers, as well as to the combat readiness of the force, posed by the inclusion of unvaccinated [service members] in the ranks necessarily involves 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force[, which] are essentially professional military judgments.'" *Short*, 2022 Wl 1051852, at *5 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *see also Seepe*, 518 F.2d at 764 (holding that service member failed to exhaust his remedies in regard to discharge, and explaining that exhaustion could not be excused where facts were "entirely service-oriented" and therefore "demanded military expertise"). "The Supreme Court has explained that courts 'give great deference to the professional judgment of military authorities

11

concerning the relative importance of a particular military interest.'" *Poffenbarger*, 2022 WL 594810, at *17 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 25 (2008)); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981) (explaining that because of the "healthy deference to legislative and executive judgments in the area of military affairs," courts employ a relaxed scrutiny in reviewing military policy); *Hartmann v. Stone*, 68 F.3d 973, 984 (6th Cir. 1995) ("Clearly the courts must grant the military wide latitude in its operations.").

### A.     Plaintiffs Without a Final Decision on Religious Accommodation Requests Have Not Exhausted Their Administrative Remedies.

The Air Force allows its members to submit religious accommodation requests for the requirement to receive the COVID-19 vaccine.  If an initial request is denied, there is an appeals process to the Surgeon General of the Air Force.  Ex. 1, ¶ 3.  Those plaintiffs who have not exhausted administrative remedies for their religious accommodation requests through final decision from the Surgeon General do not have justiciable claims.  *See id.*, ¶ 8 (Table).

Defendants acknowledge that this Court has concluded, at least preliminarily, "exhaustion in this instance is futile."  *Doster v. Kendall*, ---F. Supp. 3d---, 2022 WL 982299, at *9 (S.D. Ohio Mar. 31, 2022).  Defendants respectfully disagree and preserve their position on this threshold question.  First, Plaintiffs who have not received a final decision from the Air Force Surgeon General on their religious accommodation request have no standing to bring a RFRA or First Amendment claim since they are currently exempt from the COVID-19 requirement—their religious exercise is not currently burdened and their claims are not ripe.  The futility exception to the exhaustion doctrine cannot create Article III standing for those individuals.

Second, even if those Plaintiffs without a final decision from the Surgeon General had Article III standing, their claims would still not be justiciable because they have not exhausted

their administrative remedies and the futility doctrine would not apply.[3]  "Even in the military setting the requirement of exhausting administrative remedies is waived if resort to those remedies would be futile, . . . but in that setting the exception for futility is interpreted narrowly because of the natural reluctance of civilian courts to intervene in a sphere of activity about which they are more than usually ignorant."  *Kawitt v. United States*, 842 F.2d 951, 953 (7th Cir. 1988) (citation omitted).  As an example of the appropriate application of the exhaustion doctrine, even when a plaintiff challenged his discharge that was ordered by the Secretary of the Army himself, the Fifth Circuit found that requiring him to exhaust available intraservice remedies to a Board whose decisions were subject to the discretionary power of the Secretary of the Army was still not futile. *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974).

Applying the correct legal standard to the facts shows that exhaustion of remedies through a final decision from the Air Force Surgeon General is not futile.  Major General Sharon Bannister, Air Force Director of Medical Operations, has submitted a sworn declaration affirming "every appeal is considered on an individual basis and carefully reviewed by the Surgeon General and his staff."  ECF No. 34-2, ¶ 25, PageID 2239; *see* Ex. 1 ¶ 7.  The Air Force has granted at least 46 requests, and the Surgeon General granted at least five of those on appeal after they were initially denied by the initial approval authority.  DAF COVID-19 Statistics – Apr. 19, 2022, available at https://perma.cc/A849-VQMD.  Indeed, the total approved religious accommodation requests now *nearly double* the 26 approved Active Duty Administrative Exemptions.  *Id.*  The process may be rigorous, but it is not futile.

---

[3] The two doctrines can overlap depending on the circumstance.  For example, Plaintiffs who have a pending religious accommodation request or pending appeal do not have standing and have not exhausted their administrative remedies. Plaintiffs who receive an initial denial of their religious accommodation request but choose not to appeal to the Surgeon General might have Article III standing because they no longer would be temporarily exempt from the COVID-19 vaccine requirement would, but their claim would not be justiciable for failure to exhaust available administrative remedies because they failed to appeal to the Surgeon General.

**B. Even Plaintiffs Who Have Final Decisions On Religious Accommodation Requests Have Not Exhausted Available Administrative Remedies.**

Even Plaintiffs who have received a final decision on their appeal to the Air Force Surgeon General still have not exhausted available administrative remedies. *See Short v. Berger, et al.*, No. CV-22-00444, 2022 WL 1203876, at **5, 10–11 (D. Ariz. Apr. 22, 2022) (Marine plaintiff's religious accommodation request appeal was denied, but RFRA claim not justiciable because administrative remedies were still available to challenge potential dismissal). Plaintiffs whose requests are denied and who still fail to comply with COVID-19 vaccination requirements face two potential final consequences.[4] Active Duty Air Force who refuse to take the COVID-19 vaccine "will result in the member being subject to initiation of administrative discharge proceedings." *See* Dec. 7, 2021, Secretary of the Air Force Memo, Att. 1 (Supplementary Guidance for Members of the Air Force Reserve), ECF No. 27-8, PageID 1656. Members in the Air Force Reserve who refuse to take the COVID-19 vaccine "will be placed in a no pay/no points status and involuntarily reassigned to the Individual Ready Reserve ("IRR")." *See id*. PageID 1658–59. No Plaintiff has received a final decision on any discipline for failure to receive the COVID-19 vaccine. *See* Ex. 2, ¶¶ 2–6; Ex. 3, ¶¶ 3–4; Ex. 4, ¶ 3; Ex. 5, ¶ 3; Ex. 6, ¶ 3.

      1.     <u>Discharge and Separation Procedures.</u>

For Active Duty members of the Air Force, the *initiation* of separation proceedings for failure to receive a COVID-19 vaccine is just the beginning of an extensive administrative process where members continue to have the right to present evidence and argument that separation would be contrary to statute or the Constitution. Plaintiffs who have not yet completed separation or discharge processes have not exhausted their intra-service remedies. *See Short*, 2022 WL

---

[4] Plaintiffs in this case include Active Duty Air Force and members of the Air Force Reserve. No Plaintiff is in the Air National Guard, which has different procedures for those who refuse to take the COVID-19 vaccine. *See* Dec. 7, 2021, Secretary of the Air Force Memo, Att. 2, ECF No. 27-8, PageID 1660–61.

1203876, at **5, 10–11.

   *Officers.* Commissioned officers facing discharge proceedings who have completed six or more years of active commissioned service are generally entitled to a Board of Inquiry.  *See* AFI 36-3206, Administrative Discharge Proceedings for Commissioned Officers, Chapter 7, available at https://perma.cc/75UU-DDE5; *see also* AFI 36-3207, Separating Commissioned Officers, ¶ 3.16.1.1 (officers may be dismissed for cause for "failing to meet the prescribed standards of performance and conduct"), available at https://perma.cc/VDJ4-R8FM.  A Board of Inquiry, made up of Department of the Air Force Officers, may recommend removal or discharge, among other things.  *Id.* ¶¶ 7.31.1–7.31.4.  If the recommendation is to retain the officer, the member is notified and the action is ended.  *See id.* ¶¶ 4.1 – 4.1.1. ("When a . . . board of officers . . . retains an officer on active duty, the [show cause authority] may reinitiate discharge action only on the basis of new information that again shows the officer may be subject to administrative discharge"); *see also id.* ¶ 4.2.  Commissioned officers with less than six years of active commissioned service who are facing discharge are entitled to present evidence to the appropriate show-cause authority.  AFI 36-3206, Ch. 4; *id.* ¶ 1.1.  Any discharge recommendations from a Board of Inquiry or Show-Cause Authority are reviewed by the Air Force Personnel Board (AFPB).  *Id.* Ch. 6.  The AFPB may decide to retain the officer on its own initiative.  *See id.* ¶¶ 6.5.1; 6.6.1; 6.9.1.  But if the AFPB recommends removal or other adverse action, it makes a recommendation for a final decision by the Secretary of the Air Force.  *See id.* ¶ 6.10.  An officer is only removed after a decision of the Secretary of the Air Force or the Secretary's designee.  *See id.* ¶ 6.11.

   *Enlisted Airmen.* The processes for involuntarily separating enlisted members of the Air Force are described in AFI 36-3208, Administrative Discharge for Airmen, available at https://perma.cc/L8VJ-3X82.  If an enlisted Airman facing discharge has served in the Air Force

for six or more total years, or if the Airman is a non-commissioned officer, the Airman "must be offered an opportunity for a hearing by an administrative discharge board." *Id.* ¶ 6.2.2; *see also id.* Ch. 8 (Administrative Discharge Boards). If a board recommends the member be discharged, the approval authority may (1) direct retention, (2) direct execution of an honorable discharge, (3) direct execution of a general discharge, (4) and authorize an honorable or general discharge but suspend the discharge for probation and rehabilitation. *Id.* at Table 6.11. If a board recommends retention, the approval authority may not authorize discharge, but may only (1) direct retention or (2) forward a recommendation to the Secretary of the Air Force for discharge.[5] *Id.*

For those enlisted Airmen who are not eligible for an Administrative Discharge Board, the process is initiated by the unit commander and the decision authority is generally a Special Court-Martial Convening Authority in the member's chain of command. *Id.* ¶¶ 5.56; *see also* ¶ 6.9 (describing steps for initiating commander). The Special Court-Martial Convening Authority "personally approves or disapproves recommendations for discharge" when the basis is misconduct and may (1) retain the member or (2) direct a general discharge. *Id.* ¶ 5.56. If the Special Court-Martial Convening Authority recommends an honorable discharge based on misconduct, that recommendation is forward to the General Court-Martial Convening Authority, who may approve or disapprove that recommendation. *Id.* ¶ 5.56.2.

2. <u>Reassignment to the Individual Ready Reserve.</u>

Before members of the Air Force Reserve are transferred to the IRR, they will receive a notification that their command recommends transfer to the IRR for failure to comply with the "COVID-19 vaccination individual medi[c]al requirement." *See* ECF No. 42-2, PageID 2818. After receiving the notification, a member is "entitled to submit written statements and/or

---

[5] Additional safeguards and due process are implemented in certain circumstances, such as for service members for who have completed at least 16 years but less than 20 years of active service or service members who have made an unrestricted report of sexual assault. *See* AFI 36-3208 generally.

documents to be considered" to challenge the transfer recommendation. *Id.* The Air Force provides "military legal counsel" to help with any appeal at no cost to the member, or individuals may use their own private counsel. *Id.* Documents for any appeal are generally due within 15 days after the individual is notified of the transfer recommendation.

Any Plaintiff who fails to appeal the involuntary assignment to the IRR has chosen not to avail himself of available administrative remedies. Plaintiff Dills, for example, did not appeal his reassignment to the IRR and thus did not exhaust his available administrative remedies. His notification of reassignment to the IRR acknowledgement form had two sentences: "I acknowledge receipt of this memorandum on 7 Jan 22 (date) at 0810 (time). I do / do not intend to provide a written appeal and understand that all documentation is due to my command NLT [no later than] ____ (date)." ECF No. 42-2, PageID 2819. Plaintiff Dills confirmed that he signed the acknowledgment and that "do not" was circled on the form. Tr. at 81:18–22, ECF No. 48, PageID 3286. At the evidentiary hearing, Plaintiff Dills testified that he did not appeal because he "didn't realize that was an option." Tr. at 71:16–22, ECF No. 48, PageID 3276. But Courts have routinely held that professed lack of knowledge of available administrative remedies does not excuse failure to exhaust. *See Lockhart v. United States*, 420 F.2d 1143, 1147 (9th Cir. 1969) (affirming dismissal when Plaintiff's "only excuse for not appealing his classification was that he did not know that failure to do so would bar later efforts to challenge that classification"). Plaintiff Dills has not exhausted available administrative remedies and thus does not have a justiciable claim.

### C. Exhaustion Means Pursuing Available Appeals, including the AFBCMR.

Even if a member of the Air Force is disciplined, the Air Force provides additional avenues for administrative review, including the Air Force Discharge Review Board and the Air Force Board for Correction of Military Records. 32 C.F.R. § 865.112(f) & (i) (Discharge Review Board can review whether "a certain course of action violated his or her constitutional rights"); 10 U.S.C.

§ 1552(a)(1) (Board of Correction of Military Records are empowered to "to correct an error or remove an injustice"); AFI 36-2603, Air Force Board for Correction of Military Records, available at https://perma.cc/6HJ5-JUPP. No Plaintiff has exhausted these available intraservice administrative remedies. *See* Ex. 2, ¶¶ 2–6; Ex. 3, ¶¶ 3–4; Ex. 4, ¶ 3; Ex. 5, ¶ 3; Ex. 6, ¶ 6.

"A claim will be considered exhausted either after the Board [for Correction of Military Record]'s original decision, if there is no request for reconsideration, or after a denial of a timely request for reconsideration." *Davis v. United States*, 589 F.3d 861, 865 (6th Cir. 2009); *see Covill v. United States*, 959 F.2d 58, 60 (6th Cir. 1992) (same). When military plaintiffs fail to exhaust before filing suit, federal courts will dismiss "without prejudice to afford [them] the opportunity to exhaust all intraservice remedies," including the BCMR. *Bickel v. Delaware Air Nat'l Guard*, No. 2:18-CV-00119, 2018 WL 2183296, at *7 (S.D. Ohio May 11, 2018); *Montgomery v. Sanders*, No. 3:07-CV-470, 2008 WL 4546262, at *5 (S.D. Ohio Aug. 18, 2008) (dismissed for failure to exhaust remedies, including AFBCMR); *Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-35, 2013 WL 211075, at *3 (E.D. Ky. Jan. 18, 2013) (explaining that "the Court concludes that Vaughan will be required to exhaust his administrative remedies" through the Army BCMR); *Heidman v. United States*, 414 F. Supp. 47, 49 (N.D. Ohio 1976) (dismissing for failure to exhaust remedies through BCMR).

Courts across the country similarly consider administrative appeals exhausted only after "petitioning to the [relevant Board for Correction of Military Records ("BCMR")] requesting the relief sought in th[e] action and receiving the adverse determination." *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983). "[T]he salutary rule [is] that an aggrieved military officer must first exhaust his administrative remedies with his particular service's Board for Correction of Military Records prior to litigating his claims in a federal court." *Bois*, 801 F.2d at 468 (citation

omitted) (requiring exhaustion even for constitutional claims); *see also, e.g.*, *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) (holding claim premature for "fail[ing] to exhaust available service-connected remedies by appealing to the [BCMR]."); *Hodges*, 499 F.2d at 420 (describing the "two types of administrative bodies [that] provide review of discharge decisions" that must be exhausted); *Mindes v. Seaman*, 453 F.2d at 198 (plaintiff had "travers[ed] all available intraservice procedural reviews—ending with a denial of relief by the civilian [BCMR] [before he] filed a complaint" in civilian federal district court); *Layman v. Harvey*, 2007 WL 430678, at *6-10 (M.D. Fla. 2007) (dismissing claim against military for failing to exhaust "remedies to the ABCMR").

III.    **The Court Should Dismiss Claims Arising from Any Alleged Delay in Processing Religious Accommodation Requests.**

Plaintiffs' challenge to the alleged delay in processing their religious accommodation requests should also be dismissed.  Compl. ¶ 68.  Plaintiffs bring RFRA claims where the Air Force has taken longer to process their religious accommodation requests than the processing timelines set out in Department of Defense Instruction 1300.17, Table 1.  But no Plaintiff has standing to bring such a claim because no Plaintiff has suffered any injury from the purported delay.

Plaintiffs bear the burden to show that each of them has suffered an "injury in fact," which is an "irreducible constitutional minimum" element of standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered" "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).  Given these constitutional requirements, Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-

19

fact requirement of Article III." *Id.* at 341.

No Plaintiff can show that they have been harmed from alleged delays in processing religious accommodation requests because the Air Force grants every person who submits a religious accommodation request from the COVID-19 vaccination a temporary exemption during the review of their request and appeal. DAFI 52-201 ¶ 2.12. In other words, while they wait for a final decision from the Air Force, Plaintiffs are generally treated the same as if their request had already been granted, and they are not subject to any adverse administrative or disciplinary action. *Id.* Since each Plaintiff enjoys a temporary exemption while awaiting a decision, this Court has no jurisdiction over any claim arising from alleged delay. *Spokeo*, 578 U.S. at 338.

Even if a Plaintiff had standing, the Complaint fails to allege a viable RFRA claim based on the accommodation review taking longer than the processing times described in DoD 1300.17. To make out a claim under RFRA, Plaintiffs must show that their exercise of religion has been substantially burdened by any delay, and even then, the government action still satisfies RFRA if it "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(2). Here, as a matter of law, Plaintiffs cannot show any substantial burden because they have temporary exemptions while their accommodation requests are adjudicated. DAFI 52-201 ¶ 2.12. Even taken to the extreme, if the Air Force *never* makes a decision on Plaintiff's pending religious accommodation requests, their religious exercise would not be substantially burdened because Plaintiffs would *never* be ordered to take the COVID-19 vaccine. Any RFRA claim based on alleged delay should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: April 25, 2022                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

                                         ALEXANDER K. HAAS
                                         Director, Federal Programs Branch

                                         ANTHONY J. COPPOLINO
                                         Deputy Branch Director
                                         Federal Programs Branch

                                         */s/ Zachary A. Avallone*
                                         ANDREW E. CARMICHAEL
                                         AMY E. POWELL
                                         Senior Trial Counsel
                                         STUART J. ROBINSON
                                         Senior Counsel
                                         ZACHARY A. AVALLONE
                                         COURTNEY D. ENLOW
                                         LIAM HOLLAND
                                         CATHERINE YANG
                                         CASSANDRA SNYDER
                                         Trial Attorneys
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, DC 20005
                                         Tel: (202) 514-2705
                                         Email: zachary.a.avallone@usdoj.gov

                                         *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2022, I electronically filed the foregoing paper with the

Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such

filing.

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Email: zachary.a.avallone@usdoj.gov