**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Cincinnati Division**

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | Case No.: 1:22-cv-00084 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

___

| | |
|---|---|
| **ANDREA CORVI, et. al.** | : |
| Intervening Plaintiffs | : |
| v. | : |
| **Hon. FRANK KENDALL**, et. al. | : |
| Defendants | : |

**INTERVENING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION[1] WITH DECLARATION OF ANDREA CORVI IN SUPPORT[2]**

Intervening Plaintiffs Andrea Corvi, Timothy J. Ablay, Derek C. Anderson, Troy

Anderson, John L. Arendale, Jeff Aucoin, Judson T. Babcock, Ashleigh M. Baker, Dennis Baker,

Mathew G. Barbazon, Richard T. Barker, Richard T. Barker, Jacob P. Batt, Breah C. Terry

---

[1] In an effort to segregate the need for urgent relief from the need for emergency relief, we have identified three intervening Plaintiffs who require Temporary Restraining Order Relief: Intervening Plaintiffs' Jonathan Oberg, Mark Haberle, and J.T. Nipp. We will file a Motion for a Temporary Restraining Order separately on their behalf. We are hopeful that additional restraining order motions are not necessary while this motion is briefed, but respectfully reserve the right to file same, should the Defendants take action that requires such relief in the interim.

[2] We have secured identical Declarations with Administrative materials, from the other 229 Intervening Plaintiffs, and, if the Court or Government would like, we can and will file same. However, because of the sheer volume of the materials involved, we have submitted the Declaration of the First Named Intervening Plaintiff, Andrea Corvi. We also have supported this request for relief with the tendered Verified Intervening Complaint, with verifications from each of the 230 Intervening Plaintiffs. [DE#52-1].

Bauer, Josiah W. Beggs, Jason J. Benedict, Nolan R. Bet, Kimberly D. Bitter, Ryan Bowen, Eric

Braddock, John Bragonier, Christoher Brennan, Jacob Brooks, Nicholas E. Brooks, Ashley M.

Brown, Briante Brown, Bryan J. Brown, Erik C. Brown, Tyler P. Brown, Justin A. Buda,

Rebecca A. Burbridge, Mark W. Burns, Samuel Butler, Richard Capuano, Austin L. Carapezza,

Andrew Carlson, Bryan Case, Robin Castle, John D. Caulkins, Joshua Chambers, Thomas

Chapman, Brent Chisholm, Howard E. Church, Tanya Clark, Jonathan R. Clay, Alan Cleveland,

Allen Cohen, Kristina Coleman, Lauren Collins, Kenneth L. Corbitt, Daniel Cotton, Richard K.

Davis, Kyle P. DeHart, Matthew Delpit, Ian Despars, Anastasia DeWitt, David Dey, Brandon L.

Dimick, Carson Dodds, Morgan Dolan, Brandon Downey, Amy K. Dudley, John Eddington,

Daniel Feliciano, Ashleigh Foltz, Benjamin D. Ford, Jake Ford, Michael F. Forostoski, Christina

Franco, Bryant Friend, Jessica M. Fruth, Alissa Garnett, Sarah Garza, Keith R. St. George, Jason

E. Gessler, Michelle M. Gill, Connor J. Gilliland, Tyler Gilliland, Andrew Greulich, Jimmy L.

Griffith, Eric Grubb, Christopher M. Grumbine, Mark Haberle, Karrie Haddad, Brady Hanlon,

Noah Hart, Alexander Hawthorne, Brian S. Haynes, Luke Haywas, Kathleen Hendershott, Jason

W. Henderson, Brian Henline, Timothy Hilgert, Hana M. Hill, Tyler A. Hislop, Alexander Horst,

David D. Hunziker, Robert Hutsell, Rommel Jarrette, Noah Jennings, Jeffrey Johnson, Jennifer

Johnson, Nathaniel C. Johnson, Joel Joly, Jarreau B. Jones, Jeffrey Jones, Travis Jones, Brittany

Justus, Daniel S. Keeney, Jeffrey Kellogg, Robert Kershner, Joseph Kieffer, Christian P. Klein,

Christopher Knief, Aaron Kraemer, Jordan Ladner, Jacob H. Laird, Zachary N. Land, Amber N.

LaRue, Brandon Lee, Jose A. Leon, Joseph Lestina, Jonathan Lewenthal, Jeffrey Lippert, Emily

Locke, Nathaniel Loftin, Stephanie Long, Joshua Lyford, Stephen Maddox, Kyle Maeger, Craig

J. Maguire, Patrick Magyari, Gabrial Marcus, John Mark, Lucila Sanchez Martinez, John C.

Matuszak, Curtis L. Mayes, Kenneth Mayfield, Zachary W. McCarty, Matthew J. McGuinness,

2

Kyle McMann, Thomas M. Meacham, Jyoti Mehta, Grace Melrose, Michael P. Miranda, Jason Moffat, Michael T. Morrisette, Enrique Navarro, Joshua N. Nedrow, Evin Negron, Daniel G. Nelson, Jason Niederhauser, John T. Nipp, Jonathan A. Oberg, Ikenna K. Okemiri, Deion Oliver, Walter Oliver, Tyler Overman, Angel Padillo, Ezra Paul, Carl Pawling, Christopher Peck, James A. Peterson, Teressa Petosky, Cameron Philips, Coty Pitman, John Poe, Benjamin T. Pope, Jamie A. Pope, Charles Prichard, Chance Pritchard, Michael Pustelny, Caleb J. Pym, Mark Quinn, Samuel T. Reed, Christopher Resolute, Alexander Rindo, Carolyn Rocco, Carolina Rodriquez, Oliver L. Roe, Jill Rogers, Nathan Rogers, Darryl Roland, Nathan A. Ross, Ingabritt Salazar, Chris Samples, Tonya Satchell, Brennan Schilperoort, Christopher Schobinger, Amber Schoenberger, Zachary H. Schultz, Jolyn Schwartz, Barry R. Scott, Kyle Seiber, Jason Shaffer, Rachel M. Shaffer, Veronika Y. Sheldon, Matthew Shemo, Colby E. Shull, Daniel Sieben, Alberto Sigala, Jared Skipper, Adam J. Smith, Grace Y. Smith, Laura Smith, Michael Smith, Kenton Snider, David Spellman, Matthew W. Spomer, Joshua C. Stallard, Joshua Stoll, Bronson M. Stone, Clinton Tammen, Patrick Taylor, Andrew Tonnell, Joseph Tran, Joshua Trantham, Timothy Treadway, Aaron D. Ware, Michael Warren, Joshua Welter, Christina Williams, Nathan D. Williams, Kyle J. Wilson, Michael J. Wirges, Scott P. Wolford, Kimberlymae Wood,Brett Woodring, Luke Wright, and Phillip Zencey (collectively "Intervening Plaintiffs"), respectfully request a preliminary injunction on their behalf (or that the existing Preliminary Injunction, issued in favor of the original 18 Plaintiffs, be extended to provide them protection).

Intervening Plaintiffs seek a Preliminary Injunction, pursuant to FRCP 65, that keeps the Department of the Air Force from taking administrative or punitive action against them (or separating them from the service), in the same manner and the same scope of relief as the

existing Preliminary Injunction. A Memorandum in Support is attached hereto, and a proposed

order has been tendered.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth Brehm (admitted PHV)
Wendy Cox (PHV pending)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

/s/Thomas Bruns
Thomas Bruns (OH 0051512)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890
**Attorneys for Plaintiff**

## MEMORANDUM IN SUPPORT

### I.     FACTS

On or about September, 2021, Defendant Kendall, Secretary of the Air Force, issued an

order to members of the Air Force and Space Force to be vaccinated for COVID-19. (Int. Pl.'s

Ver. Compl., DE#52-1, ¶ 236). On November 29, 2021, the Air Force placed a hold on any

Permanent Change of Stations for unvaccinated members of the Air and Space Force, effectively

pausing duty changes, and career progression, for personnel who had pending vaccination exemptions. (*Id.*, ¶ 237).

All of the Plaintiffs have sought religious exemptions from the vaccination requirement, as outlined in the following paragraphs, and pursuant to the federal Religious Freedom Restoration Act ("RFRA") (42 USC 2000bb), and its implementing regulations, including, without limitation, Department of Defense Instruction ("DoDI") 1300.17. (*Id.*, ¶ 238).[3]

<u>The Intervening Plaintiffs' Religious Accommodation Requests</u>

Because of the number of Intervening Plaintiffs, it is sufficient to state that all 230 of the Intervening Plaintiffs (i) sought and submitted a temporary religious accommodation request to the Department of the Air Force's vaccination order on the grounds that the requirement substantially burdens their sincerely held belief, (ii) had an Air Force/Space Force Chaplain confirm the sincerity of those beliefs; (iii) had their MAJCOM/senior commander deny the religious accommodation request, using form letters, in a systemic pattern and practice for the purpose of uniformly denying such requests absent an end-of-service status; and (iv) appealed to the Air Force Surgeon General, exhausting any intra-service remedies. (*Id.*, ¶¶ 2-232, 246). None have had their request granted. *Id.*

<u>The Handling of Religious Accommodation Requests by the Department of the Air Force</u>

On October 19, 2021, Air Force leaders attended the CORONA3 conference, including all MAJCOM commanders, and those who were responsible for adjudicating accommodation

---

[3] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited 2/16/2022). Page 10 of this Instruction contains processing timelines for religious accommodation requests, that require action within 30 days for Active-Duty Personnel, and 60 days for Reservists from the relevant action authority (i.e. the General Court Martial Convening Authority); and, for appeals, 60 days from submission.

requests to the Air Force's vaccine mandate. (*Id.* at ¶ 239). The 2021 CORONA Conference was held at the United States Air Force Academy. (*Id.*) Whistleblowers have reported that all Chaplains and all persons other than those MAJCOM commanders responsible for adjudicating accommodation requests to the Air Force's vaccine mandate, were asked to leave the room, so that the Secretary of the Air Force's expectations concerning religious accommodation requests could be communicated to Air Force senior leaders. (*Id.* at ¶ 240). Upon information and belief, the Secretary of the Air Force and/or his designees, communicated that no religious accommodations could or should be approved for anyone who would be remaining in the Department of the Air Force. (*Id.* at ¶ 241).

As of the date of the Intervening Complaint, the Department of the Air Force has received thousands of requests for religious accommodation, has only approved 42 – all of them at the end of their careers, who were otherwise eligible for an administrative exemption, and has denied 5,129 initial requests; and 1,692 final appeals, for a total of 6, 821 denials. In the meantime, the Air Force currently has granted 1,013 medical exemptions, and 1,273 administrative exemptions.[4] (*Id.* at ¶ 242). As of April 12, the Air Force has administratively separated 261 active-duty Airmen.[5] (*Id.*)

The granting of more than two thousand medical and administrative exemptions belies any assertion that vaccination is mission-critical and that no exemptions can be granted. (*Id.* at ¶ 243). Upon information and belief, Defendant Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy. (*Id.* at ¶ 244).

---

[4] https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-26-2022/ (last visited 5/3/2022).
[5] *Id.*

Defendants have failed to grant (or even meaningfully consider) numerous religious accommodation requests, while processing and approving medical and/or administrative accommodations, including for job duties similar in risk from the COVID-19 perspective to the Plaintiffs; but each, in violation of RFRA nevertheless have taken, continue to take, and threaten to take additional actions against the Plaintiffs, including the threat of punitive actions including court-martial. (*Id.* at ¶ 245).

Each of the Intervening Plaintiffs has: (i) submitted a religious accommodation request for a temporary exemption to the Department of the Air Force's vaccination order on the grounds that the requirement substantially burdens their sincerely held belief; (ii) had an Air Force/Space Force Chaplain confirm the sincerity of those beliefs; (iii) had their MAJCOM/senior commander deny the religious accommodation request, using form letters, in a systemic pattern and practice for the purpose of uniformly denying such requests absent an end-of-service status; and (iv) appealed to the Air Force Surgeon General, exhausting any intra-service remedies. (*Id.* at ¶ 246).

As an example of the insidious practice of discrimination, one of these Intervening Plaintiffs, Major Andrea Corvi, was granted a medical exemption for her pregnancy, while being denied a temporary religious accommodation, demonstrating that job duties, interactions with others, or any individualized factor, other than someone entering the end of their term of service, has nothing to do with whether a religious accommodation will be granted – such religious accommodation requests have been and will be continued to be denied. (*Id.* at ¶ 247).

Because the vaccination order in question violates Intervening Plaintiffs' fundamental dictates of religion, they are unable to comply with it, and cannot adhere to it, even if it means federal prison through the UCMJ process. (*Id.* at ¶ 248).

To be clear, and without limitation, the Department of the Air Force has accommodated thousands of airmen, at least from a medical or administrative perspective. The Department of the Air Force has granted medical and administrative waivers to vaccination requirements, belying any claim that vaccination is a must for mission accomplishment. (*Id.* at ¶ 249).

Furthermore, the vaccination requirement, including with respect to COVID-19, does not prevent infection, as breakthrough cases continue to occur. (*Id.* at ¶ 250).

The government must prove, but cannot prove, that it has a compelling interest to mandate a vaccine that has not demonstrated prevention or transmission of a virus. (*Id.* at ¶ 251).

For purposes of brevity, we incorporate existing evidence and submissions in this matter, in support of this motion. [See, e.g., DE#1, Verified Complaint; DE#11, Appendix; DE#13, Motion for Preliminary Injunction including DE#13-2, Declaration Holbrook, DE#13-3, Declaration Poel, DE#13-4, Declaration McCullough; DE#30, including Declarations in Support, DE#30-2 through DE#30-20, Declarations of existing Plaintiffs].

**The Air Force employs a double standard for exemption requests, granting thousands of medical and administrative requests, while denying all but a handful of religious exemptions**

As of the date of the Intervening Complaint, the Department of the Air Force has received thousands of requests for religious accommodation, has only approved 42 – all of them at the end of their careers, who were otherwise eligible for an administrative exemption, and has denied 5,129 initial requests; and 1,692 final appeals, for a total of 6, 821 denials. In the meantime, the Air Force currently has granted 1,013 medical exemptions, and 1,273 administrative exemptions.[6] (DE#52-1, Ver. Int. Compl. at ¶ 242). As of April 12, the Air Force

---

[6] https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-26-2022/ (last visited 5/3/2022).

has administratively separated 261 active-duty Airmen.[7] (*Id.*)  The granting of thousands of medical and administrative exemptions belies any assertion that vaccination is mission-critical and that no exemptions can be granted.

In related litigation, the Air Force defended its position, in part, based on the Declaration of Colonel James Poel, which we refiled here. [Dec. Poel, DE#13-3].  In it, Colonel Poel admits that the Government is deliberately engaged in the systemic denial of religious exemptions because, he contends, they do so to allow for more medical and administrative exemptions. [*Id.* ¶ 7]. This is despite the fact that Colonel Poel admits that the "necessity" supporting forced vaccinations of previously infected and recovered airmen, like many of these Plaintiffs, is belied by scientific proof that previous infection likely provides thirteen times greater protection against reinfection or breakthrough infection than vaccination alone. *Id.* ¶24. Colonel Poel suggests that the number of vaccination exemptions are a zero-sum game when it comes to allowing the Air Force's clearly favored exemptions, but he fails to explain why that is so. He also suggests that people who have natural immunity have greater protection if they are also vaccinated, but he ignores the fact that the Air Force is not requiring its airmen to become infected and vaccinated to have this robust immunity. Ultimately, Colonel Poel gives the game away when he admits the "studies vary" behind trying to determine whether reinfection rates are equivalent, lower, or higher between those who have overcome prior infection and those who are "fully vaccinated." *Id.* at ¶24.

Colonel Poel's declaration supports the notion that Defendant Kendall gave directives to Commanders, through official and/or unofficial channels, that religious accommodations were not to be granted to the COVID-19 vaccination policy.  (In. Pl.'s Ver. Compl., DE#52-1, ¶ 244).

---

[7] *Id.*

Defendants have failed to grant (or even meaningfully consider) numerous religious accommodation requests, while simultaneously processing and approving medical and/or administrative accommodations for airmen with job duties entailing similar risk from a COVID-19 perspective to the job duties of these Plaintiffs. Consequently, each of these defendants, in violation of RFRA, have taken, continue to take, and threaten to take additional actions against the Plaintiffs, including the threat of punitive actions such as court-martial. (*Id.*, ¶ 245). Because the order in question violates Plaintiffs' fundamental right to the free exercise of their religion, they are unable to comply with it even if it means federal prison through the UCMJ process. (*Id.*, ¶ 248). To be clear, the Department of the Air Force has accommodated thousands of airmen, at least from a medical or administrative perspective, thus belying any claim that vaccination is a must for mission accomplishment. (*Id.*, DE#1, ¶ 249).

Among other methods, the Air Force could accommodate the Intervening Plaintiffs' requests for accommodation by, without limitation: (i) Requiring testing to determine infection, as most were required to do in the past; (ii) Temperature checks and/or other screening to determine infection; (iii) Permitting the Plaintiffs to demonstrate they have robust and long-lasting natural immunity; (iv) Provide an exemption anyways in that vaccination will not guarantee immunity, and there are members who are currently serving who are not immune to diseases they were vaccinated for, yet they remain able to serve and deploy; (v) Requiring isolation to keep Intervening Plaintiffs away from those with the disease; (vi) Place Intervening Plaintiffs in a position and/or Air Force Specialty Code that is available for remote work or telework, and not in contact with other airmen; (vii) Given the significant level of vaccine compliance within the military, accommodating the few numbers of religious exemption requests by providing an exemption (which they *are* already doing for medical and administrative

exemptions), which is not a burden; (viii) As a second to last final option, place Intervening

Plaintiffs in non-deployable status and/or assignment to a unit that does not deploy overseas;

and/or (ix) As a final option, honorably discharge Intervening Plaintiffs and waive any active-

duty service commitments they may owe.  (*Id.* at ¶ 252).

## II.     LAW AND ARGUMENT

### A.  Standard

When deciding whether to issue a temporary restraining order or preliminary injunction,

the court must consider the following four factors: (1) Whether the movant has demonstrated a

strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable

harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public

interest would be served by issuance.  *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998);

*Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.

2006).   These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean*

*Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional

rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive.

*H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion

not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958

F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir.

2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights);

*Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others,

even where registry incurred printing costs, where constitutional rights at stake); *Martin-*

*Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v.*

*Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). *See, also, Elrod v. Burns*, 427 U. S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

U.S. Supreme Court precedent suggests that the same standards apply to RFRA claims as apply to constitutional claims, viz., a collapsing of the standards when the government is the Defendant to look at the question of the merits. *Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). And Sixth Circuit precedent clearly compels the same collapsed analysis. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (analyzing identical Kentucky RFRA statute and noting that the issues collapse under RFRA).

**B. Law and Argument**

1. <u>The directives and policies violate RFRA as applied to Intervening Plaintiffs</u>

Pursuant to 42 U.S.C. 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)." Pursuant to 42 U.S.C. 2000bb-1(b), "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

The Government Defendants have substantially burdened Intervening Plaintiffs' exercise of religion, in light of (i) their vaccine mandates; and (ii) their refusal to timely process certain of the Plaintiffs' accommodation request to that requirement (even though this is required by applicable regulation). Further, these mandates are not in furtherance of a compelling

12

governmental interest, and requiring them of these Plaintiffs is not the least restrictive means of furthering any compelling governmental interest. All of that gives rise to a claim under 42 U.S.C. 2000bb-1(c).

Compelling a medical procedure, involving as it does the invasion on personal autonomy, and in violation of conscience formed from sincerely held religious belief, is certainly a substantial burden on religious practice. *Gonzales*, 546 U.S. 418, 428-32; *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009); *Holt*, 574 U.S. 352; *Burwell*, 573 U.S. 682.

We anticipate that the Government Defendants will assert that they have a "a compelling interest in preventing the spread of a novel, highly contagious, sometimes fatal virus." *Maryville*, 957 F.3d 610, 613. However, in *Maryville*, as here, the "likelihood-of-success inquiry instead turns on whether [the challenged] orders were 'the least restrictive means' of achieving these public health interests." *Id.* "That's a difficult hill to climb, and it was never meant to be anything less." *Id.* Defendants cannot, and do not, meet that burden here.

The Sixth Circuit's most recent decision that touches on RFRA is *Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021). *Ackerman* was a RLUIPA case, but, as explained by the Sixth Circuit in Ackerman, the analysis is (with one exception, which accounts for unique prison condition expertise issues) largely identical. *Id.* at 180, fn.5. The sincerity prong just requires courts "'to determine whether the line drawn' by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs 'reflects an honest conviction.'" *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018). Here, the Department of the Air Force tested sincerity through interviews with Chaplains, and Intervening Plaintiffs unquestionably have sincerely held beliefs that have been impacted. Plaintiffs have also

demonstrated a substantial burden on their beliefs. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019).

Thus, the burden shifts to the Government Defendants to "justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test.'" *Ackerman*, 16 F.4th 170, 179.[8] This "standard is 'exceptionally demanding,' and requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364 (alterations in original) (*quoting Hobby Lobby*, 573 U.S. at 728).

The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored. Similarly, RFRA requires the same narrow tailoring. 42 U.S.C. 2000bb–1. "[N]arrow tailoring **requires the government to show** that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296-1297 (2021) (emphasis added). "Where the government permits other activities to proceed with precautions [as the Air Force does here], **it must show** that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id.* (Emphasis added). "Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Id.*

The Government must prove that a military member who does not receive a vaccine due to a religious objection is a greater risk to the military mission than someone who does not

---

[8] The aspect of the RLUIPA claim that requires "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," is not applicable in RFRA case. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

receive a vaccine due to a medical or administrative reason. Logically, the Government could never meet this burden as the risks would always be the same.[9] "Risks of contagion turn on [the failure to receive the vaccine]; the virus does not care why they [did not do so].  So long as that is the case, why do the orders permit people who [have medical or administrative exemptions to avoid the requirement, but not permit religious exemptions]"? *Maryville*, 957 F.3d 610, 615.

Sixth Circuit precedent precludes the Government from merely saying that no religious exemptions can be accommodated because vaccinations of all personnel are a compelling necessity. Instead, the Government must prove why its granting of thousands of medical or administrative exemptions, and merely a handful of belated, suspect,[10] religious exemptions, is something other than its preference of secular concerns over all religious concerns (which is what Colonel Poel admits is the case, Declaration Poel at ¶ 7). *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021).

Given the Government's burden of proof, the Court should require the Government to address, by way of evidence, the context of the mere handful of religious exemptions that it has granted, and the context of the medical or administrative exemptions that it has granted (i.e. to whom, what their job duties were, etc. and whether they were at the end of their term of service).

---

[9] *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67, Order for Temporary Restraining Order; ("The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence)").

[10] We do not mean suspect in the context that the exemptions are not warranted, but rather mean suspect in the context that these exemptions came after litigation in multiple forums, after the entry of a temporary restraining order in the Middle District of Florida that excoriated the Government for its discrimination (*NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#67), and were like the handful of Marine Corps exemptions that were granted but later turned out to be service members that were at the end of their terms of service.

Recent litigation in Florida and Ohio suggests that these few religious exemptions were granted only for service members about to exit the service. *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, DE#111; *Poffenbarger v. Kendall*, 2022 U.S. Dist. LEXIS 34133 (SDOH 2022). Absent such a comparison, the Government cannot meet its burden, and injunctive relief should be granted.

In *Dahl*, as here, the defendant "requires [persons] to be vaccinated against COVID-19, but it considers individual requests for medical and religious exemptions on a discretionary basis. [Plaintiff] applied for religious exemptions. The [defendants] ignored or denied their requests…" *Id.* And, to be clear, in *Dahl*, it was not even the denial of an educational benefit, a scholarship, or even membership on a particular sport team but, instead, merely the denial of participation in team sport activities. *Id.* In contrast, the consequences to Intervening Plaintiffs are far more severe.

As for any argument by the Government Defendants that Intervening Plaintiffs do not have a right to continuation in the service of this nation, we respond by quoting the Sixth Circuit: "[a] party may mount a free exercise challenge, it bears noting, even where it does not have a constitutional right to the benefit it alleges is being improperly denied or impaired." *Id.* at 731-732. That is because "a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights." *Id.* at 731, quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021). Further, as here, where the Government "extends discretionary exemptions to a policy, **it must grant exemptions** for cases of 'religious hardship' **or present compelling reasons not to do so**." 15 F.4th 728, 731 (Emphasis added).

In *Dahl*, the governmental actor at least made the argument that it also refused to grant *any* medical exemptions (as noted, and unlike in *Dahl*, the Air Force has granted thousands of medical

and administrative exemptions to its policy). But even that was not sufficient to avoid triggering strict scrutiny. *Id.* at 734-735. And in terms of strict scrutiny, and whether the *Dahl* defendants could meet it, the Sixth Circuit found significant that others either were not subject to, **or were exempt from**, the vaccination policy. *Id.* at 735. So too here. The Air Force has approved thousands of medical and administrative exemptions.

In *Dahl*, the defendants also presented the district court with "an affidavit stating that COVID-19 vaccines are 'the most effective and reasonable way to guard against' the virus." *Dahl* 15 F.4th 728, at 735 (In contrast, here the Government concedes that "studies vary". [Declaration Poel, DE#13-3 ¶24].) However, for purposes of its ruling, the Sixth Circuit did not "dispute that assessment." *Id.* Nevertheless, it found that "the question before us 'is not whether the [defendant] has a compelling interest in enforcing its vaccine policies generally, but whether it has such an interest in denying an exception' to plaintiffs, and whether its conduct is narrowly tailored to achieve that interest." *Id.* That is precisely the issue here.

The granting of thousands of medical or administrative exemptions while denying all but a handful of religious exemptions (and those only at the eleventh hour, apparently prompted by litigation), and the continuation of a sham process of purporting to legitimately consider these religious exemptions is a stunning admission and is dispositive of the Government's failure to meet the requirements of RFRA and the First Amendment. *Maryville Baptist Church*, 957 F.3d 610 at 614-615; *Roberts*, 958 F.3d 409, 413-415; *Fulton*, 141 S. Ct. 1868, 1882 (the government has no "compelling reason why it has a particular interest in denying an exception to [plaintiff] while making them available to others."). The Government's own proof is nothing more than an acknowledgment of official discrimination against religious exercise so as maximize the protection

of other concerns. [Declaration Poel, DE#13-3, at ¶ 7]. This alone warrants granting relief to Intervening Plaintiffs who are being subjected to this unlawful discrimination.

The fact that thousands of exceptions have been granted for medical and administrative reasons, on a case-by-case basis, establishes that strict scrutiny is warranted under *Maryville*, *Roberts*, and *Fulton*. The fact that a mere handful of suspect religious exemptions have been or will be granted establishes that the Government cannot pass that strict scrutiny test. The United States Supreme Court has made clear that a policy is not neutral and generally applicable "whenever [it] treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. 1294, 1296 (emphasis in original). The granting of *any* secular exemptions from the vaccination policy for secular reasons, no matter how appropriate or warranted (including for severe medical reactions to the vaccine), treats "*any* comparable secular activity more favorably than religious exercise," and triggers strict scrutiny. *Id.*

The Government Defendants have not demonstrated, and cannot demonstrate, that none of the less restrictive steps work (starting with least burdensome on Intervening Plaintiffs and others similarly situated and extending to most burdensome).

This case follows decisions and injunctions that have been granted on the same subject matter, largely on the same facts involving the same discriminatory treatment, and the same legal claims, against the same Department of Defense, and in one case the same Defendants, by the Northern District of Texas, *U.S. Navy Seals 1-26 v. Biden*, NDTX Case No. 4:21-cv-01236, DE#66; the Middle District of Florida, *Navy Seal 1 v. Austin*, MDFL Case No. 8:21-cv-02429, DE#111 and DE#67; and the Middle District of Georgia, *Air Force Officer v. Austin*, MDGA Case No. 5:22-cv-00009, DE#51.

And, to be clear, Intervening Plaintiffs here seek limited relief: that Defendants be enjoined from punishing them (including administrative separation) for not complying with an order that substantially burdens their beliefs, in line with the scope of relief this Court previously granted a few weeks ago.  [Order Granting Preliminary Injunction, DE#47]

Treating those who seek religious accommodations as second-class citizens is an additional substantial burden on their religious practices that is unwarranted and illegal under RFRA. RFRA, 42 U.S.C. 2000bb-1(a), has been violated, and Plaintiffs have demonstrated a likelihood of success on the merits.

2. The directives and policies violate the First Amendment as applied to Plaintiffs, and others similarly situated

In addition to RFRA, the same requirements, particularly with the secular exceptions in the vaccination policy, give rise to a free exercise challenge. This is also not traveling new ground. Government is not permitted to treat religious activity worse than it treats comparable secular activity. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). And the existence of exceptions for, e.g., medical exemptions or administrative exemptions (which Plaintiff has plead have been granted and have, in fact, been granted), from the vaccination policy at issue, demonstrate that religious accommodations must be permitted as well. *Id.*, *see, also, Maryville*, 957 F.3d 610, 614; *Roberts v. Neace*, 958 F.3d 409; *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

*Fulton* teaches that "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 1877. Further, "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* That is especially true here, where requests for religious accommodation are

19

routed through the Surgeon General, who makes an individual, case-by-case assessment. Here, as in *Fulton*, the Air Force's vaccine exemption regime "incorporates a system of individual exemptions, made available in this case at the 'sole discretion' of the [Surgeon General]." *Id.* at 1878.

Also here, as in *Fulton*, that official has granted various secular exemptions, but denied all but a handful of religious exemptions. However, the Constitution requires and provides that he "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Id.* As with the RFRA claim, the Government must demonstrate narrow tailoring, a task which is impossible if "the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.* at 1881.

In fact, the Government Defendants certainly *know* that they have violated the law and cannot make the requisite showing. There is another term for this: a hostility to religious exemptions, running to the top levels of the Air Force and the named Defendants. And that, as it turns out, is patently unconstitutional. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U. S. ___, 138 S. Ct. 1719 (2018). The First Amendment has been violated, and Plaintiffs demonstrated a likelihood of success on the merits.

### III.    CONCLUSION

Intervening Plaintiffs seek a preliminary injunction.  A proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest                                      /s/Aaron Siri
Christopher Wiest (OH 0077931)                 Siri Glimstad, LLP
Chris Wiest, Atty at Law, PLLC                     Aaron Siri (admitted PHV)
25 Town Center Blvd, Suite 104                    Elizabeth Brehm (admitted PHV)
Crestview Hills, KY 41017                              Wendy Cox (admitted PHV)
513/257-1895 (c)                                            200 Park Avenue, 17th Floor
859/495-0803 (f)                                            New York, NY 10166
chris@cwiestlaw.com                                      (212) 532-1091 (v)

(646) 417-5967 (f)
aaron@sirillp.com

/s/Thomas B. Bruns
Thomas B. Bruns (OH 0051512)
4555 Lake Forest Drive, Suite 330
Cincinnati OH 45242
tbruns@bcvalaw.com
513-312-9890
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 3 day of May, 2022, which will serve all Counsel of record.

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)