**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

| | |
|---|---|
| **HUNTER DOSTER,** *et al.,* | |
| *Plaintiffs,* | |
| v. | No. 1:22-cv-00084 |
| | Hon. Matthew W. McFarland |
| **FRANK KENDALL,** *et al.,* | |
| *Defendants.* | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO POTENTIAL INTERVENORS'
MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.    Movants Are Not Likely to Succeed on the Merits........................................................3

    A.    Movants Do Not Have Ripe Claims.........................................................................3

        1.    No Ripe Claims Without A Final Decision on Accommodation. ....................3

        2.    Movants Do Not Have Ripe Claims Because the Air Force Has Not Issued Final Discipline or Discharge Decision to Any Movant. ....................5

    B.    Plaintiffs Have Failed to Exhaust Their Administrative Remedies...............................7

        1.    Movants Without Final Decisions on Their Religious Requests Have Not Exhausted. ....................................................................................9

        2.    No Movants Have Received Final Disciplinary Action or Discharge. ...........10

        3.    Exhaustion Means Pursuing Available Appeals, including the AFBCMR. ....................................................................................11

    C.    Movants Are Not Likely to Succeed on the Merits. .....................................................12

II.   Movants Do Not Face Irreparable Harm......................................................................15

III.  Balance of Equities and Public Interest Support Denying the Motion...................................18

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
    897 F.3d 314 (D.C. Cir. 2018), *cert. denied*, 140 S. Ct. 1198 (2020).......................................16

*Austin v. U.S. Navy Seals 1-26*,
    142 S. Ct. 1301 (2022) ..................................................................................................... 13, 15

*Bellinger v. Bowser*,
    288 F. Supp. 3d 71 (D.D.C 2017) ...............................................................................16

*Berry v. Schmitt*,
    688 F.3d 290 (6th Cir. 2012) .................................................................................... 3, 4, 6

*Bickel v. Del. Air Nat'l Guard*,
    No. 2:18-cv-00119, 2018 WL 2183296 (S.D. Ohio May 11, 2018) .....................................11

*Bigelow v. Mich. Dep't of Nat. Res.*,
    970 F.2d 154 (6th Cir. 1992) .....................................................................................3

*Bors v. Allen*,
    607 F. Supp. 2d 204 (D.D.C. 2009) ...........................................................................20

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) ...............................................................................................16

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ...................................................................................15

*Chappell v. Wallace*,
    462 U.S. 296 (1983) ..................................................................................7, 8, 11, 19

*Church v. Biden*,
    --- F. Supp. 3d ---, 2021 WL 5179215 (D.D.C. Nov. 8, 2021) .................................5, 15, 18

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................................................................3

*Covill v. United States*,
    959 F.2d 58 (6th Cir. 1992) .......................................................................................11

*D.T. v. Sumner Cnty. Schs.*,
    942 F.3d 324 (6th Cir. 2019) .................................................................................15, 16

*Dahl v. Bd. Of Trs. of W. Mich. Univ.*,
    15 F.4th 728 (6th Cir. 2021)......................................................................................8

*Davis v. United States,*
    589 F.3d 861 (6th Cir. 2009) ..................................................................................11

*Doe v. San Diego Unified Sch. Dist,*
    19 F.4th 1173 (9th Cir. 2021) ................................................................................17

*Doster v. Kendall,*
    ---F. Supp. 3d---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ...............9, 17, 19

*Dunn v. Austin,*
    --- S. Ct. ---, 2022 WL 1133402 (U.S. Apr. 18, 2022) .........................................18

*Elrod v. Burns,*
    427 U.S. 347 (1976) ........................................................................................ 16, 18

*Giesse v. Sec'y of Dep't of Health & Hum. Servs.,*
    522 F.3d 697 (6th Cir. 2008) ....................................................................................3

*Gilligan v. Morgan,*
    413 U.S. 1 (1973) .............................................................................................. 9, 18

*Goldman v. Weinberger,*
    475 U.S. 503 (1986) ................................................................................................13

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ........................................................................................ 12, 16

*Guerra v. Scruggs,*
    942 F.2d 270 (4th Cir. 1991) ..................................................................................20

*Harkness v. Sec'y of Navy,*
    858 F.3d 437 (6th Cir. 2017) ............................................................................... 7, 8

*Hartmann v. Stone,*
    68 F.3d 973 (6th Cir. 1995) ......................................................................................9

*Heidman v. United States,*
    414 F. Supp. 47 (N.D. Ohio 1976) .................................................................... 8, 12

*Hodges v. Callaway,*
    499 F.2d 417 (5th Cir. 1974) ....................................................................................9

*Holt v. Hobbs,*
    574 U.S. 352 (2015) ................................................................................................16

*Kawitt v. United States,*
    842 F.2d 951 (7th Cir. 1988) ....................................................................................9

*Leary v. Daeschner,*
    228 F.3d 729 (6th Cir. 2000) ....................................................................................2

*Mark Short v. Berger*,
22-cv-01151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022), *appeal filed*,
No. 22-55339 (9th Cir. Apr. 5, 2022) ..................................................................*passim*

*Martin-Marietta Corp. v. Bendix Corp.*,
690 F.2d 558 (6th Cir. 1982) ...............................................................................17

*Maryville Baptist Church, Inc. v. Beshear*,
957 F.3d 610 (6th Cir. 2020) ...............................................................8, 12, 16, 17

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ...............................................................................................1

*Memphis A. Philip Randolph Inst. v. Hargett*,
978 F.3d 378 (6th Cir. 2020) .................................................................................3

*Mindes v. Seaman*,
453 F.2d 197 (5th Cir. 1971) .................................................................................7

*Montgomery v. Sanders*,
No. 3:07-cv-470, 2008 WL 4546262 (S.D. Ohio Aug. 18, 2008) ........................11

*Navy Seal 1 v. Austin*,
No. 22-0688, 2022 WL 1294486 (D.D>C. Apr. 29, 2022), *appeal filed*,
No. 22-5114 (D.C. Cir. May 5, 2020) ...................................................................

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................................16, 18

*North Dakota v. United States*,
495 U.S. 423 (1990) ..............................................................................................18

*Orloff v. Willoughby*,
345 U.S. 83 (1953) ................................................................................................19

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*,
305 F.3d 566 (6th Cir. 2002) ............................................................................2, 15

*Parisi v. Davidson*,
405 U.S. 34 (1972) ..................................................................................................8

*Parrish v. Brownlee*,
335 F. Supp. 2d 661 (E.D.N.C. 2004) ..................................................................20

*Poffenbarger v. Kendall*,
--- F. Supp. 3d ---, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022), *appeal filed*,
No. 22-3413 (6th Cir May 3, 2022) ...............................................................5, 9, 18

*Qualls v. Rumsfeld*,
357 F. Supp. 2d 274 (D.D.C. 2005) ......................................................................20

iv

*Ramirez v. Collier*,
    142 S. Ct. 1264 (2022).................................................................................................15

*Roberts v. Neace*,
    958 F.3d 409 (6th Cir. 2020) ..............................................................................16, 17

*Roberts v. Roth*,
    21-cv-1797, 2022 WL 834148 (D.D.C. March 21, 2022) ....................................5, 6

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) .................................................................................................12

*Rostker v. Goldberg*,
    453 U.S. 57 (1981) .....................................................................................................9

*S. Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021)...............................................................................................17

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975).......................................................................................7, 8, 10

*Seepe v. Dep't of the Navy*,
    518 F.2d 760 (6th Cir. 1975) ..................................................................................5, 9

*Shaw v. Austin*,
    539 F. Supp. 3d 169 (D.D.C. 2021) ........................................................................15

*Smith v. Harvey*,
    541 F. Supp. 2d 8 (D.D.C. 2008) ..............................................................................6

*Stein v. Mabus*,
    No. 3:12-cv-816, 2013 WL 12092058 (S.D. Cal. Feb. 14, 2013) ...........................19

*Tondon v. Newsom*,
    141 S. Ct. 1294 (2021).............................................................................................17

*Thomas Short v. Berger*,
    No. 22-cv-4444, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022)....................10, 16, 17

*Thompson v. DeWine*,
    976 F.3d 610 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021) ........................1

*Toilet Goods Ass'n v. Gardner*,
    387 U.S. 158 (1967) ...................................................................................................6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)...............................................................................................4

*Trump v. New York*,
    141 S. Ct. 530 (2020) .............................................................................................3, 4

*United States. v. Hardy*,
    46 M.J. 67 (C.A.A.F. 1997) ...................................................................................... 19

*United States v. Stark*,
    No. NMVM200000243, 2000 WL 1456299 (N-M. Ct. Crim. App. Aug. 31, 2000) ......................... 19

*Vaughan v. Ky. Army Nat'l Guard*,
    No. 3:12-35, 2013 WL 211075 (E.D. Ky. Jan. 18, 2013) ............................................ 11

*Vance v. Wormuth*,
    3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 17, 2022) .......................................... 4, 5

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................... 1, 13, 15, 18

**STATUTES**

10 U.S.C. § 815 ................................................................................. 7, 10

10 U.S.C. § 938 ..................................................................................... 8

10 U.S.C. § 1552 .................................................................................... 11

42 U.S.C. § 2000bb-1 ................................................................................. 12

**REGULATIONS**

32 C.F.R. § 865.112 .................................................................................. 11

**OTHER AUTHORITIES**

AFI 36-2603, Air Force BCMR,
    https://perma.cc/6HJ5-JUPP ....................................................................... 11

AFI 36-3206,
    https://perma.cc/75UU-DDE5 ....................................................................... 11

AFI 36-3207,
    https://perma.cc/VDJ4-R8FM ....................................................................... 11

AFI 36-3208,
    https://perma.cc/L8VJ-3X82 ....................................................................... 11

DAF COVID-19 Statistics (Jan. 22, 2022),
    https://perma.cc/BJ9D-7AJ4 ....................................................................... 14

DAF COVID-19 Statistics – May 3, 2022,
    https://perma.cc/QCY7-7BYQ ................................................................... 10, 14

## INTRODUCTION

A month after this Court granted a preliminary injunction, ECF No. 47, 230 Potential Intervenors asked to join this case and requested that "the existing Preliminary Injunction, issued in favor of the original 18 Plaintiffs, be extended" to cover them, Mot. for Prelim. Inj. ECF No. 53, Pg. ID 3743 ("Mot."). Intervention is not appropriate for the reasons Defendants previously explained. Defs' Opp. to Intervention, ECF No. 55. And this Court should not grant a preliminary injunction covering 230 Movants, of whom only 20 appear to have any connection to the state of Ohio, and only a *single one* has ties to Cincinnati or any of the counties this Seat of Court serves.

In addition to the improprieties of their intervention attempt, Movants' motion suffers from a more fundamental problem with respect to the extraordinary emergency relief it seeks—it does not provide evidence that each and every of the 230 Movants is entitled to a preliminary injunction. The motion cites to the bare-bones proposed complaint and a single declaration. This is not sufficient proof that each of the 230 Movants independently has standing, a ripe claim, exhausted administrative remedies, and a strong likelihood of success on the merits. There is no evidence that any of the Movants, let alone *all* of them, face irreparable harm. And without evidence, Movants cannot show that the balance of equities or public interest supports a preliminary injunction.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Each Movant bears the burden of establishing by "*a clear showing*" that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without an injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021).

Movants have failed to carry their individualized burden to demonstrate that each of the 230

Potential Intervenors, individually, is entitled to this extraordinary relief.  "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, . . . because the preliminary injunction is an 'extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it.'"  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In support of their motion for preliminary injunction, Movants rely on their complaint, which includes bare-bones allegations that each of the 230 Movants has submitted a religious exemption request based on a sincere belief that has not been granted.  *See* Mot., Pg. ID 3745 (citing Proposed Compl., ¶¶ 2–232, 246, ECF No. 52-1 (identifying Potential Intervenor, rank, duty station, submission of religious accommodation request, and subsequent administrative actions)).  They also attached a single declaration from Andrea Corvi, the only one of the 230 Movants with any connection to this Division.  *See* ECF No. 53-1.[1]  That is it.  On this evidence, the 230 movants have not met their individual burden of production and persuasion on all four preliminary-injunction factors.  Movants cannot show that each one has standing, a ripe claim, and exhausted remedies.  Indeed, the only declaration submitted in support of the preliminary injunction reveals that that specific Movant— Andrea Corvi—lacks standing to challenge the Air Force's COVID-19 vaccine requirement because she already has a medical exemption until at least September 2022.  *See* ECF No. 53-1, Pg. ID 3789.[2]

On the merits, Movants also fail to carry their factual burden to show that the COVID-19

---

[1] Defendants have notified Potential Intervenors that the Corvi Declaration, ECF No. 53-1, contains privileged information that was inadvertently disclosed and requested Intervenors sequester and destroy that privileged information pursuant to Fed. R. Civ. P. 26.  The privileged portions of those documents are not admissible.  *See* Fed. R. Evid. 502(b).  Defendants have attached materials related to Intervenor Corvi, which appropriately redact for privilege. *See* Ex. 1.

[2] Intervenors argue that Corvi has standing because her temporary exemption is set to expire in September and that irreparable harm "*will occur* in September."  ECF No. 56, Pg. ID 4042, n.4.  But Intervenors provide no facts to support that speculation.  Medical exemptions may be renewed or extended under appropriate circumstances. Chapa Decl., ECF No. 27-12, ¶ 5, Pg. ID 1922.  And even if her medical exemption expires in September, she provides no evidence that "a non-objectionable vaccine" would not be available at that time.  *See* Pls.' Reply ISO Prelim. Inj., ECF No. 30, Pg. ID 2052.  Moreover, Corvi would still need to exhaust administrative remedies, which she has not done.

vaccine requirements substantially burden their religious exercise. Although they allege that everyone has a sincere religious belief, for everyone other than Andrea Corvi, there is no evidence in the complaint or motion explaining what religious belief is supposedly burdened by the requirement—or even what religion is at issue.[3] They also provide no facts showing that each of the 230 Movants face irreparable harm, nor any evidence regarding the public interest or the balance of equities. For these and other reasons explained below, the Court should deny the motion.

# I.   Movants Are Not Likely to Succeed on the Merits.

## A.   Movants Do Not Have Ripe Claims

No Movant has a ripe claim. A case is not ripe when the claim is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). (citation omitted). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). "Put another way, the "threatened injury must be '*certainly impending*' to constitute injury in fact, and '[a]llegations of *possible* future injury' are not sufficient." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). In this Circuit, courts sometimes consider the following ripeness factors:

> (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings."

*Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). "[T]he plaintiff has the burden of proving jurisdiction." *Giesse v. Sec'y of Dep't of Health & Hum. Servs.*, 522 F.3d 697, 702 (6th Cir. 2008).

### 1.   No Ripe Claims Without A Final Decision on Accommodation.

Many Movants have not yet received a final decision on their religious accommodation

---

[3] After the motion for a preliminary injunction was filed, two Movants, Oberg and Nipp, separately moved for a TRO. ECF No. 54. Defendants have separately responded and provided evidence showing that COVID-19 vaccination is the least restrictive means for them. ECF Nos. 55, 55-1, 55-2, and 55-3.

requests. *See, e.g.*, Proposed Compl. ¶¶ 4, 9, 10, 12, 13, 14. Individuals who have not received a final denial do not have standing and do not have ripe claims. *See Hargett*, 978 F.3d at 386.

The first *Berry* factor—"the likelihood that the harm alleged by the plaintiffs will ever come to pass"—is not met. 688 F.3d at 298 (citation omitted). This Court previously explained that "Plaintiffs continue to face serious repercussions by refusing to get the COVID-19 vaccine in light of Defendants' denial of their religious exemptions," ECF No. 47, Pg. ID 3180, but that reasoning does not apply to those who have not received a final denial. Movants who have a pending religious accommodation request are exempt from the COVID-19 vaccine requirement, and if the request is granted (as it has nearly 50 times so far), these Movants will never face repercussions for not taking the COVID-19 vaccine. *See* DAFI 52-201 ¶ 2.12. Any harm arising from a *future* potential denial of a Movant's accommodation request, a subsequent *future* continued refusal to take a COVID-19 vaccine, and the potential imposition of *future* final discipline "depend[s] on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump*, 141 S. Ct. at 535 (citation omitted). As the court in *Vance v. Wormuth* put it: "[Plaintiff's] military future is uncertain not only with respect to the unresolved appeal of the initial denial of his exemption request . . . which may entirely moot his request." 3:21-cv-730, 2022 WL 1094665, at *7 (W.D. Ky. Apr. 17, 2022)

The second factor at issue—whether the factual record is sufficiently developed—also counsels against granting the motion because "the Court has an incomplete factual record and thus could not provide a fair adjudication of the merits of the parties' positions." *Id.* Although parties in this lawsuit have "provided significant briefing as well as numerous declarations and evidence in support of their positions," ECF No. 47, Pg. ID 3180, the ripeness question must be answered for *each individual*, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they seek to press and for

4

each form of relief that they seek[.]"; *cf. id.* ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (citation omitted)). "The development of a factual record by [the Air Force] and its interpretation of the law as applied to these particular facts is crucial. The incomplete record in the case weighs against a finding of ripeness." *Vance*, 2022 WL 1094665, at *7 (citing *Seepe v. Dep't of the* Navy, 518 F.2d 760 (6th Cir. 1975)). Prematurely adjudicating claims where religious accommodation requests are pending "would require the Court to adjudicate internal military affairs before the military chain of command has had full opportunity to consider the accommodation requests at issue." *Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021); *see also Poffenbarger v. Kendall*, --- F. Supp. 3d ---, 2022 WL 594810, at *9 (S.D. Ohio Feb. 28, 2022), *appeal filed*, No. 22-3413 (6th Cir. May 3, 2022).

The third factor—hardship to the parties if judicial relief is denied at this stage in the proceedings—also counsels against preliminary relief. Movants with pending requests are currently exempt from the requirement and thus will not be punished for not receiving the COVID-19 vaccines while they await a final decision—one which may give them the very relief they seek. *See Vance*, 2022 WL 1094665, at *7 (noting that "dismissal of the action will work no hardship on Vance at this stage" because "he is not, at present being put to any further choice in the matter").

Accordingly, all three *Berry* factors support a finding that Movants who have not received a final decision from the Air Force do not have ripe claims.

> 2.   Movants Do Not Have Ripe Claims Because the Air Force Has Not Issued Final Discipline or Discharge Decision to Any Movant.

Even those Movants who have received a final denial of their religious accommodation request do not have ripe claims because the denial of a religious accommodation request—standing alone—does not cause injury and is not a substantial burden on the Movants' purported religious beliefs. The *consequences* that they face for failing to follow a lawful order to receive the COVID-19 vaccine after the denial may give rise to a substantial burden, but those consequences, if any, are far from certain.

*See Roberts v. Roth*, 21-cv-1797, 2022 WL 834148, at \*3 (D.D.C. March 21, 2022) (dismissing as unripe RFRA claims brought after religious accommodation denial because pending discharge not final); *Vance*, 2022 WL 1094665, at \*7 (dismissing claims as unripe in part because "[n]o separation proceedings have been implemented"); *Mark Short v. Berger*, 22-cv-01151, 2022 WL 1051852, at \*4 (C.D. Cal. Mar. 3, 2022), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022).

No Movant has received a final decision from the Air Force on what—if any—punishment they face for failure to receive the COVID-19 vaccine, so the first factor of "the likelihood that the harm alleged by the plaintiffs will ever come to pass" is not met. *Id.* While guidance subjects unvaccinated service members without an exemption to the "initiation of administrative discharge," ECF No. 27-8, Pg. ID 1656–57, the outcome is far from certain. A policy permitting discharge is not enough to make a claim ripe. *See Toilet Goods Ass'n v. Gardner*, 387 U.S. 158 (1967) (holding claim unripe when the regulation was permissive rather than mandatory). Even the "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008); *see also Roberts*, 2022 WL 834148, at \*3; *Mark Short*, 2022 WL 1051852, at \*4. Indeed, no Movant has been discharged.

Apart from discharge, the Air Force can also impose discipline for failure to follow a lawful order—through Article 15, known as nonjudicial punishment or NJP. But no Movant alleges that they have been subject to final NJP. And even after a Movant receives notice of a recommended punishment, they "have 5 calendar days to appeal to the next superior commander." ECF No. 54-1, at Pg. ID 3840, and can also seek review from the Air Force Board for Correction of Military Records.

The second factor—whether the factual record is sufficiently developed—also supports denying the motion because Movants have not exhausted their administrative remedies, and the records and support for those decisions does not yet exist. *See infra*, I.B.2.

The third factor—"hardship to the parties if judicial relief is denied at this stage in the

proceedings"—supports denying the motion for preliminary injunction. *Berry*, 688 F.3d at 298. Movants argue that they are presently harmed by the prospect of future punishment, citing cases outside the military context. ECF No. 53, Pg. ID 3751–52; ECF No. 56, Pg. ID 4054–55. But the Supreme Court has made clear that simply being subject to military process with the prospect of some *future* punishment is not current harm: "[W]hen a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts *must* refrain from intervention, by way of injunction or otherwise." *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) (emphasis added). Congress established Article 15, 10 U.S.C. § 815, and to interfere with these military processes would exceed this Court's authority and would violate separation of powers principles. There is "no injustice in requiring [a member of the military] to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well." *Id.* at 759–60; *id.* at 758 ("We think this congressional judgment must be respected and *that it must be assumed* that the military court system will vindicate servicemen's constitutional rights." (emphasis added)).

### B. Plaintiffs Have Failed to Exhaust Their Administrative Remedies.

In this Circuit, "an internal military decision is unreviewable unless" Plaintiffs have "exhaust[ed] available intraservice corrective measures." *Harkness v. Sec'y of Navy*, 858 F.3d 437, 444 (6th Cir. 2017) (citing *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)). "Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." *Chappell v. Wallace*, 462 U.S. 296, 302 (1983). The result is "two systems of justice, to some extent parallel: one for civilians and one for military personnel"—a structure "the military has required, the Constitution contemplated, Congress has created and [the Supreme] Court has long recognized." *Id.* at 303–04 (citation omitted).

"The resulting [military] system provides for the review and remedy of complaints and grievances" including those alleging constitutional violations. *Id.* at 302. Before service members may pursue claims in federal court, they must first exhaust all available avenues of relief within the military. *Harkness*, 858 F.3d at 444. The Supreme Court has recognized that service members "may avail themselves of the procedures and remedies created by Congress in Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938" and challenge the lawfulness of an order. *Chappell*, 462 U.S. at 302. And the Board for Correction of Military Records ("BCMR") "provides another means with which an aggrieved member of the military may" pursue relief, including "retroactive back pay and retroactive promotion." *Id.* at 303. "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Id.* The federal judiciary has a role to play, but it is only *after* the military processes are complete. [4]

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Exhaustion is especially important in the military context, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger*, 420 U.S. 738). Requiring exhaustion is also important because courts should be "concerned with the disruption of the peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court" instead of first attempting to resolve the issue within the

---

[4] Movants have no response to the exhaustion requirements set out in *Harkness*, which was a First Amendment case. *See* ECF Nos. 53, 54, 56 (none of which cites or discusses *Harkness*). Instead, they argue that exhaustion is not required under *Dahl v. Bd. Of Trs. of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021) and *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020) (per curiam) because those cases did not involve "actual[] punish[ment]." ECF No. 56, Pg. ID 4048–49. Not so. Neither case were challenges to military decisions, so they do not inform the exhaustion requirements set out in *Harkness*. And the plaintiffs in those cases were already being punished. Plaintiffs in *Dahl* were not allowed to play college sports. *Dahl*, 15 F.4th at 734. And in *Maryville*, the police issued criminal notices and issued quarantine orders to the congregation. 957 F.3d at 611–12. Neither of these cases provides a basis to excuse failure to exhaust military remedies.

military structures created by Congress. *See Chappell*, 462 U.S. at 304 (cleaned up).

When it comes to COVID-19 vaccinations, courts should give the military the ability, in the first instance, to apply its judgment and expertise because "[e]valuating the risks to the health and safety of other soldiers, as well as to the combat readiness of the force, posed by the inclusion of unvaccinated [service members] in the ranks necessarily involves 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force[, which] are essentially professional military judgments.'" *Mark Short*, 2022 WL 1051852, at *5 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)); *see also Seepe*, 518 F.2d at 764; *Poffenbarger*, 2022 WL 594810, at *17 (discussing deference); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Hartmann v. Stone*, 68 F.3d 973, 984 (6th Cir. 1995) ("Clearly the courts must grant the military wide latitude in its operations.").

     1.  <u>Movants Without Final Decisions on Their Religious Requests Have Not Exhausted.</u>

Defendants acknowledge that this Court has concluded, at least preliminarily, "exhaustion in this instance is futile." *Doster v. Kendall*, ---F. Supp. 3d---, 2022 WL 982299, at *9 (S.D. Ohio Mar. 31, 2022). Defendants respectfully disagree. First, Movants who have not received a final decision from on their religious accommodation request have no standing since they are currently exempt from the COVID-19 requirement—their religious exercise is not burdened and their claims are not ripe. The futility exception to the exhaustion doctrine cannot create Article III standing for those individuals.

Second, even if those Movants without an accommodation decision had ripe claims, those claims would still not be justiciable because they have not exhausted their administrative remedies. "Even in the military setting the requirement of exhausting administrative remedies is waived if resort to those remedies would be futile, . . . but in that setting the exception for futility is interpreted narrowly because of the natural reluctance of civilian courts to intervene in a sphere of activity about which they are more than usually ignorant." *Kawitt v. United States*, 842 F.2d 951, 953 (7th Cir. 1988) (citation omitted); *see Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974) (finding no futility).

Applying the correct legal standard to the facts shows that exhaustion of remedies through a final decision from the Air Force Surgeon General is not futile. "[E]very appeal is considered on an individual basis and carefully reviewed by the Surgeon General and his staff." ECF No. 34-2, ¶ 25, Pg. ID 2239; *see* ECF No. 51-1, ¶ 7, Pg. ID 3396–97. The Air Force has granted at least 49 requests, and the Surgeon General granted at least five of those on appeal after they were initially denied by the initial approval authority. DAF COVID-19 Statistics – May 3, 2022, available at https://perma.cc/QCY7-7BYQ. The process may be rigorous, but it is not futile.

2.      No Movants Have Received Final Disciplinary Action or Discharge.

The administrative remedies Movants must exhaust are not limited to the religious accommodation process, but also include the administrative and/or disciplinary actions they may face if they fail to follow an order to vaccinate. For potential consequences short of discharge, like Article 15 or non-judicial punishment, the Supreme Court has made clear that federal courts are not to issue injunctions interfering with the military's administrative processes. Congress established Article 15, 10 U.S.C. § 815, and to interfere with these military processes would exceed this Court's authority and would violate separation of powers principles. *See Schlesinger*, 420 U.S. at 758. There are opportunities for judicial review after those processes have exhausted, and court should not interfere before Movants exhaust their remedies.[5] No Movant has exhausted remedies to challenge any nonjudicial punishment.

For potential discharge, Movants must complete the discharge process before bringing claims in federal court. *See Thomas Short v. Berger*, No. 22-cv-4444, 2022 WL 1203876, at *11 (D. Ariz. Apr. 22, 2022) ("The process he has left to exhaust is the separation proceeding. He provides no evidence,

---

[5] Movants raise the specter of "prison" and "confine[ment]." Mot. at Pg. ID 3747, 3750; ECF No. 56, Pg. ID 4048. To be clear, Movants provide no evidence that they face imprisonment for failure to comply with a COVID-19 vaccine requirement. As of May 6, 2022, no service member in "the Air Force has had court-martial charge preferred against him or her for failing to obey a lawful order by refusing the COVID-19 vaccination" which would be the first step in a long process before any punishment of military prison could be imposed. Hernandez Decl., ¶ 14, Ex. 2. Even if the Air Force were to initiate criminal charges (which it has not done), the Supreme Court has made clear that federal courts are not to interfere with ongoing military court proceedings which have due process safeguards built in. *Schlesinger*, 420 U.S. at 758.

other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember, such that engaging in the process would be futile"). No Movant alleges to have completed the discharge process, which provides significant opportunities to present evidence, advance arguments, and to avoid discharge. *See* Mot. to Dismiss, ECF No. 51, 14–17, Pg. ID 3383–86 (describing processes for administrative discharge); *see* AFI 36-3206, https://perma.cc/75UU-DDE5; AFI 36-3207, https://perma.cc/VDJ4-R8FM; AFI 36-3208, https://perma.cc/L8VJ-3X82.

3. Exhaustion Means Pursuing Available Appeals, including the AFBCMR.

Even if a member of the Air Force is disciplined or discharged, the Air Force provides additional avenues for administrative review, including the Air Force Discharge Review Board and the Air Force Board for Correction of Military Records ("BCMR"). 32 C.F.R. § 865.112(f) & (i) (Discharge Review Board can review whether "a certain course of action violated his or her constitutional rights"); 10 U.S.C. § 1552(a)(1) (BCMRs are empowered to "to correct an error or remove an injustice"); AFI 36-2603, Air Force BCMR, available at https://perma.cc/6HJ5-JUPP. "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell*, 462 U.S. at 303.

"A claim will be considered exhausted either after the [BCMR]'s original decision, if there is no request for reconsideration, or after a denial of a timely request for reconsideration." *Davis v. United States*, 589 F.3d 861, 865 (6th Cir. 2009); *see Covill v. United States*, 959 F.2d 58, 60 (6th Cir. 1992) (same). When military plaintiffs fail to exhaust before filing suit, federal courts will dismiss "without prejudice to afford [them] the opportunity to exhaust all intraservice remedies," including the BCMR. *Bickel v. Del. Air Nat'l Guard*, No. 2:18-cv-00119, 2018 WL 2183296, at *7 (S.D. Ohio May 11, 2018); *Montgomery v. Sanders*, No. 3:07-cv-470, 2008 WL 4546262, at *5 (S.D. Ohio Aug. 18, 2008) (dismissed for failure to exhaust remedies, including AFBCMR); *Vaughan v. Ky. Army Nat'l Guard*, No. 3:12-35, 2013 WL 211075, at *3 (E.D. Ky. Jan. 18, 2013) (explaining "the Court concludes that Vaughan will

11

be required to exhaust his administrative remedies" through the BCMR); *Heidman*, 414 F. Supp. at 49.

### C. Movants Are Not Likely to Succeed on the Merits.

Movants are not likely to succeed on the merits of their RFRA claim. "[A] majority of the Supreme Court has already held . . . that the Government is likely to succeed on the merits on the same claims brought by Navy SEALs and although this decision may not be formally binding, it is the most persuasive authority on which a District Court may rely." *Navy Seal 1 v. Austin*, No. 22-0688, 2022 WL 1294486, at *4 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022).

"Under RFRA, the Federal Government may not . . . substantially burden a person's exercise of religion" unless the Government can "demonstrat[e] that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb–1(b)).[6]

First, Movants fail to carry their initial factual burden. They provide no evidence of their religious beliefs or any evidence whatsoever that all available FDA- and WHO-approved vaccines that satisfy the Air Force's COVID-19 vaccine requirement actually burden the beliefs of all 230 Movants.

Requiring Movants to be vaccinated against COVID-19 furthers the compelling military interests in force health and readiness. The Supreme Court has held that "[s]temming the spread of COVID–19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *Maryville Baptist*, 957 F.3d at 613 (finding a "compelling interest in preventing the spread of a novel, highly contagious, sometimes fatal virus"). This interest is especially compelling here because "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military

---

[6] There is no need for the Court to address Plaintiffs' First Amendment claim separately. If the Government prevails on Plaintiffs' RFRA claim, then the Government would necessary prevail under Plaintiffs' First Amendment claim. Conversely, if Plaintiffs prevail under RFRA, the Court need not reach the constitutional theory. Movants' delay claims are also meritless, as explained in Defendants' motion to dismiss. ECF No. 51, Pg. ID 3388–89.

authorities concerning the relative importance of a particular military interest." *Mark Short*, 2022 WL 1051852, at *7 (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)); *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring); *id.* at 1305 (Alito, J., dissenting) ("I agree that the Navy has a compelling interest in preventing COVID-19 infection from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing any serious health risk to Navy personnel"); *Navy Seal 1*, 2022 WL 1294486, at *9.

Furthermore, the Government is likely to show that there are no less restrictive means as effective as vaccination. *See* Defs.' Opp to Prelim. Inj., ECF No. 27 Pg. ID 1541–47 (discussing least restrictive means and citing supporting evidence). The hundreds of movants and truncated response time make it impossible for Defendants to address the individualized reasons that vaccination is the least restrictive means in this opposition brief. But the materials that Defendants will provide in this case if Intervenors are permitted to join will show that the military carefully considered each individual's specific circumstances before deciding that vaccination was the least restrictive means (where the Air Force has actually made that determination). Those military decisions on least restrictive means are entitled to significance deference. *Winter*, 555 U.S. at 27. As one court put it:

> Even more problematically, as Plaintiff takes pains to note, evaluating Plaintiff's RFRA claim would require the Court to determine whether vaccination against COVID-19 is the narrowest means to accomplish the Navy's interest in ensuring the success of *this* Plaintiff's deployments. That would further require the Court to review the missions to which Plaintiff has been assigned in the recent past, the tactical particulars of those missions, and whether those tactical particulars are reflective of future special-operations missions to which Plaintiff would be assigned in the future. The tactical necessities of a particular mission are perhaps the epitome of "complex, subtle, and professional decisions" otherwise left to the Commander-in-Chief and their subordinates.

*Navy Seal 1*, 2022 WL 1294486, at *6;[7] *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) ("no less restrictive means would satisfy that interest in this context"). *See e.g.,* ECF

---

[7] Movants suggest that Defendants have engaged in "sleight of hand" by citing to this passage for the proposition that Courts should give deference to the military's least restrictive means analysis. ECF No. 56, Pg. ID 4049. Movants argue that this quote refers only to the scope of injunction. But as this quote makes clear, the *Navy Seal 1* court was discussing the least restrictive means analysis and the deference that Courts should give to the military when making those decisions.

No. 55-1, Pg. ID 3919 (considering less restrictive means for Movant Oberg, including transfer to another base and various other alternatives, and discussing how lack of vaccination would impact "his requirement to deploy" and "serve on frequent TDY missions").

The fact that the Air Force currently has granted medical or administrative exemptions does not show that less restrictive means are available for Movants. Both medical and administrative exemptions are temporary in nature and have been steadily declining for several months. *See* Chapa Decl., ¶ 12-14, 20, ECF No. 55-3; Little Decl., ¶ 3, ECF No. 27-16; Long Decl., ¶ 3, ECF No. 27-24; *compare* DAF COVID-19 Statistics (Jan. 22, 2022), https://perma.cc/BJ9D-7AJ4. Now just 28 Active Duty and 105 Reservists have administrative exemptions. DAF COVID-19 Statistics (May 3, 2022), https://perma.cc/QCY7-7BYQ. There are currently 410 temporary medical exemptions for Active Duty, and 198 for the Reserve. *Id.* These exemptions are temporary—all administrative exemptions are for those who are in the process of leaving the force and most medical exemptions appear to be for pregnancy. *See* ECF No. 53, Pg. ID 3747; Shaffer Decl., ¶ 6 (discussing Navy exemptions), *Navy Seal 1 v. Biden*, 8:21-cv-2429, ECF No. 74-8 (M.D. Fla.). And for conditions other than pregnancy, Movants' argument "misses the point that the [Air Force] grants medical exemptions only on a showing of a contraindication, i.e., upon a showing that vaccination would cause more medical harm than it would good." *Navy Seal 1*, 2022 WL 1294486, at *12. "In those circumstances, therefore, lack of vaccination in fact serves the military's interest in maintaining the health of individual servicemembers and force readiness broadly." *Id.* (citing *Mark Short*, 2022 WL 1051852, at *8).

When it comes to assignment, travel, and deployment, the Air Force treats service members who are unvaccinated for medical or administrative reasons the same as Movants.[8] "[A]ll unvaccinated service members are treated the same for purposes of determining whether they should travel or deploy." ECF No. 55-3, ¶ 17. "Even if a member has a medical exemption for the COVID-19

---

[8] As Movants note, the "hold on any Permanent Change of Stations" covered *all* "unvaccinated members of the Air and Space Force"—regardless of the type of pending exemptions being requested. ECF No. 53, Pg. ID 3744–45.

vaccine, that exemption does not automatically render a service member deployable. Individuals who receive a medical exemption cannot be deployed until the Combatant Command makes a separate determination based on an individual's medical circumstances and associated risks." *Navy Seal 1*, 2022 WL 1294486, at *8.

Finally, Movants argue that mission accomplishment prior to vaccines means that the military cannot have a compelling interest or that less restrictive means are available. ECF No. 56, Pg. ID 4053. That is like saying that the military has no compelling interest in requiring body armor or that there are less restrictive means because the military previously operated without it. *Cf. Austin*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). But "merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." *Navy Seal 1*, 2022 WL 1294486, at *12; *Short*, 2022 WL 1051852, at *9. "Of course, in assessing risk, a government need not wait for the flood before building the levee." *Ramirez v. Collier*, 142 S. Ct. 1264, 1288 n.2 (2022) (Kavanaugh, J., concurring).

## II. Movants Do Not Face Irreparable Harm.

Movants also fail to establish the "indispensable" preliminary-injunction requirement of irreparable harm. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). "To merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Id.* (citation omitted). The "possibility" of irreparable harm is not enough. *Winters*, 555 U.S. at 22. An alleged harm "is irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (quoting *Overstreet*, 305 F.3d at 578). And "[i]n the context of 'military personnel decisions, . . . courts have held that the showing of irreparable harm must be *especially strong* before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs.'" *Church*, 2021 WL 5179215, at *17 (quoting *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021)) (rejecting service members' assertions

of irreparable harm).

Movants do not present any individualized evidence of irreparable harm. Instead, they argue that "where constitutional rights are infringed upon, . . . the likelihood of success factor is dispositive." Mot., Pg. ID 3751. But Movants fail to show likelihood of success on the merits, so infringement is neither "threatened [nor] occurring." *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see, e.g., Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (to show irreparable harm based on loss of constitutional rights, movant must "show a likelihood of success on the merits"), *cert. denied*, 140 S. Ct. 1198 (2020); *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017) (denying preliminary injunction, "even assuming that every [constitutional] allegation constitutes an irreparable injury," where the other factors "weigh so heavily against Plaintiffs that they cannot prevail"); *Mark Short*, 2022 WL 1051852, at *9 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of his religious freedom claims, there is no presumption of irreparable harm."); Ex. 11, *Dunn* Op. at 45; *Thomas Short*, 2022 WL 1203876, at *7–8.

More to the point, there is no such broad excision of the "indispensable" requirement of irreparable harm any time a plaintiff merely asserts a colorable constitutional claim.[9] *D.T.*, 942 F.3d at 327; *cf. Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (noting that "[p]reliminary injunctions in constitutional cases *often* turn on likelihood of success on the merits," and subsequently considering irreparable harm (emphasis added)); *Maryville Baptist*, 957 F.3d at 615–16 (same). Rather, established Supreme Court and Sixth Circuit case law stand for the proposition that the government may not actively prevent individuals from engaging in a particular form of worship or speech. For example, in

---

[9] The Movants incorrectly assert that there is "a collapsing of the standards when the government is the Defendant to look at the question of the merits." Mot. 12, Pg. ID 3752. First, none of Movants' cited authority stand for such a proposition. Rather, Movants' cited Supreme Court authority each reverse on the merits of the relevant claim and remand for further proceedings on the remaining preliminary-injunction factors, including irreparable harm. *See Holt v. Hobbs*, 574 U.S. 352 (2015); *Burwell*, 573 U.S. 682; *Gonzales*, 546 U.S. 418. Second, to the extent that Movants assert that the merits and the irreparable harm factors "collaps[e] . . . *when the government is the Defendant*," Mot. 12, Pg. ID 3752 (emphasis added), Movants appear to conflate the principle that the final two preliminary-injunction factors—balance of the equities and the public interest—combine when the government is a party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

*Tandon v. Newsom*, the Supreme Court held that closing places of worship is irreparable because it prevented individuals from group worship. 141 S. Ct. 1294, 1297 (2021). That holding echoed the conclusion of at least five Justices in *S. Bay United Pentecostal Church v. Newsom* that "California's prohibition on singing and chanting during indoor services" could constitute irreparable harm. 141 S. Ct. 716, 717 (2021) (Barrett, J., concurring). The Sixth Circuit's decision in *Maryville* reflects the same specific concern with prohibiting the ability to worship in a particular way. 957 F.3d at 614 (a "prohibition on attending any worship service . . . assuredly inflicts irreparable harm"); *see also Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020) ("The prohibition on attending any worship service through May 20 assuredly inflicts irreparable harm by prohibiting them from worshiping how they wish.").[10]

This case is much different than those church closure cases where "the plaintiffs were literally prevented from exercising their religion in group settings." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021). Here, in contrast, the Movants "may exercise [their] religion by declining to receive the vaccination." *Id.*; *see also Navy Seal 1*, 2022 WL 1294486, at *16 (concluding that "no government actor is preventing" service members in this situation "from exercising [their] alleged religious conviction against COVID-19 vaccination" because service members "remain[] free to depart the military" in lieu of vaccination and to worship as they desire); *Thomas Short*, 2022 WL 1203876, at *8 ("Because Major Short may continue to 'exercise [his] religion by declining to receive the vaccination,' [applying *Doe*], he has not suffered an irreparable injury under Ninth Circuit law." (citation omitted)). And while declining to receive the vaccination could result in punitive action, as this Court has noted that such action is not irreparable harm. *See Doster*, 2022 WL 982299, at *15 ("[T]he punitive action that may be taken against Plaintiffs if they to refuse to get vaccinated without

---

[10] The Movants' citation to *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) is inapposite. There, the Sixth Circuit found irreparable harm because subjecting the movants to the challenged law put them "in danger of losing the opportunity" to accept a tender offer, which loss "could not be compensated by money damages." *Id.* The Court did not find irreparable harm based on a finding of unconstitutionality; and in fact expressly analyzed irreparable harm separate from the Court's determination that the movants were likely to succeed on the merits of their constitutional claim. *See id.*

an exemption does not, alone, establish irreparable harm." (citing *Poffenbarger*, 2022 WL 594810 at *18)). Nor is such harm "threatened [or] occurring" given that Movants' claims are unripe and they have failed to exhaust their administrative remedies. *Elrod*, 427 U.S. at 374; *see also supra* Parts I.A, I.B.

## III. Balance of Equities and Public Interest Support Denying the Motion.

Finally, Movants make no attempt to establish the third and fourth requirements for issuance of emergency injunctive relief, which "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. This Court has recognized the paramount public interest in national defense and military readiness. ECF No. 47, Pg. ID 3199; *see also Winter*, 555 U.S. at 24-26 (vacating preliminary injunction where the balance of equities and public interest, with deference to military judgments, "tip strongly in favor of the Navy"); *North Dakota v. United States*, 495 U.S. 423, 443 (1990). Public interest depends on the 230 Movants and their fellow service members and their collective abilities to execute their military duties, maintain necessary readiness to deploy. Movants have failed to even provide to this Court a description of their career fields or duties, let alone an argument whether being unvaccinated in those unknown positions would impact our national defense. The Air Force's decision that it cannot accept avoidable risk to the health and readiness of its fighting forces is one that requires this Court's deference, serves the public interest, and outweighs any interests that Movants may have in premature preliminary relief.[11] *See Navy Seal 1*, 2022 WL 1294486, at *16–17 (denying preliminary injunction); *Church*, 2021 WL 5179215, at *18–19 (same); *Mark Short*, 2022 WL 1051852, at *9-10 (same); *Dunn* Op. at 46–47 (same); *cf. Dunn v. Austin*, --- S. Ct. ---, 2022 WL 1133402 (U.S. Apr. 18, 2022) (declining to enter injunctive relief pending appeal of district court's denial of preliminary injunction motion).

The Court previously reasoned that limiting an injunction to "a prohibition against disciplinary

---

[11] Deciding the potential harm to the national defense "necessarily involves 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force[, which] are essentially professional military judgments.'" *Mark Short*, 2022 Wl 1051852, at *5 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)).

or separation measures" and "maintaining the current temporary exemptions" would not affect the Air Force's mission to provide a ready national defense. *Doster*, 2022 WL 982299, at *17. Defendants respectfully submit that the Court should not extend that reasoning here, particularly absent any individualized showing at all by these 230 members, for three primary reasons. First, the national defense depends on service members' compliance with lawfully issued orders. No military can successfully function where members feel free to define the terms of their own military service and which orders they will choose to follow. *See, e.g.*, *Stein v. Mabus*, No. 3:12-cv-816, 2013 WL 12092058, at *7-8 (S.D. Cal. Feb. 14, 2013) (noting that "[m]ilitary officers are better suited than civilian courts to determine" whether a service member's refusal to "follow all orders from" the Commander-in-Chief "disrupted good order and discipline"); *United States v. Stark*, No. NMVM200000243, 2000 WL 1456299, at *2 (N-M. Ct. Crim. App. Aug. 31, 2000) (concluding that, upon receiving an order to take the anthrax shot, the service member could not "pick and choose which immunizations he should receive"); *cf. United States. v. Hardy*, 46 M.J. 67, 74 (C.A.A.F. 1997) (the notion "that service members need not obey unpopular, but lawful, orders from either their civilian or military superiors . . . would be antithetical both to the fundamental principle of civilian control of the armed forces in a democratic society and to the discipline that is essential to the successful conduct of military operations"). Even an injunction limited to disciplinary and separation still harms the public interest in a strong and ready national defense, as it interferes with the military's clear discretion to handle matters of good order and discipline, to the detriment of military effectiveness and trust between commanding officer and subordinate. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983); *Orloff v. Willoughby*, 345 U.S. 83, 95 (1953).

Second, that the Air Force was able to permit temporary exemptions while Movants' religious exemption requests and appeals are pending in no way means that the Air Force must tolerate that risk indefinitely.[12] *Mark Short*, 2022 WL 1051852, at *9 (explaining that the military "does not [need]

---

[12] Movants' arguments, if accepted, would severely undermine the military's ability to consider religious exemption requests without burdening the requestor's religion.

endure these risks indefinitely when there are effective means of mitigating them"). For Movants whose appeals have been denied, the Air Force has determined that it is not willing to accept the avoidable risk of the threat that unvaccinated individual poses to the military's compelling interests in health, safety, and readiness. Neither RFRA nor the Constitution requires the military to subordinate its professional assessment of acceptable risk to an individual service member's contrary view.

Finally, an injunction here—even one limited to disciplinary and separation matters—would fail to account for the "total effect of such cases," which tilts the balance of equities and public interest squarely in Defendants' favor. "In evaluating the harm to the [military], the court must consider the aggregate harm of all these possible claims," *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005), and the predictable ripple effect would work "substantial" harm to the military, *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991). *See also Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009) ("[I]nterference in military personnel decisions [causes] great harm to the military because of the potential cumulative effect of multiple injunctions.") (citation omitted); *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004) (assessing "the possibility of substantial disruption and diversion of military resources" presented by the proliferation of claims "in the aggregate" in denying preliminary injunction). Here, the 230 Movants alone constitute a substantial disruption that would be further compounded should any and all Air Force service members around the country be allowed to retroactively join a preexisting preliminary injunction granted narrowly to the 18 original Plaintiffs. Thus, "[t]he harm to the [military] is greater than it first appears." *Guerra*, 942 F.2d at 275.

## CONCLUSION

The Court should deny the motion for a preliminary injunction.

Dated: May 9, 2022                    Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Principal Deputy Assistant Attorney General
                                      Civil Division

                                      ALEXANDER K. HAAS
                                      Director, Federal Programs Branch

                                      ANTHONY J. COPPOLINO
                                      Deputy Branch Director
                                      Federal Programs Branch

                                      */s/ Zachary A. Avallone*
                                      ANDREW E. CARMICHAEL
                                      AMY E. POWELL
                                      Senior Trial Counsel
                                      STUART J. ROBINSON
                                      Senior Counsel
                                      ZACHARY A. AVALLONE
                                      COURTNEY D. ENLOW
                                      LIAM HOLLAND
                                      CATHERINE M. YANG
                                      CASSANDRA SNYDER
                                      Trial Attorneys
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L Street, N.W.
                                      Washington, DC 20005
                                      Tel: (202) 514-2705
                                      Email: zachary.a.avallone@usdoj.gov

                                      *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Zachary A. Avallone
ZACHARY A. AVALLONE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-2705
Email: zachary.a.avallone@usdoj.gov