**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Cincinnati Division**

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | Case No.: 1:22-cv-00084 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, WITH THE FRCP 56(f) DECLARATION OF CHRISTOPHER WIEST IN SUPPORT, AND SUPPORTED BY OTHER SWORN EVIDENCE ALREADY IN THE RECORD**

Defendants moved to dismiss this matter pursuant to FRCP 12(b)(1) and FRCP 12(b)(6), arguing, that the Plaintiffs' claims are not ripe, and that Plaintiffs have failed to exhaust administrative remedies. The Court already rejected Defendants' arguments in its decision granting a Preliminary Injunction. Defendants' current motion changes nothing, they still are wrong.

**I.     FACTS**

On or about September, 2021, Defendant Kendall, Secretary of the Air Force, issued an order to members of the Air Force and Space Force to be vaccinated for COVID-19. (Pl.'s Ver. Compl., DE#1, ¶ 24; DE#11-2). On November 29, 2021, the Air Force placed a hold on any Permanent Change of Stations related to the vaccination order (hereinafter "mandate"), effectively pausing duty changes, and career progression, for personnel who had pending vaccination exemption requests. (Pl.'s Ver. Compl., DE#1, ¶ 25; DE#11-3). Many of the Plaintiffs who are currently pursuing Masters or PhD work at Air University at AETC at Wright Patterson Air Force Base received an email to this effect soon thereafter. *Id.*

1

All of the Plaintiffs sought religious exemptions from that vaccination mandate, as outlined in the following paragraphs, pursuant to the federal Religious Freedom Restoration Act ("RFRA") (42 USC 2000bb) and its implementing regulations, including, without limitation, Department of Defense Instruction ("DoDI") 1300.17. (Pl.'s Ver. Compl., DE#1, ¶ 26).[1]

### The Plaintiffs Religious Accommodation Requests

The chart below summarizes the submittals and processing of the Plaintiffs' religious accommodation requests – all of which were timely and all of which included an Air Force Chaplain confirming the sincerity of the applicant's beliefs.

| Plaintiff Name and Rank | Active or Reserve? | Date accommodation submitted to Command and Commander | Date accommodation denied | Date appeal taken to Air Force Surgeon General | Date Surgeon General Denied Appeal |
|---|---|---|---|---|---|
| 1LT Hunter Doster[2] | Active | 9/7/2021, LTG Webb | 1/6/2022 | 1/18/2022 | 2/22/2022 |
| Col. Jason Anderson[3] | Active | 9/2021, LTG Webb | Pending | N/A | N/A |
| Maj. Paul Clement[4] | Active | 9/28/2021, LTG Webb | 3/23/2022 | 4/11/2022 | Pending |
| A1C McKenna Colantonio[5] | Active | 9/20/2021, LTG Slife | 12/2/2021 | 12/9/2021 | 1/6/2022 |
| Maj. Benjamin Leiby[6] | Active | 9/20/2021, updated | Pending | N/A | N/A |

[1] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited 2/16/2022). Page 10 of this Instruction contains processing timelines for religious accommodation requests, that require action within 30 days for Active-Duty Personnel, and 60 days for Reservists from the relevant action authority (i.e. the General Court Martial Convening Authority); and, for appeals, 60 days from submission.

[2] (Pl.'s Ver. Compl., DE#1, ¶ 27; Admin. Materials, DE#11-4; Doster Declaration, DE#191). As reflected in this chart, several Plaintiffs have been recently promoted, including Lt. Doster.

[3] (Pl.'s Ver. Compl., DE#1, ¶ 28; Admin. Materials, DE#11-6). In contravention of the timelines contained in DodI 1300.17, Colonel Anderson's request remains pending with Lt. General Webb as of today. *Id.*

[4] (Pl.'s Ver. Compl., DE#1, ¶ 29; Admin. Materials, DE#11-8). Supp Decl. Wiest, attached.

[5] (Pl.'s Ver. Compl., DE#1, ¶ 30; Admin. Materials, DE#11-7).

[6] (Pl.'s Ver. Compl., DE#1, ¶ 31; Admin. Materials, DE#11-9). In contravention of the timelines contained in DodI 1300.17, Major Leiby's request remains pending with Lt. General Webb as of today. *Id.*

| | | 11/29/2021, LTG Webb | | | |
|---|---|---|---|---|---|
| 1LT Brett Martin[7] | Active | 9/22/2021, LTG Webb | 3/29/2022 | 4/6/2022 | Pending |
| 1LT Connor McCormick[8] | Active | 9/8/2021, LTG Webb | 2/22/2022 | 3/7/2022 | 4/9/2022 |
| Capt. Peter Norris[9] | Active | 9/28/2021, LTG Webb | Pending | N/A | N/A |
| 1LT Alex Ramsperger[10] | Active | 9/3/2021, LTG Webb | 3/29/2022 | 4/5/2022 | Pending |
| Lt. Col Daniel Reineke[11] | Active | 9/20/2021, LTG Webb | 1/28/2022 | 2/11/2022 | 3/13/2022 |
| Capt. Benjamin Rinaldi[12] | Active | 9/14/2021, LTG Webb | 3/29/2022 | 4/4/2022 | Pending |
| Lt. Col. Douglas Ruyle[13] | Active | 9/27/2021, LTG Webb | Pending | N/A | N/A |
| Lt. Col. Edward Stapanon, III[14] | Active | 9/13/2021, LTG Webb | 1/7/2022 | 1/19/2022 | 4/19/2022 |
| SSgt Adam Theriault[15] | Active | 9/3/2021, LTG Slife | 11/5/2021 | 11/19/2021 | 1/21/2022 |
| SRA Joe Dills[16] | Reserve | 10/2/2021, LTG Scobee | 11/2021 | 12/2021 | 12/2021 |
| Maj. Heidi Mosher[17] | Reserve | 10/16/2021, LTG Scobee | 1/31/2022 | 2/7/2022 | 3/13/2022 |
| Maj. Patrick Pottinger[18] | Reserve | 9/13/2021, LTG Scobee | 1/7/2022 | 1/19/2022 | 3/18/2022 |
| SMSgt Chris Schuldes[19] | Reserve | 10/2/2021, LTG Scobee | 10/22/2021 | 10/30/2021 | 12/16/2021 |

[7] (Pl.'s Ver. Compl., DE#1, ¶ 32; Admin. Materials, DE#11-10; DE#33-5, DE#33-6). Supp Decl. Wiest, attached.

[8] (Pl.'s Ver. Compl., DE#1, ¶ 33; Admin. Materials, DE#11-11; DE#38-5; DE#38-6). Supp Decl. Wiest, attached.

[9] (Pl.'s Ver. Compl., DE#1, ¶ 34; Admin. Materials, DE#11-13). In contravention of the timelines contained in DodI 1300.17, Captain Norris' request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[10] (Pl.'s Ver. Compl., DE#1, ¶ 35; Admin. Materials, DE#11-15). Supp Decl. Wiest, attached.

[11] (Pl.'s Ver. Compl., DE#1, ¶ 36; Admin. Materials, DE#11-16). Supp Decl. Wiest, attached.

[12] (Pl.'s Ver. Compl., DE#1, ¶ 37; Admin. Materials, DE#11-17). Supp Decl. Wiest, attached.

[13] (Pl.'s Ver. Compl., DE#1, ¶ 38; Admin. Materials, DE#11-18). In contravention of the timelines contained in DodI 1300.17, Lt. Colonel Ruyle's request remains pending with Lt. General Webb as of the date of the filing of this Complaint. *Id.*

[14] (Pl.'s Ver. Compl., DE#1, ¶ 39; Admin. Materials, DE#11-20; DE#38-3; DE#38-4). Supp Decl. Wiest, attached.

[15] (Pl.'s Ver. Compl., DE#1, ¶ 40; Admin. Materials, DE#11-21).

[16] (Pl.'s Ver. Compl., DE#1, ¶ 44; Admin. Materials, DE#11-5).

[17] (Pl.'s Ver. Compl., DE#1, ¶ 45; Admin. Materials, DE#11-12; #33-1; DE#38-1; DE#38-2).

[18] (Pl.'s Ver. Compl., DE#1, ¶ 46; Admin. Materials, DE#11-14). Supp Decl. Wiest, attached.

[19] (Pl.'s Ver. Compl., DE#1, ¶ 47; Admin. Materials, DE#11-19).

**The Air Force employs a double standard for exemption requests. It has granted thousands of medical and administrative requests, while denying all but a few religious exemptions, all of which otherwise qualify for another exemption**

As of May 10, 2022, the Air Force *received 11,700 requests for religious accommodation, approved 60*, *denied 5884*, *received 3414 appeals, and denied 2404 of those, while only approving 13*.[20]  In the meantime, the Air Force has granted 855 medical exemptions, and 1,081 administrative exemptions.  *Id.*  The granting of more than one thousand medical and administrative exemptions belies any assertion that vaccination is mission-critical and that no religious accommodation exemptions can be granted.

Defendants Kendall, Scobee, Miller, Webb, and Slife each failed to grant (or even meaningfully consider) thousands of religious accommodation requests, while processing and approving medical and/or administrative accommodation requests, including for job duties similar in risk from the COVID-19 perspective to those of the Plaintiffs.  Nevertheless, each, in violation of RFRA, has taken and continues to take actions against the Plaintiffs, including threats of punitive actions to include court-martial. (Pl.'s Ver. Compl., DE#1, ¶ 52).  Because the order in question violates Plaintiffs' fundamental rights of free exercise of religion, Plaintiffs are unable to comply with the order, even if it means federal prison through the UCMJ process. (Pl.'s Ver. Compl., DE#1, ¶ 53).

Consistent with how the Air Force admittedly has treated administrative and medical exemption requests, almost all Plaintiffs have submitted declarations that demonstrate they too

---

[20] https://www.af.mil/News/Article-Display/Article/3018445/daf-covid-19-statistics-may-10-2022/ (last visited 5/14/2022).

seek **temporary exemptions** from the Air Force's vaccination mandate until a non-objectionable vaccine comes to market. [Declarations of Plaintiffs, DE#30-3 through 20].

Plaintiffs have also adduced proof that _not one single religious exemption_ has been granted without also being eligible for an administrative exemption. [Dec. Wiest, DE#30-2, with transcript of hearing in _Poffenbarger v. Kendall_ attached]. _None_ of these Plaintiffs are eligible for an administrative exemption. Lt. Doster likewise testified that Defendants are systemically denying all religious accommodations except for those at the end of service or who qualify for administrative exemptions. [Third Dec. Doster, DE#46-1].

## II.    LAW AND ARGUMENT

### A.  Standard of Review

Attacks on subject-matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. _Oh. Nat'l Life Ins. Co. v. United States_, 922 F.2d 320, 325 (6th Cir. 1990). "A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading[,]" and "[i]n reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss."[21] _Id._ (emphasis omitted). By contrast, "when a court reviews a complaint under a factual attack, . . . no presumptive truthfulness applies to the factual allegations[,]" and

---

[21] In terms of a facial attack, the operative facts in the Plaintiffs' Complaint allege that the Secretary imposed a vaccine mandate for COVID-19. (Pl.'s Ver. Compl., DE#1, ¶24). It alleges that the Plaintiffs submitted accommodation requests, and each had a Chaplain confirm the sincerity of the belief, but either had their request denied or that their request would be denied. (_Id._ at ¶¶ 27-48). It also explains that many of the Plaintiffs have natural immunity from prior infection. (_Id._ at ¶48). It explains that the Department of the Air Force has granted thousands of administrative and medical exemptions, but only a handful of religious accommodations to the same mandate. (_Id._ at ¶¶ 49-58). It is clear that the Department of the Air Force has not approved any religious accommodations other than those at the end of their term of service. (_Id._ at ¶2). It alleges that directives were given for blanket denials of religious accommodations. (_Id._ at ¶51).

"a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (emphasis omitted).

The Court should order an evidentiary hearing, and require Defendants to present a witness who can speak to the administrative processing of Plaintiffs' requests to date, the systemic denial of religious exemptions, and the granting of medical and administrative exemptions.

## B. Discovery should be ordered to the extent Defendants make a factual attack on jurisdiction

Numerous cases provide that where, as here, Defendants make a factual attack, and where, as here, Plaintiffs request discovery via a proper FRCP 56(f) Declaration seeking discovery (which is included in the Declaration of Mr. Wiest, attached), such discovery should be ordered. *Abumchi v. Joak Am. Homes, Inc.*, 2022 U.S. Dist. LEXIS 74070 (MIED 2022); *Shepherd v. United States*, 2010 U.S. Dist. LEXIS 44292 (TNED 2010); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2nd Cir. 1976); *Johnson v. United States*, 534 F.3d 958, 965 (8th cir. 2008); *see also Rutkofske v. Norman*, 114 F.3d 1188 [published in full-text format at 1997 U.S. App. LEXIS 13262], at *3 (6th Cir. June 4, 1997) (*citing Exchange Nat'l Bank*, 544 F.2d at 1131).

Plaintiffs here seek discovery to uncover whether it is still the case, as the Government previously represented, that no religious accommodations are granted unless an administrative ground for an exemption applies. Of course, this goes to the question of the futility exception to exhaustion and to ripeness. [Declaration. Wiest with Discovery attached].

"When a [dispositive motion] is filed, the party opposing the motion may, by affidavit, explain why he is unable to present facts essential to justify the party's opposition to the motion." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). "The burden is on the party seeking

6

additional discovery to demonstrate why such discovery is necessary." *Id.* Having done so here, the Court should permit the requested discovery.

### C. Plaintiffs' Claims are Ripe

Defendants contend that this matter and the claims in it are not ripe. Like other claims, a RFRA claim becomes ripe if the plaintiff faces an "actual or imminent" injury, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1970), which occurs if the plaintiff confronts an actual or imminent burden on religious practice.

Put simply, "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (cleaned up); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

"If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of the regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Under that scenario, the First Amendment—"of transcendent value to all society, and not merely those exercising their rights—might be the loser." *Id.* As the Supreme Court remarked on this issue:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

> *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

Plaintiffs have standing and a claim is ripe regardless of whether they have been prosecuted or threatened with prosecution. *Doe v. Bolton*, 410 U.S. 179, 188 (1973). And where, as here, a government policy with exemptions vests "unbridled discretion in a government official over whether to permit or deny" First Amendment protected activity, one who is subject to the law or policy may challenge it facially without the necessity of first applying for, and being denied that same exemption. *City of Lakewood v. Plain Dealer Publ'n Co.*, 486 U.S. 750, 755-56 (1988); *see also East Brooks Books, Inc. v. Shelby Cnty. Tenn.*, 588 F.3d 360, 369 (6th Cir. 2009) (finding that plaintiff had standing based on the suppression of his future protected speech even where his license was not actually revoked); *Faith Baptist Church v. Waterford Twp.*, 522 Fed. Appx. 322 (6th Cir. 2013) (mere threat of potential prosecution was sufficient to establish that the claim was ripe and standing existed).

As of today, 10 Plaintiffs have had their appeal process fully adjudicated and have final denials from the Air Force Surgeon General (Doster, Colantonio, McCormick, Reineke, Stapanon, Theriault, Dills, Mosher, Pottinger, and Schuldes) – many of them in the short time this case has been pending. Further, 4 more (Clement, Martin, Ramsperger, and Rinaldi) have their final appeals pending with the Air Force Surgeon General and will have final denials in the next four weeks. That leaves four who have not had adjudications from their MAJCOM (Anderson, Leiby, Norris, and Ruyle), but each will be denied, because each is not otherwise qualified for an administrative exemption. [Dec. Wiest, DE#30-2, with transcript of hearing in *Poffenbarger v. Kendall* attached; Third Dec. Doster, DE#46-1].

"Ripeness requires that the injury in fact be certainly impending." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). It is a question of imminence. *Thomas More Law Center v. Obama*, 651 F. 3d 529, 536 (6th Cir. 2011). "Imminence is a function of

probability." *Id.* "And probabilities can be measured by many things, including the certainty that an event will come to pass." *Id.* "The uncertainty that the event will come to pass may be based on developments that may occur during a gap in time between the filing of a lawsuit and a threatened future injury." *Id.* Courts also look to "developments that could prevent this injury from occurring" and ask if they are "probable" or "highly speculative." *Id.* at 537.[22]

This matter is plainly ripe under Circuit precedent. *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012). In *Berry*, a letter from a body, with authority to take action, telling the Plaintiff that his actions were unlawful was sufficient to establish ripeness. Clearly here, we are well beyond what was sufficient for ripeness in *Berry* where there is a direct order and counseling that outlines a parade of unconstitutional horribles that will befall Plaintiffs for continued non-compliance with the mandate. (Complaint, Exhibit 12, DE#1-12, PageID#35-36). *See, also, Winter v. Wolnitzek*, 834 F.3d 681, 687-688 (6th Cir. 2016) (any communication directed at a Plaintiff that threatens that Plaintiff with enforcement, even if it is contingent upon future events, sufficiently establishes ripeness).

Here, and since the filing of this matter in mid-February 2022, all but 8 of the Plaintiffs have had their appeals expectantly denied by the Surgeon General, and four more will be denied in a matter of weeks. But for the current injunction, there is also no question but that each Plaintiff will then have adverse actions taken against him or her, because orders to comply always follow final denials, and then discipline. In part, the Government argues that the Court

---

[22] Defendants cite to *Vance v. Wormuth*, 2022 U.S. Dist. LEXIS 67345 (WDKY 2022). The issue in *Vance* was that the Plaintiff had a pending medical discharge board in relation to a service-connected combat injury. That medical board put on hold further adjudication of his vaccine accommodation request and likewise put on hold any adverse action. Evidence of record also established that it was more likely than not that he would be medically discharged and adverse action from not receiving the vaccine would never come to pass. In other words, it made "developments that could prevent this injury from occurring" "probable." *Obama*, 651 F. 3d 529, 537. There are no such similar circumstances applying to any Plaintiff here.

must permit these disciplinary measures to be imposed and then maybe, someday, years from now, after terms of imprisonment in Leavenworth are fully served, service records can be corrected. Besides concluding this course of action should be considered abhorrent by all who have sworn to uphold and defend the Constitution, one should also conclude that this absurd course of action is hardly "appropriate relief." 42 U.S.C. 2000bb-1(c).

Not surprisingly, this "you must let us fully carryout our unconstitutional actions and damn the consequences" position is rejected by other courts as well. This Court and other courts are in accord that where, as here, there is a mandate that significantly burdens religion, and there is threatened enforcement and adverse consequences, a claim under RFRA is ripe. *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012); *Navy Seal 1 v. Biden*, 2021 U.S. Dist. LEXIS 224656 (MDFL 2021); *Usn Seals 1-26 v. Biden*, 2022 U.S. Dist. LEXIS 2268 (NDTX 2022); Church of Our Lord & Savior Jesus Christ v. City of Markham, 913 F.3d 670 (7th Cir. 2019).

Because ripeness tests "the fitness of the issues for judicial resolution" and "the hardship to the parties of withholding court consideration," both elements are met where it is clear that accommodations will continue to be denied to these Plaintiffs, and these Plaintiffs will face disciplinary or separation measures including "adverse administrative actions, non-judicial punishment, administration demotions, administrative discharges, and courts-martial." (Decl. of Col. Hernandez, Doc. 27-14, Pg. ID 1941.) *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). This matter is ripe.

> **D. RFRA does not contain an administrative exhaustion requirement. Most Plaintiffs have exhausted, and the remaining Plaintiffs need not await the predetermined outcome of a denial of the futile act that is their final appeal, particularly where Defendants have not complied with applicable timelines for processing under Department of Defense Regulations**

1.  RFRA does not contain an administrative exhaustion requirement

The Government continues to argue, contrary to what this Court has already held, that Plaintiffs must exhaust their administrative remedies before seeking relief in in this Court. Exhaustion is not required for a statutory claim that does not contain an exhaustion requirement. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552 (6th Cir. 2017) (declining to read an exhaustion requirement into a statute that did not contain such a requirement). RFRA does not contain an exhaustion requirement. To the contrary, 42 U.S. Code § 2000bb–1(c) permits an action for any person whose "religious exercise has been burdened in violation of this section," subject only to Article III standing. Several cases support the proposition that administrative exhaustion simply does not apply to RFRA. *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (DCD 2016) (exhaustion is not required for a RFRA claim); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition, see 42 U.S.C. §§ 2000bb– 2000bb–4, and the Supreme Court has not imposed one.").

The Fifth Circuit just explained this very fact in the context of military vaccine requirements: "Congress rendered justiciable Plaintiffs' claims under RFRA, which applies to every 'branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States[.]'" *U.S. Navy Seals 1-26 v. Biden*, 2022 U.S. App. LEXIS 5262, --- F.4th --- (5th Cir. 2022), *citing* 42 U.S.C. § 2000bb-2(1). "RFRA, in turn, sets the standards binding every department of the United States to recognize and accommodate sincerely held religious beliefs." *Id.* "It undoubtedly 'applies in the military context.'" *Id., citing United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016), cert. *denied*, *Sterling v. United States,* 137 S. Ct. 2212, 198 L. Ed. 2d 657 (2017).

"This makes sense because service members 'experience increased needs for religion as the result of being uprooted from their home environments, transported often thousands of miles to territories entirely strange to them, and confronted there with new stresses that would not otherwise have been encountered if they had remained at home.'" *Id., citing Katcoff v. Marsh*, 755 F.2d 223, 227 (2nd Cir. 1985). "Federal courts are therefore empowered to adjudicate RFRA's application to these Plaintiffs." *Id.*

Even if military operations require some deference from courts, "'resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board.'" *Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (quoting *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973)). In *Adair*, the court rejected the military's argument that plaintiffs with free-exercise claims should have "first exhausted their administrative remedies by raising their personnel claims with the Board for Correction of Naval Records ('BCNR') before coming to federal court." *Id*. Indeed, "the Supreme Court and [the D.C. Circuit] have heard numerous [constitutional] challenges to military policies." *Brannum v. Lake*, 311 F.3d 1127, 1130 (D.C.Cir.2002). The D.C. Circuit has explained that the logic underlying non justiciability in military cases is "wholly inappropriate ... when a case presents an issue that is amenable to judicial resolution," recognizing that "courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979); *see id.* ("It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful.... The military departments enjoy no immunity from this proscription.").

Further, *Harkness v. Sec'y of the Navy*, 858 F.3d 437 (6th Cir. 2017) is not to the contrary.

*Harkness* did discuss exhaustion for a First Amendment claim. But it did not involve any claims under RFRA. Again, RFRA itself contains no exhaustion requirement. 42 U.S.C. §§ 2000bb-1. Congress wanted to ensure that victims had the ability to obtain "appropriate relief," and requiring exhaustion (particularly to the degree Defendants assert) would substantially frustrate that goal if service members were forced into potentially years of administrative proceedings. Compare that to the RLUIPA claims for prisoners, which contain explicit exhaustion requirements, with RLUIPA incorporating the PLRA requirements for administrative exhaustion. 42 U.S. Code § 2000cc–2(e); 42 U.S. Code § 1997e. Congress knows how to include an administrative exhaustion requirement, and it did not do so for RFRA claims. Thus, *Hitchcock*, 851 F.3d 552, is controlling and there is no exhaustion requirement for a RFRA claim.

Beyond this authority, in the religious freedom context, the U.S. Supreme Court has been clear that exhaustion is not required before obtaining relief in the District Court. *Parisi v. Davidson*, 405 U.S. 34 (1972). In *Parisi*, as here, the service member had a religious objection to aspects of military service – namely combat duties – and claimed conscientious objector status. And, like the RFRA statute here, a federal statute gave the service member the right to claim that status. The Supreme Court found, contrary to the Government's arguments here, that resorting to the Board of Corrections for Military Records, or to court martial appeals, and to anything other than claiming the exemption under applicable Army regulations was not necessary. *Id.* at 41-42. The Supreme Court held that "we no more than recognize the historic respect in this Nation for valid [religious accommodation] to military service." *Id.* at 45. "As the Defense Department itself has recognized, 'the Congress . . . has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces.'" *Id.* That

13

observation by the Supreme Court has equal weight in the administrative exhaustion context to RFRA claims – namely that no such exhaustion requirement exists under that statute.

2. <u>Ten Plaintiffs have received their final Surgeon Appeal Denial and have exhausted</u>

Ten Plaintiffs (Doster, Colantonio, McCormick, Reineke, Stapanon, Theriault, Dills, Mosher, Pottinger, and Schuldes) have received their final Surgeon General Appeal Denial and have exhausted. Once again, Defendants (without cite to any supporting caselaw) argue that these Plaintiffs have not exhausted, and that all Plaintiffs must resort to court martial appeals or the Board of Correction for military records. As noted, Defendants are wrong. And, these 10 Plaintiffs have had their exemption requests denied by the applicable decision-making authority, and no further exhaustion is required, particularly to third party boards. *Darby v. Cisneros*, 509 U.S. 137 (1993). In *Darby*, as here, the decisionmaker made the decisions denying Plaintiffs the exemption. They do not need to do more. And *Darby* is clear that the existence of an appeal procedure does not matter in terms of administrative exhaustion. Exhaustion is complete once **the decision maker** renders its decision.

Other cases are in accord that resort to the Board of Correction of Military Records and similar administrative actions is not required to exhaust. *Adair,* 183 F. Supp. 2d 31, 55; *Downen*, 481 F.2d 642, 643; *Brannum*, 311 F.3d 1127, 1130; *Dilley*, 603 F.2d 914, 920.

3. <u>Of those eight remaining Plaintiffs who have not received their final appeal denial, futility and other exceptions apply.</u>

Of the eight remaining Plaintiffs, four (Clement, Martin, Ramsperger, and Rinaldi) have their requests pending with the Air Force Surgeon General and, based on past processing times, will have their appeals denied in the next 2 to 3 weeks. Though it is true the remaining four are awaiting their initial denials (Anderson, Leiby, Norris, Ruyle), it is also true that none of them meet criteria for an administrative exemption, and thus all of them will certainly be denied. [Dec.

14

Wiest, DE#30-2, with transcript of hearing in *Poffenbarger v. Kendall* attached; Third Dec. Doster, DE#46-1].

Because Clement, Martin, Ramsperger, and Rinaldi have had their accommodation requests denied, they have exhausted. *Darby v. Cisneros*, 509 U.S. 137 (1993). The remaining Plaintiffs are waiting on their final, yet still certain, religious accommodation denials.

Also relevant to the inquiry is the Air Force's compliance with Department of Defense Instruction 1300.17 for these remaining eight Plaintiffs.[23] The Defendants failed to comply with that instruction, which is a ***mandatory timeline*** for processing accommodation requests, with exceptions to be explicitly set forth in service regulation, and in any event within 30 days of the submission of a service members' appeal to the service secretary with all review and action taken within 60 days of that date. Id. at ¶3.2.c. Consequently, the Defendants' failure to comply with the relevant regulation that mandates timely processing of the accommodation request obviates any arguments that Defendants now make regarding administrative exhaustion. *Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 144 (1985) (administrative exhaustion does not apply where the Defendant fails to comply with its own timely processing rules); *Villegas de la Paz v. Holder*, 614 F.3d 605, 608 (6th Cir. 2010) (calling the Government's failure to comply with processing requirements and attempts to deprive a court of jurisdiction thereby a "perversion" of justice and refusing to apply administrative exhaustion in such circumstances).

Even if exhaustion of administrative remedies were required, the Sixth Circuit has adopted the Fifth Circuit's reasoning concerning administrative remedy exhaustion. *Harkness v. Sec'y of the Navy*, 858 F.3d 437 (6th Cir. 2017), *citing Mindes v. Seaman*, 453 F.2d 197 (5th Cir.

---

[23] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited 11/17/2021).

1971). In *Mindes*, the Fifth Circuit articulated a test for determining the reviewability of a particular military decision. As a threshold matter, the *Mindes* court held that an internal military decision is unreviewable unless two initial requirements are satisfied: "(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Id.* at 201. Clearly, here, the first element is met.

Once the threshold step of *Mindes* is satisfied, the next step is weighing the following four factors to determine the justiciability of a claim regarding internal affairs: the nature and strength of the plaintiff's challenge to the military determination; the potential injury to the plaintiff if review is refused; the type and degree of anticipated interference with the military function; and the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201-2. Application of these factors compels review of Plaintiffs' claims by this Court.

As set forth below, under the first factor, the nature and strength of Plaintiffs' challenge favors judicial review. Second, without review, Plaintiffs face serious, irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The third factor, type, and degree of anticipated military function, provides a caveat: "[i]nterference *per se* is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief." *Mindes*, 453 F.2d at 201.

Granting review of whether the Air Force has properly followed the law in the evaluation of religious accommodation requests does not pose a threat to its performance of vital duties. Further, there is no evidence that the relief requested by these Plaintiffs would cause significant

16

interference with the operations of the Air Force – the granting of secular accommodations and exemptions by the Government belies any such conclusion.  Also, granting injunctive relief to these complainants only accounts for a small fraction of the Air Force Active, Reserve, and Guard Force.  Therefore, the "traditional deference" cited by the Government in applying *Mindes* to "internal military decisions" is inapplicable, as Plaintiffs make an argument based on legal sufficiency, not military expertise.  Therefore, because each of the four factors weigh in favor of review, *Mindes* does not serve as a procedural bar to Plaintiffs' claims, even if it applied here.

Also, the Sixth Circuit recognizes exceptions to exhaustion where administrative remedies are inadequate or not efficacious; where pursuit of administrative remedies would be a futile gesture; and where irreparable injury will result unless immediate judicial review is permitted. *Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20 F.3d 1418, 1424 (6th Cir. 1994); *see, also*, *Seepe v. Department of Navy*, 518 F.2d 760, 762 (6th Cir. 1975) (recognizing exceptions to exhaustion for futility, an exception for where the *status quo* under the administrative decision pending review would itself constitute a hardship or leave the complainant in an emergency situation, and where the complaint involved a matter of law only and did not require or involve application of military expertise); *Kentucky, Educ. & Workforce Dev. Cabinet, Office for the Blind v. United States*, 759 F.3d 588, 598 (6th Cir. 2014) (recognizing exceptions where (1) requiring exhaustion will result in irreparable harm; (2) the administrative remedy is wholly inadequate; or (3) that the administrative body is biased, making recourse to the agency futile.)

The Fifth Circuit likewise has identified at least four such exceptions to military exhaustion: futility, inadequacy of administrative remedies, irreparable injury, and a substantial constitutional question. *Von Hoffburg v Alexander*, 615 F.2d 633 at 638. All these exceptions clearly apply here.

As with the Navy in *Usn Seals 1-26 v. Biden*, 2022 U.S. Dist. LEXIS 2268 (TXND 2022), "[t]he facts overwhelmingly indicate that the [Air Force] will deny the religious accommodations." "Outside of Plaintiffs' requests, the [Air Force] has, to date, never granted a religious accommodation request for the COVID-19 vaccine." *Id.* In fact, the Air Force Surgeon General himself has already predetermined the denial of religious accommodation appeals demonstrating that the entire religious accommodation process is nothing more than an exercise in futility and certainly for show. There will be no approvals unless you are within the last few months of your service to the Air Force or qualify for an administrative exemption, which none of these Plaintiffs are and none of them do. The Government has already admitted in the record in *Poffenbarger v. Kendall* that all these requests will be denied. [Dec. Wiest, DE#30-2, with transcript]. Therefore, exhausting remedies in this scenario provides no real opportunity for adequate relief.

The Fifth Circuit recently was clear that "exhaustion is unnecessary if, *inter alia*, the administrative remedy is futile, and plaintiffs raise substantial constitutional claims." *U.S. Navy Seals 1-26*, 2022 U.S. App. LEXIS 5262, --- F.4[th] ---. There, as here:

> The [Air Force] . . . has denied all religiously based claims for exemption from COVID-19 vaccination [other than those who otherwise qualified for administrative exemptions]. It is true that futility is not a function of the likely ultimate success of administrative exhaustion. But evidence, recited previously and not meaningfully challenged here, suggests that the [Air Force] has effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding officers and military chaplains. This is sufficiently probative of futility. Further, as explained more fully below, Plaintiffs raise substantial, legally clear-cut questions under RFRA. Courts are specifically equipped to address RFRA claims and, by the same token, the issues are less suitable for administrative adjudication.

Ultimately, the Fifth Circuit wisely found that *Mindes* justiciability was met, as did this Court, "exhaustion in this instance is futile." *Doster v. Kendall*, ---F. Supp. 3d---, 2022 WL 982299, at *9 (S.D. Ohio Mar. 31, 2022). Further, given the systemic denial of *every single religious exemption request other than those otherwise eligible for administrative exemptions*, the

Government hardly comes to this Court with clean hands to argue that there is any chance that any request will be granted. [Dec. Wiest, DE#30-2, with transcript]. The Government claims that appeals are not really futile. That is word play. The irrational hope that the Air Force could hypothetically grant *its very first* religious accommodation for someone not at the end of service or eligible for an administrative exemption, does not, on this record, "provide a real opportunity for adequate relief" and shows the Governments improprieties of their futile system. *Hodges*, 499 F.2d at 420.

Second, Plaintiffs need not exhaust military remedies when "available administrative remedies are inadequate" to grant the relief they seek. *Von Hoffburg*, 615 F.2d at 640. For example, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). That exception for inadequate remedies is met because, make no mistake, the exemption requests here are predetermined, and the harm is ongoing.

The third exception, "exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies." *Von Hoffburg*, 615 F.2d at 638. That resembles the second *Mindes* factor, which considers "[t]he potential injury to the plaintiff if review is refused." *Mindes*, 453 F.2d at 201. Again, the burdening of Plaintiffs' religious beliefs, which is occurring today, *is* irreparable harm. *Elrod v Burns*, 427 U.S. 347, 373; *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610; *Catholic Diocese of Nashville v. Sebelius*, 2013 U.S. App. LEXIS 25936 (6th Cir. 2013).

The Government argues that these Plaintiffs must go through its multi-level administrative process before suing in court. In reality, this is nothing more than a subterfuge to hide a coercive process designed, in the case of the vaccine mandate, to significantly burden those who must

choose between their sincerely held religious beliefs and the end of their military careers. The unstated premise behind the Government's insistence on this process is its belief that if you take away one's liberty, career, and ability to support their family, they will eventually break. Thankfully, for these Plaintiffs, such a contention is directly contradicted by applicable case law. *Maryville Baptist Church, Inc.*, 957 F.3d 610; *Parisi*, 405 U.S. 34. It is no different than sending State Police into churches and denying individuals the ability to engage in corporate worship, which was irreparable harm. *Maryville Baptist Church, Inc.*, 957 F.3d 610. And the Government's absurd arguments that the Plaintiffs can exercise their religion by not getting the vaccine being somehow different than state police in churches in *Maryville Baptist Church, Inc.*, 957 F.3d 610 is absurd. The churchgoers could go to church also. But like the Plaintiffs here, they would be punished for it.

The fourth exception to exhaustion is when "the plaintiff has raised a substantial constitutional question." *Von Hoffburg*, 615 F.2d at 638. That inquiry raises the same issues as the first *Mindes* factor, the "nature and strength of the plaintiff's challenge to the military determination," which generally favors review of substantial constitutional questions. *Mindes*, 453 F.2d at 201. Here, there is no question a substantial Constitutional question exists.

## III. CONCLUSION

The Motion to Dismiss should be denied.

Respectfully submitted,

/s/ *Christopher Wiest*
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/*Aaron Siri*
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth Brehm (admitted PHV)
Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)

aaron@sirillp.com

/s/*Thomas Bruns*
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 16 day of May, 2022.

/s/ Christopher Wiest
Christopher Wiest (OH0077931)