## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION – CINCINNATI

HUNTER DOSTER, et. al.,         :    Case No. 1:22-cv-84

             :

        Plaintiffs,      :    Judge Matthew W. McFarland

             :

    v.             :

             :

Hon. FRANK KENDALL, et. al.,    :

             :

        Defendants.      :

---

### ORDER REGARDING PENDING MOTIONS (Docs. 21, 35, 52, 53, 54)

---

This matter is before the Court on several pending motions, including Plaintiffs' Motion for Class Certification (Doc. 21), Defendants' Motion to Sever (Doc. 35), Proposed Intervenors' Motion to Intervene (Doc. 52), Proposed Intervenors' Motion for a Preliminary Injunction (Doc. 53), and Emergency Motion for a Temporary Restraining Order by Proposed Intervenors Johnathan Oberg and Johnathan Nipp (Doc. 54). All motions are fully briefed and ripe for review. The Court's disposition of the Motion for Class Certification resolves these pending motions.[1] As explained below, Plaintiffs' Motion for Class Certification is **GRANTED**.

### BACKGROUND

Plaintiffs in this action are United States Air Force servicemen. Plaintiffs brought this case, on behalf of themselves and those similarly situated, against multiple Air Force superiors in their official capacity, including, but not limited to, the Secretary of the Air

---

[1] This Order does not have any effect on Defendants' pending Motion to Dismiss (Doc. 51).

Force and the Surgeon General of the Air Force, as well as the United States of America (collectively, "Defendants"). They seek redress for "the systematic efforts of the Defendants, and those who report to them, to flagrantly violate" the Religious Freedom and Restoration Act ("RFRA") and the Free Exercise Clause of the First Amendment by requiring all Airmen to obtain the COVID-19 vaccination without granting religious accommodation requests for those who oppose receiving the vaccine due to their sincerely held religious beliefs. (Verified Complaint ("Ver. Compl."), Doc. 1, Pg. ID 1.) This Court granted in part Plaintiffs' Motion for a Preliminary Injunction (Doc. 13) on March 31, 2022. The Court ordered the following:

> 1. Defendants, as well as any persons acting in concert with Defendants, are enjoined and restrained from taking any disciplinary or separation measures against the Plaintiffs named in this action for their refusal to get vaccinated for COVID-19 due to their sincerely held religious beliefs. Such disciplinary or separation measures include, but are not limited to, "adverse administrative actions, non-judicial punishment, administration demotions, administrative discharges, and courts-martial." (Dec. of Col. Hernandez, Doc. 27-14, Pg. ID 1941);

> 2. Defendants, as well as any person acting in concert with Defendants, are enjoined and restrained from taking any adverse action against Plaintiffs on the basis of this lawsuit or their request for religious accommodation from the COVID-19 vaccine[.]

(Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction and Issuing a Preliminary Injunction, Doc. 47, Pg. ID 3203-04.)

As of June 6, 2022, the Air Force had received 9,062 religious accommodation requests, granting 86 of those requests while denying 6,343 requests. (DAF COVID-19 Statistics – June 7, 2022, https://www.af.mil/News/Article-Display/Article/3055214/daf-covid-19-statistics-june-7-2022/ (last visited June 30,

2022.)) Following such denials, the Air Force had received 3,837 appeals from Airmen whose initial religious accommodation requests were denied. (*Id.*) As of June 6, 2022, the Air Force has granted only 23 of those appeals, denying 2,978. (*Id.*) A quick calculation shows that the Air Force, either through initial requests or appeals, have granted approximately 1% of religious accommodation requests between September 1, 2021, when the Air Force vaccine requirement went into effect, and June 6, 2022. Despite the Air Force's apparent policy and practice of denying virtually all religious accommodation requests, the Air Force has granted 729 medical exemption requests and 1,006 administrative exemption requests since implementing its COVID-19 vaccination requirement policy September 1, 2021. (*Id.*)

> Plaintiffs now seek class certification on behalf of:

> All active-duty, and active reserve members of the United States Air Force who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present; (ii) were confirmed as having had a sincerely held religious belief by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request.

(Motion for Class Certification ("Motion for Class Cert."), Doc. 21, Pg. ID 952.)

## LAW

This Court "maintains substantial discretion in determining whether to certify a class." *In re Countrywide Fin. Corp. Mort. Lending Practices Litig.*, 708 F.3d 704, 707 (6th Cir. 2013). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). "In order to justify a departure from that rule, a

class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019).

Class certification first requires the moving party to satisfy the Rule 23(a) prerequisites. *Dukes*, 564 U.S. at 345. These prerequisites are known as "numerosity, commonality, typicality, and adequate representation[.]" *Id.* at 349. Such prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.*

Additionally, "[a] class action may be maintained if Rule 23(a) is satisfied and if" Rule 23(b)(1), (2), or (3) is also satisfied. *Id.* at fn. 8. Relevant here, Rule 23(b)(1)(a) is satisfied if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards or conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(a). Additionally, Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

When determining whether class certification is appropriate, courts must "probe behind the pleadings[,]" because certification is only proper after "a rigorous analysis" into whether Rule 23's prerequisites are met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Such rigorous analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because a class determination generally involves

4

considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 33-34 (cleaned up). However, this "rigorous analysis is not . . . a 'license to engage in free-ranging merits inquiries at the certification stage.'" *Zehentbauer Family Land*, 935 F.3d at 504 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

## ANALYSIS

Plaintiffs argue that class certification is warranted because the Rule 23(a) prerequisites are satisfied and because they satisfy both Rule 23(b)(1)(a) and Rule 23(b)(2). Defendants do not contest Plaintiffs' definition of the putative class, nor do they contest that Plaintiffs established the numerosity requirement. Instead, Defendants challenge the remaining Rule 23(a) prerequisites: commonality, typicality, and adequacy of representation. Additionally, Defendants argue that Plaintiffs fail to satisfy Rule 23(b)(2) but ignore Plaintiffs' argument regarding Rule 23(b)(1)(a).

For the reasons that follow, Plaintiffs have satisfied the Rule 23(a) prerequisites, as well as Rule 23(b)(1)(a) and Rule 23(b)(2). Thus, class certification is warranted.

### I.    Plaintiffs Have Satisfied the Rule 23(a) Prerequisites.

#### a.    Numerosity

First, Plaintiffs must establish numerosity. To satisfy the numerosity requirement, Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "No numerical test exists" to satisfy the numerosity requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). However, "substantial numbers of affected [individuals] are sufficient to satisfy"

such requirement. *Id.*

Here, the Government does not contest that Plaintiffs satisfy Rule 23(a)'s numerosity requirement, and the Court finds that Plaintiffs clearly demonstrate that the putative class is numerous enough to merit certification. In their reply, "Plaintiffs seek a class of: 'All active-duty, and active reserve members of the United States Air Force and Space Force who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present; (ii) were confirmed as having had a sincerely held religious belief by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request." (Reply in Support, Doc. 46, Pg. ID 3105.) Plaintiffs contend that such class would include, at the time Plaintiffs filed this motion, over 12,000 Airmen. (Motion for Class Cert., Doc. 21, Pg. ID 955.) Thus, a substantial number of Airmen are affected in this case and joinder of all Airmen seeking religious accommodations is impracticable. Plaintiffs' proposed class clearly satisfies the numerosity requirement.

### b. Commonality

Second, Plaintiffs must establish commonality. Rule 23(a)(2), the commonality prerequisite, "requires that for certification there must be 'questions of law or fact common to the class.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) (quoting Fed. R. Civ. P. 23(a)(1)). While Rule 23(a)(2) "speaks of 'questions' in the plural," the Sixth Circuit has held that "there need only be one question common to the case." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

6

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" not merely demonstrate that the class members "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Thus, "their claims must depend upon a common contention." *Id.* at 350. And the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs argue that Rule 23(a)(2) is satisfied because "[a]ll of the claims here involve what is, essentially, claims for religious discrimination" and such claims all have "common elements of proof to prove the claims at issue for each Plaintiff and for the class." (Motion for Class Cert., Doc. 21, Pg. ID 957.) Defendants disagree, arguing that Plaintiffs must either: "(1) show that the employer 'used a biased testing procedure' common to the whole proposed class, or (2) provide '[s]ignificant proof that an employer operated under a general policy of discrimination' that would apply to the class" as provided in *Dukes*, 564 U.S. at 353. (Response in Opposition ("Response in Opp."), Doc. 34, Pg. ID 2205.) Additionally, Defendants argue that, due to the individualized analysis required under RFRA, commonality cannot be established.

Here, Plaintiffs and the putative class members have all allegedly suffered the same injury: violation of their constitutional rights. A putative class would consist only of Airmen who have submitted religious accommodation requests, had an Air Force Chaplain define their religious beliefs as sincerely held, and yet their religious

7

accommodation requests have been denied or delayed. The facts show Defendants have engaged in a pattern of denying religious accommodation requests. Indeed, of the over nine thousand religious exemption requests, only 109 have been granted by either initial determination or appeal. ((DAF COVID-19 Statistics – June 7, 2022, https://www.af.mil/News/Article-Display/Article/3055214/daf-covid-19-statistics-june-7-2022/ (last visited June 30, 2022.)).) This amounts to only 1% of religious accommodation requests being granted. (*Id.*) "[I]t is hard to imagine a more consistent display of discrimination." *U.S. Navy SEALs 1-26 v. Austin*, No. 4:21-cv-01236-O, 2022 WL 1025144, *5 (N.D. Tex. Mar. 28, 2022).

Importantly, damages stemming from the alleged violation need not be identical for this Court to grant class certification. *See Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"). Thus, the putative class members face the same injury: violation of their constitutional freedom by Defendants' clear policy of discrimination against religious accommodation requests.

Additionally, Plaintiffs' claims are capable of class-wide resolution. A finding in favor of Plaintiffs on the RFRA or Free Exercise claims also resolves such claims by the putative class because they involve the same common analysis: Does Defendants' policy and practice of discrimination by denying substantially all religious accommodation

requests by Airmen who maintain sincerely held religious beliefs further a compelling governmental interest and is such policy and practice the least restrictive means to achieve compelling governmental interests, if any exist? A finding for Plaintiffs or Defendants would result in class-wide resolution, satisfying the commonality requirement.

Defendants' argument that, due to the "highly individualized nature of RFRA claims[,]" commonality cannot be established, fails. (Response in Opp., Doc. 34, Pg. ID 2203.) Under these facts, analysis of the violation itself does not need to be "highly individualized" because it arises from Defendants' overt policy of denying substantially all religious accommodation requests. The unity of analysis as to the violation establishes commonality here. Whether a separate analysis is necessary regarding individualized damages does not affect this conclusion. *See Sterling*, 855 F.2d at 1197. Thus, Defendants' argument fails.

Thus, because putative class members have suffered the same injury as Plaintiffs and class-wide resolution is possible for Plaintiffs' RFRA and Free Exercise claims, Plaintiffs have satisfied the commonality requirement pursuant to Fed. R. Civ. P. 23(a)(2).

### c. Typicality

Third, Plaintiffs must establish typicality. To satisfy the typicality requirement, Plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . ." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, fn. 13 (1982). This is because "[b]oth serve as guideposts

for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

"[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice and Procedure § 1764 (3d ed. 2005)). The Sixth Circuit has explained that the typicality test "limits the class claims to those fairly encompassed by the named plaintiffs' claims." *Sprague*, 133 F.3d 388, 399 (6th Cir. 1998). As the *Sprague* court explained:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Id.* (quotations omitted).

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.*

Plaintiffs argue that typicality is established here for the exact reasons that commonality is established: because the class claims would all involve "claims of religious discrimination and [would be] centered upon the Government's granting of

10

thousands of administrative and medical exemptions, and systemic denial of religious exemptions." (Motion for Class Cert., Doc. 21, Pg. ID 957.) The Government argues that such similarities are not enough because the roles, responsibilities, levels of proximity, likelihood of deployment or travel, and ability to telework varies from Airmen to Airmen. Additionally, the Government argues that because "Plaintiffs' putative class [would] also include[] service members with a broad variety of religious beliefs and, consequently, different reasons for objecting to the COVID-19 vaccine[,]" typicality cannot be established. (Response in Opp., Doc. 34, Pg. ID 2215.)

Typicality is established here. Plaintiffs seek relief under RFRA and the Free Exercise Clause of the First Amendment. These are also the only claims which would be pursued by the putative class. Just as in the commonality element, Plaintiffs' claims and the class claims stem from a unitary course of conduct and are based on the same legal and remedial theory. "The factual circumstances need not be identical for each of the class members; some variation among members is permissible." *U.S. Navy SEALs 1-26*, 2022 WL 1025144 at *7. Thus, the claims are typical of, and, in fact, identical to, the claims of the entire class.

Defendants' argument that factual differences between putative class members disallow a finding of typicality is not persuasive. Defendants appear to again argue that the Court must individually analyze each Airmen's claims on the one hand, while systematically denying all religious accommodation requests despite the factual differences Defendants claim the Court should consider on the other. The Court appreciates there may be minor factual differences between the members of the class,

11

including roles, responsibilities, levels of proximity, likelihood of deployment or travel, and ability to telework, as well as different religious beliefs and reasons for objecting to the COVID-19 vaccine. However, these minor differences do not outweigh that Defendants' typical response when receiving a religious accommodation request is to deny it. The typicality of the putative class is reflected in the fact that Defendants have indiscriminately denied almost all religious accommodation requests and their use of form letters to deny the accommodation requests. (*See* DAF COVID-19 Statistics – June 7, 2022, https://www.af.mil/News/Article-Display/Article/3055214/daf-covid-19-statistics-june-7-2022/ (last visited June 30, 2022.); *see also* Exhibit Comparison of Command Religious Accommodation Denials, Doc. 46-3; Exhibit Comparison of Air Force Surgeon General Religious Accommodation Denials, Doc. 46-4.) Such facts suggest that Defendants do not individually weigh each applicant's belief or circumstances in issuing their response, further cementing the typicality of the class.

Furthermore, these factual differences do not defeat typicality. Plaintiffs' claims are typical of the class because the claims stem for a unitary course of conduct: Defendants' overt policy to deny virtually all religious accommodation requests. And, in cases where the executive implements a COVID-19 vaccine requirement and discriminates against religious accommodation requests, this Court is not the first to find that such conduct establishes typicality. *See U.S. Navy SEALs 1-26*, 2022 WL 1025144.

Thus, because the class claims are fairly encompassed by Plaintiffs' claims and such claims all stem from Defendants' unitary course of conduct, Plaintiffs have satisfied the typicality requirement pursuant to Fed. R. Civ. P. 23(a)(3).

### d. Adequacy of Representation

Fourth, Plaintiffs must establish adequacy of representation. Rule 23(a)(4) allows a court to certify a class only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The commonality and typicality requirements "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 378, fn. 5 (quoting *Falcon*, 457 U.S. at 157-58, fn. 13). The Sixth Circuit has articulated a two-prong test to determine adequacy-of-representation: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

Plaintiffs argue that the two-prong adequacy-of-representation test is satisfied here. First, Plaintiffs argue that "Plaintiffs and the Class Members possess the same interest and suffered the same injury: each of them requested a religious accommodation and have either had it denied, or have not had it acted upon . . ." (Motion for Class Cert., Doc. 21, Pg. ID 958.) Second, Plaintiffs argue that the second prong is met because "Plaintiffs are represented by qualified counsel with extensive experience prosecuting class actions, constitutional matters, and religious freedoms cases." (*Id.*) However, Defendants argue that adequacy-of-representation is not satisfied because Plaintiffs and the proposed putative class possess conflicts of interests due to separately filed lawsuits "around the country challenging the COVID vaccine requirements for members of the

Air Force[,]" especially considering three separate lawsuits brought by Airmen also purport to bring class action claims.[2] (Response in Opp., Doc. 24, Pg. ID 2219.)

First, Plaintiffs have common interests with unnamed members of the class. The class includes Airmen who have been denied or delayed religious accommodations from receiving a COVID-19 vaccine due to their sincerely held religious beliefs, just like Plaintiffs. Despite the nine thousand Airmen seeking religious accommodations, less than one percent have been granted. Thus, thousands of Airmen with sincerely held religious beliefs, all of whom fall into the class, are facing punishment, including involuntary separation. Plaintiffs and the class all have a common interest in injunctive relief disallowing Airmen who seek religious accommodations from being punished for abstaining from receiving the COVID-19 vaccine despite such sincerely held religious beliefs. Therefore, the first prong of the adequacy-of-representation test is satisfied.

Second, it appears that the class representatives and counsel will vigorously prosecute the class through qualified counsel. As described below, the Court finds Plaintiffs' counsel to be qualified to represent the class. Counsel all have experience in representing classes actions and individuals seeking remedy for constitutional violations. (*See* Declaration of Christopher Weist, Doc. 21-1.) Thus, the second prong of the adequacy-of-representation test is also satisfied.

The Court is not persuaded by Defendants' conflicts of interest argument. The

---

[2] Additionally, Defendants argue that multiple Plaintiffs and the putative class have not exhausted their administrative remedies, which bars a finding that common interests exist. (Response in Opp., Doc. 34, Pg. ID 2221.) This Court has already ruled that such argument is not persuasive because exhaustion is futile. (Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction and Issuing a Preliminary Injunction, Doc. 47, Pg. ID 3182.) Thus, the Court need not address such argument.

Northern District of Texas ruled that no conflicts of interest existed in a case nearly identical to this case, and that court's reasoning is persuasive. In *U.S. Navy SEALs 1-26*, the defendants, all Navy executives and officials, argued that class certification was not warranted of all Navy servicemen due to the conflict created by concurrent litigation. 2022 WL 1025144 at *7. However, the court rejected the argument, stating that "the injunctive relief that Plaintiffs seek will benefit all religiously opposed Navy servicemembers who are presently involved in other mandate litigation. Potential class members will not be harmed by class-wide relief. Likewise, Plaintiffs here will benefit from injunctive relief granted in other courts." *Id*. The court then found that no conflicts exist, and the plaintiffs satisfied the adequacy of representative requirement. *Id*. at *8.

This Court agrees with the Northern District of Texas's ruling in *U.S. Navy SEALs 1-26*. Simultaneous litigation does not present a conflict of interest for the class representatives or counsel. This is because the injunctive relief would benefit all religiously opposed Airmen who are currently pursuing litigation for the same purpose as Plaintiffs. And Plaintiffs would benefit from injunctive relief granted in other courts. Thus, Defendants' argument that Plaintiffs cannot establish adequacy of representation is unavailing.

Because Plaintiffs satisfied both prongs of the adequacy-of-representation test, Plaintiffs have shown adequacy of representation as required by Fed. R. Civ. P. 23(a)(4). Therefore, Plaintiffs have satisfied Fed. R. Civ. P. 23(a).

## II. Plaintiffs Have Satisfied Rule 23(b).

In order for the Court to grant class certification, Plaintiffs must also show that

15

they may maintain a class action under Rule 23(b)(1), (2), or (3). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification of the class pursuant to Rule 23(b)(1)(A) and (2).

Rule 23(b)(1)(A) covers cases for which separate lawsuits by individual litigants would risk establishing "incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). This provision applies to cases where the defending party is legally obligated to treat the members of the class alike or must treat all alike as a matter of practical necessity. *Amchem*, 521 U.S. at 614.

The other potential class vehicle here, Rule 23(b)(2), permits class actions for declaratory or injunctive relief when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

For the reasons set forth below, the proposed class is certifiable under both Rule 23(b)(1)(A) and Rule 23(b)(2).

### a. Plaintiffs Have Satisfied Rule 23(b)(1)(A).

Plaintiffs argue that this case is cognizable under Rule 23(b)(1)(A) because the First Amendment and RFRA oblige the Defendants to treat the members of the class alike. The Court agrees.

To start, Defendants do not contest that the proposed class is certifiable under Rule 23(b)(1)(A). And, upon examination, the class may proceed under that provision. Rule 23(b)(1)(A) serves to prevent defendants from being legally bound by contradictory

16

rulings. It is designed to avoid injunctive or declaratory "whipsawing" where different courts require the same defendant to abide by incompatible or contradictory rulings. *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 664 (D.N.M. 2019). The concern under this provision is not primarily that different lawsuits would yield different results for different plaintiffs; rather, the concern is that different judicial outcomes would impose conflicting obligations on the same defendant or group of defendants. *See id.; see also Snead v. CoreCivic of Tennessee, LLC*, No. 3:17-CV-0949, 2018 WL 3157283, at *14 (M.D. Tenn. June 27, 2018).

This case presents just such a risk. Similar claims may be brought in another court. That court and this Court may arrive at incompatible conclusions with respect to Airmen who seek religious exemptions from the vaccine mandate. One court may find that Defendants may enforce its vaccine mandate over and against religious objections, and another court may find the opposite. Such a scenario would prevent Defendants from pursuing a uniform course of conduct towards servicemembers. *Compare Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018) (affirming certification under Rule 23(b)(1)(A) for purposes of interpreting a retirement plan, because individual actions would have risked establishing incompatible standards of conduct for the defendant); *Spurlock v. Fox*, No. 3:09-CV-00756, 2012 WL 1461361, at *3 (M.D. Tenn. Apr. 27, 2012) (finding Rule 23(b)(1)(A) certification appropriate so that defendants could pursue a uniform course of conduct regarding a re-zoning plan) *with Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 633 (6th Cir. 2011) (finding Rule 23(b)(1)(A) certification inappropriate because there was no indication that

17

individual adjudications would subject defendant to conflicting affirmative duties).

Accordingly, there exists here the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct under which Defendants would have to comply. Because this case presents a (b)(1)(A) risk, the proposed class is certifiable under that provision.

### b. Plaintiffs Have Satisfied Rule 23(b)(2).

Plaintiffs also maintain that a Rule 23(b)(2) class is appropriate, because Defendants' policy on vaccines applies to the class as a whole such that the entire class is entitled to declaratory and injunctive relief. Defendants, on the other hand, argue that Plaintiffs seek individualized determinations with regard to their religious accommodation requests, rather than relief that addresses a singular, discrete issue that affects the entire putative class. They contend that the analysis in religion cases is individualized and specific, requiring a court to determine whether each and every class member holds a sincerely held religious belief that precludes the use of a vaccine. The Court agrees with Plaintiffs on this point and concludes that the proposed class may also proceed under Rule 23(b)(2).

A class may proceed under (b)(2) if the parties opposing the class have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This provision is met when the relief sought affects the entire class at once. *Dukes*, 564 U.S. at 361–62. To qualify for class-wide injunctive relief, class members must have suffered harm in essentially the same way and injunctive relief must

predominate over monetary damages. *U.S. Navy SEALs 1-26,* 2022 WL 1025144, at *8.

The proposed class satisfies the (b)(2) requirement. Defendants' attempt to characterize the relief sought as hinging on individualized determinations concerning their religious accommodation requests and sincerely held religious beliefs. But the relief the proposed class seeks is the same: a religious accommodation relating to the COVID-19 vaccine mandate. And they have been harmed in "essentially the same way." *Id.* They face separation from the Air Force and other disciplinary measures. A single injunction would provide relief to the entire class. *See Dukes,* 564 U.S. at 360. Indeed, the main purpose of a (b)(2) class is to provide relief through a single injunction or declaratory judgment. *Cole v. City of Memphis,* 839 F.3d 530, 542 (6th Cir. 2016). Because Defendants have uniformly maintained a policy of overriding Airmen's religious objections to the COVID-19 vaccine, they have acted "on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Moreover, the class definition requires that a Chaplain certify that the airman's religious beliefs are sincerely held. Finally, a single injunction would provide the proposed class with the relief they seek from the harm they stand to suffer. *U.S. Navy SEALs,* 2022 WL 1025144 at *9. Accordingly, the class may be certified under Rule 23(b)(2).

III.    **Temporary Restraining Order Covering the Class**

Because the Plaintiffs have satisfied the necessary Rule 23 requirements, the Court will certify the following class:

> All active-duty and active reserve members of the United States Air Force and Space Force, including but not limited to Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of

the Air Force Reserve Command, and any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office and is currently under command and could be deployed, who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present; (ii) were confirmed as having had a sincerely held religious belief by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request.

In its broad discretion to modify class definitions, the Court has modified the class definition to more precisely delineate the scope of the class. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Furthermore, to facilitate briefing and shepherd this matter to the next pretrial stage, the Court will issue a temporary restraining order prohibiting Defendants from enforcing the vaccine mandate against any of the above Class Members for the next 14 days following the entry of this Order. (*See* Doc. 13, Plaintiffs' Motion for an Emergency Temporary Restraining Order). Within that timeframe, the parties will advise the Court, as laid out below, as to whether any significant change precludes extending the current preliminary injunction to include all Class Members.

## IV.    Rule 23(g)

This Court may appoint class counsel, pursuant to Fed. R. Civ. P. 23(g). "In appointing class counsel, the court . . . must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). Additionally, "the

20

court . . . may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

As demonstrated by the Declaration of Christopher Wiest and its exhibits, each counsel for Plaintiffs has experience in handling complex litigation and constitutional rights violation cases. (*See* Declaration of Christopher Weist, Doc. 21-1.) Additionally, such experience demonstrates that counsel all have knowledge of the applicable law in this case. Lastly, based on the advocacy of Plaintiffs' counsel thus far, each have exhibited that they are willing to commit the necessary resources to adequately represent the Plaintiffs' and putative class members' interests in this case. Accordingly, the Court will appoint Plaintiffs' counsel as class counsel in this matter.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Plaintiffs' Motion for Class Certification (Doc. 21) is **GRANTED**.

2. Such class **SHALL** consist of active-duty and active reserve members of the United States Air Force and Space Force, including but not limited to Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of the Air Force Reserve Command, and any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office and is currently under command and could be deployed, who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present; (ii) were confirmed as having had a sincerely

held religious belief by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request.

3. Defendants' Motion to Sever (Doc. 35) is **DENIED AS MOOT**.

4. Proposed Intervenors' Motion to Intervene (Doc. 52), Proposed Intervenors' Motion for Preliminary Injunction (Doc. 53), and Emergency Motion for Temporary Restraining Order by Proposed Intervenors Johnathan Oberg and Johnathan Nipp (Doc. 54) are **DENIED WITHOUT PREJUDICE**.

5. Plaintiffs' counsel is **APPOINTED** as class counsel in this matter.

6. The Court **ISSUES** a **TEMPORARY RESTRAINING ORDER** prohibiting Defendants from enforcing the vaccine mandate against any Class Member, to expire 14 days from the entry of this Order.

7. Defendants are **ORDERED** to file a supplemental brief, no later than July 21, 2022 and no more than ten (10) pages in length identifying why this Court should not grant a class-wide preliminary injunction. Plaintiffs may file a response, limited to ten (10) pages, to Defendants' supplemental brief by July 25, 2022.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND