# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| HUNTER DOSTER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00084 |
| | ) | |
| FRANK KENDALL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF BRIGADIER GENERAL WENDY WENKE

I, Wendy Wenke, hereby state and declare as follows:

1.      I am the Director for Manpower, Personnel, Recruiting and Services for the Air National

Guard (ANG) Readiness Center, National Guard Bureau, Joint Base Andrews, Maryland.  As the

Director, I provide leadership, management, and oversight of all policy and resource

management for manpower, personnel, recruiting and services for the 90 wings and 54 States,

Territories, and the District of Columbia.  I have been in this position since June 1, 2021.

2.      I am generally aware of the allegations set forth in the pleadings filed in this matter.  I

base this declaration upon my personal knowledge and upon information that has been provided

to me in the course of my official duties, and I make this declaration on behalf of the Air

National Guard of the United States.

3.      On July 14, 2022, the U.S District Court for the Southern District of Ohio certified a class

that includes "all active-duty and active reserve members of the United States Air Force and

Space Force."  The Court also issued a temporary restraining order (TRO) prohibiting

Defendants from enforcing the vaccine mandated against the class members.  While there are no

Air National Guard (ANG) named plaintiffs in *Doster*, out of an abundance of caution, the

Defendants tentatively included the Air National Guard of the United States (i.e., "active reserve members of the United States Air Force") in its implementation of the TRO.  Then on July 27, 2022, the Court modified that class to expressly include the "national guard" and issued a preliminary injunction enjoining the "national guard" from: (1) "taking, furthering, or continuing any disciplinary or separation measures" against class members based on their COVID-19 vaccine status.  ECF 77 at 2.  The Court defines "disciplinary or separation measures [to] include, but are not limited to, 'adverse administrative actions, non-judicial punishment, administrative demotions, administrative discharges, and courts-martial;'" (2) placing or continuing "active reservists on no points, no pay status for their refusal to get vaccinated for COVID-19;" and (3) refusing to "accept for commissioning or enlistment any inductee or appointee due to their refusal to get vaccinated for COVID-19…"  *Id.* at 2–3.  Lastly, the Court specifies that class members "who submitted requests for religious accommodation may cancel or amend previous voluntary retirement or separation requests or requests to transfer to the Air Force Reserve."  *Id.* at 3.  The injunction binds the named Defendants, their "officers, agents, servants, employees and attorneys; and other persons who act in concert or participate with the parties or the parties' officers, agents, servants, employees, and attorneys."  *Id.* at 4.

4.      There are no named Air National Guard plaintiffs and no named State defendants. However, as explained more below, state governors and state Adjutant Generals "act[] in concert with Defendants" to maintain the health and readiness of National Guard units, including ensuring that Air National Guard members comply with COVID-19 vaccination requirements, and thus state governors and state Adjutant Generals appear to fall within the scope of the injunction.  *Id.*   The injunction will cause irreparable harm to the 90 wings in the 54 States, Territories, and District of Columbia Air National Guard.

**Overview of the "Air National Guard"**

5.        Although the Court modified the class to now include the "national guard" in the class

definition, it is not clear how the Court is using the term "national guard" or how the injunction

is applied to the "national guard" because such terms have been used to describe the Army and

Air National Guard of the United States, as well as the Air and Army National Guard of each of

the 54 States, Territories, and the District Columbia (i.e., the militia of each state).  "The

National Guard is a component of the organized militia of the United States and incorporates

both the Army National Guard and the Air National Guard.  The National Guard is an 'unique

military force in that each unit within the Guard is responsible to two governments, one local

[the state government], and the other federal, i.e., that of the United States…That is, the National

Guard consists of two overlapping but distinct organizations (1) the National Guard of the

various states and (2) the National Guard of the United States.  *Ass'n of Civilian Technicians,*

*Inc. v. United States*, 601 F. Supp. 2d 146, 151-52 (D.D.C., 2009) (internal citations and

quotation marks omitted); 32 U.S.C. § 101(3), (6)-(7).  Defendants understand the "national

guard" in the Order to refer to the Air National Guard of the United States.

6.        The Air National Guard of the United States and each of the 54 state Air National Guards

are separate and distinct legal entities.  The Air National Guard of the United States "means the

reserve component of the Air Force all of whose members are members of the Air National

Guard," 32 U.S.C. § 101 (7), and the Air National Guard refers to the "organized militia of

several States, [Guam and the Virgin Island], Puerto Rico, and the District of Columbia,"  that is

federally recognized and funded in whole or in part, and with officers "appointed under the

sixteenth clause of section 8, article I of the Constitution." 32 U.S.C. § 101(1), (6).  The fifteenth

and the sixteenth clauses of Section 8, Article I of the Constitution are known as the Militia clause.

7.      The Militia Clause gives Congress the power to provide for "organizing, arming, and disciplining" the militia and for governing federally recognized National Guard units so that such units may be called into the federal service.  U.S. Const. art. I, § 8, cl. 16.  Congress in 32 U.S.C. § 110 provides that "[t]he President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."

8.      The Secretary of Defense serves as the principal assistant to the President on military matters and, consistent with his authorities under 10 U.S.C. § 113(b), may assist the President in carrying out the responsibilities of 32 U.S.C. § 110 with respect to the National Guard.  The Under Secretary of Defense for Personnel and Readiness assists the Secretary of Defense in carrying out the Secretary's responsibilities and, under 10 U.S.C. § 138,  "shall perform such duties and exercise such powers as the Secretary of Defense may prescribe in the areas of military readiness, total force management, [and] . . . National Guard and reserve components, and health affairs." 10 U.S.C. § 136(b).

9.      The Chief, National Guard Bureau, is charged with carrying out the National Guard Bureau's statutory function of "[p]rescribing training discipline and training requirements for the . . . Air National Guard" and with "[i]ssuing directives, regulations, and publications consistent with approved policies of the . . . Air Force."  *See* 10 U.S.C. §§ 10502, 10503; *see also* Department of Defense Directive 5105.77, *The National Guard Bureau*, October 15, 2015 (with change 1, October 10, 2017).  Such approved policies of the Air Force are prescribed by the Secretary of the Air Force according to 10 U.S.C. §§ 9013, 10202.

10.     Congress has further authorized the Secretary of the Air Force to prescribe regulations relating to the reserve components under his or her jurisdiction, including the Air National Guard. "Subject to standards, policies, and procedures prescribed by the Secretary of Defense, the Secretary of each military department shall prescribe such regulations as the Secretary considers necessary to carry out provisions of law relating to the reserve components under the Secretary's jurisdiction." 10 U.S.C. § 10202(a).

11.      National Guard units and members are subject to these federal military regulations when they are engaged in federal training functions and other authorized duty under title 32, U.S. Code, even though they are subject to state command authority at these times. All federal training under 32 U.S.C. § 502 is regulated by the Secretaries of the Army and Air Force. "The discipline, including training, of the Air National Guard shall conform to that of the Air Force." 32 U.S.C. § 501(a).

12.     States are generally in charge of Air National Guard training when units are not in federal service. "The training of the National Guard shall be conducted by the several States, the Commonwealth of Puerto Rico, the District of Columbia, Guam, and the Virgin Islands." 32 U.S.C. § 501(b). This framework of state-federal shared responsibilities for training federally recognized and funded National Guard units is consistent with the objective that "the strength and organization of the…Air National Guard as an integral part of the first line defense[] of the United States be maintained and assured at all times….[T]he Air National Guard of the United States…shall be ordered to active Federal duty and retained as long as so needed." 32 U.S.C. § 102.

13.     When a National Guard is not called into federal service, "the Appointment of the Officers, the Authority of training the Militia according to the discipline prescribed by Congress"

are reserved to the States. U.S. Const. art. I, § 8, cl. 16. Indeed, "[i]n each state, the Guard is a state agency, under state authority and control…The governor and his or her appointee, the Adjutant General, command the Guard in each state." *Ass'n of Civilian Technicians, Inc.*, 601 F. Supp. 2d at 152 (citing *Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 101 (3rd Cir. 1989) and *Charles v. Rice*, 28 F.3d 1312, 1315 (1st Cir. 1994)) (internal quotation marks omitted); *Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989, 993 (D.C. Cir., 2010).

14.     When National Guard units or members are not in federal service with the United States Air Force, courts-martial, including non-judicial punishment, are conducted by duly authorized title 32 commanders and state military officials (e.g., TAG and Governor as the Commander-in-Chief of the state National Guard), prescribed by the state code of military justice, not the federal Uniform Code of Military Justice. 32 U.S.C. §§ 326, 327 (For National Guard not in federal services, "general, special and summary courts-martial may be convened as provided by the law of the respective States, the Commonwealth of Puerto Rico, the District of Columbia, Guam, and the Virgin Islands").

### Enforceability of the Preliminary Injunction on National Guard

15.     The Court preliminarily enjoined the Secretary of the Air Force, the Surgeon General of the Air Force, the Commander of Air Education and Training Command, the Commander of Air Force Reserve Command, the Commander of Air Force Special Operations Command, and the United States of America from taking, furthering, or continuing disciplinary or separation measures against national guard class members. As explained above, when National Guard units or members are not in federal services, they are under the command and control of the state governor and the state Adjutant General. No state governors nor state Adjutant Generals are named defendants in this case. State governors and Adjutant Generals are also not "officers,

agents, servants, employees, and attorneys" of the named federal defendants.  However, state governments and Adjutant Generals "act[] in concert with Defendants" to maintain the health and readiness of National Guard units, and thus appear to fall within the scope of the injunction.

16.     Additionally, when National Guard units and members are not in federal service with the United States Air Force, non-judicial punishment and courts-martial are conducted in accordance with state code of military justice, by duly authorized title 32 commanders and state military officials.  For example, the West Virginia state code of military justice authorizes commanding officers, including the Governor and the Adjutant General, to impose disciplinary punishment for minor offenses under WV Code § 15-1E-15, Commanding Officer's Nonjudicial Punishment. Types of punishment authorized under § 15-1E-15 include an admonition, a reprimand, reduction in grade, among others.  The scope of the preliminary injunction issued by a federal district court in Cincinnati, Ohio, enjoins West Virginia state military officials or commanding officers from taking disciplinary actions otherwise authorized under the West Virginia state code of military justice against class members for non-compliance with COVID-19 vaccine requirements.

17.     The Court also preliminarily enjoined the federal defendants from "plac[ing] or continu[ing] active reservists on no points, no pay status" for their refusal to receive the COVID-19 vaccines due to their sincerely held religious belief.  Most members of the National Guard are Drill Status Guardsmen, who are required to attend military training under the title 32 authority. one weekend a month and two weeks a year.  *See* 32 U.S.C. § 502(a).  As discussed above, title 32 training is conducted by states, but subject to regulation by Congress and the federal military. *See* 32 U.S.C. § 501 ("The training of the National Guard of the several states…shall be conducted in conformity with this title.").  By requiring state Air National Guard units to remove class members from No Pay / No Points status, the injunction restricts state military officials'

(i.e., the state Adjutant Generals) discretion in spending federal funds to pay or not to pay for military duty performed under title 32 in the National Guard. The preliminary injunction also directs state Governors and Adjutant Generals to provide class member inductees and appointees with membership in a state militia because National Guard members must have a concurrent membership in the National Guard of the United States and in each state militia or state National Guard.  The court's order enjoined federal defendants from refusing "to accept for commissioning or enlistment" any individuals due to their COVID-19 vaccine refusal based on their sincerely held religious belief.

18.     Under the Militia Clause, enlistment and appointment of individuals to the National Guard is reserved to the State and processed in accordance with applicable state rules and regulations.  While the Department of the Air Force has the authority under 32 U.S.C. §§ 301, 302 to prescribe regulations for the qualifications (and duration) of enlistments in the National Guard in order for a state national guard member to receive "federal recognition" of the enlisted grade, branch, position, and unit of assignment, it is the State that enlists, commissions, reenlists, or retains an individual in the state militia.  *See* 32 U.S.C. § 305; 10 U.S.C. § 10105.  Because of the hybrid nature of the National Guard under the Militia Clause, to enlist or commission in a state's militia that is federally recognized and funded in whole or in part, an individual must also enlist or commission at the same time in the Air National Guard of the United States.  Since the Order requires the Air Force to accept enlistees and to commission officers if they are members of the class, regardless of their vaccination status, it operatively extends that requirement to state officials and intrudes upon their constitutional authority to commission officers of their choosing.

8

19.     Under the court's Order, National Guard class members may also cancel or amend previous voluntary retirement or separation requests or requests to transfer to the Air Force Reserve.  To date, the Air National Guard is expecting 3,284 RARs from members from across the 90 wings and 54 state National Guard units.[1]  From January 1 to June 30, 2022, 3,660 Air National Guard members either separated or retired from military service.  Sixty-six of the 3,660 members who have separated had submitted a religious accommodation request.  As of July 7, 2022, 681 Air National Guard members who refused to receive the COVID-19 vaccine are either on terminal leave, have already separated or retired, or have their separation or retirement application pending processing by the Air Force Personnel Center.  These 681 Air National Guard members are given an administrative exemption from receiving the vaccine pending the completion of the underlying administrative actions.  Thus, an unknown number of 3,284 members with a religious accommodation request and 681 members with an administrative exemption may now request retention or reenlistment, which will require various state National Guard units to retain or reinstate their state National Guard or militia membership.  The court's order thus seeks to enjoin state officials (i.e., Governors and state Adjutant Generals) who are not named defendants in the case.

20.     Lastly, the injunction would cause irreparable harm to the 90 wings across the 54 state National Guard units.  Specifically, the injunction obligates the 54 state National Guards to enlist/reenlist, commission and retain greater number of unvaccinated members who are subject to training, assignment, and deployment restrictions.  Unit- or installation-wide readiness will

---

[1] As of August 8, 2022, the Air National Guard Directorate of the National Guard Bureau has received 2,869 religious accommodation requests.  1,212 of those requests were returned to the state National Guard units for additional information and 1,649 requests were accepted for review.  To date, the Director of the Air National Guard has approved 10 religious accommodation requests and disapproved 944 requests. Six hundred and ninety-four requests are pending review.

suffer as unvaccinated members will not be fully trained, readied, and capable of accepting

operational assignments and deployments.  State National Guard units support state and federal

homeland defense operations, with many emergencies requiring 24 to 72 hours recalls of

National Guard members.  At any given time, National Guard members may be recalled for state

active duty under state laws or mobilized for federal service for domestic operations or defense

support of civil authorities under 32 U.S.C. §§ 328, 502(f).  Indeed, National Guard members

need to be prepared to deploy or be mobilized in an emergency with little to no notice.  For some

deployments, Guardsmen and Airmen receive months of lead time to prepare.  However, that is

not true for unplanned deployments or mobilization, which can range from natural (e.g.,

hurricanes, earthquakes, forest fires) or manmade disasters (e.g., oil spills like Deepwater

Horizon, civil unrest).  Similarly, terrorist attacks (conventional, chemical, nuclear, or biological)

are rarely telegraphed by the responsible organization beforehand.  Disaster deployments or

mobilization routinely begin hours or days after notice is received by the activation of National

Guard members.  Unvaccinated National Guard members will not have sufficient time to be fully

vaccinated to support unplanned operations.

21.     It is also foreseeable that an increased number of unvaccinated members who are

untrained and without meeting all military readiness requirements will hamper any surge and

rapid response forces required in a domestic emergency.  The 90 wings across the 54 state

National Guard units are small when compared to the size of an active-duty Air Force military

installation.  However, state Air National Guard units provide outsized domestic air defense for

the protection of life, property and preservation of peace, order, and public safety under state

law.  For example, Air National Guard units maintain 94 percent of the U.S. alert sites for air

defense, and provide tactical airlift, air refueling tankers, general purpose fighters, rescue and

recovery capabilities, tactical air support, weather flights, strategic airlift, special operation

capabilities and aeromedical evacuation units, to name a few.  Air National Guard units

accomplish these critical missions and air defense operations with limited billets and a nimble

fighting force.  Thus, when Air National Guard units are required to (re)enlist, commission, or

retain an increasing number of unvaccinated members who are subject to training, assignment,

and deployment restrictions and with an elevate health risk to themselves and others, unit

commanders are left with the burden of having to direct vaccinated members to do more,

knowing that repeated mission tasking increases burnout and risk to safety in operations.

Further, most Air National Guard members are Traditional Drill Status guardsmen who have a

civilian career outside of the military training periods (i.e., one weekend a month and two weeks

a year).  Increasing the military demand on vaccinated guardsmen will consequently challenge

their ability to balance their military and civilian careers.  Similarly, many Air National Guard

units also maintain specialty assets, such as HH-60 helicopters and HC-130 aircraft, which

provide important lifesaving capabilities and services to civilian and military agencies.  Flying

these specialty assets requires a team of at least two to four members with different Air Force

Specialty Codes working in close quarter and long hours to ensure mission success.  When one

of the four required members for the specialty team is not a deployable member due to his/her

vaccine status, then the team is unable to readily answer the call of duty.  The Order directing the

state Air National Guard units to encumber already limited number of billets with unvaccinated

members essentially robs unit commanders the deployment, operations, and assignments

decision on when, who, how to utilize a small cadre of surge and rapid response force.

       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.  Executed this 12th day of August 2022.

WENKE.WEN
DY.B.1023293
630

Digitally signed by
WENKE.WENDY.B.1023
293630
Date: 2022.08.12
10:25:48 -04'00'

WENDY WENKE
Brigadier General, USAF
Director for Manpower, Personnel,
Recruiting and Services

12