## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO – Cincinnati Division

| | | |
|---|---|---|
| **HUNTER DOSTER**, et. al. | : | Case No.: 1:22-cv-00084 |
| Plaintiff | : | |
| v. | : | |
| **Hon. FRANK KENDALL**, et. al. | : | |
| Defendants | : | |

### RESPONSE TO GOVERNMENT'S BRIEF REGARDING MOTION FOR STAY PENDING APPEAL AND ADMINISTRATIVE STAY

The Government makes certain sweeping arguments that have already been fully briefed, and which this Court has emphatically rejected. Two such arguments are that the Government is likely to succeed on the merits and that class certification was improper. [See, e.g., Doc. 13, Doc. 21; Doc. 27 Doc. 30, Doc. 34; Doc. 46; Doc. 47, Doc. 72]. Consequently, we will not repeat Plaintiffs' rebuttal to all the Government's arguments. However, we note that other Courts have granted class certification on nearly identical claims. *See, e.g. U.S. Navy Seals*, *1-26 v. Biden*, NDTX 4:21-cv-01236, at Doc. 140 (Navy Class); *Colonel Financial Management Officer, et. al. v. Lloyd Austin, et. al.*, MDFL 8:22-cv-1275, at Doc. 229 (entered earlier today, 8/18/2022) (Marine Corps).

We also note that, with the passage of time, the Government's case continues to fall apart. For instance, the CDC recently released several new recommendations and made several statements concerning COVID-19.[1] In particular:

---

[1] *See Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems — United States, August 2022,* https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm, (last accessed Aug. 18, 2022).

1

1. The CDC now recognizes the immunity and protection provided to those who have previously recovered from a COVID-19 infection: "The risk for medically significant illness increases with age, disability status, and underlying medical conditions but *is considerably reduced by immunity derived from* vaccination, *previous infection*, or both, as well as timely access to effective biomedical prevention measures and treatments."[2]

2. The CDC also now confirms that "[h]igh levels of immunity and availability of effective COVID-19 prevention and management tools have reduced the risk for medically significant illness and death," thus annihilating the Government's argument regarding its allegedly compelling interest to reduce hospitalization and death among service members solely by means of forced vaccination.[3]

3. The "[C]DC's COVID-19 prevention recommendations now no longer differentiate based on a person's vaccination status because breakthrough infections occur, though they are generally mild, and persons who have had COVID-19 but are not vaccinated have some degree of protection against severe illness from their previous infection."[4]

4. Finally, "[R]eceipt of a primary series alone, in the absence of being up to date with vaccination through receipt of all recommended booster doses, provides minimal protection against infection and transmission."[5]

Thus, the CDC now refutes the Government's allegedly compelling interest in forcing vaccination regardless of prior infection, and its purported inability to accommodate class

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

members' religious beliefs. In fact, the Government's own declarant, the U.S. Air Force Chief of Immunization Healthcare Division, Defense Health Agency-Public Health directorate, relies entirely on the CDC's recommendations in justifying the Government's "vaccination is the only way" position.[6]

And it's not just the CDC that is factually undermining the Government's untenable position. Its own witnesses are piling on. In *U.S. Navy Seals, 1-26 v. Biden*, 4:21-cv-01236, the Plaintiffs took the deposition of the Vice Chief of Naval Operations, Admiral Lescher, who testified by way of declaration in the District Court, similar to the Declarations offered by the Government in this case. *See* Exhibit A.[7] The Declaration of Admiral Lescher was relied on by Justice Kavanaugh in his concurring opinion in *Austin v. United States Navy Seals*, 142 S. Ct. 1301 (2022), to grant a partial stay. Incredibly (or maybe not so incredibly), Admiral Lescher admitted numerous times that he did not have the personal knowledge to attest to the facts set forth in his prior Declaration, and admitted that significant portions of his Declaration amounted to unsubstantiated speculation. Including, for example, admitting that details regarding the effect COVID-19 had on naval ships was "not generally" within his purview and that he did not speak to individuals with such knowledge before drafting his declaration (Tr. at 22:11–22:20, 23:4–23:6, 23:16–24:1), admitting he was unaware of any combat operations negatively impacted by COVID-19 (Tr. at 33:18–34:8), or stating he was unaware of specific examples of COVID-19 made a medical evacuation more difficult (Tr. at 50:15–51:16). In other words, the passage of time has only demonstrated the wisdom of this Court's decision that the Government cannot meet its very high burden in this case.

---

[6] Exhibit 9, Doc. # 27-10, Declaration of Colonel Tonya Rans.

[7] All lettered Exhibits are attached hereto.

As for the other arguments raised by the Government, they are conditioned upon a strained reading of the plain language of the Court's Order or have otherwise been thoroughly analyzed and rejected by the Court. [Doc. 77]. We address these other arguments below.

1. <u>What this Court ordered and the scope thereof</u>

The injunction, by its terms, only applies to members of the class. Therefore, it only applies to "[a]ll active-duty, active reserve, reserve, national guard, inductees, and appointees of the United States Air Force and Space Force , including but not limited to Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of the Air Force Reserve Command, and any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office or Enlistment and is currently under command and could be deployed." All of the past tense language within that definition makes clear that individuals must have met the criteria for that definition as of the date of the class modification, July 27, 2022 [Doc. 77]. Moreover, individuals must meet that criteria and must also have further: "(i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present" (i.e., July 27, 2022, the date of the Order); "(ii) were confirmed as having had a sincerely held religious belief substantially burdened by the Air Force's COVID-19 vaccination requirement by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request."

Because all class membership requirements are stated in the past tense, including all of the requirements under (i), (ii), and (iii), which had to have been met by the date of the modified class order (i.e. July 27, 2022), there is no open-ended class. The Government is wrong to argue

otherwise. Simply put, the class is necessarily confined to those who met the class definition as of July 27, 2022. This is a plain reading of the Court's class definition.

Finally, insofar as the restrictions on National Guard are concerned, the application of the injunction is limited to the enforcement of the Secretary of the Air Force's vaccine mandate against those meeting the class definition. It would therefore not apply to any vaccine requirement that was separately imposed by any Governor, State Adjutant General, state legislature, or separate state authority.

After reading the Government's brief, to avoid any ambiguity and to conserve judicial resources, Plaintiffs offered to enter into an Agreed Order with the Government in order to clarify these points related to the class definition and to the National Guard issue. Predictably, the Government declined. *See* Exhibit B. To avoid the Government's strained reading, which is what supports the majority of its argument, the Court should consider entering a further order clarifying the scope of its previous order, so as to avoid the Government making this same, strained argument on appeal. We have tendered such an order. *See* Exhibit D.

2. The Government's argument about the "expansion" of the class without briefing, allegations that class-wide relief was legal error, and standing of class members

The Government argues that it was unfair to "expand" the class to "reserves," "inductees," "appointees," and "members of the 54 Air National Guards of the States. . . ." For several reasons, Plaintiffs respectfully disagree. The Government further argues that it did not have the opportunity to brief the expansion issue. It has now had that opportunity. [Doc. 83].

Turning again to this Court's order, this Court certified a class with regard to any active or active reserve member of the Air or Space Force to include Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of the Air Force Reserve Command,

5

and "any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office and is currently under command and could be deployed." (Doc. 72).

However, this language was also limited to personnel "who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to the present; (ii) were confirmed as having had a sincerely held religious belief by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request."

By definition, Air Force ROTC Cadets are not on active duty or active reserves. But they do go through the entire process of religious accommodation processing. So what the Government calls an expansion was actually merely a clarification. Further, it is only by meeting <u>all</u> of this Court's requirements, all of which are stated in the past tense, that places someone within the class. Once again, this includes the requirements at (i), (ii), and (iii).

The Government next argues that Plaintiffs did not have standing to assert this relief [Doc. 83 at pp.5-6] because the Government observes that no Plaintiff is a member of the National Guard, and none were inductees or appointees. But typicality and commonality do not require such a showing. Rather, it is sufficient that all Plaintiffs, like all others in the class, were subject to the same mandate imposed by Secretary Kendall, all going to the same appeal authority, Lt. General Miller, and all were subject to the same systemic discrimination. *Coleman v. GM Acceptance Corp.*, 220 F.R.D. 64, 86-90 (M.D. Tenn. 2004) (explaining that standing is determined with respect to the question of whether the individual Plaintiffs have standing and have been harmed, observing that "where the potential class members cannot be enumerated, attempting to conduct a standing analysis with respect to these unenumerated class members would be impossible," and

6

class certification and definitions are appropriate "as long as the challenged policy or practice was generally applicable to the class as a whole").

The Government repeats its argument that RFRA requires individualized consideration. RFRA does require individual consideration. But the fact that the Government implemented a blanket policy of denials for every Air Force and Space Force member, other than those at the end of their term of service, while granting medical and administrative exemptions, rather than actually conducting that case-by-case assessment, as the Court has found [Doc. 47; Doc. 72], and as the Government has admitted in Court, is evidence of a systemic violation warranting systemic relief. [Doc.30-2, Transcript with Government admission about religious accommodations].

3. The Government's argument about inconsistent judicial orders

The Government again argues that class certification here conflicts with other cases and rulings that found that Defendants could substantially burden the religious freedom of service members, and they make the claim that having conflicting rulings is a good thing. [Doc. 83 at pp. 8-9]. Nothing could be further from the truth. First, avoiding conflicting rulings on identical facts and law is generally the point of class actions and certifications. *City of North Royalton v. McKesson Corp. (In re Nat'l Prescription Opiate Litig.)*, 976 F.3d 664, 674 (6th Cir. 2020) ("Rule 23 permits litigation classes primarily for the purposes of aggregating and adjudicating common claims for trial, which can avoid conflicting judgments in individualized proceedings and can more efficiently resolve the claims of the class through a single lawsuit.")

Second, to avoid the risk of inconsistent rulings in other class actions, some courts have excluded from the class persons who bring individual claims. Here, if the Court desired, it could

7

exclude from the class those who are pursuing individual actions.[8] *Vidal v. Wolf*, 501 F. Supp. 3d 117, 136-137 (NYED 2020).  Courts have wide discretion to modify the definition of a class. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions").

But equally, there is no inconsistency.  The Government cannot point to a single Court order that requires them to discriminate against the Plaintiffs or the class.  The denial of relief, is just that – it imposes no burden or requirement on the Government.  The same is true with court orders that direct more limited relief – the Government is not, by such orders, precluded from giving such persons more fulsome relief.

4. The Government's argument about the commissioning of officers or enlisting of new service members

Plaintiffs have undertaken significant research on this issue in response to the Government's arguments.  While there is no question that the Government and its officials have violated RFRA, not every harm can be remedied.  The Government is, unfortunately, correct that *Orloff v. Willoughby*, 345 U.S. 83, 90 (1953), states that "the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief."  We have found other cases beyond those cited by the Government, that state, as a matter of separation of powers, "[w]hatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions." *Dysart v. United States*, 369 F.3d 1303, 1317 (Fed. Cir. 2004).

---

[8] The Court could exclude such individuals from the Class with the following additional language, which would have the effect of giving persons a reasonable opportunity to cease or stay in progress actions: "Excluded from the class is … or (ii) is deemed to have opted out, by asserting and maintaining a claim as a named or identified plaintiff (and not as a member of a class or a putative class) under RFRA or the First Amendment against the Government in relation to the vaccination mandate, in an action that is still pending on or after September 30, 2022, not inclusive of this action, or actions that are stayed pending final adjudication of this action."

Thus, "the President's decision here whether or not to exercise his appointment power is discretionary, and we hold that the President cannot be compelled to appoint military officers." *Id.*

Unfortunately, and consistent with our duty of candor to the Court, Plaintiffs believe that this aspect of the injunction must be withdrawn. We have proposed an order that does that.

5. The Government's argument about non-party state officials

We have already addressed much of this with clarifying language. Again, we have proposed an order that makes that clarification. At bottom, the Government should not be able to avoid the requirements of RFRA because of the actions of others. If the states want to impose a vaccination requirement and deny religious accommodations to it, so be it. Litigation can be brought in those states over that issue. But in the same vein, the violation here was by these Defendants, who systemically denied Air National Guard members' requests for religious accommodations to the Secretary of the Air Force's requirement. And that should not be permitted.

6. The Government's argument about court martial stays is moot

The Government complains the Court has stayed court-martial proceedings, but the Government's own filing admits "they are **not aware** of any ongoing court-martial." [Doc. 79]. Instead, the Government suggests that the Court's order should not apply to approximately 23 administrative proceedings under 10 U.S.C. § 815 (Article 15) underway. [Doc. 79]. They cite *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) for the proposition that these administrative disciplinary measures should be permitted to continue, but by its language, (i) *Schlesinger*, 420 U.S. 738 does not apply to non-court martials; and (ii) *Schlesinger*, 420 U.S. 738 merely indicates that proceeding through a court-martial process is not irreparable harm. It does not speak to the

9

irreparable harm already found by this Court. To deal with this argument by the Government, Plaintiffs withdrew it in the attached order, because, again, it applies to no one.

7. <u>The Government's argument about lack of analysis in the class-wide preliminary injunction</u>

The Government claims the Court's order lacked "analysis." (Doc. 83 at 11). Of course, that views the Order in a vacuum. This Court previously, and quite extensively, considered the issues in this case [Doc. 47; Doc. 72]. Any order must, therefore, be viewed in conjunction with all prior orders touching on the same matter.

8. <u>The Government's argument about Novavax</u>

The Government next makes arguments about Novavax. This Court already found that Plaintiffs met their evidentiary burden under RFRA. However, we address the Governments' most recent attempt to argue that they have not substantially burdened Plaintiffs' sincerely held religious beliefs in light of the newest COVID-19 vaccine to receive emergency use authorization, Novavax. Specifically, the Government continues to falsely claim that Novavax is not morally problematic for those who object to vaccines which have a connection to aborted fetal tissue, and they again cite to Novavax's self-serving and false public statements that its product has no connection to aborted fetal tissue. The evidence is clear and admitted by Novavax itself: aborted fetal tissue was used to test its vaccine.[9]

The Government then argues that Novavax will not be religiously objectionable to everyone who has an aborted fetal cell objection. We acknowledge that service members who do not have an objection to vaccines tested on the cell line from an aborted child, and have no other

---

[9] https://wng.org/roundups/pro-lifers-question-novavaxs-fetal-tissue-claim-1655411473 (last visited 7/22/2022); https://personhood.org/2022/02/22/yes-novavax-used-hek293-an-aborted-fetal-cell-line/ (last visited 7/22/2022); https://www.lifesitenews.com/opinion/novavax-covid-jab-linked-to-aborted-fetal-cells-through-laboratory-testing/ (last visited 7/22/2022); see, also, Declarations of Plaintiffs, DE#30-4 through DE#30-20.

religious objection to Novavax, can receive this vaccine without violating their religious beliefs when it is soon available and FDA approved.[10] The Government also fails to recognize that any Plaintiffs and class members who have since gotten a vaccine (like Lts. Ramsperger and McCormick), or will do so as this case progresses, still require ongoing relief to prevent Defendants from punishing them for their past non-compliance due to their religious beliefs. *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir. 2021) (declining to find claims moot because of possibility of prosecution for past non-compliance).

Finally, the Government falsely claims that Plaintiffs must provide further evidence that every member of the class had his or her religious beliefs substantially burdened. But this ignores its own dispositive evidence that a Chaplain has already confirmed the sincerity *and* substantial burdening of beliefs of each service member the Court defined as a class member.

9. The Government's argument about Exemption Statistics

The Government next (and falsely) claims that exemption statistics support its argument that it is not systemically denying all religious exemptions. However, the Government has admitted in Court that any and all religious exemptions are solely to be given to service members who are at the end of their terms of service. [Doc.30-2, Transcript with Government admission about religious accommodations]. And the Government has come forward with no evidence to refute its prior in-court admission.

10. The Government's argument about lack of analysis in the class-wide preliminary injunction

---

[10] As an aside, for those Plaintiffs and class members whose only objection is the connection to aborted fetal cells (which is, admittedly, the vast majority), it is appearing more likely every day that a vaccine may come to market in the next 6 months that will alleviate those concerns. https://ir.ocugen.com/news-releases/news-release-details/ocugen-announces-fda-removes-clinical-hold-phase-23-clinical (last visited 7/22/2022). Thus, and contrary to the misrepresentation contained throughout Defendants' pleadings, Plaintiffs with those specific religious objections truly seek only a temporary exemption.

11

The Government also falsely claims that the Court's Order lacked analysis on equities and public interest. (Doc. 83 at 15). Once again, that erroneously views the order in a vacuum. This Court previously, and quite extensively, considered the issues in this case [Doc. 47; Doc. 72]. Any order must, therefore, be viewed in conjunction with all prior orders touching on the same matter. In any event, we have, again, proposed an order that does that.

11. <u>A stay is not warranted because the Government has failed to meet the stay factors</u>

In order to obtain a stay, Defendants must demonstrate: (1) the likelihood that the party seeking a stay will prevail on the merits of the appeal; (2) the likelihood that the movant will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *See Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001). As it turns out, those are the same factors that warrant the issuance of an injunction in the first place: "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016); *Dahl v. Bd. of Trs. of Western Mich. Univ.*, 15 F.4th 728 at 736 (6th Cir. 2021).

    A.    <u>Likelihood of Success on the Merits</u>

Plaintiffs are likely to prevail on the merits, for substantially the same reasons that the Court previously stated in its decision for the original 18 Plaintiffs [Doc. 47]. The class definition, above, demonstrates that every member of the class will necessarily demonstrate both a sincerely held belief, as well as a substantial burdening of that belief. That, then, shifts the burden to the Government to demonstrate that its requirement or order is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. 2000bb.

The Government argues that statistics have changed and it has granted more religious exemptions since the initial preliminary injunction [Doc. 83], but, again, the Government has admitted in Court that it is only granting these exemptions to those who are at their end-of-service, while granting medical exemptions and administrative exemptions much more widely. [Doc.30-2, Transcript with Government admission about religious accommodations]. And the Government *has not come forward* with any evidence that this admission is no longer the case, even though the Government has the burden. The Government makes much about the Novavax vaccine and a self-serving, hearsay (and Plaintiffs object to this letter under FRE 803), untested letter from the manufacturer [Doc. 83 at pp. 12-13], but Plaintiffs have submitted declarations and evidence that suggests that the ties to aborted fetal tissue in confirmatory testing would likewise raise religious concerns. [Declarations of Plaintiffs, Doc. 30-4 through Doc. 30-20].[11] That said, if the Chaplain who made a determination of sincerity and substantial burden re-evaluates a particular class member in light of a new vaccine, and determines that the belief is no longer substantially burdened, then they would no longer meet the class definition.

Most concerning as evidence of the patent discriminatory treatment at issue, is the Declaration of Major Andrea Corvi [Doc. 53-1], who was granted a medical exemption for pregnancy, but then denied a religious accommodation – no one suggests that her job duties, assignments, or interactions are in any way different – yet the Government accommodated her medical condition, and refused to accommodate her religious belief, both exemptions being temporary in nature. The Plaintiff class has demonstrated a likelihood of success on the merits of their RFRA and First Amendment claims.

---

[11] *See, also*, https://wng.org/roundups/pro-lifers-question-novavaxs-fetal-tissue-claim-1655411473 (last visited 7/22/2022); https://personhood.org/2022/02/22/yes-novavax-used-hek293-an-aborted-fetal-cell-line/ (last visited 7/22/2022); https://www.lifesitenews.com/opinion/novavax-covid-jab-linked-to-aborted-fetal-cells-through-laboratory-testing/ (last visited 7/22/2022); see, also, Declarations of Plaintiffs, Doc. 30-4 through Doc. 30-20.

B.     Irreparable Harm

While the Government has argued irreparable harm, so have the members of the class, from the loss of their constitutional and statutory rights. *Dahl*, 15 F.4th 728, 735-736, holds that the loss these constitutional rights for the class are irreparable. We have attached, hereto, the Declaration of Major Pottinger, and we remind the Court of the testimony of Lt. Colonel Stapanon at the Preliminary Injunction hearing: the Air Force is not meeting its pilot or other accession and enlistment goals. [Doc. 45].[12] The suggestion by Lt. General Schneider of irreparable harm because other Air Force members will have to deploy for the less than 2% of the Air and Space Force within the class, is incredible in light of the small percentage at issue, and relies upon the proposition that there are persons who would readily replace members of the class. The testimony at the Preliminary Injunction Hearing by Lt. Colonel Stapanon, which recounted the training pipeline and a lack of fungibility, which only consisted of the Plaintiffs offering testimony, which was subject to adversarial testing by the Government, and in which the Government offered no live testimony to support its case, suggests that this is not the case and not the zero-sum game Defendants make it out to be. The Court should find Lt. Colonel Stapanon's testimony more credible than Lt. General Schneider because his testimony was subjected to and tested on cross-examination. Irreparable harm thus favors the Plaintiff class.[13]

C.     Harm to Others

---

[12] https://www.airforcetimes.com/news/your-air-force/2022/01/21/air-forces-enlisted-recruitment-pipeline-is-drying-up-general-warns/ (last visited 8/18/2022).

https://www.nbcnews.com/news/military/every-branch-us-military-struggling-meet-2022-recruiting-goals-officia-rcna35078 (last visited 8/18/2022).

[13] If the Government would like to offer Lt. General Schneider's testimony at a live hearing, or subject his testimony to cross-examination, similar to that conducted by VCNO Admiral Lescher, who offered a similar declaration that did not withstand cross-examination, the Court should be willing to reconsider his testimony.

As this Court has already concluded, ". . . the limited scope of this preliminary injunction will not cause substantial harm to the Air Force because '[Plaintiffs'] religious-based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully vaccinated Air Force's mission to provide a ready national defense.'" *Doster*, --- F. Supp.3d ---, 2022 U.S. Dist. LEXIS 59381 at 48 (SDOH 2022) (*citing Air Force Officer*, --- F. Supp.3d ---, 2022 WL 468799, at *12 (NDGA 2022)). As in *Dahl*, 15 F.4th 728, 735-736, the harm to others suggested by Defendants appears to be "speculative." Similarly, in *Dahl*, the Sixth Circuit suggested this was the exact case in light of the low percentage of affected Air and Space Force members "does not limit [someone's] exposure to unvaccinated [persons] at large." Notably, too, is the Air and Space Force's ability to conduct its mission prior to the advent of these vaccines, [Declarations of Plaintiffs, Doc. 30-4 through Doc. 30-20], or for months while exemption requests were pending.

D. Public Interest

Finally, "[p]roper application of the Constitution, moreover, serves the public interest." *Dahl*, 15 F.4th 728 at 736.

A stay is thus not warranted; however, as explained, some clarifications and modifications might be.

**II. Defendants do not face an irreparable harm from the preliminary injunction**

The Government argues that granting a preliminary injunction to the class would cause harm to Defendants. [Doc. 83, PageID#4583]. Nevertheless, they fail to cite one instance of how the Air and Space Force has been harmed by these same unvaccinated Airmen (now class members) for the past *two years*. Notwithstanding this, for 10, now going on 11, months, these same class members have been unable to travel, attend required schooling, and deploy. Not because they were physically unable to travel or deploy, but because Defendants made the decision

15

to treat their unvaccinated service members this way once vaccines became available. It is not surprising then that Lt. Gen. Schneider could not cite a single example of this alleged irreparable harm in his declaration.[14] The class he references that would cause this serious endangerment to the Air Force mission accounts for less than 2% of the entire Air and Space Force based on Lt. Gen. Schneider's numbers, spread out over and between hundreds of thousands of other service members.[15] Given that the Air and Space Force has systemically been driving out or coercing religious believers to accede to its vaccination requirement in the face of sincerely held religious beliefs, the actual numbers at this point are likely far less than that.

---

[14] Plaintiffs note that although not needed here, there is a large and growing body of evidence that unvaccinated individuals who have had COVID-19 are far more protected than those who are vaccinated with 1 dose of J&J or 2 doses of an mRNA vaccine. So, it is unsurprising that Lt. Gen. Schneider cannot cite a single example of harm. *See, also, Effects of Previous Infection and Vaccination on Symptomatic Omicron Infections,* New England Journal of Medicine, Altarawneh, et. al., June 15, 2022, https://www.nejm.org/doi/full/10.1056/NEJMoa2203965 (last visited 7/25/2022).

*Protection of prior natural infection compared to mRNA vaccination against SARS-CoV-2 infection and severe COVID-19 in Qatar* – "Natural infection was associated with stronger and more durable protection against infection, regardless of the variant, than mRNA primary-series vaccination." https://www.medrxiv.org/content/10.1101/2022.03.17.22272529v1 (last visited 7/25/ 2022).

*SARS-CoV-2 Naturally Acquired Immunity vs Vaccine-induce Immunity, Reinfections versus Breakthrough Infections: a Retrospective Cohort Study* – "Naturally acquired immunity confers stronger protection against infection and symptomatic disease caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity." https://pubmed.ncbi.nlm.nih.gov/35380632/ (last visited 7/25/ 2022).

*Effects of Previous Infection and Vaccination on Symptomatic Omicron Infections* – "The effectiveness of previous infection alone against symptomatic BA.2 infection was 46.1% (95% confidence interval [CI], 39.5 to 51.9). The effectiveness of vaccination with two doses of BNT162b2 and no previous infection was negligible (−1.1%; 95% CI, −7.1 to 4.6), but nearly all persons had received their second dose more than 6 months earlier… Previous infection alone, BNT162b2 vaccination alone, and hybrid immunity all showed strong effectiveness (>70%) against severe, critical, or fatal Covid-19 due to BA.2 infection. Similar results were observed in analyses of effectiveness against BA.1 infection and of vaccination with mRNA-1273." https://www.nejm.org/doi/pdf/10.1056/NEJMoa2203965?articleTools=true (last visited 7/25/ 2022)

*Duration of immune protection of SARS-Cov-2 natural infection against reinfection in Qatar* – "Effectiveness of primary infection against severe, critical, or fatal COVID-19 reinfection was 97.3% (95% CI: 94.9- 98.6%), irrespective of the variant of primary infection or reinfection, and with no evidence for waning." https://www.medrxiv.org/content/10.1101/2022.07.06.22277306v1.full.pdf (last visited 7/25/ 2022).

[15] "Similarly, an injunction expanded to apply to 10,000 or more service members. . ." and "As of March 14, 2022, the Department of the Air Force had approximately 501,00 uniformed Service members - . . ." Doc # 73-1, PAGEID # 4490, 4493.

The Government makes the claim that the members of the class (again, less than 2% of the total force), take up space for others who would get vaccinated. Well, we know that is not true: the military, including the Air and Space Force, is in dire straits from a current recruiting crisis, and has not met its recruiting goals this year.[16] (Declaration Pottinger).

The Government's solution? Separate *more people* in the face of this recruiting crisis. Of course, if one stops to analyze the situation, the Government might find that the systemic religious discrimination it engages in has something to do with its current recruiting crisis.

The Government argues that keeping these members on hand and unvaccinated puts more of a burden on other airmen and guardians. No – the Government's decision not to deploy them does (a decision we do not dispute they have the authority to do). And, again, the Government's suggestion rests upon the faulty premise that these airmen and guardians will be readily replaced. The Court has already seen and taken evidence of pilot shortages and the pipeline to train them that takes years. We have submitted, in connection with this Response, a Declaration from Major Pottinger (one of the Class Representative Plaintiffs). A few days before this Court's preliminary injunction, he was pulled from aeronautical orders and "grounded." (Declaration Pottinger, attached as Exhibit C). That, of course, was well within the operational/deployment exception.[17] But in light of a known severe shortage of pilots, out of necessity his Commander reinstated his flying orders. *Id.* The same is true with everyone in the class – particularly in the face of a recruiting shortage.

---

[16] https://www.nbcnews.com/news/military/every-branch-us-military-struggling-meet-2022-recruiting-goals-officia-rcna35078 (last visited 8/18/2022).

[17] The Government also argues that the prohibition on them continuing reservists on "no pay, no points," is somehow an operational, assignment, or deployment decision. That is absurd. They can, if they wanted, let those reservists sit at home and collect pay and points, could instead assign them to fold towels at the base gym, could ground them, as they did to Major Pottinger, until they realized they needed him to fly to fill shortages, the decision is strictly theirs.

17

As this Court has already concluded, ". . . the limited scope of this preliminary injunction will not cause substantial harm to the Air Force because '[Plaintiffs'] religious-based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully vaccinated Air Force's mission to provide a ready national defense.'" *Doster v. Kendall*, --- F. Supp.3d ---, 2022 U.S. Dist. LEXIS 59381 at 48 (SDOH 2022) (*citing Air Force Officer v. Austin*, --- F. Supp.3d ---, 2022 WL 468799, at *12 (NDGA 2022)). The continued preservation of Constitutional rights is always in the public interest and here it is no different. *Dahl v. Bd. of Trs. of Western Mich. Univ.*, 15 F.4th 728 at 736 (6th Cir. 2021) ("it is always in the public interest to prevent the violation of a party's constitutional rights.").

### III. The balance of harms and public interest support the preliminary injunction

The Government argues that the class-wide preliminary injunction is not supportable under the balance of harms and public interest prongs.

As this Court has already concluded, ". . . the limited scope of this preliminary injunction will not cause substantial harm to the Air Force because '[Plaintiffs'] religious-based refusal to take a COVID-19 vaccine simply isn't going to halt a nearly fully vaccinated Air Force's mission to provide a ready national defense.'" *Doster*, --- F. Supp.3d ---, 2022 U.S. Dist. LEXIS 59381 at 48 (*citing Austin*, --- F. Supp.3d ---, 2022 WL 468799, at *12).

### IV. Conclusion

The Government's Motion should be denied, except to the extent we concede certain issues. A proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890

/s/Aaron Siri
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth A. Brehm (admitted PHV)
Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by CM/ECF, this 18 day of August, 2022.

/s/ Christopher Wiest_____