**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: September 09, 2022

Mr. Thomas Bernard Bruns
Bruns, Connell, Vollmar & Armstrong
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242

Ms. Wendy Noel Cox
Siri & Glimstad
100 Congress Avenue, Suite 2000-4590
Austin, TX 78701

Ms. Anna O. Mohan
Mr. Casen Ross
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Avenue, N.W., Rm 7270
Washington, DC 20530

Mr. Christopher David Wiest
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017

Re:  Case No. 22-3702, *Hunter Doster, et al v. Frank Kendall, et al*
     Originating Case No. : 1:22-cv-00084

Dear Counsel,

The attached order designated for full-text publication was filed today in this case.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely, Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0213p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

HUNTER DOSTER, et al.,

    *Plaintiffs-Appellees*,

    v.

HON. FRANK KENDALL, in his official capacity as Secretary of the Air Force, et al.,

    *Defendants-Appellants*.

No. 22-3702

---

On Motion for Emergency Stay

United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:22-cv-00084—Matthew W. McFarland, District Judge.

Decided and Filed:  September 9, 2022

Before:  KETHLEDGE, BUSH, and MURPHY, Circuit Judges.

---

**COUNSEL**

**ON MOTION FOR EMERGENCY STAY AND REPLY:**  Anna O. Mohan, Casen B. Ross, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. **ON RESPONSE:**  Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC, Crestview Hills, Kentucky, Wendy Cox, SIRI AND GLIMSTAD LLP, New York, New York, Thomas B. Bruns, BRUNS CONNELL VOLLMAR & ARMSTRONG, Cincinnati, Ohio, for Appellees.

---

**ORDER**

---

    KETHLEDGE, Circuit Judge.  In this case the plaintiffs allege that the Department of the Air Force de facto rejects every request it receives for a religious exemption to its COVID-19 vaccine mandate—while granting requests for medical and administrative exemptions relatively

freely. The district court preliminarily enjoined the Department from taking, during the pendency of this suit, certain punitive measures against a class of service members with sincere faith-based objections to receiving the vaccine. The Department has appealed that order and now moves for an emergency stay of the class-wide injunction, challenging for the most part the district court's reasoning in certifying the class. We deny the Department's motion but expedite our consideration of its appeal.

I.

In August 2021, Secretary of Defense Lloyd Austin directed that all members of the armed forces be vaccinated against COVID-19. The Secretary of the Air Force accordingly mandated that all of the Department's active-duty service members and reservists (including members of the Air Guard) be vaccinated. Under the Department's guidelines, affected service members can seek exemptions from the mandate on medical, administrative, and religious grounds. The Department has since granted thousands of medical and administrative exemptions to the mandate. As of May 23, 2022, however, the Department had denied 8,869 requests for religious exemptions, while granting a total of 85. *See DAF COVID-19 Statistics – May 2022*, U.S. Air Force (May 24, 2022), https://perma.cc/CD2H-5J2G. The plaintiffs contend—and the Department does not dispute—that all those exemptions were granted to service members who were separately eligible for an administrative exemption (on the ground, it appears, that they were near the end of their service term). Thus the record suggests that, at present, the number of exemptions that the Department has granted on religious grounds stands at zero.

Eighteen active-duty or active-reservist members of the Air Force brought this suit in February 2022, claiming that the Department's "systematic" denial of requests for religious exemptions violated the Religious Freedom and Restoration Act ("RFRA") and the First Amendment. In addition to seeking individual relief, the plaintiffs sought certification of a class of some 10,000 affected service members. Pursuant to the Department's procedure for seeking religious exemptions, Air Force chaplains had already interviewed each plaintiff and had confirmed, in writing, that the Department's vaccination mandate substantially burdened their sincerely held religious beliefs. (Typically the plaintiffs' objections concerned the use of aborted fetal cells in the development of the Air Force's COVID-19 vaccines.) The commanding

No. 22-3702 *Doster, et al. v. Kendall, et al.* Page 3

officers for plaintiffs Airman First Class McKenna Colantanio and Major Daniel Reineke recommended that their requests for exemptions be granted, on the ground that less-restrictive means (like masking or social distancing) could satisfy the Air Force's operational interests in their particular cases; but the Department denied those requests and those of every other plaintiff whose request had been processed as of the complaint's filing.

The plaintiffs thereafter moved for a preliminary injunction, which the court granted in part after an evidentiary hearing. The court's injunction barred the Department from "taking any disciplinary or separation measures" against the named plaintiffs during the pendency of their lawsuit. The Department filed a notice of appeal as to that injunction. *See* 28 U.S.C. § 1292(a)(1). The plaintiffs also filed a motion to certify a class of service members who had sought, but not received, a religious exemption to the Department's vaccination mandate. The district court granted that motion and certified a class that—after some revisions in later orders—comes to us defined as follows:

> All active-duty, active reserve, reserve, national guard, inductees, and appointees of the United States Air Force and Space Force, including but not limited to Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of the Air Force Reserve Command, and any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office or Enlistment and is currently under command and could be deployed, as of July 27, 2022, who: (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or was pending, from September 1, 2021 to July 27, 2022; (ii) were confirmed as having had a sincerely held religious belief substantially burdened by the Air Force's COVID-19 vaccination requirement by or through Air Force Chaplains; and (iii) either had their requested accommodation denied or have not had action on that request.
>
> Excluded from this definition shall be any person within the above class who: (i) opts out, by delivering notice to the Government and Class Counsel in writing of their election to opt out, to the electronic mail addresses of Counsel, which will be filed with Court.

In a separate order, the court entered a preliminary injunction likewise barring the Department from taking "disciplinary or separation measures" against the members of the class. The Department then filed a notice of appeal as to the certification order and the class-wide preliminary injunction. The Department also moved in the district court for an emergency stay

No. 22-3702                *Doster, et al. v. Kendall, et al.*                Page 4

of its class-wide injunction during the pendency of that appeal.  The district court denied that motion.  The Department then moved for the same emergency stay in our court, which is the motion before us now.

II.

The decision whether to grant a stay depends upon "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted).  Four factors guide the exercise of that discretion:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id*. at 434 (internal quotation marks omitted).  The party requesting a stay—here, the Department—bears the burden of showing that these factors justify the issuance of a stay.  *Id*. at 433-34.  The first two factors of this standard "are the most critical."  *Id*. at 434.

Here, as to the first factor, the Department challenges only the merits of the district court's decision to certify the class—the Department's position being that, even if the named plaintiffs are likely to prevail on their individual claims, the court's certification of the class was an abuse of discretion, and thus so too was the court's issuance of a class-wide preliminary injunction.

The decision whether to certify a class is governed by Federal Rule of Civil Procedure 23, under which certification requires two showings:  first, that the four "prerequisites" of Rule 23(a) are met; and second, that the case fits within at least one of the three "types of actions" described in Rule 23(b).  We begin with Rule 23(a), under which the Department argues that the plaintiffs cannot satisfy two prerequisites, namely commonality and typicality.  Commonality means that "there are questions of law or fact common to the class"; typicality means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(2), (3).  In cases involving claims of class-wide discrimination, these two requirements "tend to merge."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

The commonality requirement covers most of the relevant Rule 23(a) ground here. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011) (cleaned up). That requires more than a showing that "they have all suffered a violation of the same provision of law." *Id*. at 350. Instead, it requires that the class members' claims "depend upon a common contention" whose resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Thus a common question, for purposes of Rule 23(a), is one that is likely to "generate common *answers*" class-wide. *Id*. (internal quotation marks omitted).

That kind of common question can arise from a contention that the defendant "operated under a general policy of discrimination." *Id*. at 353 (internal quotation marks omitted). And that is precisely the contention the plaintiffs make here. From the very first paragraph of their Complaint, to their briefing in opposition to the Department's motion now, the plaintiffs have alleged the existence of a "systematic effort" by the Department to deny service members' requests for religious exemptions categorically, while granting thousands of medical and administrative exemptions. The district court recognized as much when it thrice referenced what it called "Defendants' clear policy of discrimination against religious accommodation requests" in finding the commonality requirement met. July 14 Order at 8. And we think the district court was likely correct when it held that, on this record, that contention supports litigation of both a RFRA claim and a First Amendment free-exercise claim class-wide.

RFRA provides that the federal government "may substantially burden a person's exercise of religion" only when doing so "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). That restriction, as the Department itself emphasizes throughout its briefing, allows the Department to impose that burden on a service member's exercise of her faith only as a last resort, after examining all the circumstances relevant to her individual case. A de facto policy to impose that burden upon class members in gross, regardless of their individual circumstances, would seem rather plainly to violate that restriction. Yet that would be the effect of the Department's alleged policy to deny all requests for religious exemptions. Meanwhile, "[t]he Free Exercise Clause protects religious observers against unequal

treatment[.]" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993) (internal quotation marks omitted). A discriminatory policy to deny all requests for religious exemptions, while granting thousands of medical and administrative ones, would seem to violate that guarantee as well. The plaintiffs' contention that the Department operates under such a policy could therefore "resolve an issue that is central to the validity of" the class members' RFRA and First Amendment claims "in one stroke." *Dukes*, 564 U.S. at 350. And the same contention would establish typicality, since the same discriminatory policy would account for the failure to grant the named plaintiffs' and class members' requests alike.

The Department, for its part, argues that RFRA claims categorically cannot be certified for class treatment. Here, for example, it says that the plaintiffs' RFRA claim requires the court to determine separately for each service member whether the vaccination mandate is the least restrictive means of furthering a compelling governmental interest. We agree that most RFRA claims require that kind of individualized analysis; and we have no quarrel with the Department's contention that such an analysis could not be conducted class-wide here. But the Department's argument misconceives the nature of the RFRA claim that the district court certified. The court's order emphasized on almost every page that the RFRA claim it certified was one based on a class-wide "clear policy of discrimination against religious accommodation requests." July 14 Order at 8. That claim, as explained above, does not turn on an analysis of the class members' individual circumstances and likely can be adjudicated class-wide.

The Department next responds that the plaintiffs' RFRA claim cannot be litigated class-wide because, the Department says, it does not have any general policy to deny all requests for religious exemptions, and instead uses "an individualized process that accounts for facts particular to each service member." Gov't Br. at 14. That response confuses the certification stage with the merits stage. The question for purposes of certification is not whether the Department in fact had a general policy of discrimination against requests for religious exemptions, but instead whether the plaintiffs have "significant proof" that the Department had such a policy. *Dukes*, 564 U.S. at 353 (cleaned up). And the Department's stay motion does not cite *Duke*'s test for establishing a general policy at this stage, or provide the Department's view

of the amount of evidence this test demands, or explain why the plaintiffs' evidence of a de facto policy fails to meet it. These issues thus provide no basis on which we may grant a stay.

Moreover, our own review of the record does nothing to convince us that the Department is likely to prevail on this evidentiary point. As an initial matter, though the plaintiffs claim that the Department refuses to grant any exemptions to its vaccination mandate on religious grounds, proof that it is biased against granting such exemptions is enough to support certification. *See Gratz v. Bollinger*, 539 U.S. 244, 267-68 (2003) (affirming class certification when race was one of many factors in the University of Michigan's admissions policy); *Dukes*, 564 U.S. at 353 (proof of a biased "evaluation method" can support certification); *cf. Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) ("The Free Exercise Clause bars even subtle departures from neutrality on matters of religion" (internal quotation marks omitted)). To establish a general policy, therefore, the plaintiffs need not show that the Department rejects 100% of requests for religious exemptions. And the Department's own statistics show that, as of May 23, 2022, it had rejected more than 99% of them. *See DAF COVID-19 Statistics – May 2022*, U.S. Air Force (May 24, 2022), https://perma.cc/CD2H-5J2G. That the Department has granted only a comparative handful of religious exemptions, while granting thousands of medical and administrative ones, is itself at this stage of the case significant proof of discrimination. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("discriminatory impact" can be proof of discriminatory intent); *id.* at 253 (Stevens, J., concurring) ("Frequently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor"). Meanwhile, the plaintiffs have contended throughout this litigation that even the handful of exemptions that the Department has approved were granted only to service members who were nearing the end of their service term and thus eligible for an administrative exemption anyway. The Department notably has not disputed that contention for purposes of this motion; and a lawyer for the Department appeared to concede the point when questioned by the court in a related case. *See* Transcript of Preliminary Injunction Hearing at 59:17-25, R. 30-2, *Poffenbarger v. Kendall*, No. 3:22-cv-0001-TMR (S.D. Ohio Feb. 22, 2022) (stating that, as to the nominally religious exemptions granted by the Department, "some service members chose instead to submit their terminal leave request, the admin exemptions for terminal leave, they

No. 22-3702                 *Doster, et al. v. Kendall, et al.*                 Page 8

submitted it as a religious exemption even though they were eligible for a terminal leave [exemption]"). The Department is thus not likely to prevail on this point either.

The Department's two remaining arguments as to Rule 23(a) are lightly developed and insubstantial. First, the Department says that some of the named plaintiffs' RFRA claims are not "exhausted" because their appeals of the Department's denials of their requests for exemptions remain pending within the Department. But whether RFRA claims are even subject to an exhaustion requirement is an open question. *See, e.g.*, *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012). Nor does the Department offer any authority for the proposition that such a requirement would lack a futility exception. Hence this argument is not likely one on which the Department will overturn the certification order. Second, the Department asserts that "none of the named plaintiffs is a cadet or member of the national guard, and thus they lack standing to challenge requirements applied to those groups." Gov't Br. at 15. Suffice it to say that the Supreme Court's decision in *Gratz* likely refutes that assertion. *See* 539 U.S at 263-67; *cf. Falcon*, 457 U.S. at 159 n.15.

Finally, as to certification proper, the Department argues that the district court was wrong to conclude that the RFRA claim can be certified under Rule 23(b). As an initial matter, we agree with the Department that the district court did not provide an adequate explanation for its decision to certify a class under Rule 23(b)(1)(A). But the parties focus on Rule 23(b)(2) in particular, and so do we. That provision allows for certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

"Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Dukes*, 564 U.S. at 361 (cleaned up). And that is precisely the kind of case we have here. As the district court recognized, the ground on which the Department allegedly acted—and the ground that applies generally to the class—is its alleged policy of discrimination against religious exemptions. The scope of the alleged discrimination in this case is indeed coterminous with the definition of the class. In that respect, this case is akin to Title VII class actions in which the plaintiffs allege a pattern or practice of

No. 22-3702  *Doster, et al. v. Kendall, et al.*  Page 9

racial discrimination. *See, e.g.*, *Chicago Teachers Union, Local No. 1 v. Board of Education of City of Chicago*, 797 F.3d 426, 441-42 (7th Cir. 2015). Moreover, if the plaintiffs eventually prove the existence of a discriminatory policy, final injunctive or declaratory relief would be appropriate for the class as a whole. *See, e.g.*, *Gratz*, 539 U.S. at 264-67; *Chicago Teachers Union*, 797 F.3d at 442.

We differ with the district court, however, as to what that relief might look like. The court appeared to assume that such relief would broadly enjoin the Department to provide a class-wide "religious accommodation relating to the COVID-19 vaccine mandate." July 14 Op. at 19. But an appropriate remedy might more narrowly enjoin the Department to abolish the discriminatory policy, root and branch, and to enjoin any adverse action against the class members on the basis of denials of religious exemptions pursuant to that policy. *See Masterpiece Cakeshop*, 138 S. Ct. at 1732; *but see id.* at 1740 (Gorsuch, J. concurring). Those denials are themselves discrete occurrences as to which such injunctive relief would be final. And this relief might leave open the possibility for the Department to establish a need to apply the vaccine mandate to individual service members without resorting to the discriminatory policy. In any event, the particulars of any permanent injunction in this case can be litigated if and when necessary. Thus, in summary, the Department has not made a strong showing that it "is likely to succeed on the merits" of its appeal of the district court's class-wide injunction. *Nken*, 556 U.S. at 434.

Several concluding observations are in order with respect to the certification issue. First, and most remarkable, in bringing this motion the Department has not made any argument as to whether the First Amendment claim (as opposed to the RFRA claim) was improperly certified. That certification stands unchallenged; that claim can support class-wide relief as much as the RFRA claim can; and that omission is an independent reason to deny the Department's motion to stay the class-wide preliminary injunction. Second, the Department might be correct that the district court was mistaken to exclude from its definition of the class any member who chooses to opt-out. *See Dukes*, 564 U.S. at 362 ("Rule [23] provides no opportunity for (b)(1) or (b)(2) class members to opt out"); *but cf. Eubanks v. Billington*, 110 F.3d 87, 93-95 (D.C. Cir. 1997).

That mistake, if it was one, can be corrected after disposition of the Department's appeal of the class-wide preliminary injunction.

We address more briefly the Department's few arguments concerning the remaining factors governing issuance of a stay of the district court's class-wide preliminary injunction. That injunction—as relevant to the Department's arguments here—enjoins the Department from "(i) taking, furthering, or continuing any disciplinary or separation measures against the members of the class for their refusal to receive the COVID-19 vaccine . . . [and] (ii) Defendants shall not place or continue active reservists on no points, no pay status for their refusal to get vaccinated for COVID-19 due to their sincerely held religious beliefs[.]" The court further stated that "[n]othing in this Order precludes the Department of the Air Force from considering vaccination status in making deployment, assignment, and other operational decisions." July 27 Order at 2-3; *see Austin v. U.S. Navy Seals 1-26, et al.*, 142 S. Ct. 1301, 1301 (2022) (adopting the same limiting language).

The Department argues that this injunction causes the Department to suffer "irreparable harm" because it "requires [the Department] to retain"—as opposed to terminate—"nearly 10,000 unvaccinated service members who, in the judgment of professional military commanders, are ineligible to deploy and are limited in their ability to travel for training, exercise, and other operational needs." Gov't Br. at 20. The Department similarly argues that the "no pay/no points status" portion of the injunction "requires [the Department] to return reservist class members to their operational units and to pay them, even though they do not meet medical readiness standards required for participating in the reserve and may not be able to effectively perform their military duties." *Id.* at 19. But those are all the very same harms that the Department imposed on itself when, to its credit, it chose to grant temporary exemptions to service members during the pendency of their requests for religious exemptions. Moreover, the record shows that the Department routinely takes many months to render a final decision as to those requests, during which time the Department's temporary exemptions remain in place. That suggests that the Department's concerns about these harms are not as urgent as the Department's briefing now says. We therefore do not think the Department has demonstrated that the district court likely abused its discretion when, in effect, it afforded the class members—during the

Case: 1:22-cv-00084-MWM Doc #: 90 Filed: 09/09/22 Page: 12 of 12  PAGEID #: 5040 (12 of 12)

No. 22-3702          *Doster, et al. v. Kendall, et al.*          Page 11

pendency of claims as to which the Department has not yet shown a likelihood it will prevail—the same relief that the Department itself has afforded them.

The Department also criticizes the district court's assertion, in its opinion denying the Department's motion for an emergency stay, that, "in today's global climate, it is in the public's interest for the armed services to remain at full strength, rather than separating thousands of Airmen due to their refusal to get the COVID-19 vaccine." August 19 Order at 4. We agree with the Department's criticism: whatever the merits of that assertion, the district court strayed well outside its judicial role in making it. But we do not think that assertion is material to the disposition of the Department's motion here.

Finally, to assuage the Department's concerns on one point, we deem the portions of the district court's injunction that the district court "rescinded" in its August 19 Order to be in fact rescinded.

\*   \*   \*

The Department's motion for an emergency stay is denied. We will expedite the Department's appeal of the district court's class-wide preliminary injunction. The Department must file its principal brief within two weeks of the entry of this order. The plaintiffs will have two weeks to respond. The Department will then have seven days to reply. Oral argument will be scheduled for October 19, 2022, and we will strive to decide the Department's appeal in November.