**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO – Western Division at Cincinnati**

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | Case No. 1:22-CV-84 |
| Plaintiffs | : | |
| **v.** | : | |
| **FRANK KENDALL, et. al.** | : | |
| Defendants | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' REQUEST TO DISMISS FOR MOOTNESS WITH DECLARATIONS IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.  FACTS ............................................................................................................. 1

II.  LAW AND ARGUMENT .................................................................................. 5

    A.  *Unredressed Harm, Within the Scope of the Final Relief Envisioned by the Sixth Circuit, Continues, so the Case is Not Moot* ........................................................... 6

    B.  *Plaintiffs Received Orders to Vaccinate, Did Not Comply with Those Orders, and are Still Exposed to Punitive Actions as a Result* ................................................... 8

    C.  *This is a Textbook Case for Application of the Voluntary Cessation Doctrine* .... 10

    D.  *The Capable of Repetition Yet Evading Review Exception to Mootness Also Applies* ................................................................................................................. 16

    E.  *The Class/Pickoff Exception Applies (and Defendants' Arguments About Dissolving the Injunction and Decertifying the Class are Wrong)* ...................... 18

III.  CONCLUSION ................................................................................................ 20

CERTIFICATE OF SERVICE .................................................................................. 20

i

# **TABLE OF AUTHORITIES**

## **Cases**

*A. Philip Randolph Inst. v. Husted*,
   838 F.3d 699 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018) ................ 17, 18

*Akers v. McGinnis*,
   352 F.3d 1030 (6th Cir. 2003) ..................................................................................... 8

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ................................................................................. 13, 14, 16, 20

*Bennie v. Munn*,
   822 F.3d 392 (8th Cir. 2016) ....................................................................................... 11

*Blankenship v. Secretary of HEW*,
   587 F.2d 329, 331-33 (6th Cir. 1978) ....................................................................... 22

*Board of Education of Oklahoma City Public Schools v. Dowell*,
   498 U.S. 237 (1991) .................................................................................................... 2

*Cf. United States v. Sanchez-Gomez*,
   138 S. Ct. 1532 (2018) ........................................................................................ 15, 19

*Chafin v. Chafin*,
   568 U. S. 165, 172 (2013) ..................................................................................... 6, 8

*Chen v. Allstate Ins. Co.*,
   819 F.3d 1136 (9th Cir. 2016) ..................................................................................... 8

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ................................................................................................... 10

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) .............................................................................................. 13, 18

*Credit Suisse First Bos. Corp. v. Grunwald*,
   400 F.3d 1119, 1124 (9th Cir. 2005) ......................................................................... 24

*Dailey v. Vought Aircraft Co.*,
   141 F.3d 224 (5th Cir. 1998) ....................................................................................... 7

*Deposit Guaranty National Bank v. Roper*,
   445 U.S. 326, 339 (1980) .......................................................................................... 22

*Doster v. Kendall*,
   48 F.4th 608 (6th Cir. 2022) ....................................................................................... 1

*Doster v. Kendall*,
   54 F.4th 398 (6th Cir. 2022) ........................................................................... 1, 10, 23

*Downie v. Independent Drivers Ass'n Pension Plan*,
   934 F.2d 1168 (10th Cir. 1991) ................................................................................ 10

ii

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
   551 U.S. 449 (2007) ................................................................................................ 20

*Firefighters Local Union No. 1784 v. Stotts*,
   467 U.S. 561 (1984) .................................................................................................. 7

*First Nat. Bank of Boston v. Bellotti*,
   435 U.S. 765, 774 (1978) ........................................................................................ 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 at 189 ........................................................................................... 13, 16

*Gill v. Monroe Cty. Dep't of Soc. Servs.*,
   873 F.2d 647, 648-49 (2d Cir. 1989) ...................................................................... 24

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F.3d 402, 414 (6th Cir. 2012) .................................................................... 24, 25

*Green v. County Sch. Bd. Of New Kent County, Va.*,
   391 U.S. 430 (1968) .................................................................................................. 2

*Hill v. Snyder*,
   878 F.3d 193, 204 (6th Cir. 2017) ............................................................................ 9

*Honig v. Doe*,
   484 U.S. 305, 318 n.6 (1988) .................................................................................. 21

*Hunter v. Underwood*,
   471 U.S. 222, 232-33 (1985) .................................................................................... 7

*KCI USA, Inc. v. Healthcare Essentials, Inc.*,
   2017 U.S. Dist. LEXIS 225456 (S.D. Ohio 2017) .................................................. 25

*Kingdomware Tech., Inc. v. United States*,
   136 S. Ct. 1969, 1976 (2016) .................................................................................. 21

*Knox v. SEIU, Local 1000*,
   567 U.S. 298, 307-308 (2012) ................................................................................... 8

*Kolstad v. ADA*,
   527 U.S. 526 (1999) .................................................................................................. 9

*LFP IP, LLC v. Hustler Cincinnati, Inc.*,
   810 F.3d 424, 426 (6th Cir. 2016) .......................................................................... 25

*Miss. State Chapter, Operation Push, Inc. v. Mabus*,
   932 F.2d 400, 408-09 (5th Cir. 1991) ...................................................................... 7

*N. C. State Conference of NAACP v. McCrory*,
   831 F.3d 204, 240 (4th Cir. 2016) ............................................................................ 7

*Norman-Bloodsaw v. Lawrence Berkely Lab.*,
   135 F.3d 1260 (9th Cir 1998) ............................................................................ 15, 19

*Northland Family Planning Clinic, Inc. v. Cox*,
   487 F.3d 323, 342-43 (6th Cir. 2007) .................................................................... 17

iii

*Oppenheim v. Campbell*,
571 F.2d 660, 661-663 (D.C. Cir. 1978) ............................................................... 10

*Palmer v. United States*,
168 F.3d 1310 (Fed. Cir. 1999) ............................................................................... 9

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,
551 U. S. 701 (2007) ........................................................................................ 17, 18

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*,
822 F.2d 1390 (6th Cir. 1987) ............................................................................... 12

*Ramsek v. Beshear*,
989 F.3d 494 (6th Circ. 2021)…………………………………………………..5, 9

*Roberts v. Neace*,
2023 U.S. App. LEXIS 8448 2023 FED App. 0069P (6th Cir.), 65 F.4th 280, 2023 WL
2857250 (2023) ......................................................................................................... 1

*Roe v. Wade*,
93 S. Ct. 705 (1973) ............................................................................................... 21

*Roman Catholic Diocese v. Cuomo*,
141 S. Ct. 63 (2020) ........................................................................................ 16, 21

*Sacks v. Office of Foreign Assets Control*,
466 F.3d 764 (9th Cir. 2006) ................................................................................. 11

*Sibron v. New York*,
392 U.S. 40 (1968) ................................................................................................... 7

*Southern Pac. Terminal Co. v. ICC*,
219 U.S. 498, 515 (1911) ....................................................................................... 21

*Speech First, Inc. v. Schlissel*,
939 F.3d 756 (6th Cir. 2019) ..................................................................... 16, 17, 19

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ........................................................................................... 18

*Tanzin v. Tanvir*,
141 S. Ct. 486 (2020) ............................................................................................... 9

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) ........................................................................................... 13

*Tucker v. Gaddis*,
40 F.4th 289 (5th Cir. 2022) .................................................................................. 14

*Turner v. Rogers*,
564 U.S. 431, 440 (2011) ....................................................................................... 21

*United States v. W. T. Grant Co.*,
345 U.S. 629, 633 (1953) ....................................................................................... 10

*West v. Gibson*,
527 U.S. 212, 119 S. Ct. 1906 (1999) ..................................................................... 9

*West Virginia v. EPA*,
   142 S. Ct. 2587, 2607 (2022) ........................................................................ 6

*Wooten v. Housing Authority of Dallas*,
   723 F.2d 390 (5th Cir. 1983) ........................................................................ 8

**Statutes**

1 U.S.C. § 109 ........................................................................................... 12

10 U.S. Code § 843 ...................................................................................... 4

10 U.S.C. § 890 ........................................................................................... 4

10 U.S.C. § 892 ........................................................................................... 4

42 U.S.C. § 1988(b) ..................................................................................... 1

42 U.S.C. § 2000bb-1(c) ............................................................................ 10

42 U.S.C. 2000bb-1 ..................................................................................... 1

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ..................passim

**Other Authorities**

Ben Wolfgang, *Lawmakers Question Pentagon brass on why troops who refused
   COVID vaccine still face penalities*, The Washington Times, Feb. 28, 2023 ..................... 4, 11

Betsky Klein, et. al., *White House calls removing Covid-19 vaccine mandate a 'mistake'
   but won't say if Biden will sign NDAA,* CNN politics, Dec. 7, 2022 ................................ 5, 16

Manual for Court Martial (2019 Edition) .................................................... 4

Leo Shane III, *Troops who refused COVID vaccines still could face punishment*, Military
   Times, Feb. 28, 2023 .................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(d) ................................................................................... 6

S. D. Ohio Civ. R. 54.1 ................................................................................ 1

S.D. Ohio Civ. R. 54.2 ................................................................................. 1

**Regulations**

Army Regulation 40-562 (Feb. 16, 2018) .................................................. 18, 20

Plaintiffs, through Counsel, provide this Opposition to Defendants' Request to Dismiss this case on grounds of mootness. Even if this Court grants Defendants' motion, the facts and circumstances surrounding the entry of the preliminary injunctive relief in this case entitle Plaintiffs to their reasonable attorney fees and costs, which Plaintiffs would move for pursuant to L.R. 54.1 and 54.2; *see, also*, 42 U.S.C. § 1988(b); *Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023). We incorporate salient facts below.

## I.  FACTS

This case involves claims under the Religious Freedom Restoration Act (42 U.S.C. 2000bb-1) arising out of the unconstitutional implementation of the Department of the Air Force's ("**Defendants**") Vaccine Mandate. [Complaint, DE#1, PageID#1-22]. And, the Sixth Circuit Court of Appeals has held that final relief in this case involves "root and branch" relief. *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022). That relief includes enjoining any further adverse action against class members and the correction of "***any adverse action***[1] against the class members on the basis of denials of religious exemptions." *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022) (emphasis added). The Sixth Circuit's language is no accident—it comes from a long line of discrimination cases that ended both illegal discriminatory policies and also all remaining vestiges of that illegal discrimination. *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991); *Green v. County Sch. Bd. Of New Kent County, Va.*, 391 U.S. 430, 437 (1968).

Declarations attached hereto demonstrate that "root and branch" relief has not yet been afforded to all class members and, in many cases, is not even contemplated by Defendants without a court order. First, the reservists: two named Plaintiffs, and hundreds of class members, were

---

[1] Defendants' definition of what constitutes an "adverse action," on the one hand, and Plaintiffs' and the Sixth Circuit's definition of what constitutes an adverse action, on the other hand, are not aligned, likely because Defendants are the ones who've taken the adverse actions and Plaintiffs are the ones who've borne the brunt of those actions.

suspended from reserve duty for their refusal to violate their sincerely held religious beliefs. (Dec. Dills, Dec. Schuldes, Dec. Jones). Their suspensions caused them to not accrue retirement points and/or "good years" towards a military retirement. *Id.* Their suspensions also caused loss of pay. *Id.* Defendants will not remedy this adverse action without a court ordering them to do so.

Next, hundreds of airmen in the class were selected for promotion but then had promotion propriety actions instituted against them because of their refusal to violate their sincerely held religious beliefs. (Dec. Sigala). That is, their promotions have been held. *Id.* Likewise, these adverse actions have not been halted nor adjudicated (we assume this is a wait-and-see approach by Defendants to see what this Court does). *Id.* In fact, these promotion propriety actions solely at the discretion of the Secretary of the Air Force to grant or deny, and no current policy or change to policy addresses them. *Id.*

And while it is true the Defendants have removed unfavorable performance reports for class members, Defendants have replaced them with what is essentially a blank report, which will cause future and ongoing adverse actions. (Dec. Haberle).

Defendants also continue to maintain Automated Military Justice Analysis & Management System ("**AMJAMS**") records for most of the class (everyone who completed the sham accommodation process and was given an order to vaccinate), and Defendants plainly intend to continue to retain these records for the foreseeable future. (Dec. Martinez-Sanchez; Dec. Hartsell, DE #111-5). Class members continue to be tracked and reported to Air Force Headquarters. (Dec. Martinez-Sanchez at ¶4). Without a court order, these case files will remain in the system indefinitely. (*Id.* at ¶5, Dec. Oberg at ¶2). Inquiries are made to this system by promotion boards, by those making assignment decisions, and for investigatory purposes. (*Id.* at ¶6). And the continuation of these entries will forever "affect an airmen's ability to promote, as well as their

2

ability to be selected for special assignments and other career enhancing assignments." (*Id.*). Master Sergeant Sanchez-Martinez's declaration provides further evidence that Defendants still continue to use the AMJAMS record system to screen airman for special duty assignments. Just recently, at least one named Plaintiff had an AMJAMS record used against her when she attempted to obtain a career-enhancing assignment. (Dec. Colontanio). Moreover, retention of this database facilitates a return to the rescinded practice or policy and would facilitate the future punishment or future ability to court-martial these airmen. (*Id.* at ¶7).

Orders to vaccinate were given to class members by commanders. (Dec. Reineke; Appendix, DE#11-5, PageID#385-387 [Dills]; DE#11-19, PageID#551-552 [Schuldes]; DE#11-21, PageID#569-573 [Theriault]; DE#38-2, PageID#2632-2634 [Mosher]; DE#107-1, PageID#5359-5360 [Reineke]). Refusals to follow those orders can still be charged under the Uniform Code of Military Justice. 10 U.S.C. § 890; 10 U.S.C. § 892. A five-year statute of limitations applies for most military offenses, including failures to follow orders, and that period has not passed. 10 U.S. Code § 843. Potential penalties involve years in a military prison.[2] Defendants provided testimony confirming such punishments and potential court-martial prosecutions. (Declaration Hernandez at ¶¶ 5, 8, 12-14, DE#25-14, PageID#1413-1419).

On February 28, 2023, top Pentagon officials testified to Congress "that the Defense Department is still reviewing for potential 'disciplinary procedures' numerous cases of active-duty troops who refused the shot while the mandate was in force."[3] The Undersecretary of Defense for Personnel and Readiness, Gilbert Cisneros, admitted: "They're reviewing the cases because …

---

[2] Manual for Court Martial (2019 Edition), *available at* https://jsc.defense.gov/Portals/99/Documents/2019%20MCM%20(Final)%20(20190108).pdf?ver=2019-01-11-115724-610. (last accessed 3/1/2023).

[3] https://www.washingtontimes.com/news/2023/feb/28/pentagon-has-its-own-long-covid-problem-over-dropp/ (last accessed 3/1/2023).

they [disobeyed] a lawful order." *Id.* Simply put, there is nothing standing in the way of future prosecutions other than the current preliminary injunction. And this is no idle concern.

Defendants remain unrepentant. Their own submissions reveal their continued boast that everything they did was a "valid lawful policy." (Policy, DE#111-3, at second paragraph). The Air Force's own submission before Congress in February continued to assert that their actions were "lawful." (Statement, DE#111-6, PageID#5817). Defendants continue to maintain the proven fiction that all religious accommodation requests were considered "seriously and thoroughly." (*Id.* at PageID#5818). And their same submission ominously warned that "**there may be situations in the future when vaccination status will be a consideration**." (*Id.* at 5819(emphasis added).

No less than the Undersecretary of Defense falsely asserted that "[e]ach request was considered individually and adjudicated [lawfully]." (Statement, DE#111-2, PageID#5426). And he also continued the fiction that service members who did not receive an exemption, even those in this class, "receiv[ed] a lawful order to [vaccinate]…" And he admitted that "8,422 were subsequently separated" as a consequence. (*Id.* at PageID#5427).[4] Driving home the point that nothing has changed, he also boasted/threatened that "[c]ompliance with lawful orders is not optional in the military, and leaders … took appropriate disciplinary action." *Id.* In fact, he confirmed that there are no plans to restore reservists their pay or their retirement points or good years. (*Id.* at PageID#5429). And equally relevant to the mootness inquiry, the Executive Branch

---

[4] Those include class members who were punitively discharged. We disagree with Defendants that the class definition, at DE#86, does not include members who met the criteria as of July 27, 2022, as having submitted a religious accommodation request, had their beliefs confirmed as sincere, and had their accommodation request denied. Obviously, there are discharged airmen who were punitively discharged and need relief.

4

publicly bemoaned that Congress' direction to rescind the mandate was a "mistake,"[5] while nothing in the NDAA prevents the Government from instituting a new mandate.[6]

Ultimately, even putting these admissions aside, to the extent the Court is not inclined to deny the Government's motion based on the current record, we request a lifting of the Court's stay to pursue limited discovery on these discrete mootness issues.[7]

## II. LAW AND ARGUMENT

Defendants bear the burden of demonstrating that mootness applies. *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("the Government, not petitioners, bears the burden to establish that a once-live case has become moot."). A case "becomes moot only when it is **impossible** for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U. S. 165, 172 (2013) (emphasis added). "As long as the parties have a concrete interest, **however small**, in the outcome of the litigation, the case is not moot." *Id.* (emphasis added).

Generally, Defendants raise apples-to-oranges comparisons in their papers by citing other recent court decisions finding mootness where each case they cite was either the appeal of the denial of a preliminary injunction, or inapposite cases that deal with constitutional challenges to a statute, where the statute is repealed mid-stream and there are no adverse effects that remain to be corrected. Further, a preliminary injunction appeal is a substantially different matter than the merits of a case truly being moot. *See Ramsek v. Beshear*, 989 F. 3d 494, 500 (6th Cir. 2021). None of Defendants' cited examples are analogous to *this* case.

---

[5] https://www.cnn.com/2022/12/07/politics/biden-military-covid-mandate-ndaa/index.html (last accessed 5/4/2023).

[6] https://docs.house.gov/billsthisweek/20221205/BILLS-117hres_-SUS.pdf (last accessed 5/4/2023), relevant language at page 408-409.

[7] A FRCP 56(d) declaration of Mr. Wiest is attached seeking discrete discovery on the mootness issue. Defendants' motion is predicated upon mootness and is a Rule 12 motion. Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

### A. *Unredressed Harm, Within the Scope of the Final Relief Envisioned by the Sixth Circuit, Continues, so the Case is Not Moot*

Under the collateral consequences exception to mootness, when the plaintiff's primary injury (here, the discriminatory exemption process) has ceased, the case is not moot if the challenged conduct continues to cause other harm (*i.e.*, "collateral consequences") that the court is capable of remedying. *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citing *Sibron v. New York*, 392 U.S. 40, 53–59 (1968)). A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Id.* (*citing Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984)).

It is well-settled that new legislation does not *ipso facto* eliminate the discriminatory intent behind older legislation, nor does it moot a dispute regarding the violation of law. *Hunter v. Underwood*, 471 U.S. 222, 232-33 (1985) (events over 80 years to change the terms of the law do not eliminate its original discriminatory intent); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408-09 (5th Cir. 1991); *N. C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016).

In *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003), the Michigan Department of Corrections ("MDOC**"**) repealed a series of contested work regulations while the case was still pending. Nevertheless, and for two distinct reasons, the Sixth Circuit held that the repeal did not moot the case. First, "there was no guarantee that MDOC [would] not change back to its older, stricter [r]ule as soon as [the] action [was] terminate[d]." *Id.* at 1035. More importantly, however, because additional corrective relief could be awarded, and the amendment/rescission did not completely eradicate the harm associated with the contested policies, the case was not moot. And the Supreme Court has been clear that if there is any additional relief that can be awarded, however

6

small, a case is not moot. *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307-308 (2012); *Chafin*, 568 U. S. 165, 172.

Only the act of fully remedying all ongoing harm can moot a case, and that is not the present situation. *Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983) (explaining that only receipt of "all of the relief sought" will moot the case); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) (noting that a claim becomes moot when a plaintiff actually receives complete relief). Plainly, then, this case is not moot, as Defendants have not yet afforded Plaintiffs full corrective relief and, in many cases, have no intention to *ever* do so.[8] That full corrective relief includes, as the attached declarations establish, at least: (i) restoration of lost points and good "retirement" years for reservists; (ii) removing AMJAMS entries; (iii) corrective action and the restoration of promotions related to ongoing promotion proprietary actions; (iv) appropriate corrective action for promotion reports versus leaving holes in personnel service records that will result in adverse actions; and (v) the correction of adverse discharges.

Defendants (citing mostly outdated case law) argue that pay and points relief for reservists is barred by immunity. In contrast, the Supreme Court adopted an expansive view of the available remedial relief in construing RFRA's "appropriate relief" provision. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). *Tanzin* forecloses Defendants' argument and, as with Title VII claims, given the "appropriate relief" mandate in RFRA, and the characterization of backpay as equitable, rather than legal relief, this Court can order such relief. *Kolstad v. ADA*, 527 U.S. 526 (1999); *West v. Gibson*, 527 U.S. 212, 119 S. Ct. 1906 (1999). In any event, even *if* backpay cannot be awarded

---

[8] Defendants suggest that the corrective action here is "inevitable," where they indicate that they have not yet implemented removal of other adverse actions for the class, and they cite *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017). But *Hill* involved a statutory change that required not only discontinuation of the offending policy, but also required retroactive relief. The NDAA here requires no such retroactive relief. Instead, that relief is left to Defendant's discretion. And, as we have demonstrated, Defendants do not ever intend to correct the harms identified herein.

(which Plaintiffs do not concede), retirement credit, points, and other similar equitable relief plainly can be. Defendants' citation to *Palmer v. United States*, 168 F.3d 1310 (Fed. Cir. 1999), which relied upon separate statutes not at issue here fails to change the analysis because, again, RFRA affords "appropriate relief." 42 U.S.C. § 2000bb-1(c). Retirement credit has long been determined to be equitable relief by courts. *Downie v. Independent Drivers Ass'n Pension Plan*, 934 F.2d 1168 (10th Cir. 1991); *Oppenheim v. Campbell*, 571 F.2d 660, 661-663 (D.C. Cir. 1978) (retirement credit is equitable relief);[9] *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (explaining wide-ranging equitable relief available for similar "appropriate" remedy statute). Regardless, Defendants' concession that some additional relief might occur in the future merely confirms that the case is not moot today. Indeed, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

### B. *Plaintiffs Received Orders to Vaccinate, Did Not Comply with Those Orders, and are Still Exposed to Punitive Actions as a Result*

In late 2021 and early 2022, numerous named Plaintiffs and class members received direct orders to vaccinate, with attendant threats of criminal penalties and court-martial. Add to that the fact that Defendants continue to track these individuals, confirming the ability (and perhaps the intent) to implement adverse actions in the future. (Dec. Martinez-Sanchez). Rather than provide an enforceable commitment to foreswear any prosecutions (which Defendants repeatedly have refused to do), Defendants instead merely reference current policy memoranda that do not take these options forever "off the table." And, two other pieces of evidence leave this sword clearly dangling over Plaintiffs' heads. First, on February 28, 2023, top Pentagon officials acknowledged

---

[9] The Complaint asked the Court to direct exemptions be granted to Plaintiffs and the class. That did not occur and instead harm accrued. Consequently, "root and branch" relief is now required – the removal not only of the offending policy (which has occurred), but the remaining vestiges of that harm as well (which has not yet happened and, in many cases, will not). *Doster*, 54 F.4th 398, 439. This Court can award appropriate relief.

in testimony before Congress "that the Defense Department is still reviewing for potential 'disciplinary procedures' numerous cases of active-duty troops who refused the shot while the mandate was in force."[10] The Undersecretary of Defense admitted "[t]hey're reviewing the cases because . . . they [disobeyed] a lawful order." *Id.* Literally, the only thing that continues to protect Plaintiffs from prosecution is the present preliminary injunction. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) (recognizing that violation of repealed statute does not foreclose relief if the statute was violated); *Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (same).

In *Ramsek v. Beshear*, 989 F. 3d 494, 500 (6th Cir. 2021), the Court found that a claim was not moot where the **mere possibility** of prosecution continued. Defendants attempt to distinguish *Ramsek* by noting that the case was dismissed on remand. But Defendants deliberately omit that *Ramsek* was dismissed because the statute of limitations for criminal prosecutions had lapsed in the meantime. Likewise, here, when the five-year statute of limitations lapses, then there will be no further risk of prosecution. Defendants claim Plaintiffs' legitimate fear of future prosecutions is "speculative." Of course, their unfounded claim ignores Defendants' past prosecutions, their refusal to foreswear future prosecutions and the fact Defendants continue to track these same refusers through AMJAMS, demonstrating Defendants' ability return to their unconstitutional ways. (Dec. Martinez-Sanchez). In the same vein, the general savings clause makes clear that the NDAA did not extinguish the criminal liability because it did not express an intention to do so. 1 U.S.C. § 109. And even the disavowal of an intention to prosecute by Defendants as a prosecuting authority is not sufficient to moot a case where, as here, explicit directives to vaccinate were given to Plaintiffs, they were within the scope of persons subjected to the liability, and they plainly face

---

[10] https://www.washingtontimes.com/news/2023/feb/28/pentagon-has-its-own-long-covid-problem-over-dropp/?utm_campaign=shareaholic&utm_medium=email_this&utm_source=email (last accessed 5/1/2023).

liability therefrom. *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987).

It bears repeating: Defendants refuse to make any official statements that members of the class will never face prosecution. What Defendants do make are plenty of statements, including under oath to Congress, that punishment remains on the table for those who did not follow vaccination orders. They attempt to limit the scope of the threat by claiming that those who are not involved in pending lawsuits (those who did not seek exemptions) are the ones who face punishment, but that for now, at least with litigation pending, those who are involved in pending litigation will not. The litigation posturing is obvious. In any event, the ongoing specter of prosecution remains.

### C. *This is a Textbook Case for Application of the Voluntary Cessation Doctrine*

The already heavy burden of establishing mootness is made even heavier when it comes to voluntary cessation. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 at 189. "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id.* (*citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). That is why a Defendant "bears the **formidable burden** of showing that it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis added). In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a government actor's change in policy does not moot a case. Rather, the court held that the defendant must prove that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. 167 at 190. "This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a

10

case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring). "The skepticism is warranted because the opportunities and incentives for government defendants are obvious: Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *Id.* (*citing Already*, 568 U.S. at 91).

"If a government not only ceases the challenged behavior, but also assures the plaintiffs and the courts that it will never return to its previous course of conduct, a court might reasonably decide to credit that promise, and hold the case moot, so long as it finds no reason to doubt the government's credibility on this score." *Id.* By contrast, Defendants here not only refuse to make such a promise, but given the language in the Secretary's initial Memorandum, this Court has plenty of reason to doubt the Defendants' "credibility on this score."

Not only did the plain text of the NDAA not require the Secretary's voluntary actions, but on February 28, 2023, top Pentagon officials acknowledged in testimony before Congress that "[t]he services are going through a process to review those cases [where individuals disobeyed a lawful order' to get a COVID-19 vaccine] to make a determination what needs to be done."[11]

In fact, Defendants have _never_ "asserted nor demonstrated that [they] will never resume the complained of conduct" and Plaintiffs do not and cannot expect that they assert as much. *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998); *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot").

---

[11] Leo Shane III, *Troops who refused COVID vaccines still could face punishment*, Military Times (Feb. 28, 2023), https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/?utm_source=sailthru&utm_medium=email&utm_campaign=mil-ebb&SToverlay=de88742f-46f7-4f2c-819d-3b36a47d6a7e.

Defendants falsely argue (when they could remove all doubt with an enforceable agreement) that there is no evidence that a return to the old policy can or might occur. As noted, their own evidence refutes their argument. Defendants' own submissions reveal their determination that everything they did was a "valid lawful policy." (Policy, DE#111-3, at second paragraph). The Air Force's own submission before Congress in February continued to assert that their order was "lawful." (Statement, DE#111-6, PageID#5817). Defendants continue the absurd contention that all religious accommodation requests were considered "seriously and thoroughly." (*Id.* at PageID#5818). And that same submission ominously warned "**there may be situations in the future when vaccination status will be a consideration**." (*Id.* at 5819) (emphasis added). The Undersecretary of Defense likewise falsely asserted that "[e]ach request was considered individually and adjudicated [lawfully]." (Statement, DE#111-2, PageID#5426). And he asserted that service members who did not receive an exemption, even those in this class, "receiv[ed] a lawful order to do so, and 8,422 were subsequently separated." (*Id.* at PageID#5427).[12] Finally, the statement was made that "[c]ompliance with lawful orders is not optional in the military, and leaders … took appropriate disciplinary action." *Id.* Equally relevant to the mootness inquiry, the Executive Branch believes that Congress's direction to rescind the mandate was a "mistake,"[13] while nothing in the NDAA prevents the Government from instituting a new mandate.[14] The NDAA at (§ 525, pages 177-178) only required rescission or discontinuation of the prior policy.[15]

---

[12] Those include class members who were punitively discharged. We disagree with Defendants that the class definition, at DE#86, does not include members who met the criteria as of July 27, 2022, as having submitted a religious accommodation request, had their beliefs confirmed as sincere, and had their request denied.  Obviously, there are discharged members who met the class requirements who were punitively discharged and need relief.

[13] https://www.cnn.com/2022/12/07/politics/biden-military-covid-mandate-ndaa/index.html (last accessed 5/4/2023)

[14] https://docs.house.gov/billsthisweek/20221205/BILLS-117hres_-SUS.pdf (last accessed 5/4/2023), relevant language at page 408-409.

[15] Available at: https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf (last accessed 2/10/2023).

It did not require any additional measures or prohibit a future vaccine mandate, demonstrating anything beyond the initial rescission was purely voluntary.

Given Defendants' admissions, it is not "**absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91. In fact, Defendants' statements about "changing public health conditions, relevant data, and geographic risks" place this case squarely within the import of *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 68–69 (2020). The Court observed there that if restrictions are dependent upon public health conditions, which are subject to change, the case is plainly not moot. The reservation here to reimpose vaccination requirements based on "changing public health conditions" is on all fours with *Cuomo*.

Determining whether the ceased action "could not reasonably be expected to recur," *Laidlaw*, 528 U.S. at 189, takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Where, as here, "a change is merely regulatory [or by executive action], the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions." *Id.* Thus, where, as here, "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.* Steps taken in the midst of litigation to remove and/or temporarily discontinue certain, but not all, adverse actions are entitled to no weight whatsoever. *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016), rev'd on other grounds, 138 S. Ct. 1833 (2018); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007).

And, most important to the mootness inquiry is the fact that the Government "vigorously defends the constitutionality of its … program." *Schlissel*, 939 F.3d 756 at 770, *citing Parents Involved in Cmty. Sch.*, 551 U.S. 701, 719.

This "authority to reinstate [the challenged policies] at any time" from officials "with a track record of 'moving the goalposts'" subjects Plaintiffs to a credible threat of widespread enforcement of Defendants' discriminatory vaccination requirements in the future. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Tellingly, Defendants even continue to defend the merits of the unconstitutional manner in which their mandate was carried out. Given that Defendants *still* "vigorously defend" the legality of their prior mandate, including as to all those who sought and were denied religious accommodations, mootness is not met. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007). Courts do not dismiss a case as moot in such circumstances. *See City of Mesquite*, 455 U.S. 283, 288–89.

Problematically, and foreshadowing a return to past practice, the Air Force has retained its published Instruction that enabled the widespread disregard of the Constitution in the first place. Specifically, the Air Force continues to permit local decision-makers to make medical exemption decisions on vaccination exemptions, while channeling all religious exemption requests to vaccination requirements to the highest of decision-makers.[16]

Moreover, given the waiting game being played here, Plaintiffs submit that the temporary recission or expiration or termination of the vaccine mandate order—in the midst of litigation—is entitled to no weight whatsoever. *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018).

---

[16] https://static.e-publishing.af.mil/production/1/af_sg/publication/afi48-110/afi48-110.pdf (last accessed 5/11/2023).

Finally, while Defendants seek to hide behind the alternative rule for government actors, even under that test voluntary cessation is met. The three factors when applying this alternative rule are: "(1) the absence of a controlling statement of future intention [not to repeat the challenged policy]; (2) the suspicious timing of the change; and (3) the [governmental entity's] continued defense of the challenged polic[y]" after the supposedly mooting event. *Speech First,* 979 F.3d at 328.

Here, of course, there is no controlling statement regarding future intention not to repeat the policy. To the contrary, Defendants plainly reserve the right to do so (and say as much in their policy memos). (Statement, DE#111-6, PageID#5818). The Government has "neither asserted nor demonstrated that [they] will never resume the complained of conduct" despite numerous opportunities to do so. *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998); *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot"). The Government suggests, in support, that it has reserved authority at high levels to implement vaccine mandates in the future, as if this is some sort of reassuring fact, when these very decision-makers implemented the unconstitutional process that this litigation challenges. Thus, the first factor is plainly met.

For the second factor, there is clearly suspicious timing. Defendants' stepwise efforts are nothing more than their attempt to moot ongoing litigation, particularly in cases where they continue to disagree, publicly, with adverse decisions. Recall that only recently Defendants took the extraordinary step to attempt to vacate the published *Doster* decision, so that they would not be bound by it in the future. Warning bells should be ringing about the timing here.

Moreover, Defendants continue to vigorously defend their unconstitutional policy in the January and February 2023 Memoranda. (Statement, DE#111-6, PageID#5817, Statement,

DE#111-2, PageID#5426-7). Defendants thus fail on all three factors and cannot meet their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91.

### D. The Capable of Repetition Yet Evading Review Exception to Mootness Also Applies

This case also falls under the capable of repetition yet evading review exception to mootness. That exception "applies where: '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). Defendants claim that the capable of repetition exception does not apply because the initial mandate imposed in August of 2021 had no expiration date. But this case is not about a vaccine mandate in and of itself. Rather, it is about Defendants' wholesale refusal to grant valid religious accommodations to their mandate via a rigged regulatory process that is still in force—where that rigged process was based on a double standard involving local decision makers for secular exceptions, but high-level decision makers for religious exceptions that override the local decision makers.[17]

Given the rapidly changing COVID-19 landscape and the changes in policy throughout the DoD, the duration of the Vaccine Mandate was likely going to be "too short to be fully litigated prior to cessation or expiration." *See Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months is too short); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is too short); *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (two years is too short); *Roe v.*

---

[17] https://static.e-publishing.af.mil/production/1/af_sg/publication/afi48-110/afi48-110.pdf (last accessed 5/11/2023).

*Wade*, 93 S. Ct. 705 (1973) (266 days is too short). Under the first element, a case evades review if its duration is too short to receive "complete judicial review," including review by the Supreme Court. *First Nat'l Bank of Bos.*, 435 U.S. 765, 774.

When analyzing the second element, courts are concerned with whether the conduct was "capable of repetition and not … whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court held that a church's First Amendment challenge to New York's COVID-19 lockdown orders was not moot because the lockdown orders were capable of repetition, yet evading review. The church "remain[ed] under a constant threat" the government would reinstitute a lockdown in its area. *Id.* at 68. Because the challenged action was too short in duration to be fully litigated prior to cessation, and there was a reasonable expectation the church would be subject to the same action in the future, the case was not moot. *Id.*

Here, Plaintiffs have a reasonable expectation the challenged action will recur. The NDAA only forced Defendants to rescind the existing Vaccine Mandate, it did not eliminate their ability to impose a new one. Consequently, Defendants continue to claim the power to make decisions about unvaccinated airmen that will unlawfully harm their careers, while providing no assurances that they will not continue to violate RFRA. Defendants also claim the power to institute an identical and more widespread vaccine mandate at any time and continue to assert a compelling interest in doing so. Defendants also claim the power to punish past objectors because the order to vaccinate, allegedly, was "lawful." Likewise, Defendants continue to falsely claim that everything they did in processing exemption requests was constitutionally appropriate.

Given the clear record evidence, there is nothing speculative here about future harm.

17

### E.  The Class/Pickoff Exception Applies (and Defendants' Arguments About Dissolving the Injunction and Decertifying the Class are Wrong)

As a certified class action, the picking off exception would apply here. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980) (picking off exception); *Blankenship v. Secretary of HEW*, 587 F.2d 329, 331-33 (6th Cir. 1978). That is, if any member of the class continues to suffer harm or could do so (and we have demonstrated they do), the case is not moot.

Perhaps anticipating this argument (and the fact that Defendants have not afforded the class full relief), Defendants brazenly argue that the class should be decertified and the injunction dissolved. Defendants have filed no motion to do so, and had they done so, it would violate the Court's current stay order. In any event, Defendants' contentions about the common questions no longer being applicable are simply wrong. Defendants relied upon "'broadly formulated' reasons for the vaccine mandate to deny specific exemptions to the Plaintiffs [and the class]." *Doster*, 54 F.4th 398, 405-406. And the common questions remain, namely whether the Defendants had "a uniform policy of relying on its generalized interests in the vaccine mandate to deny religious exemptions regardless of a service member's individual circumstances?" *Id.* And whether it had "a discriminatory policy of broadly denying religious exemptions but broadly granting secular ones?" *Id.* Since the answers to both remain yes, relief can then be afforded to the class. And the fact that Defendants discontinued their mandate does not change the fact that they have not yet afforded the appropriate and full "root and branch" relief to the class. *Id.* at 439.

With respect to the District Court in Florida, the relief envisioned by the Sixth Circuit here, which is law of *this case*, is different than merely discontinuing the vaccine mandate, and on that basis alone, we submit that the lead of the Sixth Circuit should be followed.

Defendants claim that the class, as-certified, might no longer be appropriate, and that the existing class definition should be narrowed (and on that score, we agree, it should be narrowed to

18

those who: (i) received an order to vaccinate and thus face the continued prospect of prosecution; (ii) received adverse action, which has not been remedied, to include (a) those who have records of past adverse action in AMJAMS; (b) reservists or guard members who lost retirement points or good years, which have not been remedied; (c) those who are the subject of promotion proprietary actions that have not been remedied; (d) those who were discharged with discharges that were not characterized as honorable); and (e) those with other unremedied harms. A single injunction can rectify these harms. We are prepared to submit a motion to modify the class, with appropriate supporting documents and the identity of class representatives, but, in light of the Court's stay order, have not done so.

Defendants argue that coercion no longer applies because the mandate was rescinded (but, again, as we have demonstrated, harm remains). But plainly, coercion is not the only basis for injunctive relief. "The power to modify or dissolve injunctions springs from the court's authority 'to relieve inequities that arise after the original order.;" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (*quoting Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)). However, such judicial intervention should be "guarded carefully." *Id.* Accordingly, "[t]o obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'" *Id.* (*quoting Gill v. Monroe Cty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir. 1989)).

Indeed, the Sixth Circuit has been clear that only when a previously issued injunction becomes "an 'instrument of wrong,'" should it be dissolved. *Gooch v*, 672 F.3d 402, 414. Courts in this Circuit do not find such circumstances because an offending policy or practice has been discontinued. *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 2017 U.S. Dist. LEXIS 225456 (S.D. Ohio 2017). A modification may be appropriate "when the original purposes of the injunction are

19

not being fulfilled in ***any*** material respect." *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016) (emphasis added). But that is not this case.

It is curious, to say the least, that Defendants on the one hand claim the case is moot, effectively arguing that the injunction is not in practicality enjoining Defendants from doing anything (because they do not intend to do anything that the injunction prohibits), while on the other hand arguing that continuing the injunction in force is somehow inequitable. One might, appropriately in such circumstances, question the sincerity of all their mootness arguments.

### III.<u>CONCLUSION</u>

This case is not moot. Perhaps a settlement with Defendants could be reached to resolve the remaining issues in this matter, but Defendants have indicated that they do not intend to engage in those discussions until after disposition of this motion.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas Bruns (OH 0051512)
4555 Lake Forest Dr. Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890
*Attorneys for Plaintiffs*

/s/Aaron Siri_____
Siri & Glimstad LLP
Aaron Siri (admitted PHV)
Elizabeth A. Brehm (admitted PHV)
Wendy Cox (admitted PHV)
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

### <u>CERTIFICATE OF SERVICE</u>

I certify that I have served a copy of the foregoing by electronic mail this 16th day of May, 2023.

/s/ Christopher Wiest_____

20