**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION**

|  |  |
|---|---|
| **HUNTER DOSTER,** *et al.,* | |
| *Plaintiffs,* | No. 1:22-cv-00084 |
| v. | Hon. Matthew W. McFarland |
| **FRANK KENDALL,** *et al.,* | |
| *Defendants.* | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
RENEWED MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      The Court Should Dismiss This Action as Moot. ............................................. 2

        A.      All Requested Relief Is Now Moot. .............................................. 2

        B.      No Exception to Mootness Applies. ............................................... 10

    II.     No Further Discovery is Needed. ...................................................................... 13

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*Akers v. McGinnis*,
   352 F.3d 1030 (6th Cir. 2003) ............................................................................. 2

*Ball v. Union Carbide Corp.*,
   385 F.3d 713 (6th Cir. 2004) ............................................................................. 14

*Cacevic v. City of Hazel Park*,
   226 F.3d 483 (6th Cir. 2000) ............................................................................. 14

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................. 7

*Colonel Fin. Mgmt. Officer v. Austin*,
   No. 8:21-cv-2429-SDM-TGW, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023) ................. *passim*

*Doster v. Kendall*,
   48 F.4th 608 (6th Cir. 2022), *reh'g en banc denied*, 65 F.4th 792 (6th Cir. 2023) ................... 1

*Doster v. Kendall*,
   54 F.4th 398 (6th Cir. 2022) ............................................................................. 1

*Elvis Presley Enters. v. City of Memphis*,
   No. 2:18-cv-02718, 2020 WL 4015476 (W.D. Tenn. July 16, 2020) ...................................... 13

*Gilligan v. Morgan*,
   413 U.S. 1 (1973) ............................................................................................. 6

*Hanrahan v. Mohr*,
   905 F.3d 947 (6th Cir. 2018) ............................................................................. 11

*Klinger v. Corr. Corp. of Am., Inc.*,
   No. 4:11CV2299, 2012 WL 12897339 (N.D. Ohio Dec. 13, 2012),
   *report and recommendation adopted*,
   No. 4:11CV2299, 2013 WL 143535 (N.D. Ohio Jan. 11, 2013) ........................................... 13

*Lawrence v. Blackwell*,
   430 F.3d 368 (6th Cir. 2005) ............................................................................. 12

*McPherson v. Mich. High Sch. Athletic Ass'n., Inc.*,
   119 F.3d 453 (6th Cir. 1997) ............................................................................. 13

*Palmer v. United States*,
   168 F.3d 1310 (Fed. Cir. 1999) ......................................................................... 4

*Ramsek v. Beshear*,
  No. 3:20-CV-00036-GFVT, 2021 WL 5098687 (E.D. Ky. Nov. 2, 2021) ............................ 7, 8

*Reeves v. P&E Logistics, Inc.*,
  No. 2:21-CV-4167, 2022 WL 899688 n.3 (S.D. Ohio Mar. 28, 2022) ..................................... 1

*Resurrection Sch. v. Hertel*,
  35 F.4th 524 (6th Cir.), *cert. denied*, 143 S. Ct. 372 (2022) .................................... 8, 11, 12, 13

*Rogers v. Stratton Indus., Inc.*,
  798 F.2d 913 (6th Cir. 1986) ................................................................................................ 13

*Rondigo, LLC v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011) ............................................................................................... 14

*Steiner v. Henderson*,
  354 F.3d 432 (6th Cir. 2003) .................................................................................................. 3

*Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*,
  767 F.3d 554 (6th Cir. 2014) .................................................................................................. 3

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020) .............................................................................................................. 3

*Taylor v. Geithner*,
  703 F.3d 328 (6th Cir. 2013) .................................................................................................. 3

*Weiss v. United States*,
  510 U.S. 163 (1994) ................................................................................................................ 5

*Youngstown Publ'g Co. v. McKelvey*,
  189 F. App'x 402 (6th Cir. 2006) ........................................................................................... 2

## CONSTITUTION

U.S. Const. art. II, § 2, cl. 2 ..................................................................................................... 5

## STATUTES

10 U.S.C. § 624 ......................................................................................................................... 5

28 U.S.C. § 1295 ....................................................................................................................... 3

28 U.S.C. § 1346 ....................................................................................................................... 3

iv

42 U.S.C. § 2000e-16(c) ................................................................................................ 3

**RULES**

Fed. R. Civ. P. 12(d) ............................................................................................... 13, 14

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 15

Fed. R. Civ. P. 26(c)(1) ................................................................................................. 13

Fed. R. Civ. P. 30(b)(6) ................................................................................................. 13

Fed. R. Civ. P. 56(d) ........................................................................................... 2, 13, 14

**OTHER AUTHORITIES**

Department of the Air Force Instruction 36-3211, *Military Separations*, (June 24, 2022) ........... 8

Rule for Courts-Martial 1003(b)(8), *Manual for Courts-Martial, United States* (2019 ed.) .......... 8

Transcript of House Armed Services Subcommittee on Military Personnel (Feb. 28, 2023),
   https://perma.cc/Q8CT-C9UY ................................................................................... 7

## INTRODUCTION

Every single court to have considered the question has concluded that challenges to the military's now-rescinded COVID-19 vaccination requirements are moot and that no exception to mootness applies. *See, e.g.*, *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2023 WL 2764767, at *3 (M.D. Fla. Apr. 3, 2023) ("Col. FMO"); *id.* ECF No. 295 (dismissing case as moot) (M.D. Fla. May 17, 2023). Plaintiffs provide no compelling reason why this case is any different.

Defendants' opening motion walked through every line of Plaintiffs' Prayer for Relief and explained why each and every request was moot. Defs.' Renewed Mot. to Dismiss, ECF No. 111, PageID 5405–09 ("Mot."). Plaintiffs failed to respond to those arguments. *See generally*, Plfs.' Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 112 ("Opp'n"). "A plaintiff's failure to oppose an argument raised on a motion to dismiss is a concession of that argument and an abandonment of the associated claim." *Reeves v. P&E Logistics, Inc.*, No. 2:21-CV-4167, 2022 WL 899688, at *6 n.3 (S.D. Ohio Mar. 28, 2022). Plaintiffs' failure to respond is sufficient on its own to dismiss this entire case as moot.

Plaintiffs have received all relief sought in their Complaint and all the relief described in the Sixth Circuit's opinion. That court noted that "an appropriate remedy might more narrowly enjoin the Department to abolish the discriminatory policy, root and branch, and to enjoin any adverse action against the class members on the basis of denials of religious exemptions pursuant to that policy." *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022); *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022), *reh'g en banc denied*, 65 F.4th 792 (6th Cir. 2023). Plaintiffs and members of the class *already have* that relief because the COVID-19 vaccination requirement has been rescinded "root and branch." *Doster*, 54 F.4th at 439. The military "will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." ECF No. 111-1, PageID 5422. Any injunction barring Defendants from taking "adverse action" is also moot. *Doster*, 48 F.4th at 615. Air

Force policies prevent any *future* adverse actions based on the now-rescinded policy and already require past adverse actions to be removed from Plaintiffs' and class members' records.

There is no longer a live controversy in this case. Plaintiff's Complaint is moot, and this case should be dismissed.

## ARGUMENT

## I. The Court Should Dismiss This Action as Moot.

### A. *All Requested Relief Is Now Moot.*

Defendants explained in their opening motion that all of the relief requested in Plaintiffs' complaint is unavailable after the rescission. Mot. at PageID 5405–08. In their opposition brief, Plaintiffs never contest this fact and fail to identify any unmet request in their Prayer for Relief that could keep this case alive.[1]

Plaintiffs instead raise *new* claims (backpay, retirement points, etc.) that are nowhere to be found in their Complaint, "asserted solely to avoid otherwise certain mootness." *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 408 (6th Cir. 2006).[2] "Plaintiffs' late in the day plea for damages [and new types of relief] cannot genuinely revive the case." *Id.* (cleaned up). Plaintiffs make no effort to tie these new claims for relief to anything in their Prayer for Relief, and on that basis alone, the Court can disregard them as improper attempts to avoid "otherwise certain mootness." *Id.* In any event, these "late in the day" arguments raised solely to avoid mootness are meritless.

---

[1] Plaintiffs implicitly concede that their request for fees and costs do not provide a basis to deny Defendants' motion. Opp'n at 1; *see also* Fed. R. Civ. P. 56(d) (request for costs and fees are to be filed *after* judgment).

[2] Plaintiffs argue that their case is not moot based on *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003). But that case does not help Plaintiffs for at least two reasons. First, that case was not moot in part because "plaintiffs could be entitled to money damages" if they prevailed in their challenge to the old policy. *Id.* at 1035. Thus, there was relevant relief sought in plaintiffs' complaint that had not yet been awarded. *Id.* That is not the case here where no relief sought in the Complaint remains relevant and where money damages are not available. Second, the *Akers* court noted that the case might not be moot because those plaintiffs could be entitled to "the purging of their disciplinary records if the old version of the Rule were found to be unconstitutional even if the current version was constitutional." *Id.* In this case, Plaintiffs and the class have already had their disciplinary records purged.

*Backpay and Points.* Plaintiffs first ask the Court to order backpay and retirement points to Reservists. As Defendants explained in their opening motion, "claims for damages were not raised in the Complaint and are otherwise barred by sovereign immunity." Mot. at PageID 5408 n.4. There is no request for backpay or retirement points anywhere in their Complaint. *See generally* Compl. That is a stand-alone basis to deny this request.

Claims for backpay and retirement points are also barred by sovereign immunity. Sovereign immunity bars claims against officials sued in their official capacity unless explicitly waived. Neither RFRA nor the First Amendment contains a waiver of sovereign immunity for backpay or retirement points. Mot. at PageID 5408–09 (citing cases). Plaintiffs argue that RFRA waived sovereign immunity, but they have not identified a single case where a court held that RFRA waived sovereign immunity to award backpay or retirement points (and Defendants are aware of none).[3]

Even if Plaintiffs had pleaded a viable claim for backpay or retirement points *and* identified a sufficient waiver of sovereign immunity, this Court would still lack jurisdiction to consider any claim over $10,000, as those claims can only be adjudicated in the Court of Federal Claims. 28 U.S.C. § 1346. To the extent Plaintiffs argue that this court might have concurrent jurisdiction with the Court of Federal Claims over claims for backpay/retirement points valued less than $10,000 and should the Court exercise its concurrent jurisdiction, any decision would then be appealable *only* to the Federal Circuit and the binding law of that circuit would apply to those claims. *See* 28 U.S.C. § 1295; *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 561 (6th Cir. 2014). And under Federal Circuit precedent, Reservists do not have viable claims for pay and points for work not performed, no matter

---

[3] Plaintiffs' reliance on *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020) is misplaced as the Supreme Court was discussing whether damages were available against officials in their *personal* capacities and affirmed the underlying Second Circuit decision that RFRA does not waive sovereign immunity for those sued in their *official* capacities. The remaining cases cited by Plaintiffs are irrelevant because they are not First Amendment or RFRA cases, but rather cases involving Title VII, which *does* have an applicable waiver of sovereign immunity. *See* 42 U.S.C. § 2000e-16(c); *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003) (discussing wavier under Title VII); *Taylor v. Geithner*, 703 F.3d 328, 333 (6th Cir. 2013).

the reason. *See Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999) (1999) (explaining the statutory differences between pay entitlements for active-duty service and reservice serving, holding that "[t]he consequence of this difference in pay entitlement . . . is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty").

*Promotion Proprietary Actions.* In general, promotion proprietary action ("PPA") puts a pause on a pending promotion until the PPA is reviewed and resolved by the Secretary of the Air Force. Plaintiffs argue that the case is not moot because "hundreds of airmen in the class were selected for promotion but then had [PPAs]" because of a religious objection to the COVID-19 vaccine. Opp'n at PageID 5828. Plaintiffs overstate the number of relevant PPAs—the Department of the Air Force is currently aware of only **eight** PPAs where the sole basis was refusal to receive the COVID-19 vaccine. Decl. of Col. Christopher J. Schubbe, ¶ 5 (Ex. 1).[4] Of those eight, the Secretary of the Air Force has already acted on five. *Id.* ¶ 6.[5] In all five, the Secretary terminated the promotion delay and reinstated the member's original date of rank, which would include backpay. *Id.* ¶¶ 3, 6. Three PPAs are currently under review at the Pentagon (including the PPA for Alberto Sigala, *see* Opp at PageID 5828 (citing Decl. of Alberto Sigala, ECF No. 112-4)) and decisions from the Secretary are expected within the next two months. Ex. 1, ¶ 6.

As Defendants noted in their opening brief, "[t]wo Plaintiffs have been promoted during the pendency of this litigation, including Hunter Doster who was promoted to First Lieutenant and Daniel Reineke who was promoted to Lieutenant Colonel." Mot. at PageID 5406 n.2.

Moreover, as Plaintiffs have already conceded, this Court does not have the authority to order

---

[4] As noted in the declaration, there may be some PPAs which have not reached higher headquarters, but it is anticipated there would be relatively few. Ex. 1, ¶ 7.

[5] The Secretary has already acted on most pending PPAs that Defendants are tracking and is not waiting "to see what this Court does" as Plaintiffs suggest. Opp'n at PageID5828.

promotions or the removal of PPAs because no court has the authority to order the military to commission officers. *See* Pls.' Response to Gov.'s Br. re Mot. for Stay Pending Appeal and Administrative Stay, ("Pls.' Stay Opp'n") ECF No. 85, PageID 4654–55 (explicitly conceding this issue). Under the structure of our constitutional system, the appointment power is vested in the President and confirmation power is vested in the Senate. U.S. Const. art. II, § 2, cl. 2. The Appointment Clause of the constitution applies to the appointment of military officers. *See Weiss v. United States*, 510 U.S. 163 (1994) (involving the appointment of military judges). It applies equally to officer *promotions*. *Id.* at 170 n.5 ("10 U.S.C. § 624 requires a new appointment by the President, with the advice and consent of the Senate, each time a commissioned officer is promoted to a higher grade -- *e. g.*, if a captain is promoted to major, he must receive another appointment"); *see also* AFI 36-2501, ¶ 5.5.1 ("SECAF (or designee), *acting for the President*, approves all removal actions. SECAF (or designee) may, in lieu of removal, also approve a delay, terminate the action, or terminate the action with a date of rank adjustment." (emphasis added)). The judiciary plays no role in that process.

*Referral Performance Reports.* The Air Force has a policy that "Referral Performance Reports issued solely for vaccine refusal after requesting an exemption . . . will have the referral report removed from the member's personal record and replaced with a statement of non-rated time." ECF No. 111-3, PageID 5433. Plaintiffs complain that this process places "essentially a blank report" in their records and argue—with no supporting evidence—that the removal of referral performance reports "will cause future and ongoing adverse actions." Opp'n at PageID 5828. Plaintiffs have not identified a single instance where adverse action based on a "blank report" has actually happened. This type of baseless speculation not a proper ground for keeping a moot case alive.[6]

---

[6] At least one class member, Mark Haberle, seems to ask the Court to order the Air Force to modify his records to show 12 additional months of flying experience than he actually has. ECF No. 112-5. His request was buried in a declaration and not squarely presented to the Court, but even if it had been presented in Plaintiffs' motion, such a request would require individualized review (not

*AMJAMS.* Plaintiffs next argue that an Air Force record-keeping system AMJAMS causes them ongoing harm. But again, Plaintiffs have not identified any individual who has actually been harmed by this record-keeping system. Plaintiff Colantonio, for example, met with the Hurlburt Field legal office to discuss her request to "convert the remaining portion of [her] active service commitment to a Reserve or Air Guard commitment." ECF No. 112-8, ¶ 2. The legal office, which has access to the AMJAMS system, saw that her record included a "closed letter of reprimand." *Id.* ¶ 3. Plaintiff Colantonio was told that this "would not affect [her] application" to convert her remaining active service commitment to a Reserve of Air Guard commitment. ECF No. 112-8, ¶ 3. This is the only example Plaintiffs provide regarding AMJAMS and it does not demonstrate any harm.

Defendants already provided a declaration explaining the restricted access to AMJAMS records and the limited instances when information about an individual would be released. ECF No. 111-5. As explained in that declaration, "[e]ntries in [AMJAMS] for Service members who submitted an exemption request, including a religious accommodation, and subsequently received adverse actions for refusing to follow the order will not 'affect an airmen's ability to promote,' or ability to receive 'special assignments and other career enhancing assignments,' and will not 'affect their post-service career.'" *Id.* ¶ 3.

Plaintiffs argue that entries of adverse action should be deleted in their entirety—not just include a notation that adverse actions have been removed at the direction of the Secretary of the Air Force. But Plaintiffs have not explained how records reflecting the *removal* of adverse actions would

_____

appropriate for a class) and, more importantly, be far outside the bounds of judicial authority. "Trained professionals, subject to the day-to-day control of the responsible civilian authorities, necessarily must make comparative judgments on the merits as to evolving methods of training, equipping, and controlling military forces with respect to their duties under the Constitution. It would be inappropriate for a district judge to undertake this responsibility in the unlikely event that he possessed requisite technical competence to do so." *Gilligan v. Morgan*, 413 U.S. 1, 8 (1973). Such requests for relief are better suited to the Board of Correction for Military Records (BCMR), which has the experience to properly account for the potential impact on military readiness from modifying records to reflect experience that a member does not actually have.

plausibly cause future harm. Moreover, Defendants also explained how AMJAMS records are used and why it would not be appropriate to delete those entries. *Id.* ¶ 11 (AMJAMS is important for "IG and Congressional oversight of military justice administration").

*Court-Martial.* Plaintiffs' demand for an injunction against court-martial until the statute of limitations runs finds no support in the facts or law.

On the facts, Plaintiffs continue to argue that they are at imminent risk of criminal prosecution. But no Air Force or Space Force member has *ever* been court-martialed solely "for their refusal to receive a COVID-19 vaccine under the now-rescinded mandate." ECF No. 111-5, ¶ 6. And contrary to what Plaintiffs argue in their brief, Defendants *have* "foresw[orn] future prosecutions." *See* Opp'n at PageID 5835. In this case, Associate Chief, Military Justice Law and Policy Division, John E. Hartsell declared "under penalty of perjury" that "no Service member in the Department of the Air Force who submitted an exemption request may be subject to additional adverse action, including court martial, for past failure to follow an order to receive the COVID-19 vaccine." ECF No. 111-5, ¶¶ 12–13.[7] In these circumstances, Plaintiffs cannot maintain a moot claim based on speculative fears of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

Plaintiffs are also wrong on the law. The district court in *Ransek v. Beshear* dismissed a case as moot because the "Governor has been ardent that, not only will he refrain from enforcing his rescinded order, but that he will not be reinstating it either." *Ramsek v. Beshear*, No. 3:20-CV-00036-GFVT, 2021 WL 5098687, at *4 (E.D. Ky. Nov. 2, 2021). The same is true here—the Air Force has

---

[7] Plaintiffs suggest that Congressional testimony from Under-Secretary of Defense for Personnel and Readiness Gilbert Cisneros presents an imminent threat of court-martial to Plaintiffs and class members. Opp'n at PageID 5829–30. That is also not true. Plaintiffs' brief cites only to a news article, not a transcript of the hearing. *Id.* The transcript makes clear that the Under-Secretary's testimony about "evaluating what needs to be done" was about "[t]hose who refused the vaccine *and did not put in a request for accommodation*." *See* Transcript of House Armed Services Subcommittee on Military Personnel (Feb. 28, 2023), https://perma.cc/Q8CT-C9UY (emphasis added). Plaintiffs and class members all submitted requests for accommodation, so this testimony (which does not even mention court-martial) obviously would not apply to them.

been clear that it will not be initiating courts martial for those who sought a religious accommodation from the COVID-19 vaccination requirement, including submitting a declaration in this case. As for fears that a similarly broad requirement would be reinstated, the Middle District of Florida explained that "[b]ecause in this action Congress has unambiguously renounced the mandate and has directed by statute a rescission of the mandate, recurrence of the military's challenged conduct seems, absent any compelling evidence to the contrary, remote and implausible." *Col. FMO*, 2023 WL 2764767, at *2.

Plaintiffs urge this Court to ignore *Ramsek* and argue that "*Ramsek* was dismissed because the statute of limitations . . . had lapsed in the meantime." Opp'n at PageID 5835. Plaintiffs are wrong— the statute of limitations had not run, and the statute of limitations was not the basis for the district court's opinion. The memorandum opinion and order dismissing the case as moot was issued on November 2, 2021, which was before the statute of limitations period that expired "on December 12, 2021." *Ramsek*, 2021 WL 5098687 at *4 n.1. Not only was the opinion issued before the statute of limitations period ended, but also nothing in the opinion suggests that the court "dismissed because the statute of limitations" had lapsed as Plaintiffs contend. *See generally id.* Instead, the Court dismissed the case as moot because the Governor provided assurances that he would not be prosecuting plaintiffs. *Id.* at *4 n.1. Plaintiffs have failed to show why the Court should not do the same here.

There is no "credible threat of future prosecution" and "[i]f the [Plaintiffs] or anyone else is ever prosecuted for violating the [ ] mandate, [they] can obtain a ruling on the mandate's constitutionality then." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir.) (en banc), *cert. denied*, 143 S. Ct. 372 (2022).

**Discharged Service members.** Finally, in a footnote, Plaintiffs argue that there are class members "who were punitively discharged" that need relief. Opp'n at 5838 n.12. To be clear, a "punitive discharge" only occurs through sentencing at a court-martial. *See, e.g.*, Rule for Courts-

Martial 1003(b)(8), *Manual for Courts-Martial, United States* (2019 ed.); Department of the Air Force Instruction 36-3211, *Military Separations*, para. 7.1.8 (June 24, 2022) (distinguishing punitive discharges from involuntary separations). Again, no member of the Air Force or Space Force has ever been court-martialed, let alone found guilty and sentenced to punitive discharge, for failing to take the COVID-19 vaccine.

To the extent that Plaintiffs' equate involuntary administrative separations with "punitive discharges," no Plaintiff was involuntarily discharged for failure to receive a COVID-19 vaccine. And the class definition is very clear that it does not include those who were involuntarily discharged:

> All active-duty, active reserve, reserve, national guard, inductees, and appointees of the United States Air Force and Space Force, including but not limited to Air Force Academy Cadets, Air Force Reserve Officer Training Corps (AFROTC) Cadets, Members of the Air Force Reserve Command, and any Airman who has sworn or affirmed the United States Uniformed Services Oath of Office or Enlistment *and* is currently under command *and* could be deployed, *as of July 27, 2022, who:* (i) submitted a religious accommodation request to the Air Force from the Air Force's COVID-19 vaccination requirement, where the request was submitted or pending, *from September 1, 2021 to July 27, 2022* . . . .

ECF No. 86, at PageID 5012 (emphasis added). The class definition necessarily requires individuals meet *two* date requirements: they must be in one of the enumerated statuses (*e.g.*, active-duty, active reserve, etc.) and "currently under command" "as of July 27, 2022" and they must have submitted a religious accommodation request between September 1, 2021 to July 27, 2022. This necessarily excludes individuals who were discharged before July 27, 2022 as they do not meet any of the enumerated categories "as of July 27, 2022" and were not "currently under command" at the time the order was issued. *Id.* The definition does not include language for "former" or "discharged" service members.[8] While individuals could opt out of the class and continue their discharge—and some did—those individuals removed themselves from the class and are no longer in the case.

---

[8] It is noteworthy that Plaintiffs' prior filings, including the complaint, motion for class certification, and brief in support of class-wide injunction, omit *any* discussion about discharged Service members as part of the class.

The class definition specifically excludes those who were involuntarily discharged prior to July 27, 2022 because Plaintiffs conceded that the Court does not have the authority to force the military to re-enlist or re-commission individuals. *See* Pls.' Stay Opp'n, at PageID 4654–55.

In sum, no one was punitively discharged for failing to receive a COVID-19 vaccine, and Plaintiffs have not identified *anyone* who was involuntarily discharged from the Air Force solely for failing to receive a COVID-19 vaccine after a final denial of a religious accommodation request. This hypothetical issue, not even before the court, is insufficient to overcome mootness.

Moreover, while Plaintiffs are vague about what "relief" they seek, the Court does not have the authority to require the military to re-enlist or re-commission any individual (as Plaintiffs conceded). And to the extent that Plaintiffs seek backpay or other type of monetary relief, Plaintiffs have failed to seek such relief in their complaint, have not pleaded a claim that waives sovereign immunity, and even if they had, this Court lacks jurisdiction for any claim over $10,000. *See supra*, 3.

B.      *No Exception to Mootness Applies.*

As Defendants explained in their opening motion, every court to have considered the issue has found that challenges to the military COVID-19 vaccine requirement are moot and that no exception to mootness applies. The Middle District of Florida's opinion is directly on point and Plaintiffs have not even tried to explain why that reasoning should not apply with equal force in this case. *Col. FMO*, 2023 WL 2764767, at *2. Indeed, every argument Plaintiffs raise in this case was raised—and rejected—in the Middle District of Florida.

***Voluntary Cessation.*** The voluntary cessation exception to mootness does not apply here. First, there is no dispute that the challenged policy was unambiguously terminated at the direction of Congress. Because Defendants acted in response to this "higher authority," voluntary cessation is inapplicable from the outset. *Col. FMO,* 2023 WL 2764767, at *2.

Second, there is no indication that Defendants will return to their previous challenged policies.

*See Hanrahan v. Mohr*, 905 F.3d 947, 961 (6th Cir. 2018). Plaintiffs argue that "nothing in the NDAA prevents the Government from instituting a new mandate." Opp'n at Page ID 5838. But this argument was also raised by Plaintiffs in *Col. FMO* who argued that "the Secretary retains the authority to reinstate a COVID-19 vaccination requirement at any moment." *Col. FMO*, 8:22-cv-1275-SDM, ECF No. 281, PageID 13398 (M.D. Fla Feb. 1, 2023). The court rejected that argument explaining that "[b]ecause in this action Congress has unambiguously renounced the mandate and has directed by statute a rescission of the mandate, recurrence of the military's challenged conduct seems, absent any compelling evidence to the contrary, remote and implausible." *Col. FMO*, 2023 WL 2764767, at *2. The Sixth Circuit rejected a comparable voluntary cessation argument when "defendants' own political accountability diminishes any chance that they would reimpose the same mandate after this litigation ends." *Resurrection Sch.*, 35 F.4th at 529. "[T]he relevant circumstances have changed dramatically since [Defendants] imposed [their] [COVID-19 vaccination] mandate" because fewer people were vaccinated "and treatments were less effective than they are now." *Id.* Plaintiffs present no evidence that the same kind of COVID-19 vaccination requirement will be reinstated, no evidence that they will once again be subject to that same kind of requirement, and no evidence that any religious accommodation request they might seek regarding a hypothetical new requirement will be denied. Unfounded speculation cannot save a moot claim.

Plaintiffs also argue the rescission involved "clearly suspicious timing." Opp'n at PageID 5814. But as the Sixth Circuit explained in similar circumstances "the State rescinded the mask mandate not in response to this lawsuit, but eight months later, along with several other pandemic-related orders[,] cit[ing] high vaccination rates, low case counts, new treatment options, and warmer weather." *Resurrection Sch.*, 35 F.4th at 529. Here, the NDAA was passed long after this lawsuit was filed and Plaintiffs have provided no evidence to suggest that the COVID-19 vaccine policy was rescinded to avoid this litigation.

Plaintiffs further argue that Defendants' statements that the military's COVID-19 vaccination requirement and implementation were lawful mean that they are likely to reimpose a similar requirement. *See* Opp'n at PageID 5839–40. The *Col. FMO* plaintiffs made the same argument, but it was rejected because "the government need not concede unlawful conduct to moot an action by rescission of the challenged conduct." *Col. FMO*, 2023 WL 2764767, at *2. The Sixth Circuit likewise does not require a party to concede that a rescinded policy was unlawful to find mootness; the *en banc* panel in *Resurrection School* concluded the case was moot despite Defendants' continued "'vigorous defense' of [the] contested policy." *Resurrection Sch.*, 35 F.4th at 546 (Bush, J., dissenting).

Finally, "any future [vaccination requirement] likely would not present substantially the same legal controversy as the one originally presented here." *Id.* at 529. "This dispute is therefore moot unless there is a decent chance that the defendant officials will not only impose a new [vaccine] mandate, but also roughly stick to the exceptions in the old one" which is a "prospect [that] is exceedingly remote given all that has happened in the" months since Congress directed DoD to rescind its COVID-19 vaccination requirement. *Id.*

***Capable of Repetition Yet Evading Review.*** Plaintiffs have not carried their burden to show that the capable of repetition yet evading review exception to mootness applies. *See Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (burden is on party claiming the exception). Plaintiffs in *Col. FMO* also argued that this exception applied, and that argument was rejected. 2023 WL 2764767.

Plaintiffs have no response to the fact that military vaccination requirements generally are indefinite—decidedly *not* the type of ephemeral situations where this exception applies. Instead, Plaintiffs argue that the "rapidly changing COVID-19 landscape" means that any hypothetical, future COVID-19 vaccine requirement might be too short to be fully litigated prior to cessation or expiration. Opp'n at PageID 5842. But Plaintiffs provide no evidence in support of that claim, and if anything, "changed circumstances" since the requirement was first implemented mean there is "no reasonable

possibility that [Defendants] will impose a new [COVID-19 vaccine] mandate with roughly the same exceptions as the one originally at issue here." *Resurrection Sch.*, 35 F.4th at 530. "This claim is moot—indeed palpably so." *Id.*

## II.    No Further Discovery is Needed.

In a final attempt to avoid mootness, Plaintiffs argue that the motion to dismiss for mootness is actually a motion for summary judgment and ask permission under Rule 56(d) to "pursue limited discovery," including seven interrogatories, nine requests for production, and a Rule 30(b)(6) deposition of the United States of America and the Secretary of the Air Force.[9] ECF No. 112-10.

Rule 56(d) does not apply. Plaintiffs concede that Defendants' motion "is a Rule 12 motion." Opp'n at PageID 5831 n.5. Plaintiffs argue, however, that if the court considers "'matters outside the pleadings'" then "the motion must be treated as one for summary judgment under Rule 56." *Id.* (citing Fed. R. Civ. P. 12(d)). However, "[m]ootness implicates the Court's subject matter jurisdiction and matters outside the pleadings may be considered on a Rule 12(b)(1) motion" without converting it to a motion for summary judgment. *Klinger v. Corr. Corp. of Am., Inc.*, No. 4:11CV2299, 2012 WL 12897339, at *9 (N.D. Ohio Dec. 13, 2012), *report and recommendation adopted*, No. 4:11CV2299, 2013 WL 143535 (N.D. Ohio Jan. 11, 2013) (citing *McPherson v. Mich. High Sch. Athletic Ass'n., Inc.*, 119 F.3d 453, 458 (6th Cir. 1997)); *see also Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("[I]n a Rule 12(b)(1) motion," parties may supplement the record and "this supplementation does not convert the motion into a Rule 56 summary judgment motion").

Defendants' motion also does not rely on "matters" outside the pleadings. "[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case

---

[9] Defendants would object to a deposition of the Secretary of the Air Force under Fed. R. Civ. P. 26(c)(1) and the "apex doctrine." *See Elvis Presley Enters. v. City of Memphis*, No. 2:18-cv-02718, 2020 WL 4015476, at *30 (W.D. Tenn. July 16, 2020) ("District courts in this Circuit have applied the 'apex doctrine' in applying Rule 26 to high-ranking government officials").

and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (cleaned up). Here, the facts necessary for demonstrating mootness are judicially noticeable statutes and government policies "central to the claims" in the complaint, so they are not "matters outside the pleadings," and Rule 56 does not apply. *Id*; Fed. R. Civ. P. 12(d).

Even if Rule 56(d) did apply to Defendants' motion, Plaintiffs have not carried their burden to show why the requested discovery would be necessary. A party seeking additional discovery under Rule 56(d) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

The requested discovery is not necessary to resolve this motion. There is no dispute over the salient facts. The policies related to COVID-19 vaccination requirement have been rescinded. Defendants' policies implementing the rescission describe exactly what Defendants have already done and will do to remove adverse actions from the records of those who sought exemptions (including all Plaintiffs and class members). Defendants have also made clear, through policies and in this litigation, that no further adverse action will be taken for failure to comply with the now-rescinded vaccination requirement. No discovery is needed for the Court to conclude that Plaintiffs have received all the relief they requested in their Complaint. In fact, Plaintiffs conceded (by not contesting) that all relief requested in their Prayer for Relief has already been provided.

Plaintiffs also provide no reason why did not submit the requested discovery after the NDAA was enacted and implemented by February 2023 and before the case was stayed on March 3, 2023. Information requested in their proposed discovery was available long before the NDAA was passed if Plaintiffs believed they were relevant to the case. For example, Plaintiffs now seek discovery about

individuals who submitted a religious accommodation request and were involuntarily discharged prior to July 2022. *See* ECF No. 112-10. But despite months of discovery, including three rounds of requests, 45 requests for documents, 26 interrogatories, hundreds of pages of written responses, and over 40,000 pages of documents produced, Plaintiffs have *never* asked for information about discharged service members.[10] This last-minute pivot shows discharged individuals are not part of the class and discovery on this issue unnecessary.[11]

Much of the other requested information has already been provided. The Air Force's definition of "adverse action" was set forth in the Secretary of the Air Force's memo that explains how those actions will be undone for Plaintiffs and the class. ECF No. 111-3. Defendants have already explained the purpose of the AMJAMS system, who has access, what the records are used for, and made clear that records related to declining to receive the COVID-19 vaccine will not have an effect on an Airman's career. ECF No. 111-5. And a declaration attached to this reply identifies the number of PPAs known to Defendants (a total of 8) and the status (5 processed, all removed with backdated promotions and pay, 3 in progress). Ex. 1. To the extent Plaintiffs want to know if there will be any future impact, that question is already addressed by DoD guidance, which states that "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions." ECF No. 111-1, PageID 5422. And for promotions, the Secretary of the Air Force already instructed that "Promotion Records will be corrected . . . to remove or redact, as appropriate, all adverse actions related to the member's refusal to receive the COVID-19 vaccine."

---

[10] Similarly, Plaintiffs *never* asked for information about retirement points, missed drills, or "good years" for reserve and national guard members.

[11] If the Court found the scope of the class included discharged individuals, the omission of discovery related to these individuals and lack of any discussion of them in any filings calls into question whether the Class Representatives have fairly and adequately protected their interests. *See* Fed. R. Civ. P. 23(a)(4).

ECF No. 111-3, PageID 5433. Plaintiffs face no present or threat of future harm from the now-rescinded policy, and fail to show why discovery into the possibility of future events is warranted.

This late-in-the-day request for discovery just underscores that Plaintiffs, who were subject to the now-rescinded requirement and were appointed representatives of the class, cannot readily identify any ongoing or future harm.[12]

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case as moot.

Dated: May 30, 2023                          Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General
                                             Civil Division

                                             ALEXANDER K. HAAS
                                             Director, Federal Programs Branch

                                             ANTHONY J. COPPOLINO
                                             Deputy Branch Director
                                             Federal Programs Branch

                                             _/s/ Zachary A. Avallone_
                                             ANDREW E. CARMICHAEL
                                             AMY E. POWELL
                                             Senior Trial Counsel
                                             STUART J. ROBINSON
                                             Senior Counsel
                                             ZACHARY A. AVALLONE
                                             COURTNEY D. ENLOW
                                             LIAM HOLLAND
                                             CATHERINE YANG

---

[12] If this case is not dismissed as moot, the class should be decertified. Plaintiffs concede that the class is too broad as currently defined and includes uninjured class members. That is enough basis to decertify. Plaintiffs' proposed narrowed class definition does not remedy those fundamental issues, seeks remedies this court cannot provide (pay/points), includes individuals not represented by Plaintiffs with different interests and for whom Defendants have different and unique defenses (previously discharged Service members), or otherwise unascertainable (those with unspecified unremedied harms). Defendants will respond more fully if Plaintiffs file such a motion. The injunctions are also no longer needed, for the reasons explained in Defendants' opening motion.

CASSANDRA SNYDER
Trial Attorneys,
Department of Justice
Federal Programs Branch
1100 L Street, N.W., Washington, DC 20005
Tel: (202) 514-2705
Email: zachary.a.avallone@usdoj.gov

*Attorneys for Defendants*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Zachary A. Avallone*
Zachary A. Avallone
