# Exhibit 1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| FAITH N. CROCKER, ET AL. | CIVIL ACTION NO. 22-0757 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LLOYD J. AUSTIN, III, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 34) filed by Defendants, seeking to dismiss as moot all claims brought by Plaintiffs. Plaintiffs filed an opposition (Record Document 36), and Defendants filed a reply (Record Document 37). For the following reasons, Defendants' Motion to Dismiss is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the COVID-19 vaccine mandate issued by the United States Air Force in late 2021. See Record Document 12 at 1. Plaintiffs are seven members of the Air Force who sought religious accommodations exempting them from the vaccine mandate. See id. at 1–2. Plaintiffs allege that none of their accommodations have been granted. See id. at 2. Thus, Plaintiffs brought this suit pursuant to the First Amendment of the United States Constitution and the Religious Freedom Restoration Act ("RFRA"), challenging Defendants' denial of "their fundamental right to the free exercise of religion." See id. Plaintiffs also assert violations of the Administrative Procedure Act ("APA"), "seek[ing] protection from agency action that is unlawful, contrary to law, and arbitrary and capricious." See id. This lawsuit was initially filed solely by Faith Crocker ("Crocker"); the Amended Complaint added six additional plaintiffs with the same causes of action. See id. at 1.

1

On July 26, 2022, the Court denied as moot Plaintiffs' Motion for Preliminary Injunction and stayed the action, except as to the claims of Byron Starks,[1] due to a pending class action in the Southern District of Ohio. See Record Documents 16 and 17. While the stay was in place, the Air Force rescinded its COVID-19 vaccine mandate. See Record Document 31. However, in a status conference with the Magistrate Judge, Plaintiffs stated their intention to proceed with their claims, arguing that the matter was "not moot simply because the vaccine mandate" was lifted. Record Document 33 at 1. Conversely, the Defendants stated their intention to file a motion to dismiss Plaintiffs' claims on the basis of mootness, leading to the instant motion. See id.

### a. Plaintiffs' requests for religious accommodations

In their First Amended Complaint, Plaintiffs assert that "Defendants are seeking to force Plaintiffs to submit to a COVID-19 vaccine injection against their sincerely held religious beliefs or face the lifelong stain of an involuntary administrative discharge" from the Air Force, as well as "the loss of education and retirement benefits." Record Document 12 at 1–2. Plaintiffs allege that they have each filed for a religious accommodation from the vaccine requirement, but none of their requests were granted. See id. at 2. At the time of filing, five of the seven Plaintiffs had their final appeals denied; Plaintiffs "expected" that they "will soon face imminent involuntary separation from the Air Force" as a result of their requests for accommodation. Id.

Each of the Plaintiffs experienced similar results when making requests for religious accommodations. Plaintiff Crocker, a Senior Airman in the Air Force Reserve,

---

[1] This Court separately dismissed the claims of Byron Starks on standing and justiciability grounds on May 4, 2023. See Record Documents 38 & 39. The Court did not address the issue of mootness in that ruling. See id.

2

submitted a request for a religious accommodation from the COVID-19 vaccine mandate on October 17, 2021. See id. at 4–5. Crocker alleges that she received a letter from Defendant Richard W. Scobee ("Scobee") disapproving her request. See id. at 5. Crocker appealed the denial of her request on December 4, 2021; this appeal was denied on February 25, 2022. See id. at 6. Crocker then received an email from her commanding officer, telling her she had five days to (1) take the vaccine, (2) submit a retirement request if eligible to do so, or (3) refuse the vaccine in writing. See id. After retaining counsel, Crocker responded to her commander with a written refusal of the vaccine. See id. Crocker claims that she now faces imminent involuntary separation from the Air Force. See id.

Plaintiff Christopher F. Duff ("Duff"), a Lieutenant Colonel in the Air Force, filed his request for religious accommodation on August 25, 2021. See id. at 7. Much like Crocker, Duff received a denial of his request and was allegedly "ordered to get the COVID vaccine, appeal, or face administrative discipline." Id. Duff filed an appeal on March 14, 2022; the appeal was subsequently denied on May 5, 2022. See id. at 7–8. Duff alleges that in the interim, on May 2, 2022, he was "notified of the cancellation of his assignment to attend Senior Development Education at Air War College," a required educational program to be eligible for promotion. Id. at 8. Duff also alleges that he faces imminent involuntary separation from the Air Force, as well as "the loss of benefits accrued through seventeen years of faithful military service." Id.

Plaintiff Wayne Johnson ("Johnson") is a Lieutenant Colonel in the Air Force Reserve, who submitted a request for religious accommodation from the vaccine mandate on October 15, 2021. See id. at 9. Scobee disapproved of Johnson's request on

November 29, 2021. See id. at 10. Johnson appealed the denial on December 13, 2021, and the appeal was denied on April 19, 2022. See id. Johnson received the same email correspondence as Crocker, requiring Johnson to take the vaccine, submit a retirement request, or refuse the vaccine in writing. See id. Johnson also alleges that involuntary separation and loss of benefits are imminent.

Plaintiff David Schadwinkel ("Schadwinkel"), a Major in the Air Force Reserve, filed a request for religious accommodation on October 7, 2021. See id. at 11. Unlike his co-plaintiffs, Schadwinkel also "noted that he previously had and recovered from COVID-19 in August 2021 and that the Air Force Instruction allowed medical exemptions" if the individual provided certain evidence. Id. On October 16, 2021, Schadwinkel's request for a medical exemption was denied, and on November 29, 2021, his religious accommodation request was similarly denied by Scobee. See id. at 11–12. Schadwinkel appealed the denial on December 6, 2021. See id. at 12. On May 6, 2022, Schadwinkel's commanding officer allegedly told Schadwinkel that he had "five days to take the vaccine injection or face penalties." Id. Schadwinkel also alleges that involuntary separation and loss of benefits are imminent.

Plaintiff Ian R. McHaley ("McHaley"), a Master Sergeant in the Air Force, submitted a request for religious accommodation from the COVID-19 vaccine mandate on September 16, 2021. See id. at 12–13. McHaley alleges that on December 22, 2021, he was notified that he was selected for a promotion to First Sergeant and would attend the Academy in June of 2022. See id. at 14. However, on April 15, 2022, McHaley was notified that his promotion was "cancelled due to his vaccination status." Id. At the time of the First Amended Complaint, McHaley's religious accommodation request had not yet been

4

denied, yet McHaley alleges imminent involuntary separation and loss of benefits due to his refusal to be vaccinated. See id.

Plaintiff Mendell L. Potier ("Potier"), a Staff Sergeant in the Air Force Reserve, filed a religious accommodation request on October 16, 2021. See id. Scobee disapproved of the request on April 9, 2022, and Potier appealed on April 9, 2022. See id. at 15. Like McHaley, Potier's religious accommodation request had not yet been denied at the time of filing, but he alleges imminent involuntary separation and loss of benefits due to his refusal to be vaccinated. See id.

### b. Rescission of the COVID-19 vaccine mandate

As noted above, the vaccination requirement at the center of this lawsuit has since been rescinded. See Record Document 34-1 at 3. On December 23, 2022, President Biden signed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"); Section 525 of the NDAA directs the Secretary of Defense to rescind the vaccination requirement for members of the Armed Forces. See id. On January 10, 2023, the Secretary of Defense issued a memorandum in accordance with Section 525 and rescinded the requirement. See id.

In the memorandum, it states: "No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds"; "The Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand"; and "The Secretaries of the Military Departments will . . . cease any ongoing reviews of current Service member religious, administrative, or medical accommodation

5

requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests." Sec'y of Def. Mem. (Jan. 10, 2023) (Gvmt Ex. 1, Rescission Memorandum). The memorandum further states: "Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect," including "the ability of commanders to consider, as appropriate the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation." Id.

On January 23, 2023, the Secretary of the Air Force issued a similar memorandum rescinding the COVID-19 vaccination requirement specific to members of the Air Force. See Record Document 34-1 at 4. This memorandum stated that "[n]o individuals currently serving in the DAF shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious" or other grounds and that "[t]he DAF will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand." Sec'y of Air Force Mem. (Jan 23, 2023) (Gvmt. Ex. 2). Further, on February 10, 2023, the Chief of the Air Force Reserve issued a memorandum rescinding prior policies that limited unvaccinated service members' participation in the Reserve. See Chief of Air Force Reserve Mem. (Feb. 10, 2023) (Gvmt. Ex. 4).

Additional guidance from the Deputy Secretary of Defense, issued on February 24, 2023, stated that the original rescission memorandum "rendered all DoD component policies, directives, and guidance implementing" the vaccination requirement "no longer in effect as of January 10, 2023." Deputy SECDEF Mem. (Feb. 24, 2023) (Gvmt. Exh. 5). The guidance makes clear that any Armed Forces' "policies, directives, and guidance

6

have not been operative since the January 10, 2023, memorandum was issued," and it directs the heads of military components, including the Air Force, to certify in writing that those policies have been formally rescinded "no later than March 17, 2023." Id. Also on February 24, 2023, the Secretary of the Air Force established procedures for removing any adverse actions from the records of members of the Air Force who did not comply with the vaccination requirement. See Sec'y of Air Force Mem. (Feb. 24, 2023) (Gvmt. Ex. 6).

### c. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that, because the Secretary of Defense rescinded the vaccination requirement and precluded "disciplining service members who requested exemptions" while the requirement was in place, Plaintiffs' claims are now moot. Record Document 34-1 at 1. Defendants assert that "Plaintiffs face no threat of discharge or other adverse consequences for their noncompliance with the now-rescinded vaccination requirement," thus leaving Plaintiffs with no viable cause of action. Id. Defendants urge this Court to follow the example set by courts across the country considering the same issue: dismiss the claims because there is "nothing for the court to do." Spell v. Edwards, 962 F.3d 175, 179 (5th Cir. 2020).

In response, Plaintiffs argue that their claims are not moot "because they can still obtain effectual relief: they have suffered adverse and unfavorable personnel actions and they remain subject to future harm, including the ongoing threat of court-martial prosecution absent judicial remedy." Record Document 36 at 1. Plaintiffs also assert that exceptions to the mootness doctrine—the collateral consequences exception, the

voluntary cessation exception, and the capable-of-repetition-yet-evading-review exception—apply here. See id.

In reply, Defendants assert that, because "[n]o Plaintiff faces discharge or other consequences under the mandate and Plaintiffs cannot prove that a new mandate is on the horizon," this lawsuit becomes purely "academic," and the Court should refuse to hear Plaintiffs' claims. Record Document 37 at 1.

## LAW AND ANALYSIS

### I. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." PNC Bank, N.A. v. Ruiz, 989 F.3d 397, 402 (5th Cir. 2021) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "The requirement that jurisdiction be established as a threshold matter…is inflexible and without exception." Keyes v. Gunn, 890 F.3d 232, 235 (5th Cir. 2018) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998)). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. See U.S. Const. art. III, § 2, cl. 1; Okpalobi v. Foster, 244 F.3d 405, 425 (5th Cir. 2001) (en banc).

A court should dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." Walmart Inc. v. U.S. Dep't of Just., 21 F.4th 300, 307 (5th Cir. 2021) (quoting Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[S]ua sponte dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction." Carver v. Atwood, 18

8

F.4th 494, 497 (5th Cir. 2021) (citing Fed. R. Civ. P. 12(h)(3)). "The party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104.

"Article III standing at the start of litigation is not enough—the controversy must remain live throughout the suit's existence." Bazzrea v. Mayorkas, No. 3:22-CV-265, 2023 WL 3958912, at *3 (S.D. Tex. June 12, 2023). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." Yarls v. Bunton, 905 F.3d 905, 909 (5th Cir. 2018) (internal quotations omitted).

## II. Analysis

The sole issue for this Court to decide is whether or not the recission of the COVID-19 vaccination requirement renders Plaintiffs' claims moot. Because this Court holds that the recission does render this lawsuit moot, the Motion to Dismiss is **GRANTED**.

### a. Mootness doctrine as applied to Plaintiffs' claims

Generally, where a plaintiff brings a lawsuit to challenge an amended or repealed statute or regulation, mootness is "the default." See Freedom From Religion Found., Inc. v. Abbott, 58 F.4th 824, 832 (5th Cir. 2023); see also McCorvey v. Hill, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); Johnson v. Mississippi, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam) ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case.").

Although few courts have fully addressed the mootness issue as it relates to COVID-19 vaccine mandates specifically, this Court finds the recent opinion from the

Southern District of Texas in Bazzrea v. Mayorkas persuasive. In Bazzrea, several Coast Guard members alleged violations of the RFRA and the First Amendment, among other things, based on the denial of their religious accommodation requests to be exempt from the COVID-19 vaccine requirement. See Bazzrea, 2023 WL 3958912, at *1. In analyzing the effect of the requirement's recission by the Secretary of Defense and the Coast Guard, the court held that because "[t]he mandates have been rescinded…there is no reason for the court to declare them unconstitutional or unlawful, nor enjoin the implementation of the mandates." Id. at *4. "As the mandates are no longer in effect or enforceable, denials of those requests currently have no effect on the plaintiffs' rights." Id. Thus, the court found that it could not provide a remedy under the mootness doctrine. See id.

The Bazzrea court went on to address the plaintiffs' argument that "they have suffered and still suffer adverse actions as a result of their religious-accommodation requests or denials." Id. For those plaintiffs who remained both in the Armed Forces and unvaccinated, the court found that, under the Coast Guard's recent memoranda, any adverse documentation in service members' personnel files was removed; this the plaintiffs did not—and could not—dispute. See id. at *5. Thus, any alleged injury was remedied, and once again, there was nothing for the court to do. See id. As for the alleged "threats of involuntary discharge and criminal prosecution for violating the rescinded mandate," the court found that such a threat only applies to "those who did not file some sort of accommodation." Id. at *6. Because each plaintiff did in fact file accommodation requests, they were clearly not subject to any alleged threat under the memoranda. See id. Finally, with respect to the plaintiffs' fear of future adverse actions, the court held that "the possibility either of no promotion or other future adverse actions is speculative and

hypothetical—and so not the type of actual, imminent, concrete, and particularized harm that Article III requires." Id. Therefore, no aspect of the plaintiffs' claims remained active, thus requiring dismissal under the mootness doctrine. See id.

As in Bazzrea, Plaintiffs' claims here are clearly moot. The challenged mandate, which at one point hung over Plaintiffs' heads, simply does not exist anymore—there is no axe left to fall. Plaintiffs are no longer required to receive a COVID-19 vaccine to remain on active duty, and no argument can be made to the contrary. Sec'y of Air Force Mem. (Jan 23, 2023) (Gvmt. Ex. 2). Additionally, both the Secretary of Defense and the Air Force itself have made clear that no adverse action may be taken against service members, like Plaintiffs, who previously sought religious accommodations in the face of the vaccine mandate. This Court agrees with Defendants that "Plaintiffs assert purely reputational harm and/or impairment of their promotion potential which are clearly speculative." Record Document 37 at 3. "No matter how vehemently the parties continue to dispute the lawfulness" of the original mandate, there is simply no impending threat to Plaintiffs' rights, and there is no live case or controversy for the Court to act on. Yarls, 905 F.3d at 909.

Notably, the Fifth Circuit recently issued a decision in Abbott v. Biden, No. 22-40399, 2023 WL 3945847 (5th Cir. June 12, 2023), addressing Texas Governor Greg Abbott's claim that the federal government's COVID-19 vaccine mandate violated the APA. The Government argued that the Governor's claims were moot because President Biden had recently rescinded the vaccine mandate. See id. at *4. The Fifth Circuit disagreed and found that the appeal was not moot because the court could still grant effectual relief. See id. Important to the Fifth Circuit's decision was the fact that "Secretary

11

Austin did not simply rescind the vaccine mandate and all related enforcement measures. Instead, he reserved the ability to punish Guardsmen who didn't seek a religious, administrative, or medical accommodation while the mandate was operative." Id. Thus, the Fifth Circuit held that, because "many Texas militiamen still face the same enforcement measures that Governor Abbott seeks to enjoin," the appeal could go forward. Id.

Here, Plaintiffs' claims are distinguishable from those of Governor Abbott because each Plaintiff did in fact seek a religious or medical accommodation from the Air Force's COVID-19 vaccine mandate. See Record Document 12. Further, Abbott presented a unique factual scenario in which state militiamen were required to obtain a federally-mandated vaccine. See 2023 WL 3945847, at *1. By contrast, Plaintiffs here are federal service members subjected only to the federal government's now-rescinded mandate. And Plaintiffs face no future adverse consequences by the clear terms of the Defense Secretary and Air Force memoranda. As Defendants put it, "Plaintiffs ignore that any and all adverse administrative actions initiated or completed in accordance with Department of the Air Force Instruction (DAFI) 36-2907, the regulation applicable in this case, have been rescinded." Record Document 37 at 3. Thus, the Court finds this case distinguishable from Abbott, and the mootness doctrine demands dismissal of Plaintiffs' claims.

### b. Exceptions to the mootness doctrine

Plaintiffs assert that their claims fall under one of three potential exceptions to the mootness doctrine, allowing this Court to hear their claims despite the recission of the vaccine mandate. See Record Document 36 at 14. The Bazzrea court tackled two of

12

these mootness exceptions and found that neither had merit in the context of vaccine mandate recissions. 2023 WL 3958912, at *6. This Court is persuaded by the <u>Bazzrea</u> court's reasoning and Defendants' arguments that none of the mootness exceptions apply here.

        **i.    Voluntary cessation**

The voluntary cessation exception to the mootness doctrine generally states that a defendant's voluntary conduct does not moot a case unless the defendant can demonstrate that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." See <u>Freedom from Religion Found., Inc.</u>, 58 F.4th at 833. "Of course, a defendant cannot moot a case simply by ending its unlawful conduct once sued." <u>Yarls</u>, 905 F.3d at 910. "Essentially, the goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." <u>Id.</u>

"[W]hen a governmental entity, rather than another kind of defendant, voluntarily ceases possibly wrongful conduct, courts extend the defendant some solicitude." <u>Bazzrea</u>, 2023 WL 3958912, at *6 (citing <u>Yarls</u>, 905 F.3d at 910). "So, '[w]ithout evidence to the contrary, [courts] assume that formally announced changes to official governmental policy are not mere litigation posturing.'" <u>Yarls</u>, 905 F.3d at 910 (first alteration in original) (quoting <u>Sossamon</u>, 560 F.3d at 325). "Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." <u>Freedom from Religion Found., Inc.</u>, 58 F.4th at 833.

In <u>Bazzrea</u>, the court found that the Department of Defense and the Coast Guard had formally rescinded the vaccine mandates, not as mere "litigation posturing," but as

13

purposeful government action. Bazzrea, 2023 WL 3958912, at *7. This Court agrees that the formal recission of the Air Force mandate, as well as the broader Armed Forces mandate, removes the controversy here. The Court assumes that the recission by the government was done in good faith. See Allied Home Mortg. Corp. v. United States HUD, 618 Fed. Appx. 781, 786 (5th Cir. 2015). Further, the possibility for the Department of Defense to reissue the mandate is too speculative to overcome the mootness doctrine. This is true even if the government "possesses the power to reenact" the mandate. Thomas v. Bryant, 938 F.3d 134, 144 n.21 (5th Cir. 2019). A hypothetical threat to Plaintiffs' rights in the future is not enough to invoke this Court's jurisdiction. See Alabama ex rel. v. Baxley v. Woody, 473 F.2d 10, 14 (5th Cir. 1973). Thus, the voluntary cessation exception does not apply here.

## ii. Capable of petition yet evading review

The capable-of-petition-yet-evading-review exception to the mootness doctrine applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Turner v. Rogers, 564 U.S. 431, 440, 131 S. Ct. 2507, 180 L.Ed.2d 452 (2011) (cleaned up). This exception only applies in exceptional situations, such as "strikes, pregnancies, or elections," where "termination of the causal event of condition may 'preclude challenge to state policies that have had their impact and that continue in force, unabated and unreviewed.'" Bazzrea, 2023 WL 3958912, at *7 (quoting Meadows v. Odom, 198 F. App'x 348, 351–52 (5th Cir. 2006) and Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 126, 94 S. Ct. 1694 (1974)).

In analyzing the claims of the Coast Guard plaintiffs in Bazzrea, the court first found that the case did not meet the duration requirement of this exception. Bazzrea, 2023 WL 3958912, at *7. The court distinguished the "challenged action" (the vaccine mandate) from the "causal or underlying event or condition" (the plaintiffs' religious objection), finding that this causal condition "is not a condition or event that was in short duration or has been terminated." Id. In other words, both the vaccine mandate and the plaintiffs' religious objections were short-lived; this is in contrast to, for example, election cases, where the election statute or rule remains active and long-lasting, while the effect on the rights of those involved in the actual election is temporary and difficult to pin down with a lawsuit. Additionally, the Bazzrea court found that "there is no reasonable expectation that the plaintiffs would be subjected to the vaccine mandates again—they have been rescinded." Id. Thus, the court found that this exception to mootness did not apply. See id.

Here, Plaintiffs face the same problems as the Coast Guard plaintiffs in Bazzrea. This does not appear to be one of those "exceptional" situations to which the capable-of-petition-yet-evading-review exception should apply. A military vaccination requirement does not "inevitably expire[]" and naturally constrain judicial review in the same way other regulations and laws under this exception do. ITT Rayonier, Inc. v. United States, 651 F.2d 343, 346 (5th Cir. 1981). Further, Plaintiffs have provided no evidence that they will be subjected to another COVID-19 vaccination requirement, and thus, they cannot show a "demonstrated probability," as opposed to a "theoretical possibility," that they will be subject to this same government action in the future. Libertarian Party v. Dardenne, 595 F.3d 215, 217 (5th Cir. 2010). Because this Court is "not in the business of pronouncing

15

that past actions which have no demonstrable continuing effect were right or wrong," the Court declines to implement this exception to the mootness doctrine here. Spencer v. Kemna, 523 U.S. 1, 18, 118 S. Ct. 978 (1998).

### iii. Collateral consequences

The collateral consequences exception to the mootness doctrine generally states that even when a plaintiff's primary injury has ceased, the case is not moot if the challenged conduct continues to cause other harm that the court is capable of remedying. See Sibron v. New York, 392 U.S. 40, 53–59 (1968).

In their reply, Defendants contest the existence of any collateral consequences to Plaintiffs as a result of their refusal to be vaccinated. See Record Document 37 at 5. Firstly, each Plaintiff's claim that he or she faces "imminent discharge" from the Air Force because of a refusal to be vaccinated no longer carries any weight. The memoranda rescinding the vaccination mandate make clear that "[n]o individuals currently serving in the DAF shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious" or other grounds. Sec'y of Air Force Mem. (Jan 23, 2023) (Gvmt. Ex. 2). Thus, there is no threat of discharge based on Plaintiffs' religious accommodation requests.

Additionally, Defendants point out that Duff, who received a Letter of Counseling after he refused to be vaccinated, had the letter removed from his personnel records, pursuant to the memoranda described above. See id. (Gvmt. Ex. 7 at ¶3). Additionally, Crocker, who received a Letter of Reprimand after she refused to be vaccinated, also had the letter removed from her personnel records. See id. (Gvmt. Ex. 7 at ¶4). The Court agrees with Defendants that, by the terms of the Air Force's own memoranda, the records

of service members such as Duff and Crocker no longer display any lingering reprimands based on their religious accommodation requests. Thus, Crocker and Duff simply do not face any adverse collateral consequences after the recission of the vaccine mandate.

Plaintiff McHaley alleges that he was denied his First Sergeant assignment because of his vaccination status. However, as Defendants point out, this Court has no authority to interfere in such "professional military judgments" and promotional decisions made within the military branch. Austin v. Navy SEALs 1-26, 142 S. Ct. 1301, 1302 (2022). Further, McHaley offers no support for his claim that he was denied the special duty status because of his refusal to get the vaccine on religious grounds. And, considering the newly issued memoranda asserting that no disciplinary actions may be taken against those service members who requested religious accommodations, it does not appear that McHaley could find support for his claim now. See Sec'y of Air Force Mem. (Jan 23, 2023) (Gvmt. Ex. 2). Any collateral consequences to McHaley are speculative at best and not subject to review by this Court.

Defendants argue that, as for Potier, who alleges an additional loss of pay as a result of his refusal to get the COVID-19 vaccine, any suit for damages he may bring falls under the Tucker Act, 28 U.S.C. § 1491(a)(1), which allows for limited waiver of sovereign immunity for certain monetary actions against the United States. The Court agrees with Defendants that Potier's claim for monetary damages invokes the Tucker Act, and such a claim must be brought in the Court of Federal Claims, not in district court. See Record Document 37 at 5. Thus, if Potier has an additional claim for monetary damages, it does not revive the instant suit in this Court.

In sum, Plaintiffs have not established that any of the exceptions to the mootness doctrine apply to their case. Several of the Plaintiffs had not yet even reached the end of the appeals process for their accommodation requests when this suit was filed, and none of the Plaintiffs can show the threat of impending separation from the Air Force still exists, regardless of the state of their appeal. The Court is not persuaded by Plaintiffs' new arguments that additional consequences may exist—too much speculation is required for any of these alleged consequences to come to fruition. Thus, the Court finds that Plaintiffs' claims are moot due to the recission of the COVID-19 vaccination requirement, and the Court lacks jurisdiction to hear the claims.

## CONCLUSION

Based on the reasons outlined above,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Record Document 34) is **GRANTED**. All claims filed by Plaintiffs in the Complaint are **DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 22nd day of June, 2023.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT