IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO – Western Division at Cincinnati

| | | |
|---|---|---|
| **HUNTER DOSTER, et. al.** | : | |
|     Plaintiffs | : | |
| v. | : | Case No. 1:22-CV-84-MWM |
| **FRANK KENDALL, et. al.** | : | |
|     Defendants | : | |

**PLAINTIFFS' MEMORANDUM REGARDING MOOTNESS WITH DECLARATIONS OF JOE DILLS AND CHRIS SCHULDES IN SUPPORT – ORAL ARGUMENT REQUESTED**

Plaintiffs, through Counsel, provide this brief on the issue of mootness, pursuant to the Court's notation order of January 30, 2024. Plaintiffs request oral argument on this.

**I.  Factual and Procedural Background**

This case was filed on February 15, 2022, as a consequence of Defendants' intentional mishandling of religious accommodation requests to their COVID-19 vaccination mandate. (Compl., Doc. 1.) The Complaint sought declaratory and equitable relief. *Id.*  A class action was plead and, ultimately, certified. (*Id.*; Doc. 72). The claims raised were solely under the Religious Freedom Restoration Act (42 U.S.C. 2000bb) ("RFRA") and the First Amendment's Free Exercise Clause. *Id.*

The Court granted preliminary injunctive relief that prohibited Defendants from continuing certain adverse actions against the named Plaintiffs (Doc. 47). Later, the Court also issued injunctive relief for the class it had certified, and this relief included requiring Defendants to restore reservists to the active reserves from the Individual Ready Reserves ("IRR"). (Doc. 77, 86.) Defendants appealed and lost in two published decisions by the Sixth Circuit. *See Doster v. Kendall*, 48 F. 4th 608 (6th Cir. 2022); *Doster v. Kendall*, 54 F. 4th 398 (6th Cir. 2022).

1

In December 2022, Congress passed the James M. Inhofe National Defense Authorization Act ("NDAA") for Fiscal Year 2023, Pub. L. No. 117-263, 136 Stat. 2395 (2022). The NDAA required rescission of the vaccine mandate within 30 days. *Id.* In the meantime, the Secretary of Defense[1] and the Secretary of the Air Force[2] each issued memoranda in early 2023, not only rescinding the vaccine mandate, which was all that Congress required in the NDAA, but also discontinuing and rescinding certain adverse actions Defendants had taken against those who timely sought, but been denied, religious accommodations from the COVID vaccine mandate. On February 24, 2023, the Secretary of the Air Force issued further guidance on the removal of additional adverse actions Defendants had taken against Plaintiffs and class members.[3]

Recently, and in light of these actions taken by the Air Force, the Supreme Court directed vacatur of the preliminary injunction decisions (but did not direct that the case be dismissed for mootness, despite Defendants making that very argument). *Kendall, Secretary of the Air Force v. Doster*, No. 23-154, 601 U.S.___ (2023).

SSgt Dills is a named Plaintiff and a reservist. During the period of time SSgt Dills was in the IRR because he had refused the COVID vaccine, SSgt Dills was denied $2,972.56 in drill pay (i.e., back pay) for the drill weekends he missed from January to August 2022. (Dec. Dills ¶¶ 4-7.) This consisted of 4 drill periods per weekend, at E-5 pay. *Id.* During this same period, SSgt Dills also was denied reserve retirement points, to include four reserve retirement points for each drill weekend during this six-month period, for a total of thirty-two reserve retirement points. (*Id.*

---

[1] https://media.defense.gov/2023/Jan/10/2003143118/-1/-1/1/SECRETARY-OF-DEFENSE-MEMO-ON-RESCISSION-OF-CORONAVIRUS-DISEASE-2019-VACCINATION-REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES.PDF (SECDEF Memoranda, dated January 10, 2023, last accessed 1/23/2024).

[2] https://media.defense.gov/2023/Jan/24/2003148810/-1/-1/1/DAF%20COVID-19%20VACCINATION%20MANDATE%20RESCISSION.PDF (SECAF Memoranda, dated January 23, 2023, last accessed 1/23/2024).

[3] https://www.af.mil/Portals/1/documents/2023SAF/PolicyUpdates/L6JT_SecAF_Signed_DAF_guide_Adverse_Actions_Religious_Requests_24Feb23.pdf (last accessed 1/23/2024).

¶¶ 5, 8, 9.) This loss of retirement points resulted in SSgt Dills not receiving a "good year" in 2022 towards military retirement, thus requiring him to serve an additional year of service beyond the term he otherwise would need to serve. (*Id.* ¶¶ 9-10.) As a result, unless corrected by order of the Court, SSgt Dills ultimately will draw less retirement pay when he retires as a consequence of the illegal discipline taken against him for refusing the COVID vaccine. (*Id.* ¶ 11.) To date, Defendants have not restored any back pay or retirement points SSgt Dills lost during this eight-month period, and Defendants have not announced any intention to do so. (*Id.* ¶ 12.)

SMSgt Schuldes is in the same situation as SSgt Dills, though his back pay is $3,436.64 of drill pay. (Dec. Dills ¶ 6.) He likewise was denied retirement points. (*Id.* ¶¶ 3-5, 7-9.) This loss of retirement points resulted in SMSgt Schuldes not receiving a "good year" in 2022 towards military retirement, requiring him to serve an additional year of service beyond the term he otherwise would need to serve. (*Id.* ¶¶ 8-9.) As a result, unless corrected by order of the Court, SMSgt Schuldes ultimately will draw less retirement pay when he retires as a consequence of the illegal discipline taken against him for refusing the COVID vaccine. (*Id.* ¶ 10.) To date, Defendants have not restored any backpay or retirement points SMSgt Schuldes lost during this eight-month period, and Defendants have not announced any intention to do so. (*Id.* ¶ 11.)

Three salient points thus are in order: first, the corrective action voluntarily taken by Defendants to date (the rescission of the vaccine mandate was required by the NDAA, the rest of the corrective action taken by Defendants was voluntary) moots most of this case for many of the named Plaintiffs and much of the class;[4] second, the remaining equitable relief sought by Plaintiffs and class members who are reservists would consist of ordering the restoration of lost drill pay and retirement points for those reservists who were involuntarily placed into the IRR because they

---

[4] From our investigation, we have identified approximately 700-800 impacted reservists.

continued to refuse the COVID vaccine after their well-founded religious accommodation requests were denied (this group is not every reservist, since not every reservist lost drill pay or retirement points); and third, if the Court agrees that the case is not moot (and, as explained below, it is not), we would propose (i) amending the complaint to remove all of the named Plaintiffs other than Plaintiffs Dills and Schuldes and to make clear that the remaining relief consists solely of a restoration remedy consisting of an order directing the restoration of drill pay and retirement points; (ii) consolidating the matter with Lt. Poffenbarger's matter (3:22-cv-00001-MWM); and (iii) appropriately modifying the class to limit it to those reservists who submitted a religious accommodation request, and then were denied drill pay and/or retirement points because they were put into the IRR.

**II.     Law and Argument**

There is a significant and material difference, of course, between a preliminary injunction being moot and a case being moot. "While the appeal of the preliminary injunction decision has been mooted by the Order's withdrawal, that does not necessarily render the entire case moot." *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir. 2021). After all, mootness as to preliminary injunction appeals "may not speak to mootness of the underlying case." *Id.*, citing *Ohio v. United States EPA*, 969 F.3d 306, 309-310 (6th Cir. 2020); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394-95, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).

While the Supreme Court's disposition of *Doster*, No. 23-154, 601 U.S.___ makes plain that the <u>*preliminary injunctions*</u> issued by this Court are now moot, and should have been vacated as such, it does not render the entire case moot. Plaintiffs no longer face the prospect of being forced to choose between their military service and potentially going to prison for their well-founded religious beliefs. However, that only effects the relief ordered in the preliminary

4

injunction, none of which is still at issue here. However, not all the illegal harm suffered as a consequence of Defendants' illegal conduct has been remedied.

Consequently, as the Sixth Circuit explained in *Ramsek*, 989 F.3d 494, 500, and *Ohio*, 969 F.3d 306, 309-310, and the United States Supreme Court explained in *Camenisch*, 451 U.S. 390, 394-95, this still unremedied harm renders the case not moot.

Start here: the "heavy burden of persua[ding]" the Court that this matter is moot lies with Defendants, not Plaintiffs. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 189 (2000), quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968). And, "a case 'becomes moot only when it is **impossible** for a court to grant **any** effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U. S. 165, 172 (2013) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* If there is any additional relief that can be awarded, however, small, a case is not moot. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307-308 (2012); *Chafin*, 568 U. S. 165, 172.

Under the "collateral consequences" exception to mootness, when the plaintiff's primary injury has ceased, the case is not moot if there remains other harm the court is capable of remedying. *See Sibron v. New York*, 392 U.S. 40, 53-59 (1968). A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984).

It is well-settled that new legislation does not *ipso facto* eliminate the discriminatory intent behind older legislation, nor does it moot a dispute regarding the violation of law. *See Hunter v. Underwood*, 471 U.S. 222, 232-33 (1985) (events over 80 years to change the terms of the law do

not eliminate its original discriminatory intent); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408-09 (5th Cir. 1991); *N. C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016).

In *Akers v. McGinnis*, 352 F.3d 1030 (6th Cir. 2003), the Michigan Department of Corrections ("MDOC") repealed a series of contested work regulations while the case was still pending. Nevertheless, and for two distinct reasons, the Sixth Circuit held that the repeal did not moot the case. First, "there was no guarantee that MDOC [would] not change back to its older, stricter [r]ule as soon as [the] action [was] terminate[d]." *Id.* at 1035. Second, and more importantly to the Court's mootness analysis here, because additional corrective relief could be awarded, and the amendment/rescission did not completely eradicate the harm associated with the contested policies, the case was not moot. *Id.*

Only the act of fully remedying all harm can moot a case, and it is undisputed that has not occurred here. *See Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983) (explaining that only receipt of "all of the relief sought" will moot the case); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) (noting that a claim becomes moot when a plaintiff actually receives complete relief).

Here, Plaintiffs sued for equitable relief in their Complaint, and the equitable relief for this unremedied harm is the restoration of back pay and retirement points for reservists, to include SSgt Dills and SMSgt Schuldes, who were deprived of that back pay and retirement points while in the IRR.

Several points are in order in that regard. First, RFRA permits damage claims. *See Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). And, as this matter is a RFRA case involving claims for back pay and retirement points, these claims are justiciable as a matter of equitable relief and are within the

6

authority of this Court to award. *See U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014); *Schelske v. Austin*, 2023 U.S. Dist. LEXIS 163101 (NDTX 2023).

In *Schelske*, a separated soldier, who sought and was denied a religious accommodation to the COVID-19 vaccine mandate, sued under RFRA and sought equitable relief to include reinstatement and back pay. 2023 U.S. Dist. LEXIS 163101. Despite the Government arguing that the case was moot, certain equitable relief was still required where the corrective actions taken by the Secretaries of the Army and Defense did not include all of the requested equitable relief which, like this matter, involved restoration of back pay and lost retirement points.

In addressing the mootness issue, the *Schelske* Court first determined that exhaustion of military remedies did not apply to claims under RFRA. *Id.* at *93-*102. And, because back pay (and retirement points) were merely to restore that plaintiff to the position he held prior to defendants' illegal action, they were justiciable. *Id.* at *105-*111. The facts of *Schelske* are the same as the facts here.

That is because the additional equitable relief here, restoration of wrongly withheld drill pay and retirement points, from January to August 2022, is restitutionary in nature. *Id.,* citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) and *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990). Restitution here involves the remaining equitable relief that "is limited to 'restoring the *status quo* and ordering the return of that which rightfully belongs'" to the plaintiff. *Id.*, citing *Tull v. United States*, 481 U.S. 412, 424 (1987) and *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). *See, also, Harkless v. Sweeny Independent School Dist.*, 427 F.2d 319 (5th Cir. 1979).

Because back pay is equitable rather than legal relief, this Court can order such relief. *See Kolstad v. ADA*, 527 U.S. 526 (1999); *West v. Gibson*, 527 U.S. 212, 119 S. Ct. 1906 (1999); *Schelske*, 2023 U.S. Dist. LEXIS 163101.[5] The remedy of restoration of back pay and retirement points, which is equitable in nature, runs to the official capacity of the Defendants who wrongly took SSgt Dills and SMSgt Schuldes off of a pay and points status as active reservists, and it is entirely within the purview of this Court to grant. *See Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014); *Cimerman v. Cook*, 561 Fed. Appx. 447 (6th Cir. 2014); *Turker v. Ohio Dep't of Rehaabilitation & Corrections*, 157 F.3d 453, 459 (6th Cir. 1998) ("reinstatement [is] … prospective equitable relief").

"[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946). And back pay is an equitable remedy distinct from damages. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975); *Howe v. City of Akron*, 801 F.3d 718, 744 (6th Cir. 2015) (explaining that back pay is an equitable remedy, part and parcel with eradicating the effects of discrimination).

In fact, not only is back pay an equitable remedy, the Sixth Circuit has held that back pay class actions are appropriate as equity class actions pursuant to FRCP 23(b)(2). *See Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 649-650 (6th Cir. 2006); *Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 565 F.2d 1364, 1372 (6th Cir. 1977) ("A request for back pay does not preclude certification under

---

[5] Both SSgt Dills and SMSgt Schuldes back pay is under $10,000, and this Court has jurisdiction over the claim. *See* 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1331. Based on Plaintiffs' investigation to date, no affected reservist has a back pay claim over $10,000, and, in any event, Plaintiffs agree to cap any back pay award to $9,999.

[23(b)(2)]."); *Coleman v. GMAC*, 296 F.3d 443, 450 (6th Cir. 2002) (back pay is an equitable remedy); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (same)

In any event, even *if* back pay cannot be awarded (and, as noted above, it can), retirement credit and points plainly can be awarded as a matter of equity. RFRA affords "appropriate relief." 42 U.S.C. § 2000bb-1(c). Retirement credit has long been determined to be equitable relief by courts. *See Downie v. Independent Drivers Ass'n Pension Plan*, 934 F.2d 1168 (10th Cir. 1991); *Oppenheim v. Campbell*, 571 F.2d 660, 661-663 (D.C. Cir. 1978) (retirement credit is equitable relief); *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (explaining wide-ranging equitable relief available for similar "appropriate" remedy statute).

And this equitable relief, under the constructive service doctrine, can "return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting *Dilley v. Alexander*, 627 F.2d 407, 413, 200 U.S. App. D.C. 354 (D.C. Cir. 1980)).

Without question, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). And, awarding equitable relief to reservists simply is the same "root and branch" relief envisioned by the Sixth Circuit as a final remedy in *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022).

In *Schelske*, after the Army defendants moved to dismiss on the basis of purported mootness, and after the partial denial of that motion, the parties involved the court which then appointed a magistrate judge, who caused a settlement in the *Schelske* matter. We would anticipate a similar outcome here. A motion to dismiss on similar grounds is pending in the *Poffenbarger* case, with one reservist who, like SSgt Dills and SMSgt Schuldes, was denied drill pay and retirement points while in the IRR and has not had either restored. The Supreme Court's decision

9

in *Doster* likely forecloses certain mootness arguments – such as the voluntary cessation exception (which requires some showing of a likelihood to reinstitute the mandate) or capable of repetition yet avoiding review exception – but does not in any way foreclose arguments about restoring retirement points and lost pay, as the preliminary injunction that was ordered vacated would have no effect on such remaining equitable relief.

In response to settlement overtures here, Defendants acknowledged that the requested relief had not been afforded and claimed it could not be afforded, arguing that the remaining relief was foreclosed due to sovereign immunity. There are several fundamental problems with Defendants' argument. First, the little Tucker Act, 28 U.S.C. § 1346(a)(2) applies, as SSgt Dills's and SMSgt Schuldes's claims for back pay are under the $10,000 threshold, conferring jurisdiction on this Court. *See also Ayala v. United States*, 624 F. Supp. 259 (SDNY 1985) (explaining that a claim for wrongful or illegal transfer into the IRR was stated, including for back pay, but because the amount of back pay exceeded $10,000, jurisdiction had to lie in the Court of Claims).

Second, and most fundamentally, and as the court explained in *Schelske*, Congress waived sovereign immunity for equitable claims, which includes claims for back pay. 2023 U.S. Dist. LEXIS 163101 at *105-*106, *citing Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994), *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), and *Tull v. United States*, 481 U.S. 412, 424 (1987).

Likewise, the D.C. Circuit made clear that sovereign immunity did not bar claims for back pay because the nature of back pay claims was equitable relief. *See Hubbard v. Administrator, EPA*, 982 F.2d 531, 547-548 (D.C. Cir. 1992). The *Hubbard* Court explained that where a plaintiff is illegally denied a job or its emoluments, restitutionary relief applies and thus an "award of instatement and back pay gives Hubbard the precise thing to which he was entitled and therefore

10

constitutes specific restitution." *Id.* "Although such an award involves money, that alone does not take it outside equity." *Id.*

*Hubbard*, in turn, cited *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1998), for the proposition that sovereign immunity did not bar claims that involved money in some circumstances. The Supreme Court in *Bowen* explained that it was "an equitable action for specific relief" when a government employee sought "an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions.'" *Id; see also Ulmet v. United States*, 888 F.2d 1028, 1030-31 (4th Cir. 1989) (finding jurisdiction in the district court to award back pay, although sanctioning its decision to defer to the Claims Court); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1381 (10th Cir. 1990) (dicta), cert. denied, 112 L. Ed. 2d 860, 111 S. Ct. 799 (1991); *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983) (in rejecting a First Amendment damages claim, the court wrote: "As a federal employee, she could have sought equitable relief, i.e., reinstatement and back pay, pursuant to the Administrative Procedure Act"); *Nixon v. United States*, 290 U.S. App. D.C. 420, 938 F.2d 239, 251 n.4 (D.C. Cir. 1991). Other Courts are in agreement. *See Wenrich v. Empowered Mgmt. Sols. LLC*, 2019 U.S. Dist. LEXIS 130041 (D. Co. 2019) (explaining back pay claims against the Army were equitable claims, and were not barred by sovereign immunity); *see, also, Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006) (RFRA's enactment was a waiver of sovereign immunity for equitable claims, but not traditional money damages relief).

In the related *Poffenbarger* matter, the Government disingenuously argued that other courts have somehow rejected the requested additional relief here. The Government cited *Creaghan v. Austin*, 2023 U.S. App. LEXIS 31107 (D.C. Cir. 2023), a case where the military member sought

11

money damages (specifically nominal damages), but did not seek retirement points or backpay, as Plaintiffs do here. The Government also cited *Crocker v. Austin*, 2023 U.S. Dist. LEXIS 108509 (WDLA 2023), a case where the court determined that the claim for loss of pay exceeded the $10,000 threshold for the little Tucker act, 28 U.S.C. § 1346(a)(2), and, as a consequence, had to be brought in the Court of Claims, which is <u>not</u> the case here. And, *Crocker* did not even address reserve retirement points. Next, the Government cited *Bazzrea v. Mayorkas*, 2023 U.S. Dist. LEXIS 101876 (SDTX 2023), a case where the plaintiffs sought generalized damages, as opposed to equitable backpay and retirement point restitution. And finally, the Government cited *Davis v. Austin*, 2023 U.S. Dist. LEXIS 115152 (MDFL 2023), where the court also found that backpay claims had to be sought in the Court of Federal Claims, because such pay exceeded the $10,000 jurisdiction of district courts. Here, again, we only have claims for retirement points and reservist backpay claims, where none of those back pay claims exceed or will exceed the $10,000 threshold for the little Tucker act, 28 U.S.C. § 1346(a)(2).

Returning to *Schelske,* that court explained that, because of the nature of a RFRA claim, "appropriate relief," included equitable relief consisting of an award of back pay. 2023 U.S. Dist. LEXIS 163101. So too here. And Defendants arguments that reservists somehow are different are unavailing. RFRA provides a remedy for "appropriate relief," 42 U.S.C. 2000bb-1(c), and that necessarily includes restitutionary relief for the reservists. One final point is in order: the Government has pointed out, in *Poffenbarger*, that the final injunctive relief decision was vacated as moot by the United States Supreme Court. That is true, as far as it goes. But the Supreme Court <u>left in place</u> the earlier published stay decision, which is now binding precedent and the law of the case, in *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022), in which the Court explained that "an appropriate remedy might more narrowly enjoin the Department to abolish the discriminatory

policy, root and branch, and to enjoin any adverse action against the class members on the basis of denials of religious exemptions pursuant to that policy." And, in the same vein, such root and branch relief, from an injunctive relief perspective, has traditionally involved a make-whole remedy. Here, for the active reservists, that requires restoring to them the back pay and retirement points that were lost as a consequence of the discriminatory policy.

As the Sixth Circuit recently explained in *Ramsek*, 989 F.3d 494, 500, and *Ohio*, 969 F.3d 306, 309-310, and the United States Supreme Court explained in *Camenisch*, 451 U.S. 390, 394-95, where relief remains that can be awarded, the case, unlike the preliminary injunction, is not moot. Here, it is undisputed SSgt Dills and SMSgt Schuldes have not received corrective action concerning their back pay and lost retirement points, leaving that equitable relief for the Court to award.

### III. Conclusion

Plaintiffs are entitled to obtain "appropriate relief" against the Government. *See* 42 U.S.C. 2000bb-1(c). That relief includes restoration of back pay and lost retirement points for active reservists as part of a restitution remedy. The case is not moot.

In any event, Plaintiffs are entitled to, and will seek by motion, upon a final order in this matter, reasonable attorney fees and costs as the prevailing parties in this matter. *See Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023).

Respectfully submitted,

/s/ Christopher Wiest_____  
Christopher Wiest (OH 0077931)  
Chris Wiest, Atty at Law, PLLC  
25 Town Center Blvd, Suite 104  
Crestview Hills, KY 41017  
513/257-1895 (c)  
859/495-0803 (f)  
chris@cwiestlaw.com  

/s/Aaron Siri_____  
Siri & Glimstad LLP  
Aaron Siri (admitted PHV)  
Elizabeth A. Brehm (admitted PHV)  
Wendy Cox (admitted PHV)  
745 Fifth Avenue, Suite 500  
New York, NY 10151  
(212) 532-1091 (v)

|  |  |
|---|---|
|  | (646) 417-5967 (f) |
| /s/Thomas B. Bruns_____ | aaron@sirillp.com |

Thomas B. Bruns (OH 0051512)
Bruns, Connell, Vollmar & Armstong
4555 Lake Forest Dr. Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing by electronic mail this 9th day of February 2024.

/s/ Christopher Wiest_____