**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – at Cincinnati**

| | | |
|---|---|---|
| **HUNTER DOSTER, et al.,** | : | **Case No. 1:22-cv-00084-MWM** |
| **Plaintiffs** | : | |
| **v.** | : | |
| **FRANK KENDALL, et. al.,** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS/INTERIM[1] ATTORNEY FEES AND COSTS**

     Plaintiffs, through Counsel, and pursuant to 42 U.S.C. §1988 and L.R. 54.2, move this Court to award their reasonable attorney fees and litigation expenses/costs. This motion is supported by the declarations of counsel, supporting exhibits, and the declaration of Jason Kuhlman, Esq. A memorandum in support is attached hereto and a proposed order is attached.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com

/s/ Thomas Bruns
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLC
4555 Lake Forest Dr., Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890

/s/ Aaron Siri
Siri Glimstad, LLP
Aaron Siri (admitted PHV)
Elizabeth A. Brehm (admitted PHV)
Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

*Attorneys for Plaintiffs*

---

[1] Plaintiffs are evaluating an appeal of the dismissal of this case and additional fees may be warranted for any appellate fee time; if any appeal is successful, then Plaintiffs would seek additional attorney fees and costs for the appeal and subsequent litigation.

## MEMORANDUM IN SUPPORT

### I. FACTS

Eighteen named plaintiffs, all members of the Air or Space Force (either active duty or reservists) challenged under RFRA, for themselves and on a class-wide basis ("Plaintiffs"), Defendants' *pro forma* denial of religious accommodation to Defendants' COVID-19 vaccination mandate. (Doc. 1.) On March 31, 2022, this Court issued a merits-based preliminary injunction to halt that ongoing religious discrimination. (Doc. 47.) On July 14, 2022, this Court certified a class action (Doc. 72) and on July 27, 2022, this Court issued a merits-based preliminary injunction class-wide (Doc. 77).

Defendants separately appealed both injunctions, and the Sixth Circuit, in a published decision, declined to stay those injunctions. *See Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022). The Sixth Circuit then directed simultaneous briefing of both appeals taken by Defendants (6th Cir. Case Nos. 22-3797; 22-3704). Extended oral argument was scheduled and held. The Sixth Circuit affirmed both injunctions on the merits on November 29, 2022. *See Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022). Ultimately, those injunctions remained of record for more than a year and a half and were never dissolved or undone on the merits. (Doc. 123.)

In addition to appellate proceedings, the parties also mutually engaged in extensive discovery practice, including full written discovery and the production of a large volume of documents, as well as preparatory steps for depositions and expert discovery. (*See* Dec. Wiest; Dec. Bruns; Dec. Brehm).

In December 2022, Congress enacted the 2023 NDAA. That legislation required the rescission of the COVID-19 vaccination mandate, but did not mandate rectifying certain adverse actions taken against class members from having their well-founded religious accommodation

requests summarily denied. *Id.* By February 2023, voluntary steps had been taken to address certain adverse actions related to prior refusals to comply with the mandate, at least for Plaintiffs, all of whom had timely pursued religious accommodations. (Docs. 100, 105, 105). Then, in November 2023, the Supreme Court of the United States determined that the injunctions issued by this Court had become moot as a consequence of the passage of the NDAA and the other steps taken by Defendants, and directed that the injunctions be vacated for mootness, which this Court implemented on January 18, 2024. (Doc. 123.) Significant to the within Motion, the Supreme Court did not overturn or otherwise undo the preliminary injunctions on the merits. *Id.* This Court then dismissed the case as moot on March 18, 2024. (Doc. 127.)

Now, Plaintiffs timely move for attorney fees and costs, supported by the declarations and exhibits of counsel, including invoices of counsel and expense logs. (*See* Decls. of Wiest, Bruns, Brehm). Plaintiffs' motion is also supported with the declaration of an outside counsel who has reviewed the underlying invoices for reasonableness. (*See* Dec. Kuhlman.) As explained below, the hourly rates are standardized in this district using the *Rubin* matrix. *Id.* The attorney fees sought by firm and billing attorney are as follows:

| Attorney (and firm) | Hourly rate | Hours | Total |
|---|---|---|---|
| Thomas Bruns (Bruns Connell) | $640 | 502.6 | $321,646.00 |
| Chris Wiest (Chris Wiest Law) | $565 | 826.2 | $466,803.00 |
| Aaron Siri (Siri & Glimstad) | $565 (normal) $282.50 (travel) | 84.0 13.7 | $47,460.00 $3,870.25 |
| Elizabeth Brehm (Siri & Glimstad) | $565 | 87.6 | $49,494.00 |
| Wendy Cox (Siri & Glimstad) | $565 (normal) $282.50 (travel) | 1372.5 8.5 | $775,463.50 $2,401.25 |
| Mason Barney (Siri & Glimstad) | $565 | 9.7 | $5,480.50 |
| Charice Holtsclaw (Siri & Glimstad) | $565 | 37.7 | $21,300.50 |
| Ursula Smith (Siri & Glimstad) | $480 | 5.0 | $2,400.00 |

| | | | |
|---|---|---|---|
| Walker Moller (Siri & Glimstad) | $480 | 3.3 | $1,584.00 |
| Dana Stone Smith (Siri & Glimstad) | $480 | 289.5 | $138,960.00 |
| Marc Dudley (Siri & Glimstad) | $305 | 43.6 | $13,298.00 |
| Kimberly Hertz (Siri & Glimstad) | $185 | 2.8 | $518.00 |
| Nicky Tenny (Siri & Glimstad) | $185 | 23.9 | $4,421.50 |
| Gina Manella (Siri & Glimstad) | $185 | 274.2 | $50,727.00 |
| **TOTAL** | | | **$1,905,827.50** |

(*See* Decls. of Wiest, Bruns, Brehm). Plaintiffs reserve the right to supplement for time spent on the Reply to this motion, or for any additional time incurred on any appeal to any attorney fee decision.

The total expenses sought by each firm are as follows:

| Firm | Expense total |
|---|---|
| Bruns Connell | $34 |
| Chris Wiest Law | $3,900.68 |
| Siri & Glimstad | $8,326.43 |
| **TOTAL** | **$12,261.11** |

*Id.*

## II.  LAW AND ARGUMENT

### A.  Plaintiffs are the Prevailing Party and are Entitled to Attorney Fees and Costs

Under 42 U.S.C. 1988(b), "[i]n any action or proceeding to enforce a provision of … the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.] … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…" Although the plain text of RFRA makes it seem that an award of fees to the

4

prevailing party is discretionary, U.S. Supreme Court precedent makes clear that the public policy considerations behind 42 U.S.C. 1988 – namely, to help ensure that parties who vindicate civil rights (often for others) are able to obtain competent and qualified counsel and are successful in doing so – render such fee awards virtually mandatory.

That is because when a plaintiff succeeds in remedying a civil rights violation he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam). He therefore "should ordinarily recover an attorney's fee" from the defendant--the party whose misconduct created the need for legal action. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978) (internal quotation marks omitted). Fee shifting in such a case at once reimburses a plaintiff for "what it cos[t] [him] to vindicate [civil] rights," *Riverside v. Rivera*, 477 U.S. 561, 577-578, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (internal quotation marks omitted), and holds to account "a violator of federal law," *Christiansburg*, 434 U.S. at 418.

"The touchstone of the prevailing party inquiry ... is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (internal citations and quotation marks omitted). "A material change 'directly benefits' a plaintiff by modifying the defendant's behavior toward him." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010). With respect to a preliminary injunction, there is only prevailing party status if the injunction represents "an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988).

Once the prevailing civil rights plaintiff achieves a material alteration in the parties' legal relationship, the plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 133 S. Ct. 9, 11-12 (2012) (internal quotations and citation omitted); *see also Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (prevailing civil rights plaintiff "should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action") (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416 (1978)). This is so because "[w]hen a plaintiff succeeds in remedying a civil rights violation ... [s]he serves 'as a private attorney general, vindicating a policy that Congress considered of the highest priority.'" *Id.* at 2213 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968) (per curiam)).

And a plaintiff "crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *Id.* at 603 (*quoting Tex. State Teachers Ass'n*, 489 U.S. at 790-91). "[C]ourts do not look to the number of claims on which the plaintiff succeeded, the magnitude of the relief obtained, or whether the plaintiff obtained the primary relief sought; the question is simply whether the plaintiff has won on at least one claim." *Woods v. Willis*, 631 F. App'x 359, 364 (6th Cir. 2015).

Likewise, the "[p]laintiffs' 'unsuccessful' requests for permanent injunctive relief, class certification, a declaratory judgment, trial by jury, and damages do not prevent them from establishing prevailing-party status." *Miller v. Davis*, 267 F. Supp. 3d 961, 979 (EDKY 2017), affirmed by *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). Rather, "[i]f the preliminary injunction effected an enduring and material change in the parties' legal relationship, Plaintiffs can establish prevailing-party status." *Id.* Moreover, "[a]warding Plaintiffs attorneys' fees does not

6

contradict or frustrate the Sixth Circuit's Order instructing this Court to vacate the preliminary injunctions." *Id.* "When a case becomes moot, courts often vacate their earlier rulings on the theory that a ruling should not stand when the party opposing it is deprived of a chance to obtain a final ruling on the issue or to seek appellate review of it—due to events outside of the party's control." *McQueary*, 614 F.3d at 600.

The Sixth Circuit examines the issue of whether a party is a prevailing party in the context of a preliminary injunction by instructing that district courts are to engage in a contextual and case-specific inquiry to determine whether a preliminary-injunction winner "prevailed" within the meaning of § 1988. *Id.* In engaging in that required analysis, not even legislative changes will preclude prevailing party status on preliminary injunctive relief. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) (Sixth Circuit held "plaintiffs qualif[ied] as prevailing parties" despite a legislative change).[2]

In *Miller*, the district court analyzed the factors regarding prevailing party status where the preliminary injunctive relief occurred in the context of marriage licenses and determined that: (1) the preliminary injunction success materially altered the legal relationship between plaintiffs and defendant; (2) the preliminary injunction "directly benefited" plaintiffs by modifying the defendant's behavior towards them; and (3) the material change in the legal relationship between plaintiffs and defendant was judicially sanctioned. 267 F. Supp.3d 961 at 981. And, in *Miller*, the district court found it significant that "Plaintiffs' action sought to force [Defendant] to comply with the law, obey the Constitution, and cease violating Plaintiffs' fundamental rights." *Id.* at 983.

---

[2] Most circuits hold that voluntary repeal or change of a challenged statute or order after the entry of preliminary injunctive relief will render the plaintiff a prevailing party. *See, e.g., Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009); *Dearmore v. City of Garland*, 519 F.3d 517 (5th Cir. 2008); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3rd Cir. 2008).

Here, the preliminary injunctions against Defendants' religious discrimination were granted on the merits. (Docs. 47 and 77.) And, as in *Miller*, the injunctions materially altered the legal relationship between Plaintiffs and Defendants. Also, as in *Miller*, the preliminary injunctions "directly benefited" Plaintiffs by modifying Defendants' behavior towards them. Third, and also as in *Miller*, the material change in the legal relationship between Plaintiffs and Defendants was judicially sanctioned. Fourth, and also as in *Miller*, the court-ordered change in the parties' legal relationship was enduring and irrevocable. 267 F. Supp.3d 961 at 983. That is true, in part because, as also was the case in *Miller*, "Plaintiff['s] preliminary success was not undermined by a later decision on the merits." *Id.* at 983.

Without question, here, the entry of these injunctions and the passage of time have ensured that Plaintiffs did not lose their ability to continue their service in the Air and Space Force, and that is an "irrevocable" benefit that "cannot be taken away." *Miller*, 267 F. Supp.3d 961 at 984.

Finally, the injunction was kept in place for a substantial period of time – indeed, for sufficient enough time for Congress to ultimately direct the repeal of the very mandate from which Plaintiffs sought an exemption. (Docs. 100, 105.) Ultimately, that was sufficient time to permit Congress to enact legislation ensuring that the unconstitutional challenged actions will never occur again, which is also enduring. *See Hargett*, 767 F.3d 533, 553; *Green Oak Twp.*, 312 F.3d 736; *Billups*, 554 F.3d 1340 *City of Garland*, 519 F.3d 517; *People Against Police Violence*, 520 F.3d 226; *County of Riverside*, 300 F.3d 1092; *Gomez-Colon*, 587 F.3d 445; *see also Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980) ("It is evident also that Congress contemplated the award of fees pendente lite in some cases. S. Rep. No. 94-1011, supra, at 5; H. R. Rep. No. 94-1558, supra, at 7-8. But it seems clearly to have been the intent of Congress to permit such an interlocutory

award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal").

The facts of *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019), in which plaintiffs obtained relief via preliminary injunction, are instructive here. In *Miller,* intervening events, including intervening legislation, mooted the case, causing the injunction to be vacated on the basis of mootness. In confirming prevailing party status in that case, *Miller* instructed district courts to look at three factors to determine whether a preliminary injunction confers prevailing party status: namely, a preliminary injunction must involve a "court-ordered, material, [and] enduring change." *Id.* at 448. The *Miller* court explained that a court ordered change must involve a court ordered modification of a party's behavior. *Id.* For the change to be material, it must directly benefit the plaintiffs in how the defendants treat them. *Id.* And for it to be enduring, it must be irrevocable. *Id.* Here, and as the Court likely remembers, Defendants were actively taking steps to punish Plaintiffs, to include separating them from service or incarcerating them, prior to the injunctions. This Court's timely relief prevented that, satisfying both the court-ordered and materiality prongs. And, the passage of time and intervening legislation ensured that the court-ordered changes were enduring – Plaintiffs are now permitted to continue to serve the country without fear or threat of separation or other punishment such as incarceration.

Likewise, *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530 (2019) is instructive. There, as here: (i) a merits-based preliminary injunction was granted (*id.* at 536); (ii) the preliminary injunction was on the books for a substantial period of time (*id.* at 539); (iii) "the injunction[s] [] resulted from a careful and thorough review of the evidence and the merits" (*id*); and (iv) the "relief never expired and was not 'reversed, dissolved, or otherwise undone by the

final decision in the same case.'" *Id.* at 539-540. And like the present matter, *Planned Parenthood* discussed the effect of vacatur on grounds of mootness and stated:

> although, as a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary, at least two of our sister circuits have held that vacatur at that juncture is not for "lack of entitlement" and does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*. *See Watson v. Cty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see also Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011) (distinguishing between vacatur on mootness grounds and vacatur as result of an adverse decision on the merits and holding that "the fact that the preliminary injunction was vacated does not deprive [parties] of their status as 'prevailing parties'"). If it did, *Sole* would have considered whether a claimant is entitled to attorneys' fees when it secures a preliminary injunction but no final decision on the merits. Instead, *Sole* explicitly left that issue open. 551 U.S. at 86.

*Id.* at 540. Thus, only a merits-based vacatur is sufficient to deprive a party of prevailing party status. Without question, that did not occur in this case.

Unlike the case in *Planned Parenthood*, where the "statute remains fully in effect today," Defendants' mandate was repealed by an act of Congress. But like *Planned Parenthood*, for a substantial period of time, Defendants' "officers could not enforce the [orders] against [the plaintiffs]." *Id.* at 541. And, as in *Planned Parenthood*, the injunction here remained in effect until "the need for the injunction has passed." *Id.* at 542. "Thus, the preliminary injunction altered the relationship between [plaintiffs] and the state during the concrete period of time that [plaintiffs] required the benefit of that alteration." *Id.*

Third, *Tennessee State Conf. of the NAACP v. Hargett*, 53 F.4th 406 (6th Cir. 2022) also supports that prevailing party status is achieved here. In *Hargett*, the plaintiffs obtained a preliminary injunction against election legislation. This was followed by a legislative repeal that mooted the case. Consequently, and as was the case here, the preliminary injunction in *Hargett*

10

was on the merits, affected change between the parties, and was left on the books long enough for legislative changes to moot the case.

Next, in *Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023), the Sixth Circuit found the plaintiffs to be prevailing parties because they obtained an injunction that prevented the defendants from acting in ways that defendants had "previously resisted." *Id.* at 284. More specifically, the Sixth Circuit directed courts to look at the nature of the injunction, the longevity of the relief, and the irrevocability of the relief as factors to weigh in the prevailing party inquiry. *Id.* Here, just like in *Roberts*, there were merits-based preliminary injunctions. *Id.*; Docs. 47, 77. Second, the duration of the injunction in *Roberts* was that it remained on the books for more than six months (here, more than a year and a half) and that duration was found to be sufficient. *Id.*; Doc. 32. And third, also as in *Roberts*, the benefits afforded Plaintiffs (which included the ongoing ability to serve, despite resistance from the Defendants and their desire to punish and separate Plaintiffs) are irrevocable and no different than the protection from prosecution was in *Roberts*: in both cases, the relief was never undone. Thus, here like there, Plaintiffs are the prevailing party. *See, also, G.S. v. Lee*, 2023 U.S. App. LEXIS 21419 (6th Cir. 2023) (finding prevailing party based on preliminary injunction that was on the merits, and in force, for two months).

### B. The Amount of the Fees and Costs

Computation of a prevailing party's fee award under § 1988 is by the lodestar method – multiplying the number of hours "reasonably expended on the litigation" by the reasonable hourly rate. *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994); *Perdue v. Kenny A.*, 559 U.S. 542 (2010); *Anderson v. Wilson*, 357 F.Supp.2d 991, 995 (E.D. Ky. 2005). In computing the amount, the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

11

"If the fee applicant carries the burden of showing that the proposed hours and rate are reasonable, the proposed fee 'is presumed to be the reasonable fee contemplated by § 1988.'" *Anderson*, 357 F.Supp.2d at 955.

In awarding attorneys' fees, the "primary concern ... is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (internal quotations and citation omitted).

    a. <u>Reasonable hourly rates</u>

When it comes to the determination of reasonable hourly rates, a district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011); *see also Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009). Here, the Southern District of Ohio has simplified the establishment of reasonable hourly rates with a matrix established by a committee chaired by former Judge Rubin, known as the *Rubin* rates, that has been in effect since 1983.

The attorneys in this matter are seeking hourly rates in accordance with the *Rubin* rates, which have been repeatedly affirmed by judges in this District.[3] As the Sixth Circuit has explained

---

[3] *See, e.g.*, *QFS Transp., LLC v. Huguely*, 2023 U.S. Dist. LEXIS 61982 (SDOH 2023); *Cooley v. Aevum Hotels, LLC*, No. 1:21-cv-00798, 2022 U.S. Dist. LEXIS 137958, 2022 WL 3042590, at *6 (S.D. Ohio Aug. 2, 2022); *Planned Parenthood Sw. Ohio Region v. Ohio Dep't of Health*, No. 1:21-cv-00189 (S.D. Ohio Apr. 8, 2021) (Doc. 22); *Ball v. Kasich*, No. 2:16-cv-282, 2020 U.S. Dist. LEXIS 100265, 2020 WL 3050241, at *2 (S.D. Ohio June 8, 2020); *Doe v. Ohio*, No. 2:91-cv-00464, 2020 U.S. Dist. LEXIS 24826, 2020 WL 728276, at *10 (S.D. Ohio Feb. 12, 2020); *Gibson v. Forest Hills Sch. Dist. Bd. Of Educ.*, No. 1:11-cv-329, 2014 U.S. Dist. LEXIS 96112, 2014 WL 3530708, at *6 (S.D. Ohio July 15, 2014); *Hunter v. Hamilton Cty. Bd. Of Elections*, No. 1:10-cv-820, 2013 U.S. Dist. LEXIS 141297, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013); *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 192 (S.D. Ohio

it, the *Rubin* Committee rates are "a list of pre-calculated billing rates tiered by years of experience" to determine a reasonable rate for the area. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020). These rates are adjusted with a 4% per year cost of living adjustment from a base 1983 matrix. *See QFS Transp., LLC*, 2023 U.S. Dist. LEXIS 61982; *Hunter*, No. 1:10-cv-820, 2013 U.S. Dist. LEXIS 141297, 2013 WL 5467751, at *17.

The 2024 *Rubin* rates are (rounded to the nearest penny):[4]

| Attorney descriptor with years of experience | 1983 base rate | 2024 adjusted rate (with 4% per year COLA) |
| --- | --- | --- |
| Senior Partner (21 years +) | $128.34 | $640.81 |
| Partner (11-20 years) | $113.43 | $566.36 |
| Junior Partner (6-10 years) | $96.39 | $481.28 |
| Sr. Associate (4-5 years) | $82.81 | $413.48 |
| Associate (2-4 years) | $71.62 | $357.60 |
| Jr. Associate (0-2 years) | $61.77 | $308.42 |
| Paralegals | $37.91 | $189.28 |
| Law clerks | $23.96 | $119.63 |

As noted, the rates set forth above by Plaintiff's Counsel are all in accordance with the foregoing schedule.

    b.  Hours expended

The standard of review for the time entries "is whether a reasonable attorney would have believed the work to be reasonably expended in the pursuit of success at the point in time when

---

2010) (*citing West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F. Supp. 2d 914, 932 n.4 (S.D. Ohio 2009)).

[4] Current year rates are awarded because they are "a reasonable way to account for the delay in payment to plaintiff's attorneys while this case has been pending." *See Lankford v. Reladyne, LLC*, 2016 U.S. Dist. LEXIS 85003 at *10 (SDOH 2016); *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (using the "current" market rate in calculating plaintiff's attorney fees "because the litigation had been ongoing for nearly six years"); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007) (awarding 2004 rates for work done in 2001, 2002, and 2003 to compensate the firm for waiting several years for payment); *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798, 801 (SDOH 2009).

the work was performed." *Sweeney v. Crigler*, 2020 WL 7038977, *3 (E.D. Ky. Oct. 27, 2020)

(citing *Human Rights Def. Ctr. v. Ballard*, 2020 WL 2513822, at *2 (E.D. Ky. May 15, 2020)

(quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990))).

All attorney fees and time that are related to the claims that resulted in a judgment are

compensable, even if a particular motion, or a particular appeal, was not successful. *See Hensley*

*v. Eckerhart*, 461 U.S. 424, 434 (1983). Indeed, the Supreme Court has explained that a reduction

of hours for unsuccessful claims is ***only appropriate*** where plaintiffs "fail to prevail on claims that

were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. 424, 434. Thus, "[i]n

other cases the plaintiff's claims for relief will involve a common core of facts or will be based on

related legal theories." *Id.* at 435. "Much of counsel's time will be devoted generally to the

litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."

*Id.* "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* "Instead the district court

should focus on the significance of the overall relief obtained by the plaintiff in relation to the

hours reasonably expended on the litigation." *Id.*

Indeed, often in cases such as this, attorney fees exceed the underlying judgment, and it is

wholly improper to reduce hours or fees if portions of the litigation are not successful. *See DiLaura*

*v. Twp. of Ann Arbor*, 471 F.3d 666, 672 (6th Cir. 2006) (explaining inappropriate to reduce fees

based on unsuccessful motions); *see also Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir.

2006) (holding that, where there is "an obvious and significant legal overlap" between claims, full

recovery for counsel's services is appropriate under *Hensley*); *Imwalle v. Reliance Med. Prods.,*

515 F.3d 531 (6th Cir. 2008). And as was the case in *Planned Parenthood Sw. Ohio Region v.*

*Dewine*, 931 F.3d 530, 544 (6th Cir. 2019), "the [government can] cite[] no precedent in support

of this theory [that claims should be reduced because the Plaintiff did not achieve each and every form of relief originally requested]."

Consequently, the Sixth Circuit has explained, "[t]he key requirement for an award of attorney fees is that [t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle, supra*, 515 F.3d 531, 553 (6th Cir. 2008).

Defendants' repeated, prolonged, and vigorous efforts, to both oppose and lift the injunctions, required a vigorous and prolonged response by Plaintiffs to maintain them, and Defendants should not now complain about the hours that their own litigation tactics caused. Case law is clear that where significant hours are expended by plaintiffs due to the litigation tactics of the defendants, the defendants will not then be heard to complain. *See Torres v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 127890 (S.D. NY. 2012) ("[t]he Court notes that much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics. Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response."); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (observing that "hours required to litigate even a simple matter can expand enormously" where "attorney is compelled to defend against frivolous motions and to make motions to compel [discovery] compliance"); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) ("defendants' obstructive and dilatory litigation tactics" gave rise to the fees incurred). Here, and without question, each step in this litigation was contested, which required a significant amount of time, thus making the hours spent and claimed both reasonable and necessary.

As Mr. Kuhlman explains in his declaration, and after a review of the proceeding in all of the courts, "the hours worked and fees requested comport with, and are reasonable in light of the factors contained in the Ohio Rules of Professional Conduct 1.5 insofar as they accurately reflect the time and labor required in the prosecution of this matter, the difficulty of the questions involved, the skill required to perform the work properly, comport with fees customarily charged by others for similar legal services, and are appropriate in light of the results obtained." (Dec. Kuhlman at ¶12). That is because:

> from the pleadings alone, I could determine that this case was litigated intensely. From the outset, there were multiple motions being litigated simultaneously, including Plaintiffs' motion for temporary restraining order / preliminary injunction and plaintiff's motion for class certification. The defendants also sought to sever the plaintiffs' claims and moved to dismiss (several times). After the Court granted a preliminary injunction to the initial named plaintiffs, granted class certification to the case, and then granted a preliminary injunction in favor of the class, the government appealed those rulings to the United States Sixth Circuit Court of Appeals, while other issues remained to be litigated in the district court. Ultimately (as anyone reviewing this Declaration knows), this case was litigated to the United States Supreme Court before a change in department of defense policy led the courts to conclude that the plaintiffs' claims had been rendered moot (a conclusion, as I understand it, the plaintiffs' still contest). *Id.* at ¶14.

Further:

> the gravity of the issues raised by this case to the plaintiffs and class members informs my evaluation of the hours expended on the appellate activities of appellants' counsel. To begin with, of course, the Defendants in this case exercised their right to appeal this Court's determinations about preliminary injunctions for the named plaintiffs and for the certified class, as well as the decision to certify the class. By doing so, the Defendants set into motion procedures and processes that required a response form Plaintiffs' counsel, and the expenditure of additional time on this case. Thus, the interlocutory appeals taken here created a baseline of a couple hundred hours of additional work for Plaintiffs' counsel. That being said, there was quite a high number of hours expended on preparation for oral argument to the United States Sixth Circuit

16

Court of Appeals. At least some of this was obvious given that there were two appeals being addressed at one oral argument. However, to go back to the stakes of this litigation, this appeal was simply "must win" for the Plaintiffs and class members. If the government's appeal was successful, some or all of the dire consequences to the lives and careers of hundreds or even thousands of servicemen and women were going to come to pass. Moreover, a reversal by the Sixth Circuit would leave the Plaintiffs with only one avenue of further review – seeking a writ of certiorari from the United States Supreme Court, which by the numbers alone, they could not be confident of securing. Counsel for the Plaintiffs treated this appeal as the high-stakes event that it truly was, including having mock oral arguments before several states' Attorneys General who were also dealing challenges to the legality of with COVID-19 related state action and thus familiar with some of the issues. Mr. Wiest, who handled argument for the Plaintiffs, reported that he, with the assistance of co-counsel, committed to memory the facts and holdings of all cases cited by any party, and as a result of his preparation gave the appellate advocacy performance of his lifetime in a case where the seriousness of the matters at issue required nothing less. I would observe that any case argued before any court of appeals has significance to the parties to that appeal. Nevertheless, there are some cases where the sort of effort undertaken by Plaintiffs' counsel to prepare for an appellate oral argument could be fairly said to be over the top and unnecessary. Given the context of this case, however, it is my opinion that the time spent briefing the issues to the Sixth Circuit and preparing for oral argument to the Sixth Circuit was reasonable under the circumstances. *Id.* at ¶16.

Moreover:

the case presented issues that were both novel and not frequently litigated, laying at the intersection of the government's response to an uncommon event (a global pandemic), the First Amendment's guarantee of the right of free exercise of religion, and a number of inter-related questions that could be said to fall under the general umbrella of separation of powers between the judicial and executive branches, and more specifically, the United States military. I am familiar with the work of Messrs. Wiest and Bruns (and others) in civil rights cases arising against the backdrop of the COVID-19 pandemic, and the fact that this case involved the response to the pandemic of a branch of the armed forces added additional complications to this case (which was novel enough on its own). Still, like challenges to the COVID-19 responses by state and local governments, as this case was progressing, so too were other cases

17

dealing with similar challenges. The law was evolving in real time on these issues, and when practicing on the cutting edge of the law like this, developing arguments on these issues would have been more complex and involved than looking into past case law to find something controlling and directly on-point. *Id.* at ¶17.

…[T]he case did not proceed in the smoothest fashion, necessitating additional work by the Plaintiffs' counsel. For one thing, as I saw in the billing records, and as Messrs. Bruns and Wiest elaborated to me, clients and class members were routinely contacting their counsel to bring to their attention that the preliminary injunction was not being honored. On several instances, Plaintiffs' counsel contemplated filing motions seeking and order for the Defendants to show cause why they should not be held in contempt. In most instances, Plaintiffs were able to avoid doing so by calling defense counsel and asking that the offending behavior be abated, and defense counsel, in turn, taking appropriate steps to make sure it was abated. Nonetheless, counsel for the Plaintiffs had to engage in significant amounts of work to address these matters, even though they ultimately did not have to result in motion practice. Additionally, discovery was very document intensive. Billing records revealed many hours spent reviewing documents provided by the Defendants in this case. I was informed that approximately Forty Thousand (40,000) pages of documents were produced by the Defendants, in several tranches when it was all said and done. Throughout this process, counsel for Plaintiffs had to point out deficiencies with Defendants' discovery responses. I was told by Messrs. Wiest and Bruns that counsel had to rely on their own clients to track down documents that the Defendants should have produced. On the other hand, in terms of responding to discovery propounded by the Defendants, Plaintiffs' counsel had to respond to discovery directed to 18 plaintiffs. This multiplied the amount of time reasonably required to respond to discovery. Plaintiffs' counsel had to also respond to allegations of deficiencies with those responses made by the Defendants. I was also made aware that there was a substantial discovery dispute over the taking of the deposition of Dr. Marks, with some of that litigation taking place before the United States District Court for the State of Maryland. Needless to say, discovery disputes take time to resolve and increase the amount of labor attorneys must expend in the prosecution of their claims. *Id.* at ¶18.

To conclude, and as Mr. Kuhlman confirms:

The billing records in this case were voluminous. Printed, they totaled over 110 pages (the Siri | Glimstad firm's records were

produced in extraordinarily small font, single-spaced, over 40 pages; had they been produced in a more reader-friendly format, like Messrs. Bruns and Wiest's billing records, I estimate their records could have spanned 100 pages). The process was painstaking, nonetheless, I have reviewed all of the time entries. It is my opinion that the total hours spent on various tasks by Plaintiffs' counsel were reasonable, and moreover, given the intensity of the litigation and the importance of the issues raised, the fact that this involved over two years of litigation, with battles occurring on multiple fronts, and sometimes time sensitive deadlines, the amount of hours expended overall were reasonable, necessary, and appropriate for the litigation. *Id.* at ¶23.

As Plaintiffs' Counsel and his expert have indicated, the time entries were reasonable for the scope and nature of the litigation and tasks. (*See* Decls. of Kuhlman, Wiest, Bruns, Brehm). Moreover, there was a reasonable division of labor involved, with discrete tasks assigned to particular counsel. *See* Decl. Wiest. Thus, the reasonable time expended on this matter was:

| Attorney (and firm) | Hourly rate | Hours | Total |
|---|---|---|---|
| Thomas Bruns (Bruns Connell) | $640 | 502.6 | $321,646.00 |
| Chris Wiest (Chris Wiest Law) | $565 | 826.2 | $466,803.00 |
| Aaron Siri (Siri & Glimstad) | $565 (normal) $282.50 (travel) | 84.0 13.7 | $47,460.00 $3,870.25 |
| Elizabeth Brehm (Siri & Glimstad) | $565 | 87.6 | $49,494.00 |
| Wendy Cox (Siri & Glimstad) | $565 (normal) $282.50 (travel) | 1372.5 8.5 | $775,463.50 $2,401.25 |
| Mason Barney (Siri & Glimstad) | $565 | 9.7 | $5,480.50 |
| Charice Holtsclaw (Siri & Glimstad) | $565 | 37.7 | $21,300.50 |
| Ursula Smith (Siri & Glimstad) | $480 | 5.0 | $2,400.00 |
| Walker Moller (Siri & Glimstad) | $480 | 3.3 | $1,584.00 |
| Dana Stone Smith (Siri & Glimstad) | $480 | 289.5 | $138,960.00 |
| Marc Dudley (Siri & Glimstad) | $305 | 43.6 | $13,298.00 |
| Kimberly Hertz (Siri & Glimstad) | $185 | 2.8 | $518.00 |

| | | | |
|---|---|---|---|
| Nicky Tenny (Siri & Glimstad) | $185 | 23.9 | $4,421.50 |
| Gina Manella (Siri & Glimstad) | $185 | 274.2 | $50,727.00 |
| **TOTAL** | | | **$1,905,827.50** |

*Id.* Plaintiffs reserve the right to supplement for time spent on the Reply to this motion, or for any additional time incurred on any appeal to any attorney fee decision. The total time incurred was reasonable.

### c. The costs claimed are reasonable and normally charged to paying clients

In addition to attorney fees, 42 U.S.C. 1988 and the agreed judgment in this matter authorize the Court to award reasonable costs and expenses. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). The Sixth Circuit has stated that, pursuant to § 1988, a court has the "authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services." *Northcross v. Board of Ed. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979). Those costs in this matter involve service of process fees for postage, court reporter fees, filing fees, LEXIS fees, hotel and airline costs for hearings for out of state witnesses and counsel, and the like. The $12,261.11 in requested costs are reasonable and customary.

## III.    CONCLUSION

The Court should therefore award Plaintiffs reasonable attorney fees in the amount of $1,905,827.50 (plus additional time spent on the Reply in support of this motion), and costs/expenses in the amount of $12,261.11.

Respectfully submitted,

*/s/ Christopher Wiest*_____          */s/ Aaron Siri*
Christopher Wiest (OH 0077931)              Siri Glimstad, LLP
Chris Wiest, Atty at Law, PLLC              Aaron Siri (admitted PHV)
25 Town Center Blvd, Suite 104              Elizabeth A. Brehm (admitted PHV)

Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com

*/s/ Thomas Bruns*
Thomas Bruns (OH 0051212)
Bruns Connell Vollmar Armstrong LLC
4555 Lake Forest Dr., Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890
*Attorneys for Plaintiffs*

Wendy Cox (admitted PHV)
200 Park Avenue, 17th Floor
New York, NY 10166
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all counsel of record, this 1 day of May, 2024, via CM/ECF.

*/s/ Christopher Wiest*