# Exhibit A

No. 23 -_____

IN THE

# 𝔖𝔲𝔭𝔯𝔢𝔪𝔢 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰

GERALD F. LACKEY, IN HIS OFFICIAL CAPACITY AS THE
COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR
VEHICLES,

*Petitioner,*

v.

DAMIAN STINNIE, ET AL.,

*Respondents.*

*On Petition for a Writ of Certiorari to the United States
Court of Appeals for the Fourth Circuit*

## PETITION FOR WRIT OF CERTIORARI

JASON S. MIYARES
  *Attorney General of Virginia*

MAYA M. ECKSTEIN
TREVOR S. COX
DAVID M. PARKER
HUNTON ANDREWS
KURTH LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219

ANDREW N. FERGUSON
  *Solicitor General*
  *Counsel of Record*
ERIKA L. MALEY
  *Principal Deputy Solicitor*
  *General*
GRAHAM K. BRYANT
  *Deputy Solicitor General*
M. JORDAN MINOT
  *Assistant Solicitor General*
OFFICE OF THE VIRGINIA
ATTORNEY GENRAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us

  *Counsel for Petitioner*

ii

## QUESTIONS PRESENTED

1. Whether a party must obtain a ruling that conclusively decides the merits in its favor, as opposed to merely predicting a likelihood of later success, to prevail on the merits under 42 U.S.C. § 1988.

2. Whether a party must obtain an enduring change in the parties' legal relationship from a judicial act, as opposed to a non-judicial event that moots the case, to prevail under 42 U.S.C. § 1988.

iii

## PARTIES TO THE PROCEEDINGS BELOW

Petitioner (defendant-appellee below) is Gerald F. Lackey, in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles. Mr. Lackey was automatically substituted as the defendant after the former Commissioner, Richard D. Holcomb, left office. See Fed. R. Civ. P. 25(d).

Respondents (plaintiffs-appellants below) are Damian Stinnie, Melissa Adams, Adrainne Johnson, Williest Bandy, and Brianna Morgan.

iv

## RELATED PROCEEDINGS

*Stinnie* v. *Holcomb*, No. 21-1756 (4th Cir.) (judgment from panel entered June 27, 2022, judgment from en banc court entered August 7, 2023).

*Stinnie* v. *Holcomb*, No. 3:16-cv-00044 (W.D. Va.) (order dismissing action as moot entered on May 7, 2020, order denying attorney's fees entered June 4, 2021).

v

# TABLE OF CONTENTS

QUESTIONS PRESENTED ...................................... ii

PARTIES TO THE PROCEEDINGS BELOW......... iii

RELATED PROCEEDINGS ...................................iv

TABLE OF CONTENTS ..........................................v

TABLE OF AUTHORITIES.................................... vii

OPINIONS BELOW....................................................1

JURISDICTIONAL STATEMENT............................1

RELEVANT STATUTORY PROVISION ..................1

INTRODUCTION.......................................................2

STATEMENT OF THE CASE ...................................4

    A.   Legal background.......................................4

    B.   Factual and procedural background ...........6

REASONS FOR GRANTING THE PETITION .......13

    I.    The Courts of Appeals are divided on the questions presented....................................13

    A.   The Courts of Appeals are divided on whether a prediction of "likely" success constitutes a ruling "on the merits"...........14

    B.   The Courts of Appeals are divided on when a preliminary injunction provides sufficiently "enduring" relief.....................19

    II.   The questions presented are important and recurring ...................................................23

vi

III. The Fourth Circuit answered the questions presented incorrectly ...................................26

A. "On the merits" requires an actual decision on the merits rather than a prediction of "likely" future success ...............................26

B. A court order, rather than a non-judicial act, must make the plaintiff a "prevailing party" .................................................................32

IV. This case is an ideal vehicle for resolving the questions presented....................................35

CONCLUSION .........................................................37

vii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs.* v. *Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007) ...........................27

*Advantage Media, L.L.C.* v. *City of
  Hopkins, Minn.*,
  511 F.3d 833 (8th Cir. 2008)........................20, 32

*All. for the Wild Rockies* v. *Cottrell*,
  632 F.3d 1127 (9th Cir. 2011)..............................30

*Alyeska Pipeline Serv. Co.* v. *Wilderness
  Soc.*,
  421 U.S. 240 (1975)..............................................4

*Astrue* v. *Ratliff*,
  560 U.S. 586 (2010)..............................................27

*Buckhannon Bd. & Care Home, Inc.* v.
  *W. Virginia Dep't of Health & Hum.
  Res.*,
  532 U.S. 598 (2001).....................................*passim*

*Chrysafis* v. *Marks*,
  No. 21-CV-2516, 2023 WL 6158537
  (E.D.N.Y. Sept. 21, 2023).....................................24

viii

*Citigroup Glob. Markets, Inc.* v. *VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) ...................................30

*Common Cause Georgia* v. *Georgia*,
17 F.4th 102 (11th Cir. 2021) .............................16

*Common Cause/Georgia* v. *Billups*,
554 F.3d 1340 (11th Cir. 2009)...........................18

*Dearmore* v. *City of Garland*,
519 F.3d 517 (5th Cir. 2008)....................... *passim*

*DiMartile* v. *Hochul*,
80 F.4th 443 (2d Cir. 2023)..................................17

*Dupuy* v. *Samuels*,
423 F.3d 714 (7th Cir. 2005).........................19, 20

*Evans* v. *Jeff D.*,
475 U.S. 717 (1986)..................................23, 24, 25

*Flight Attendants* v. *Zipes*,
491 U.S. 754 (1989).............................................28

*Fowler* v. *Benson*,
924 F.3d 247 (6th Cir. 2019)...............................29

*Fowler* v. *Johnson*,
No. CV-17-11441, 2017 WL 6379676
(E.D. Mich. Dec. 14, 2017) ...................................29

ix

*Haley* v. *Pataki*,
106 F.3d 478 (2d Cir. 1997) ................................ 16

*Hanrahan* v. *Hampton*,
446 U.S. 754 (1980) ........................................ 5, 28

*Higher Taste, Inc.* v. *City of Tacoma*,
717 F.3d 712 (9th Cir. 2013) ....................... *passim*

*Hoosier Energy Rural Elec. Co-op., Inc.*
v. *John Hancock Life Ins. Co.*,
582 F.3d 721 (7th Cir. 2009) .............................. 30

*Johnson* v. *Jessup*,
381 F. Supp. 3d 619 (M.D.N.C. 2019) ................ 30

*Kansas Jud. Watch* v. *Stout*,
653 F.3d 1230 (10th Cir. 2011) .......... 16, 17, 31, 36

*Mastrio* v. *Sebelius*,
768 F.3d 116 (2d Cir. 2014) ................................ 18

*McQueary* v. *Conway*,
614 F.3d 591 (6th Cir. 2010) ........................ 17, 31

*Medtronic, Inc.* v. *Gibbons*,
684 F.2d 565 (8th Cir. 1982) .............................. 27

*Mendoza* v. *Strickler*,
51 F.4th 346 (9th Cir. 2022) .............................. 29

*Mississippi* v. *Louisiana*,
506 U.S. 73 (1992) ............................................. 27

x

*Motley* v. *Taylor*,
451 F. Supp. 3d 1251 (M.D. Ala.
2020), *aff'd*, No. 20-11688, 2022 WL
1506971 (11th Cir. May 12, 2022) ...................... 29

*N. Cheyenne Tribe* v. *Jackson*,
433 F.3d 1083 (8th Cir. 2006) ................ 19, 20, 32

*New York State Rifle & Pistol
Association, Inc.* v. *Nigrelli*,
No. 1:18-cv-134, 2023 WL 6200195
(N.D.N.Y. Sept. 22, 2023) .................................... 24

*People Against Police Violence* v. *City of
Pittsburgh*,
520 F.3d 226 (3d Cir. 2008) .................... 15, 21, 22

*Peter* v. *Nantkwest, Inc.*,
140 S. Ct. 365 (2019) ............................................. 4

*Planned Parenthood Sw. Ohio Region* v.
*Dewine*,
931 F.3d 530 (6th Cir. 2019) ............................... 16

*Robinson v. Long*,
814 F. App'x 991 (6th Cir. 2020) .......................... 29

*Rogers Grp., Inc.* v. *City of Fayetteville,
Ark.*,
683 F.3d 903 (8th Cir. 2012) .......................... 16, 21

*Select Milk Producers, Inc.* v. *Johanns*,
400 F.3d 939 (D.C. Cir. 2005)
(Henderson, J., dissenting) .......................... *passim*

xi

*Sinapi* v. *Rhode Island Bd. of Bar
    Examiners*,
    910 F.3d 544 (1st Cir. 2018) ..........................16, 31

*Singer Mgmt. Consultants, Inc.* v.
    *Milgram*,
    650 F.3d 223 (3d Cir. 2011) ....................15, 26, 35

*Smyth ex rel. Smyth* v. *Rivero*,
    282 F.3d 268 (4th Cir. 2002),
    *overruled by Stinnie* v. *Holcomb*, 77
    F.4th 200 (4th Cir. 2023) (en banc) ..............10, 15

*Sole* v. *Wyner*,
    551 U.S. 74 (2007).......................................*passim*

*Stinnie* v. *Holcomb*,
    355 F. Supp. 3d 514 (W.D. Va. 2018) ..............8, 35

*Stinnie* v. *Holcomb*,
    396 F. Supp. 3d 653 (W.D. Va. 2019) ...................9

*Stinnie* v. *Holcomb*,
    734 F. App'x 858 (4th Cir. 2018)...........................8

*Taylor v. City of Fort Lauderdale*,
    810 F.2d 1551 (11th Cir. 1987)...........................18

*Tennessee State Conference of N.A.A.C.P*
    v. *Hargett*,
    53 F.4th 406 (6th Cir. 2022) .......................*passim*

xii

*Tennessee State Conference of the*
    *N.A.A.C.P.* v. *Hargett*,
    Nos. 3:19-cv-00365, 3:19-cv-00385,
    2021 WL 4441262 (M.D. Tenn. Sept.
    28, 2021), *aff'd*, 53 F.4th 406 (6th
    Cir. 2022) ............................................................ 24

*Texas State Tchrs. Ass'n* v. *Garland*
    *Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ......................................... 5, 28

*Univ. of Texas* v. *Camenisch*,
    451 U.S. 390 (1981) ....................................... 27, 31

*Veasey* v. *Abbott*,
    No. 2:13-CV-193, 2020 WL 9888360
    (S.D. Tex. May 27, 2020), *aff'd*, 13
    F.4th 362 (5th Cir. 2021) ..................................... 24

*Webb* v. *Bd. of Educ. of Dyer Cnty.,*
    *Tenn.*,
    471 U.S. 234 (1985) (Brennan, J.,
    concurring in part) ............................................... 23

*White* v. *Shwedo*,
    No. 2:19-CV-3083-RMG, 2020 WL
    2315800 (D.S.C. May 11, 2020) .......................... 29

*Winter* v. *Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................. 17

*Young* v. *City of Chicago*,
    202 F.3d 1000 (7th Cir. 2000) ............................. 20

xiii

## Statutes

15 U.S.C. § 1117 ................................................4

28 U.S.C. § 2412 ................................................4

29 U.S.C. § 794a ................................................4

35 U.S.C. § 285 ................................................4

42 U.S.C. § 1988 ............................................1, 4

42 U.S.C. § 2000a-3 ..........................................4

42 U.S.C. § 3613 ................................................4

42 U.S.C. § 12205 ..............................................4

52 U.S.C. § 10310 ..............................................4

Va. Code § 46.2-395 ............................................7

## Other Authorities

*Black's Law Dictionary* (rev. 4th ed.
   1968) ................................................27

Katherine Knott, *Northam Proposes
   End to Driver's License Suspensions
   over Court Fees*, Daily Progress
   (Mar. 26, 2019),
   https://tinyurl.com/y3wamh5n ........................7, 8

Sup. Ct. R. 10(a) ..............................................23

## OPINIONS BELOW

The Fourth Circuit's en banc opinion (App. 1a–70a) is reported at 77 F.4th 200. The Fourth Circuit's prior panel opinion (App. 73a–92a) is reported at 37 F.4th 977. The district court's opinion denying attorney's fees (App. 95a–106a) is not reported but is available at 2021 WL 2292807 (W.D. Va. June 4, 2021).

## JURISDICTIONAL STATEMENT

The Fourth Circuit entered judgment on August 7, 2023. On October 27, 2023, the Chief Justice granted an application to extend the time to file a petition for a writ of certiorari to November 20, 2023. This Court has jurisdiction under 28 U.S.C. § 1254(1).

## RELEVANT STATUTORY PROVISION

The Civil Rights Attorney's Fees Awards Act of 1976, as amended, provides in pertinent part:

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988(b).

2

## INTRODUCTION

This case presents multiple circuit splits on an important issue: whether a plaintiff who obtains only a preliminary injunction may be a "prevailing party" entitled to attorney's fees. "Prevailing party" is a term of art used in numerous fee-shifting statutes. A party "prevails" if it secures court-ordered relief that is both "on the merits" and "enduring." *Sole* v. *Wyner*, 551 U.S. 74, 82, 86 (2007). That happens when the party obtains a final, favorable ruling from a court, such as a "judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc.* v. *W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). But if a court never issues such a ruling, whether and when a party can nonetheless "prevail" are questions that have confounded the lower courts, producing multiple circuit splits.

In *Buckhannon*, this Court held that a plaintiff does not "prevail" when the filing of the plaintiff's lawsuit causes the defendant to cease the complained-of conduct, mooting the case before final judgment. 532 U.S. 598. Then, in *Sole*, it held that a plaintiff also does not prevail when it obtains preliminary relief but fails to obtain a favorable final judgment—winning a battle but losing the war. 551 U.S. 74. But *Sole* left open a question that has caused considerable confusion among the lower courts: "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an

3

award of counsel fees." *Id.* at 86. This case presents the ideal opportunity to answer this question.

In the 15 years since *Sole*, most courts of appeals have agreed that a preliminary injunction can sometimes warrant a fee award—but they disagree on when. Entrenched splits have emerged on two questions squarely presented in this case. First, does a party prevail "on the merits" when a court grants a preliminary injunction based only on a prediction of "likely" success? And second, does a party prevail when the relief from this preliminary injunction becomes "enduring" only because some later, non-judicial act moots the case?

These questions are important. Fee awards are often as significant, or even more significant, than an underlying liability determination—particularly in civil rights litigation. And they regularly cost state governments hundreds of thousands or millions of dollars. Further, the effect of the answers to the questions presented extends far beyond Section 1988, as numerous other fee-shifting statutes contain the same key phrase. This Court should again intervene, as it did in *Buckhannon* and *Sole*, to prevent lower courts from interpreting "prevailing party" too broadly.

This case is an ideal vehicle for resolving these questions. It turns exclusively on the purely legal question whether Respondents ("Plaintiffs") are entitled to fees, which is the only remaining issue in the case. Both circuit splits are dispositive here, and

4

the decision below falls on the wrong side of each. The splits are now fully mature, and this Court's review is badly needed to resolve them. The petition should be granted.

## STATEMENT OF THE CASE

### A.     Legal background

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon*, 532 U.S. at 602. Under this "American Rule," each litigant "pays his own attorney's fees, win or lose." *Peter* v. *Nantkwest, Inc.,* 140 S. Ct. 365, 370 (2019) (citation omitted).

Congress can displace this rule by statute, so long as it is sufficiently "specific and explicit." *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc.*, 421 U.S. 240, 260 (1975). Congress displaced the American rule in various statutes awarding fees to the "prevailing party." This key phrase—"prevailing party"—is a "legal term of art" that has been interpreted "consistently" in "numerous statutes." *Buckhannon*, 532 U.S. at 603 & n.4.[1] At issue here is 42 U.S.C.

---

[1] *See, e.g.*, 42 U.S.C. § 1988 (civil rights); 15 U.S.C. § 1117(a) (trademark infringement); 52 U.S.C. § 10310(e) (Voting Rights Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act); 29 U.S.C. § 794a(b) (disability discrimination); 35 U.S.C. § 285 (patent infringement); 42 U.S.C. § 2000a-3(b) (Civil Rights Act of 1964); 42 U.S.C. § 3613(c)(2) (Fair Housing Act); 42 U.S.C. § 12205 (Americans with Disabilities Act).

5

§ 1988(b), which provides that, in certain civil rights cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

The "touchstone" requirement for a "prevailing party" is a "material alteration of the legal relationship of the parties." *Texas State Tchrs. Ass'n* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). And this "material alteration" must result from "relief on the merits." *Sole*, 551 U.S. at 82 (citation omitted). "Relief on the merits" typically is obtained in a "judgment on the merits or a court-ordered consent decree." *Buckhannon*, 532 U.S. at 600. A party can "prevail" while litigation remains pending, but only when the party "has established his entitlement to some relief on the merits of his claims." *Hanrahan* v. *Hampton*, 446 U.S. 754, 757 (1980).

In *Buckhannon*, this Court rejected the "catalyst theory," under which a plaintiff "prevail[ed]" if its lawsuit caused "a voluntary change in the defendant's conduct." 532 U.S. at 601–02. "[M]ost Courts of Appeals"—all but one—had adopted this theory. *Id.* at 602. But the Court explained that "a 'prevailing party' is one who has been awarded some relief *by the court*." *Id.* at 603 (emphasis added). The catalyst theory impermissibly allowed fee awards that were not based on any "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. "A defendant's voluntary change" therefore did not suffice, as it "lacks the necessary judicial *imprimatur*." *Id.* at 598–99.

6

In *Sole*, 551 U.S. 74, the Court reversed an award of fees to a plaintiff who obtained a preliminary injunction, but ultimately lost the case. *Id.* at 86. The Court explained that preliminary injunctions are based only on a "probability" of success. *Id.* at 84. And that "probability" is "more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court." *Ibid.* In *Sole*, the proceedings were "necessarily hasty and abbreviated," *id.* at 84, and, ultimately, the relief they granted was "fleeting" and "ephemeral," *id.* at 83, 86. The plaintiff had "won a battle but lost the war." *Id.* at 86. *Sole*, however, left open the question "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Ibid.*

## B. Factual and procedural background

In this case, Plaintiffs sued the Commissioner of the Virginia Department of Motor Vehicles to challenge the constitutionality of former Section 46.2-395 of the Virginia Code. Am. Compl., *Stinnie v. Holcomb*, No. 3:16-cv-00044 (W.D. Va. Sept. 11, 2018), ECF 84 ("Am. Compl.") [CA.JA226–70].[2] Before its repeal, Section 46.2-395 required courts to suspend a

---

[2] References to CA.JA___ are to pages in the Joint Appendix, *Stinnie* v. *Holcomb*, No. 21-1756 (4th Cir. Nov. 15, 2021), ECF 20.

7

convicted criminal's driver's license for failure to pay court-ordered debts like fines, forfeitures, restitution, or other penalties. Va. Code § 46.2-395. The five named Plaintiffs, seeking to represent a putative class, alleged that this law violated their constitutional rights. Am. Compl. ¶¶ 322–65 [CA.JA264–68]. They asserted five counts, each based on a different constitutional theory.[3] *Ibid.*

Plaintiffs sought expansive relief: certification of two broad classes, *id.* ¶ 298 [CA.JA258–59], a declaratory judgment, *id.* p. 44 [CA.JA269], and preliminary and permanent injunctive relief, *ibid.* They sought to enjoin the Commissioner from enforcing Section 46.2-395 against any member of the putative class, and to require the Commissioner to reinstate suspended licenses (without any reinstatement fee). *Id.* p. 44 [CA.JA269]. Their "greatest wish"—what they were "really asking for in the lawsuit"—was "for this practice to end and for the one million people" affected by this law "to get their licenses back." Katherine Knott, *Northam Proposes End to Driver's License Suspensions over Court Fees*,

---

[3] *See id.* ¶¶ 322–31 ("Count I: Violation of Procedural Due Process (Lack of Ability-to-Pay Hearing)"); *id.* ¶¶ 332–38 ("Count II: Violation of Due Process (Fundamental Fairness)"); *id.* ¶¶ 339–46 ("Count III: Violation of Equal Protection Clause (Equal Justice and Punishing Poverty)"); *id.* ¶¶ 347–57 ("Count IV: Violation of Due Process Clause (No Rational Basis)"); *id.* ¶¶ 358–65 ("Count V: Violation of the Equal Protection Clause (Extraordinary Collection Efforts)").

8

Daily Progress (Mar. 26, 2019), https://tinyurl.com/y3wamh5n.

The district court dismissed Plaintiffs' original complaint for lack of jurisdiction, without prejudice. The Fourth Circuit dismissed Plaintiffs' appeal of that decision for lack of appellate jurisdiction. *Stinnie* v. *Holcomb*, 734 F. App'x 858 (4th Cir. 2018). Months later, Plaintiffs filed an amended complaint and a motion for a preliminary injunction. The district court granted the motion in part, issuing a preliminary injunction pending trial on one of their five claims. *Stinnie* v. *Holcomb*, 355 F. Supp. 3d 514, 520 (W.D. Va. 2018) (due process claim alleged in Count I). Under *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), the court concluded that the equitable factors weighed in Plaintiffs' favor, *Stinnie*, 355 F. Supp. 3d. at 532, and that they were "likely to succeed" on that single claim, *id.* at 520. The court noted, though, that Plaintiffs had not shown a "certainty of success." *Id.* at 527. It did "not reach a definitive conclusion" on the constitutionality of the law. *Id.* at 529. Rather, the district court awarded preliminary relief based on what it predicted Plaintiffs were "likely to show" at "trial." *Id.* at 531.

The court did not declare the law unconstitutional or issue the permanent injunction Plaintiffs also sought. Am. Compl. p. 44 [CA.JA269]. The injunction also was limited to the five named Plaintiffs. Order, *Stinnie*, No. 3:16-cv-00044 (Dec. 21, 2018), ECF 127 at 1 [CA.JA843–44]. It prevented the enforcement of Section 46.2-395 only as to them and required the

9

temporary reinstatement of only their licenses. *Ibid.*
The court did not grant class certification, nor did it
provide any relief to the other "hundreds of
thousands" of drivers in the putative class allegedly
affected by the law. Am. Compl. ¶ 4 [CA.JA227].

While this preliminary injunction was in effect, the
Virginia General Assembly, lobbied by Plaintiffs'
counsel and others, passed a law suspending the
enforcement of Section 46.2-395 for one year. *Stinnie*
v. *Holcomb*, 396 F. Supp. 3d 653, 656 (W.D. Va. 2019).
With enforcement of the law suspended, and the
legislature poised to repeal it permanently in the next
legislative session, the district court stayed the case.
*Ibid.* The district court reasoned that "if the General
Assembly fails to repeal § 46.2-395, the [c]ourt will
have ample time to address the merits of the case
. . . ." *Id.* at 661. Early in 2020, however, the General
Assembly repealed not just the aspects of Section
46.2-395 that Plaintiffs had challenged, but the entire
statute. Stip. of Dismissal (ECF 231) at 1–2
[CA.JA1010–11]. The General Assembly also lifted
suspensions imposed under Section 46.2-395. *Ibid.*
Because the General Assembly's acts obviated
Plaintiffs' requests for relief, Plaintiffs stipulated that
their claims were moot and the district court
dismissed the case. *Id.*; Dismissal Order (ECF 232) at
1–2 [CA.JA1017–18].

10

Plaintiffs then sought attorney's fees, claiming to be a "prevailing party" under Section 1988.[4] Pet. for Attorneys' Fees (ECF 234) at 1–2 [CA.JA1020–21]. The district court denied this motion. App. 93a–94a. It concluded that it was bound by Fourth Circuit precedent establishing "a bright line rule that preliminary injunction awardees are not prevailing parties." App. 105a (citing *Smyth ex rel. Smyth* v. *Rivero*, 282 F.3d 268, 276 (4th Cir. 2002), *overruled by Stinnie* v. *Holcomb*, 77 F.4th 200 (4th Cir. 2023) (en banc)). The preliminary injunction did not decide the merits of a matter, but merely offered "a prediction of a probable, but necessarily uncertain, outcome." App. 106a (quoting *Smyth*, 282 F.3d at 276). Plaintiffs appealed, and a panel of the Fourth Circuit unanimously affirmed, likewise holding that *Smyth* barred Plaintiffs' request for attorney's fees. App. 86a.

The Fourth Circuit then granted rehearing en banc and, in a 7–4 ruling, overruled *Smyth* and reversed and remanded this case. App. 1a–70a. In place of *Smyth*, the majority imposed a new rule:

> When a preliminary injunction provides the plaintiff concrete, irreversible relief on the merits of her claim and becomes moot before final judgment because no further court-ordered assistance proves

---

[4] Because Plaintiffs did not establish their entitlement to fees, the district court did not reach the question of what amount of fees, if any, would be appropriate. Dismissal Order (ECF 232) at 1–2 [CA.JA1017–18].

11

> necessary, the subsequent mootness of
> the case does not preclude an award of
> attorney's fees.

App. 22a. In establishing this new rule, the majority addressed several "recurrent questions." App. 23a. *First*, the court considered when relief from a preliminary injunction is "sufficiently *on the merits* to justify prevailing party status." App. 27a. The majority held that a prediction of "likely" success suffices. App. 28a. And because *all* preliminary injunctions require a "likelihood" of success under *Winter*, the court reasoned that "*all* preliminary injunctions" should qualify as "solidly merits-based." App. 28a (emphasis added).

*Second*, the Fourth Circuit considered when the "court-ordered change" from a preliminary injunction is sufficiently "enduring," as opposed to "ephemeral." App. 31a. The majority discussed "two sets of cases" where a preliminary injunction might suffice. App. 33a. In the first, the plaintiff receives a preliminary injunction, and "what moots the case is only court-ordered success and the passage of time." App. 32a (citation omitted). "The canonical example is a plaintiff who wins a preliminary injunction permitting a protest at a specific event." App. 32a. In that scenario, the preliminary injunction provides "all the court-ordered assistance required," and "[a]fter the event ends, the litigation will be dismissed as moot." App. 32a. In the second set of cases (which includes this one), a preliminary injunction provides relief that becomes "enduring" only later due to a non-

12

judicial act, as when "the policy is permanently repealed or abandoned before final judgment." App. 33a. The majority held that both sets of cases conferred "prevailing party" status. App. 35a–36a. It therefore reversed and remanded for calculation of a fee award. App. 41a.

Judge Quattlebaum, joined by three judges, dissented. The four dissenters disagreed with the majority on both "recurring" questions discussed above. As to the first, the dissent reasoned that a "likelihood of success" "only predicts the outcome of a future decision" and "does not definitively decide the merits of anything." App. 61a. And as to the second, the dissent explained that a preliminary injunction is not sufficiently "enduring" if it does not, itself, provide any "permanent relief." App. 62a–64a. Here, the required "lasting change" came not from the preliminary injunction, but from the Virginia legislature's subsequent repeal of the law. App. 64a. Under this Court's precedent, this subsequent, non-judicial act cannot confer prevailing party status, as it "lacks the necessary judicial *imprimatur* on the change." App. 64a (quoting *Buckhannon*, 532 U.S. at 605).

Prior to the remand, Plaintiffs moved for attorney's fees in the Fourth Circuit. Mot. for Atty. Fees, No. 21-1756 (4th Cir. Aug. 21, 2023), ECF 89-1. They requested over $767,000 in appellate fees alone. *Id.* at 23, ECF 89-2 at 14–37, ECF 89-3 at 22–33. The Fourth Circuit transferred all fee proceedings to the district court. Order, *Stinnie*, No. 21-1756 (Aug. 23,

13

2023), ECF 91. The district court stayed proceedings pending resolution of this petition. Order, *Stinnie*, No. 3:16-cv-00044 (Oct. 5, 2023), ECF 277.

## REASONS FOR GRANTING THE PETITION

### I.     The Courts of Appeals are divided on the questions presented

In the wake of *Sole*, the Courts of Appeals have sharply divided on how to answer the questions presented. They currently agree that a preliminary injunction "may *sometimes*" confer prevailing-party status—the overarching question left open in *Sole*. 551 U.S. at 86. But they disagree strongly as to *when*. Specifically, the Courts of Appeals are split over "two recurrent questions." *Higher Taste, Inc.* v. *City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013). These questions are: (1) whether a prediction of "likely" future success is a ruling "on the merits," or whether a definitive ruling on the merits is required; and (2) whether the "enduring" change in the parties' relationship must come from the preliminary injunction itself, or whether it can come from a subsequent, non-judicial action that moots the case.

The lower courts "have struggled to decide" these questions. *Higher Taste, Inc.*, 717 F.3d at 715. "Without a Supreme Court decision on point," they have "announced fact-specific standards that are anything but uniform." *Dearmore* v. *City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). The dissent below agreed that these standards are "quite diverse," and

14

put it plainly: "So, let's be clear. There is no unanimity of the circuit courts on this issue." App. 69a (Quattlebaum, J., dissenting).

There are now well-established, entrenched splits on both questions, warranting this Court's review. See *Buckhannon*, 532 U.S. at 603 (granting certiorari "[t]o resolve the disagreement amongst the Courts of Appeals"). And, as explained below, the courts in the majority on each split have once again adopted overly expansive interpretations of the key phrase "prevailing party." This Court's intervention is again necessary to establish the appropriate scope of this term and the numerous fee-shifting statutes that employ it.

### A. The Courts of Appeals are divided on whether a prediction of "likely" success constitutes a ruling "on the merits"

The Courts of Appeals disagree on whether a prediction of "likely" success constitutes a ruling "on the merits" sufficient for a party to "prevail." *Buckhannon*, 532 U.S. at 603. The minority position holds that it never does, and that only an actual, conclusive ruling on the merits can suffice. By contrast, the majority of courts holds that a prediction of "likely" future success does constitute a ruling "on the merits"—at least in certain circumstances.

The minority position, currently occupied by the Third Circuit, is that "merely finding a likelihood of

15

success" does not amount to a "merits-based" ruling. *Singer Mgmt. Consultants, Inc.* v. *Milgram,* 650 F.3d 223, 230 n.4 (3d Cir. 2011); see also *id.* at 229 ("[A] court's finding of 'reasonable probability of success on the merits' is not a resolution of 'any merit-based issue.'") (citation omitted). Instead, a preliminary injunction confers prevailing-party status only in the "rare situation" where the court *actually* decides the merits. *Id.* at 229. For example, the Third Circuit has allowed fees where a district court, in granting a preliminary injunction, definitively held that the challenged ordinance "was facially unconstitutional," enjoined its enforcement, and ordered the defendant to propose a replacement. *Id.* at 229–30 (discussing *People Against Police Violence* v. *City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) ("*PAPV*")). But because preliminary injunctions are usually based on "a *likelihood* of success on the merits," "it follows that parties will not often 'prevail' based solely on those events." *Id.* at 229 (emphasis in original); see also *Select Milk Producers, Inc.* v. *Johanns*, 400 F.3d 939, 956 (D.C. Cir. 2005) (Henderson, J., dissenting) ("But 'likelihood of success on the merits' does not equal 'success on the merits.'") (citation omitted).[5]

---

[5] As noted above, the Fourth Circuit previously shared this view. In *Smyth*, now overruled, the court held that a preliminary injunction cannot confer prevailing party status where it provides only "a prediction of a probable, but necessarily uncertain, outcome." 282 F.3d at 276. And the requisite "likelihood" varies according to the strength of other equitable factors, making it "an unhelpful guide to the legal determination of whether a party has prevailed." *Id.* at 277. In addition, the

16

By contrast, the Second, Fourth, Fifth, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits have held that a prediction of future success *is* sufficient, at least in certain circumstances. *Haley* v. *Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) (affirming fee award where order granting preliminary relief was based on a likelihood of success); App. 28a (same); *Dearmore*, 519 F.3d 517 at 524–25 (same); *Planned Parenthood Sw. Ohio Region* v. *Dewine*, 931 F.3d 530, 535 (6th Cir. 2019) (same); *Rogers Grp., Inc.* v. *City of Fayetteville, Ark.*, 683 F.3d 903. 906 (8th Cir. 2012) (same); *Higher Taste*, 717 F.3d at 716 (same); *Kansas Jud. Watch* v. *Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011) (same); *Common Cause Georgia* v. *Georgia*, 17 F.4th 102, 107 (11th Cir. 2021) (same); *Select Milk*, 400 F.3d at 948 (same). But they do not explain why—rather, they simply assume that a "likelihood" is sufficient. See, *e.g.*, *Haley*, 106 F.3d at 484 (asserting that relief based on a "likelihood" of success was "clearly based on the merits"); App. 28a (asserting that a prediction of likely success is "solidly merits-based").

These courts also have not adopted clear or consistent standards on when a "likelihood" of success is sufficient to find that a party has prevailed. Several decisions recognize that the rigor of preliminary-

---

First Circuit has thus far refused to award fees for a preliminary injunction based on only a "likelihood" of future success. *Sinapi* v. *Rhode Island Bd. of Bar Examiners*, 910 F.3d 544 (1st Cir. 2018). The First Circuit has held that a prediction based on preliminary proceedings that are "hasty and abbreviated" is not enough, while leaving open whether a "likelihood" of success can ever be sufficient. *Id.* at 551 (quoting *Sole*, 551 U.S. at 84).

17

injunction proceedings can vary widely and deny fees if they find the proceedings were too hasty or informal. See, *e.g.*, *DiMartile v. Hochul*, 80 F.4th 443, 453 (2d Cir. 2023) (reversing fee award based on preliminary injunction that was "hastily entered and decided only after an extremely abbreviated briefing schedule"); *Kansas Jud. Watch,* 653 F.3d at 1238 ("[A] preliminary injunction does not provide relief on the merits if the district court does not undertake a serious examination of the plaintiff's likelihood of success . . . ."). Other courts have not articulated such a requirement. See, *e.g.*, App. 28a; *Dearmore*, 519 F.3d 517 at 524–25 (looking only to whether grant of preliminary injunction was based on the merits or balancing of equities).

Courts also differ on the degree of "likelihood" of success needed. In *Winter*, this Court held that a "likelihood" of success is required for all preliminary injunctions. 555 U.S. at 22. But several courts have held that a higher "likelihood" of success than *Winter* requires is needed to justify a fee award. See, *e.g.*, *Tennessee State Conference of N.A.A.C.P* v. *Hargett*, 53 F.4th 406, 410 (6th Cir. 2022) (requiring an "unambiguous indication of probable success"); *Kansas Jud. Watch*, 653 F.3d at 1238 (denying fees based on preliminary injunction granted "largely because the balance of equities favored [the plaintiff]"); *McQueary* v. *Conway*, 614 F.3d 591, 598 (6th Cir. 2010) ("[T]here is only prevailing party status if the [preliminary] injunction represents an unambiguous indication of probable success on the

18

merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.") (citation omitted). Confirming that this threshold is met "requires close analysis" of the "reasoning underlying the grant of preliminary relief." *Mastrio* v. *Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (citation omitted). Other courts, including now the Fourth Circuit, apparently deem *Winter*'s floor to be sufficient, and therefore hold that "*all* preliminary injunctions" in which the district court did anything beyond preserve the status quo without discussion of the merits are "solidly merits-based." App. 28a (emphasis added); see also *Higher Taste, Inc.* v. *City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013) ("[A] preliminary injunction satisfies the judicial imprimatur requirement if it is based on a finding that the plaintiff has shown a likelihood of success on the merits"); *Common Cause/Georgia* v. *Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009) ("[A] preliminary injunction on the merits . . . entitles one to prevailing party status and an award of attorney's fees." (quoting *Taylor* v. *City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987)); *Dearmore*, 519 F.3d at 524–25 (affirming prevailing-party status where preliminary injunction was "clearly merit-based" rather than grounded in balancing of equities).

Thus, the Courts of Appeals are deeply divided in more ways than one. Not only are they split on whether a plaintiff who satisfies the *Winter* standard may ever qualify as a prevailing party—a split on which the Fourth Circuit changed sides in this very

19

case—but even those that agree satisfying *Winter* may be enough for prevailing-party status are deeply divided on when that may be the case.

### B. The Courts of Appeals are divided on when a preliminary injunction provides sufficiently "enduring" relief

The Courts of Appeals are also divided on when a preliminary injunction provides relief that is sufficiently enduring. *Sole* requires that a "prevailing party" obtain an "enduring change in the legal relationship" between the parties. 551 U.S. at 86. Two circuits allow fees only when this "enduring change" results from the preliminary injunction *itself*. Other circuits allow fees even if the "enduring change" results from a subsequent, non-judicial act that moots the case.

The Seventh and Eighth Circuits hold that the relief granted by the preliminary injunction must *itself* provide "enduring" change, because the relief is "not defeasible by further proceedings." *Dupuy* v. *Samuels*, 423 F.3d 714 (7th Cir. 2005). This relief must instead be "sufficiently akin to final relief on the merits," in that "the party's claim [for a] permanent injunction is rendered moot by the impact of the preliminary injunction." *N. Cheyenne Tribe* v. *Jackson*, 433 F.3d 1083 (8th Cir. 2006).

The "canonical example" of such a preliminary injunction is one "permitting a protest at a specific

20

event." App. 32a. The Seventh Circuit, for example, allowed fees for a preliminary injunction that permitted plaintiffs to protest at the 1996 Democratic National Convention. *Dupuy*, 423 F.3d at 719–20 (discussing *Young* v. *City of Chicago*, 202 F.3d 1000 (7th Cir. 2000)). In that case, the relief from the preliminary injunction "was not defeasible" because "[t]he sole event covered by the injunction, the 1996 Democratic National Convention, had ended." *Id.* at 723. In other words, the preliminary injunction itself provided the plaintiffs with "everything [they] asked for in the lawsuit," and all that mooted the case was this "court-ordered success and the passage of time." App. 19a.

By contrast, these circuits do not allow fees where the "enduring" relief comes from some later, non-judicial act, such as a legislature repealing or amending the challenged law. For example, the Eighth Circuit denied fees when the defendant amended an ordinance after the court preliminarily enjoined its enforcement. *Advantage Media, L.L.C.* v. *City of Hopkins, Minn.,* 511 F.3d 833, 835 (8th Cir. 2008). The court explained that while the lawsuit "resulted in alteration of several potentially unconstitutional provisions of the . . . ordinance, the Supreme Court has rejected the 'catalyst' theory of fee recovery as a means of attaining prevailing party status." *Id.* at 838; *Northern Cheyenne Tribe*, 433 F.3d at 1086 ("In the end, the Tribes achieved their desired result because of regulatory action taken by HUD . . . and because of voluntary decisions by the other

21

defendants . . . ."); *see also Hargett*, 53 F.4th at 413 (Nalbandian, J., dissenting) ("Here, Tennessee's voluntary repeal of the challenged provisions bars recovery of § 1988(b) attorney's fees. What mooted the case was the State-Defendants' own actions."); *Select Milk*, 400 F.3d at 956–57 (Henderson, J., dissenting) ("Nor does the subsequent mooting of the Milk Producers' lawsuit—not by adjudication but by voluntary regulatory change—bridge the gap between the preliminary relief granted and the award of 'irreversible' relief.").[6]

On the other side of the split, the Third, Fourth, Fifth, Sixth, and Ninth Circuits hold that "enduring" relief may come from some later, non-judicial event that moots the case. *PAPV*, 520 F.3d at 234; App. 31a– 35a; *Dearmore*, 519 F.3d at 524; *Hargett*, 53 F.4th at 409; *Higher Taste,* 717 F.3d at 717–18. This generally occurs when the challenged law is repealed or amended while the preliminary injunction is in place.

---

[6] To be sure, the Eighth Circuit has issued conflicting rulings on this issue. Contradicting *North Cheyenne Tribe* and *Advantage Media*, it subsequently *allowed* fees based on a preliminary injunction that was later mooted by repeal of the challenged law. *Rogers*, 683 F.3d at 904. *Rogers* did not acknowledge its departure from these prior rulings, or explain its basis for doing so, other than noting that the plaintiff specifically requested a preliminary injunction in its complaint, and, thus, received "'the precise relief that it had requested.'" *Id.* at 911 (citation omitted). Regardless, *Rogers* did not purport to overrule *North Cheyenne* or *Advantage Media*, and the resulting internal conflict merely highlights the confusion plaguing the Courts of Appeals on this issue.

22

See, *e.g.*, *PAPV*, 520 F.3d at 234 (defendant passed new ordinance); App. 31a–35a (legislature repealed the challenged law); *Hargett*, 53 F.4th at 409 (legislature amended the challenged law). In such cases, the courts have considered the preliminary injunction to become "enduring" when the case is mooted. See *PAPV*, 520 F.3d at 234 ("When the City ultimately passed a new ordinance . . . the Court closed the case . . . ; *at that point*, plaintiffs' victories were no longer subject to reconsideration on the merits in this case.") (emphasis added); App. 36a (allowing fees where the preliminary injunction "*becomes moot* before final judgment such that the injunction cannot be 'reversed, dissolved, or otherwise undone' by a later decision") (emphasis added).

These courts have not required the later mooting event to have the "judicial imprimatur" required by *Buckhannon*, 532 U.S. at 605. For instance, legislative repeal lacks such a "judicial imprimatur," *id.* at 601; so too does a settlement agreement that is not "judicially enforceable," *Higher Taste*, 717 F.3d at 718. On these courts' reasoning, the preliminary-injunction order provides the "judicial imprimatur" required by *Buckhannon*, while the later non-judicial mooting event provides the "enduring" relief required by *Sole*. See, *e.g.*, *Higher Taste*, 717 F.3d at 718 (holding that "the preliminary injunction 'carries all the "judicial imprimatur" necessary to satisfy *Buckhannon*,'"" while the later out-of-court settlement agreement "establish[ed] that the relief . . . is sufficiently enduring.").

23

The Fifth Circuit adds another requirement that the other circuits do not impose. It agrees that "enduring" relief can come from a later mooting event, but only when the defendant is responsible for that event and was actually motivated by the preliminary injunction. See *Dearmore*, 519 F.3d at 524 ("[W]e hold that the plaintiff . . . must win a preliminary injunction . . . that causes the defendant to moot the action . . . ."). It holds that this additional requirement "satisfies *Buckhannon*" because it mandates that "the defendant moots the plaintiff's action in response to a court order, not just in response to the filing of a lawsuit." *Ibid.*

## II. The questions presented are important and recurring

These conflicts between the Courts of Appeals concern "important matter[s]." Sup. Ct. R. 10(a). Indeed, "confusion among lower courts" over the application of Section 1988 is an inherently "important" matter. *Webb* v. *Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 245 (1985) (Brennan, J., concurring in part). This is true for at least three reasons.

*First*, attorney's fees in civil rights cases often impose substantial financial burdens on state governments. As *Buckhannon* recognized, "fees in this kind of litigation can be as significant as, and sometimes even more significant than, . . . potential liability on the merits." 532 U.S. at 608 (quoting *Evans* v. *Jeff D.*, 475 U.S. 717, 734 (1986)). These

24

burdens are exacerbated by the "unpredictability" of fee awards, which can be "just as important as their magnitude." *Evans*, 475 U.S. at 735.

Examples of substantial fee awards against government actors are not hard to find. In this case, Plaintiffs have already requested an award of more than $767,000 in *appellate fees alone*. Fee Petition at 23, ECF 89-2 at 14–37, ECF 89-3 at 22–33. Their total fee request likely will run into the millions of dollars, considering the years of litigation in the district court. Other recent examples of fee demands against States include: *Veasey* v. *Abbott,* No. 2:13-CV-193, 2020 WL 9888360 (S.D. Tex. May 27, 2020), *aff'd,* 13 F.4th 362 (5th Cir. 2021) ($6,790,333.31); *Tennessee State Conference of the N.A.A.C.P.* v. *Hargett*, Nos. 3:19-cv-00365, 3:19-cv-00385, 2021 WL 4441262 (M.D. Tenn. Sept. 28, 2021), *aff'd,* 53 F.4th 406 (6th Cir. 2022) ($851,279.44); *New York State Rifle & Pistol Association, Inc.* v. *Nigrelli*, No. 1:18-cv-134, 2023 WL 6200195 (N.D.N.Y. Sept. 22, 2023) ($447,700.82); *Chrysafis* v. *Marks*, No. 21-CV-2516, 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023) ($384,728.86); see also Br. of Am. Curiae State of Georgia, et al., *Hargett* v. *Tennessee State Conference of the NAACP*, No. 22-773 (Feb. 21, 2023) at 6–9 (collecting additional cases). Due to sovereign immunity, these judgments are not against the States themselves—but they will invariably be *paid* by the States and, ultimately, their taxpayers.

*Second,* the risk of large, unpredictable fee awards will deter States from voluntarily altering allegedly

25

unlawful behavior. See *Buckhannon,* 532 U.S. at 608 ("[T]he possibility of being assessed attorney's fees may well deter a defendant from altering its conduct."). Whenever a plaintiff secures a preliminary injunction, State defendants must fight to a final judgment (and potentially beyond) to avoid a fee award. *Evans*, 475 U.S. at 736 ("It is . . . not implausible to anticipate that parties to a significant number of civil rights cases will refuse to settle if liability for attorney's fees remains open, thereby forcing more cases to trial, unnecessarily burdening the judicial system, and disserving civil rights litigants."). This is true even if the State *wanted* to change the law for reasons unrelated to the lawsuit. Indeed, it is true even if the State had already *planned* to do so before the preliminary injunction issued.

*Third*, this issue affects more than just civil rights litigation. As explained above, "prevailing party" is a "legal term of art" that is interpreted "consistently" in "numerous statutes" authorizing awards of attorney's fees." *Buckhannon*, 532 U.S. at 602–03 & n.4. These fee-shifting statutes cover a host of substantive areas, from trademark infringement to disability discrimination to voting rights. See pp. 4–5, n.1, *supra.* Accordingly, the effect of the term's interpretation is sweeping.

Because the questions presented continue to be "recurring and important," Br. of Am. Curiae State of Georgia, et al., *Hargett* v. *Tennessee State Conference*

26

*of the NAACP*, No. 22-773 (Feb. 21, 2023), at 3, the Court should resolve them.

### III. The Fourth Circuit answered the questions presented incorrectly

The Court should also grant certiorari because the ruling below was incorrect. In erroneously overruling *Smyth*, the Fourth Circuit joined the wrong side of both circuit splits. *See* Section I, *supra*. Accordingly, this case presents an ideal opportunity for the Court to resolve these splits, while also reversing an erroneous ruling that could cost Virginia taxpayers millions of dollars.

### A. "On the merits" requires an actual decision on the merits rather than a prediction of "likely" future success

The decision below erred by holding that a preliminary injunction provides "relief on the merits" when it is based on a prediction of "likely" success in the future. The "merits" requirement "means a court actually makes a final decision." App. 66a (Quattlebaum, J., dissenting). A "likelihood" finding "does not definitively decide the merits of anything." App. 61a. Instead, it merely "predicts the outcome of a future decision." App. 61a; see also *Singer*, 650 F.3d at 230 n.4 ("[T]he determination must be merits-based . . . not be merely a finding of a likelihood of success on the merits, as in this case."); *Select Milk*, 400 F.3d at 956 (Henderson, J., dissenting) ("But 'likelihood of

27

success on the merits' does not equal 'success on the merits.'").

Indeed, because preliminary-injunction rulings are generally based on an initial prediction of "likely" success, they usually have no preclusive effect. They are generally "not binding at trial," for example. *Univ. of Texas* v. *Camenisch*, 451 U.S. 390, 395 (1981). Nor are they generally binding in a future case. See, *e.g.*, *Medtronic, Inc.* v. *Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982). Instead, they are deemed preclusive only in "rare circumstances" where they were "'clearly intended to firmly and finally resolve [an] issue', rather than 'estimate the likelihood of success' of proving that issue." *Abbott Labs.* v. *Andrx Pharms., Inc.*, 473 F.3d 1196, 1205–06 (Fed. Cir. 2007) (citation omitted).

The plain meaning of "prevailing party" confirms that an actual, conclusive ruling on the merits is required to warrant fees. The Court commonly looks to dictionary definitions to determine plain meaning. See, *e.g.*, *Astrue* v. *Ratliff*, 560 U.S. 586, 592 (2010); *Mississippi* v. *Louisiana*, 506 U.S. 73, 78 (1992). And at the time Congress passed Section 1988, the term "prevailing party" was defined as "[t]he party ultimately prevailing when the matter is finally set to rest." *Black's Law Dictionary* 1352 (rev. 4th ed. 1968). Whether a party is prevailing does not depend on "the degree of success at different stages of the suit." *Ibid.*; see App. 46a–47a (Quattlebaum, J., dissenting) ("At the time Congress enacted [Section 1988], the term 'prevailing party' was understood in the law.")

28

(discussing *Black's Law Dictionary*). This definition "tells us to look to the 'end of the suit' to see if a party has 'successfully maintained' a claim, not to interim events." App. 47a (Quattlebaum, J., dissenting) (quoting *Black's Law Dictionary*). A preliminary prediction of "likely" future success is not sufficient.

In line with the term's plain meaning, this Court has repeatedly suggested that a "prevailing party" must obtain a definitive ruling on the merits. See, *e.g.*, *Texas State Tchrs. Ass'n*, 489 U.S. at 792 ("[T]o be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a *resolution of the dispute* which changes the legal relationship between itself and the defendant.") (emphasis added). Indeed, *Buckhannon* held that "prevailing" requires more than "filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined)." 532 U.S. at 606; see also, *e.g.*, *Hanrahan*, 446 U.S. at 757 ("But it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has *established his entitlement* to some relief on the merits of his claims") (emphasis added); *Flight Attendants* v. *Zipes*, 491 U.S. 754, 762 (1989) ("Our cases have emphasized the crucial connection between *liability* for violation of federal law and liability for attorney's fees under federal fee-shifting statutes") (emphasis added). Thus, as the dissenting judges below correctly concluded, a "prevailing party" must "obtain a judicial decision that is like a judgment or a consent decree" and "resolve[s] at least one issue on the merits." App.

29

57a (Quattlebaum, J., dissenting). "And resolving an issue on the merits means deciding who ultimately wins." App. 58a (Quattlebaum, J., dissenting).

It is for good reason that Congress requires a *definitive* ruling on the merits. A prediction of "likely" success occurs at a preliminary phase of litigation, based on relaxed procedures and an incomplete record. That prediction can be wrong, and it often is. But under the ruling below, if the case is mooted before that error is corrected, the defendant will pay attorney's fees anyway. Thus, the ruling below will inevitably punish some defendants with hefty fee awards for entirely lawful conduct based only on a single district judge's preliminary conclusion that the conduct may have been unlawful.

This case is a clear example of the problem. At the time the district court predicted Plaintiffs were "likely" to succeed, the most analogous decision available supported Plaintiffs. *Fowler* v. *Johnson*, No. CV-17-11441, 2017 WL 6379676 (E.D. Mich. Dec. 14, 2017). But six months later, the Sixth Circuit *reversed* that decision, agreeing with many of the arguments the Commissioner had made in the present case. *Fowler* v. *Benson*, 924 F.3d 247, 264 (6th Cir. 2019). Since then, many decisions in similar license-suspension cases have supported the Commissioner. See, *e.g., Mendoza* v. *Strickler*, 51 F.4th 346, 349 (9th Cir. 2022); *Robinson* v. *Long*, 814 F. App'x 991 (6th Cir. 2020); *Motley* v. *Taylor*, 451 F. Supp. 3d 1251 (M.D. Ala. 2020), *aff'd*, No. 20-11688, 2022 WL 1506971 (11th Cir. May 12, 2022); *White* v. *Shwedo*,

30

No. 2:19-CV-3083-RMG, 2020 WL 2315800 (D.S.C. May 11, 2020); *Johnson* v. *Jessup*, 381 F. Supp. 3d 619 (M.D.N.C. 2019). Had this case not been mooted, the *Commissioner* would have prevailed, not Plaintiffs.

In addition, the decision below results in precisely "what *Buckhannon* sought to avoid"—"a second major litigation" over attorney's fees. App. 67a (Quattlebaum, J., dissenting) (quoting *Buckhannon*, 532 U.S. at 609). For good reason, this Court has previously preferred "ready administrability" when it comes to the standard for attorney's fees. *Buckhannon*, 532 U.S. at 610. Allowing fees based on a "likelihood" of success is "clearly not a formula for 'ready administrability.'" *Ibid.* Rather, such a rule thrusts courts into thorny questions, including how *much* of a "likelihood" is sufficient to provide "relief on the merits," and how to determine when that threshold has been crossed. The "likelihood" of success needed to grant a preliminary injunction can be quite low: many circuits hold that a "serious question" on the merits or a "plausible claim" can suffice. See *All. for the Wild Rockies* v. *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("serious question"); *Citigroup Glob. Markets, Inc.* v. *VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010) (same); *Hoosier Energy Rural Elec. Co-op., Inc.* v. *John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) ("plausible claim").

Accordingly, many courts have held that a stronger "likelihood" is needed for fees than for a preliminary injunction, see Section I.A, *supra*. But courts

31

assessing fee requests then face difficult and fact-intensive distinctions between preliminary injunctions decided sufficiently "on the merits" and injunctions based too heavily on equitable factors. *Ibid.* Because the merits and equitable factors are often weighed on a "sliding scale," courts face the daunting task of parsing district court opinions and hearing transcripts to decide whether that threshold had been crossed. *Ibid.*; see also *Select Milk*, 400 F.3d at 957 (Henderson, J., dissenting) ("How much of a 'likelihood of success' is enough? Will a 75 per cent likelihood do? How about 50 per cent with a strong public interest showing to boot?"). At best, this is a "contextual and case-specific inquiry," *McQueary*, 614 F.3d at 601, that will drain party and judicial resources.

Courts also face difficult questions of how rigorous the procedures must be that led to the "likelihood" prediction. Preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camenisch,* 451 U.S. at 395; see *id.* at 394. (describing "the significant procedural differences between preliminary and permanent injunctions"). Acknowledging this problem, some Courts of Appeals have held that a prediction of future success cannot confer prevailing party status where the proceedings were "hasty and abbreviated," *Sinapi*, 910 F.3d at 551, or where there was no "serious examination" of the merits, *Kansas Jud. Watch*, 653 F.3d at 1238. See also Section I.A, *supra*. But where,

32

exactly, is the line between "hasty and abbreviated" and "thorough" or "serious" examination? Cases offer no clear answer. See App. 67a (Quattlebaum, J., dissenting) ("How much discussion of the merits is necessary?"). "[C]reative lawyers haggling over fees will contest these and likely other issues undoubtedly bringing about what *Buckhannon* sought to avoid . . . ." *Ibid.*

### B.      A court order, rather than a non-judicial act, must make the plaintiff a "prevailing party"

The decision below also places the Fourth Circuit on the wrong side of the second split. This side erroneously holds that a preliminary injunction need not itself provide "enduring" relief, which can come instead from some subsequent non-judicial act that moots the case. See Section I.B, *supra*. As the dissent below correctly explained, that improperly "allows a non-judicial decision to anoint a prevailing party." App. 63a (Quattlebaum, J., dissenting); see also *Advantage Media,* 511 F.3d at 835; *Northern Cheyenne Tribe*, 433 F.3d at 1086; *Hargett*, 53 F.4th at 413 (Nalbandian, J., dissenting); *Select Milk*, 400 F.3d at 956–57 (Henderson, J., dissenting).

This holding is in fatal tension with *Sole* and *Buckhannon*. "[E]ither way the majority turns, its conclusion conflicts with Supreme Court precedent." App. 63a (Quattlebaum, J., dissenting). *Sole* requires that a prevailing party obtain an "enduring change in the legal relationship" between the litigants. 551 U.S.

33

at 86 (cleaned up). And *Buckhannon* requires that this "change in the legal relationship" be "judicially sanctioned." 532 U.S. at 605. A non-judicial act, such as a "defendant's voluntary change in conduct," cannot make the plaintiff a "prevailing party" because it "lacks the necessary judicial *imprimatur*." *Id.* at 598–99. But the "enduring" change here had no judicial imprimatur, and the only change with a judicial imprimatur was not enduring. The court's holding that Plaintiffs are prevailing parties thus cannot be reconciled with this Court's precedent.

Treating a *non-judicial act* as "enduring" relief violates *Buckhannon*. At the time the preliminary injunction here was issued, it provided no "enduring" relief. See pp. 8–9, *supra*. Instead, it provided only "ephemeral" relief that could have been reversed by further proceedings, meaning plaintiffs had "won a battle," but might still have "lost the war." *Sole*, 551 U.S. at 86. Plaintiffs received "enduring" relief only when the Virginia General Assembly repealed the law at issue. Thus, the court allowed "a non-judicial decision to anoint a prevailing party." App. 63a (Quattlebaum, J., dissenting). In other words, "the lasting change did not come from the court." App. 64a. As the dissent persuasively explained: "The plaintiffs ultimately got what they wanted. But they did not get what they wanted because a federal court decided the merits of their challenge." App. 61a–62a. Rather, "[t]hey got what they wanted because the General Assembly of Virginia decided to change the law." App.

34

62a. Thus, "*Buckhannon* is crystal clear" that "the plaintiffs cannot be prevailing parties." *Ibid.*

Indeed, Plaintiffs' "claim to prevailing party status" is "little more than a new spin on the catalyst theory" that this Court rejected in *Buckhannon*. *Id.* To avoid *Buckhannon*, the Fourth Circuit majority below asserted that its decision rests "entirely on [the plaintiffs'] victory at the preliminary injunction stage, and not on the General Assembly's subsequent repeal of § 46.2-395." App. 28a. But the majority relied on the repeal to satisfy the second part of its test—that the claim "becomes moot before final judgment such that the injunction cannot be reversed, dissolved, or otherwise undone . . . ." App. 36a; see App. 63a (Quattlebaum, J., dissenting) ("But the second part of the majority's test . . . necessitates a non-judicial act."). Indeed, the majority had no choice but to rely on the repeal, because Plaintiffs' preliminary injunction did not itself provide "enduring" relief— without the repeal, Plaintiffs could have lost at summary judgment, at trial, or on appeal, and therefore obtained nothing more than the "fleeting" relief that *Sole* held insufficient. *Sole*, 551 U.S. at 83. Because "[t]he majority needs something more," it allows a "legislative, not judicial, action" to provide the enduring change, which lacks the "judicial *imprimatur*" needed to satisfy *Buckhannon*. App. 63a–64a (Quattlebaum, J., dissenting).

This maneuver improperly resurrects the "catalyst" theory, allowing a defendant's voluntary cessation to confer prevailing party status. Under

35

*Buckhannon*, a party must prevail *in* court, not outside of it. The decision below is thus contrary to this Court's precedent.

## IV.     This case is an ideal vehicle for resolving the questions presented

This case presents the Court with an ideal vehicle for resolving the questions presented. It turns on the purely legal issue of whether Plaintiffs are entitled to attorney's fees, which was cleanly presented to, and decided by, the Fourth Circuit en banc. See App. 5a ("This fee dispute turns on a single question of law. . . ."). The questions presented are the only remaining issues in the case. And the Fourth Circuit's ruling was not interlocutory—it was based on a complete record.

In addition, the two circuit splits presented here are both outcome-determinative. As to the first split, the preliminary injunction was expressly based on a prediction of future success. See, *e.g.*, *Stinnie*, 355 F. Supp. 3d at 520 ("Plaintiffs are *likely* to succeed on the merits of their procedural due process claim."); *id.* at 527 (Plaintiffs made "a clear showing that they are likely to succeed" but did not "show a certainty of success"). The district court expressly declined to "reach a definitive conclusion." *Id.* at 529. Accordingly, the outcome would have been different under the minority rule. *Singer*, 650 F.3d at 230 n.4 (fee award may not be based on "merely a finding of a likelihood of success").

36

The second split is equally determinative here, because the preliminary injunction was decidedly "defeasible." Before the case was mooted, it could have been "reversed, dissolved, or otherwise undone" by a final decision—just as in *Sole*. 551 U.S. at 83. The preliminary injunction did not *itself* provide "enduring" relief, as in the "canonical example" of an injunction allowing a particular event to go forward. App. 32a.

Further, both splits are mature. Ten circuits have taken sides on the first split, and seven circuits on the second. *See* Section I, *supra*. And as discussed above, the Fourth Circuit has taken the wrong side of both. *See* Section III, *supra*.

Finally, this case is emblematic of how the questions presented generally arise. Here, the district court issued a preliminary injunction, and the case was subsequently mooted, prior to final judgment, by the legislature's repeal of the law. See pp. 6–13, *supra*. Similar fact patterns commonly arise in other cases. See, *e.g.*, *Dearmore,* 519 F.3d at 520 (city amended challenged ordinance); *Hargett*, 53 F.4th at 408 (legislature repealed challenged law); *Higher Taste,* 717 F.3d at 714–15 (city amended challenged ordinance); *Kansas Jud. Watch*, 653 F.3d at 1234 (Kansas Supreme Court amended challenged ethics code).

37

## CONCLUSION

The Court should grant the petition for certiorari.

Respectfully submitted,

JASON S. MIYARES
 *Attorney General of Virginia*

MAYA M. ECKSTEIN
TREVOR S. COX
DAVID M. PARKER
HUNTON ANDREWS
KURTH LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219

ANDREW N. FERGUSON
 *Solicitor General*
 *Counsel of Record*
ERIKA L. MALEY
 *Principal Deputy Solicitor*
 *General*
GRAHAM K. BRYANT
 *Deputy Solicitor General*
M. JORDAN MINOT
 *Assistant Solicitor General*
OFFICE OF THE VIRGINIA
ATTORNEY GENRAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us

*Counsel for Petitioner*

No. 23 -_____

IN THE

# Supreme Court of the United States

GERALD F. LACKEY, IN HIS OFFICIAL CAPACITY AS THE
COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR
VEHICLES,

*Petitioner,*

v.

DAMIAN STINNIE, ET AL.,

*Respondents.*

*On Petition for a Writ of Certiorari to the United States
Court of Appeals for the Fourth Circuit*

## APPENDIX

JASON S. MIYARES
  *Attorney General of Virginia*

MAYA M. ECKSTEIN
TREVOR S. COX
DAVID M. PARKER
HUNTON ANDREWS
KURTH LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219

ANDREW N. FERGUSON
  *Solicitor General*
  *Counsel of Record*
ERIKA L. MALEY
  *Principal Deputy Solicitor*
  *General*
GRAHAM K. BRYANT
  *Deputy Solicitor General*
M. JORDAN MINOT
  *Assistant Solicitor General*
OFFICE OF THE VIRGINIA
ATTORNEY GENRAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us

*Counsel for Petitioner*

# TABLE OF CONTENTS

**Page(s)**

Appendix A: Opinion of the United States Court of Appeals for the Fourth Circuit upon Rehearing En Banc (August 7, 2023) .......................................1a

Appendix B: Order of the United States Court of Appeals for the Fourth Circuit Granting Rehearing En Banc (August 9, 2022) ................................71a

Appendix C: Published Panel Opinion of the United States Court of Appeals for the Fourth Circuit (June 27, 2022) ................................................73a

Appendix D: Order of the United States District Court for the Western District of Virginia on Petition for Attorneys' Fees and Litigation Expenses (June 4, 2021) ...................................93a

Appendix E: Memorandum Opinion of the United States District Court for the Western District of Virginia (June 4, 2021) ....................................95a

1a

## ON REHEARING EN BANC

**PUBLISHED**

UNITED STATES
COURT OF APPEALS
FOR THE FOURTH
CIRCUIT

### No. 21-1756

DAMIAN STINNIE; MELISSA ADAMS; ADRAINNE JOHNSON; WILLIEST BANDY; BRIANNA MORGAN, individually, and on behalf of all others similarly situated,

Plaintiffs - Appellants,

v.

RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles,

Defendant - Appellee.

- - - - - - - - - - - - - - - - - - - -

2a

AMERICAN CIVIL LIBERTIES UNION OF
VIRGINIA, ET AL,

                 Amicus Supporting Appellant,

INSTITUTE FOR JUSTICE,

                 Amicus Supporting Rehearing
                 Petition.

———————————

Appeal from the United States District Court for
the Western District of Virginia, at Charlottesville.
Norman K. Moon, Senior District Judge. (3:16-cv-
00044-NKM-JCH)

———————————

Argued: January 25, 2023
Decided: August 7, 2023

———————————

3a

Before DIAZ, Chief Judge, and NIEMEYER, KING, GREGORY, AGEE, WYNN, THACKER, HARRIS, RICHARDSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

———————

Vacated and remanded by published opinion. Judge Harris wrote the majority opinion, in which Chief Judge Diaz and Judges Niemeyer, King, Gregory, Wynn, and Thacker joined. Judge Quattlebaum wrote a dissenting opinion, in which Judges Agee, Richardson, and Rushing joined.

———————

**ARGUED:** Tennille Jo Checkovich, SMITHFIELD FOODS, INC., Smithfield, Virginia, for Appellants. Trevor Stephen Cox, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee. **ON BRIEF:** Jonathan T. Blank, Benjamin P. Abel, Charlottesville, Virginia, John J. Woolard, MCGUIREWOODS LLP, Richmond, Virginia; Angela A. Ciolfi, Charlottesville, Virginia, Patrick Levy-Lavelle, LEGAL AID JUSTICE CENTER, Richmond, Virginia; Leslie Kendrick, Charlottesville, Virginia; Michael Stark, Smithfield, Virginia, for Appellants. Mark R. Herring, Attorney General, Jason S. Miyares, Attorney General, Andrew N. Ferguson, Solicitor General, Donald D. Anderson, Deputy Attorney General, Leslie A.T. Haley, Deputy Attorney General, Chandra D. Lantz, Senior Assistant Attorney General, Julie M. Whitlock, Senior

4a

Assistant Attorney General, Janet W. Baugh, Senior Assistant Attorney General, Christian A. Parrish, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Maya M. Eckstein, David M. Parker, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee. Theodore A. Howard, WILEY REIN LLP, Washington, D.C., for Amici American Civil Liberties Union of Virginia, et al. William R. Maurer, INSTITUTE FOR JUSTICE, Seattle, Washington, for Amicus Institute for Justice.

———————————

5a

PAMELA HARRIS, Circuit Judge:

Under 42 U.S.C. § 1988(b), the "prevailing party" in certain civil rights actions is eligible to recover reasonable attorney's fees. Two decades ago, we held that a plaintiff who wins a preliminary injunction but – for whatever reason – does not secure a final judgment may never qualify as a prevailing party. *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002). In the years since, this categorical rule has become a complete outlier: Every other circuit to consider the issue has held that a preliminary injunction may confer prevailing party status in appropriate circumstances.

We granted rehearing en banc to reassess our bright-line approach, and we now conclude that it is too stringent. Although many preliminary injunctions represent only "a transient victory at the threshold of an action," *Sole v. Wyner*, 551 U.S. 74, 78 (2007), some provide enduring, merits-based relief that satisfies all the requisites of the prevailing party standard. Because the plaintiffs here "prevailed" in every sense needed to make them eligible for a fee award, we vacate the district court's denial of attorney's fees and remand for further proceedings.

## I.

### A.

This fee dispute turns on a single question of law – whether a preliminary injunction may ever

6a

confer "prevailing party" status under 42 U.S.C. § 1988(b) – so we review the facts only as they bear on that inquiry. Prior to this litigation, a Virginia statute required the automatic suspension of residents' driver's licenses if they failed to pay certain court fines and fees. *See* Va. Code § 46.2-395 (repealed 2020). Then, in 2016, a group of indigent Virginians who lost their licenses when they were unable to pay court debts initiated a putative class action against the Commissioner of the Virginia Department of Motor Vehicles ("Commissioner"), alleging that the Commonwealth's license-suspension scheme was unconstitutional. The plaintiffs raised several claims under the Fourteenth Amendment: that the statute's requirement of automatic suspension without notice or a hearing violated their procedural due process rights; and that the statute's enforcement against those who were unable, not unwilling, to pay violated both their substantive due process rights and their equal protection rights. As relief, the plaintiffs sought preliminary and permanent injunctions preventing the statute's enforcement and requiring license reinstatement as to the "hundreds of thousands of Virginians" with suspended licenses. J.A. 227.

In December 2018,[1] following extensive briefing and argument, the district court granted the

---

[1] The district court initially granted the Commissioner's motion to dismiss for lack of subject matter jurisdiction. On appeal, we remanded with instructions to allow the plaintiffs to amend their complaint. *See Stinnie v. Holcomb*, 734 F. App'x 858, 863 (4th Cir. 2018).

7a

plaintiffs' request for a preliminary injunction. In a comprehensive opinion, the court made detailed findings of fact and conducted a robust assessment of the plaintiffs' procedural due process claim before concluding that it was likely to succeed on the merits. *See Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 531 (W.D. Va. 2018).[2] And after determining that the plaintiffs satisfied the remaining injunction factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the court deemed interim relief appropriate. *Stinnie*, 355 F. Supp. 3d at 532 (concluding that "irreparable harm, the balance of equities, and the public interest . . . weigh in favor of" the plaintiffs). The court then preliminarily enjoined the statute's enforcement as to the named plaintiffs and ordered the Commissioner to "remove any current suspensions of the Plaintiffs' driver's licenses imposed under Va. Code § 46.2-395." J.A. 843.[3] The Commissioner did not appeal the injunction, and the plaintiffs were once again free to drive to their jobs, medical appointments, and personal engagements. *See Stinnie*, 355 F. Supp. 3d at 520–22.

The case was set for a bench trial in August 2019. But soon before trial – and with cross-motions for summary judgment pending – the Virginia

---

[2] Because the court found the plaintiffs likely to succeed on the merits of their procedural due process claim, it declined to reach their remaining constitutional arguments. *Stinnie*, 355 F. Supp. 3d at 531 n.9.

[3] The court had not yet ruled on the plaintiffs' motion for class certification, so it made clear that its injunction "applie[d] only to the named Plaintiffs" and not to any broader putative class. J.A. 843 n.1.

8a

General Assembly passed a Budget Amendment suspending the enforcement of the challenged statute for one year. *See Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019). At the Commissioner's request and over the plaintiffs' strenuous objections, the court then stayed the case pending the next legislative session, during which the Commissioner represented a full repeal was likely. *See id*. And at this session, the General Assembly voted to eliminate § 46.2-395 from the Virginia Code. *See* 2020 Va. Acts ch. 965. With the challenged statute repealed – and the plaintiffs no longer in need of court-ordered relief – the court dismissed the action as moot.

## B.

The plaintiffs then petitioned for attorney's fees under 42 U.S.C. § 1988(b), which provides that the district court, "in its discretion, may allow the prevailing party" in § 1983 actions "a reasonable attorney's fee as part of the costs." The court first requested briefing on whether the plaintiffs were "prevailing parties" eligible for a fee award; if the plaintiffs could clear this hurdle, the parties would then brief "the amount and reasonableness of any fees" to be shifted. J.A. 1017.

In our circuit, however, this initial hurdle amounted to a brick wall. True, the plaintiffs noted, a party "prevails" for purposes of § 1988(b) if "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying

9a

the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). And here, they argued, the district court's preliminary injunction did just that: After determining that the plaintiffs were likely to succeed on the merits, the court ordered the Commissioner to reinstate their licenses, providing precisely the "actual relief" that the litigants sought by bringing suit. The repeal of the challenged statute may have rendered further relief unnecessary, but that did not "detract from the legal significance" of their victory. J.A. 1042.

But as the Commissioner responded, these arguments were squarely foreclosed by Fourth Circuit precedent: In Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 277 (4th Cir. 2002), we held that winning a preliminary injunction is *never* sufficient to confer "prevailing party" status. Preliminary relief, we reasoned, is "necessarily uncertain," the product of an "incomplete examination of the merits" that "by no means represents a determination that the claim in question will or ought to succeed ultimately." *Id.* at 276– 77 & n.8. We thus concluded that preliminary injunctions are, without exception, "not the stuff of which legal victories are made." *Id.* at 276 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).

In a thoughtful report recommending denial of the fee petition, a magistrate judge noted that *Smyth* "stands alone," and that "a broad consensus among other circuits" holds that a "merits-based

10a

preliminary injunction that is not undone or otherwise modified by a later court order may confer prevailing party status." *Stinnie v. Holcomb*, No. 3:16-cv- 00044, 2021 WL 627552, at \*9–10 (W.D. Va. Feb. 16, 2021). Moreover, the magistrate judge concluded, it appeared that the plaintiffs here would indeed be prevailing parties under this consensus approach. *Id.* at \*10–11. Nonetheless, in light of *Smyth*'s categorical rule, the magistrate judge felt compelled to recommend denial, and the district court adopted that recommendation. *See Stinnie v. Holcomb*, No. 3:16-cv-00044, 2021 WL 2292807, at \*5 (W.D. Va. June 4, 2021).

On appeal, the plaintiffs did not contest that *Smyth* foreclosed their claim. Instead, they argued that intervening Supreme Court precedent rendered *Smyth* untenable. When we decided *Smyth*, courts in this circuit were permitted to grant preliminary injunctions for equitable reasons without finding that a plaintiff's claim was likely to succeed. *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). But in the years after *Smyth*, the Supreme Court clarified that a plaintiff may obtain preliminary relief *only* by first establishing a clear likelihood of success on the merits. *See Winter*, 555 U.S. at 20. This new, more rigorous merits requirement, the plaintiffs contended, obviated *Smyth*'s concerns about granting prevailing party status based on the "interplay of . . . equitable and legal considerations and the less stringent assessment of the merits of claims that are part of the preliminary injunction context." *Smyth*,

11a

282 F.3d at 277.

A panel of this court rejected the plaintiffs' argument and held that *Smyth* remains good law. *Stinnie v. Holcomb*, 37 F.4th 977, 983 (4th Cir. 2022). As the panel noted, "[w]e do not lightly presume that the law of the circuit has been overturned, especially where . . . the Supreme Court opinion and our precedent can be read harmoniously." *Id.* (quoting *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019)). Because such a harmonious reading remained possible after *Winter*, the panel concluded that "at this juncture, we are bound by *Smyth*." *Id.*[4] We then granted the plaintiffs' petition for rehearing en banc, and "[w]e now consider the case anew." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 270 (4th Cir. 2019).

## II.

This appeal turns on an issue of statutory construction: the meaning of a "prevailing party" under 42 U.S.C. § 1988(b). *Grabarczyk v. Stein*, 32 F.4th 301, 306 (4th Cir. 2022). "Prevailing party," in turn, is a "legal term of art that we interpret consistently across all federal fee-shifting statutes." *Reyazuddin v. Montgomery Cnty.*, 988 F.3d 794, 796 (4th Cir. 2021). So before we revisit our decision in

---

[4] The panel also rejected an argument that the Supreme Court's decision in *Lefemine v. Wideman*, 568 U.S. 1 (2012) – which observed that winning a *permanent* injunction confers prevailing party status – superseded *Smyth*. *Stinnie*, 37 F.4th at 983.

12a

*Smyth*, we begin with the basics of the prevailing party inquiry, which help clarify the nature of the dispute before us.

## A.

As a general rule, parties are "required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001). But in recognition of the costly burdens of litigation and to ensure "effective access to the judicial process" for those with civil rights grievances, Congress passed 42 U.S.C. § 1988 as an exception to this general rule. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)). Section 1988 provides that in an action to enforce § 1983 or other specified civil rights laws, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

A party "prevails" for purposes of § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). The plaintiff need not achieve his "central" goal to prevail; instead, if "the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has

13a

crossed the threshold to a fee award of some kind." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (cleaned up).

As the Supreme Court has emphasized, "[t]his is a generous formulation" that does no more than bring a plaintiff "across the statutory threshold" to eligibility for a fee award. *Hensley*, 461 U.S. at 433. "It remains for the district court to determine what fee is 'reasonable.'" *Id.* Accordingly, the Court has treated various forms of partial relief as sufficient to establish prevailing party status at this threshold stage of the inquiry. *See, e.g.*, *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (permanent injunction); *Farrar*, 506 U.S. at 112 (nominal damages); *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (declaratory judgment); *Maher v. Gagne*, 448 U.S. 122, 130 (1980) (settlement agreement enforced through consent decree).

Even this "generous formulation," to be sure, is not without limits. For one, the plaintiff's relief must be "judicially sanctioned." *Buckhannon*, 532 U.S. at 605. So a defendant's voluntary change in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* In addition, the plaintiff's success must be "enduring" rather than "ephemeral." *Sole v. Wyner*, 551 U.S. 74, 86 (2007). So a preliminary injunction that is later "reversed, dissolved, or otherwise undone by the final decision in the same case" cannot render a party prevailing. *Id.* at 83.

But in *Sole*, the Supreme Court expressly left open the question presented here: whether a

14a

preliminary injunction that is *not* "reversed, dissolved, or otherwise undone" by a later decision may confer prevailing party status. *See id.* at 86 (expressing "no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees"). Years earlier, however, we had answered that question for ourselves, holding that success in gaining a preliminary injunction may *never* render a party eligible for a fee award. *See Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002). We now review our holding in *Smyth* and decide anew whether a plaintiff who wins preliminary relief can ever "cross[] the threshold to a fee award of some kind." *Garland*, 489 U.S. at 792. [5]

**B.**

---

[5] Our dissenting colleagues provide their own thorough description of the Supreme Court's prevailing party case law. Though we agree with much of their review, we part ways on the suggestion that the Court's cases, taken as a whole, have effectively settled this question in favor of *Smyth*'s bright-line rule. *See* Diss. Op. at 54. In *Sole*, the Supreme Court was squarely presented with the opportunity to adopt *Smyth*'s approach, and if its precedent made "crystal clear" that preliminary relief can never confer prevailing party status, *see* Diss. Op. at 51, it would have said so. Instead, by identifying the issue as one on which it was taking "no view," *Sole*, 551 U.S. at 86, the Court created the space that has permitted virtually every court of appeals, as detailed below, to hold that preliminary relief may indeed support a fee award in appropriate circumstances.

15a

*Smyth* presented very similar facts to the case before us. There, the plaintiffs brought a § 1983 action challenging a Virginia welfare policy on constitutional and statutory grounds. *Smyth*, 282 F.3d at 271–72. After the district court granted a preliminary injunction prohibiting enforcement of the policy, and with the plaintiffs' motion for summary judgment pending, the Commonwealth modified the policy to provide the plaintiffs the relief they sought on a permanent basis. *Id.* at 273. The district court concluded that the plaintiffs were prevailing parties and granted their fee petition.

A panel of this court reversed, concluding that a preliminary injunction cannot provide the merits-based "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 274 (internal quotation marks omitted). In so holding, the court focused on two features of the preliminary injunction inquiry. For one, the panel observed that "in granting a preliminary injunction a court is guided not only by its assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms." *Id.* at 276. Indeed, at that time, our circuit permitted courts to grant preliminary injunctions for primarily equitable reasons – namely, to prevent irreparable harm to the plaintiff – without making any finding that the plaintiff's claim was likely to succeed. *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). And the *Smyth* court concluded that *Blackwelder*'s balance-of-

16a

hardships approach, which allowed a particularly strong showing of likely harm to compensate for a weak showing on the merits, rendered preliminary relief "an unhelpful guide to the legal determination of whether a party has prevailed." *Smyth*, 282 F.3d at 277.

Second, the *Smyth* court looked to the "necessarily uncertain" nature of preliminary relief itself. Even a merits-based preliminary injunction, in the panel's view, "is best understood as a prediction of a probable . . . outcome," one that "by no means represents a determination that the claim in question will or ought to succeed ultimately." *Id.* at 276. Winning a preliminary injunction, the court concluded, was more "closely analogous" to surviving a motion to dismiss than securing a final judgment on the merits, and thus "ill- suited to guide the prevailing party determination." *Id.* at 276–77 & n.8.

For the last two decades, then, civil rights plaintiffs in our circuit who won preliminary relief but did not secure a final judgment have been categorically barred from recovering attorney's fees. And although "we do not lightly overrule our precedent," *Hurlburt v. Black*, 925 F.3d 154, 161 (4th Cir. 2019) (en banc), three developments in the years since we decided *Smyth* now compel us to revisit its holding.

## C.

### 1.

17a

First, there was the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). As noted above, the *Smyth* court's decision rested, in significant part, on *Blackwelder*'s lenient equitable standard for granting preliminary relief. Under *Blackwelder*, the "first factor" courts were instructed to consider was the likelihood of irreparable harm to the plaintiff, which would then be balanced against the likelihood of harm to the defendant. *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001). If this "hardship balance" tipped "sharply and clearly in the plaintiff's favor, the required proof of likelihood of success [was] substantially reduced." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 323 (4th Cir. 2000) (internal quotation marks omitted). The *Smyth* court, then, was quite reasonably concerned about affording prevailing party status to a plaintiff who had demonstrated no more than a "fair ground for litigation." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In *Winter*, however, the Supreme Court clarified that each preliminary injunction factor – likelihood of success, irreparable harm, the balance of equities, and the public interest – must be "satisfied as articulated." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Today, a plaintiff seeking preliminary relief must first make a "clear showing" that his claim is likely to succeed on the merits. *Winter*, 555 U.S. at 22; *see Real Truth About Obama, Inc.*, 575 F.3d at

18a

346–47 ("The *Winter* requirement that the plaintiff clearly demonstrate that it will likely succeed on the merits is far stricter than the *Blackwelder* requirement.").

As the panel here rightly concluded, *Winter* did not supersede *Smyth* or render its reasoning wholly untenable. *Smyth*, after all, was concerned with not just "the *standard* for obtaining a preliminary injunction" but also the inherently tentative "*nature* of preliminary injunctions." *Stinnie*, 37 F.4th at 982. Nonetheless, *Winter*'s stringent merits requirement means that we may revisit *Smyth* without opening the door to the risk that so concerned the court there: that a plaintiff may prevail, and thus be entitled to fees, based on a preliminary injunction that had virtually nothing to do with the merits of her claim. *Smyth*, 282 F.3d at 277.

2.

*Winter* is not the sole development compelling us to reconsider *Smyth*. Second, we turn to an observation of the magistrate judge here: The bright-line rule set out in *Smyth* has become a distinct outlier. Since we decided *Smyth*, almost every other circuit has weighed in on the question before us. And all have concluded that a plaintiff whose case is rendered moot after she wins a preliminary injunction – so that the injunction by definition cannot be "reversed, dissolved, or otherwise undone" by a later order, *Sole*, 551 U.S. at 83 – may qualify as a prevailing party in appropriate

19a

circumstances. *See Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 909–10 (8th Cir. 2012); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005); *Haley v. Pataki*, 106 F.3d 478, 483–84 (2d Cir. 1997).[6]

These circuits vary slightly in their formulations of when, precisely, preliminary relief satisfies this standard, a question to which we return below. But every court disagrees with *Smyth*'s conclusion that a preliminary injunction *always* acts as a mere "prediction of a probable, but necessarily uncertain, outcome." *Smyth*, 282 F.3d at 276. As many courts have noted, this viewpoint "fails to account for fact patterns in which the claimant receives everything it asked for in the lawsuit, and all that moots the case" before final judgment "is court-ordered success and the passage of time." *McQueary v. Conway*, 614 F.3d 591, 599 (6th Cir. 2010); *see, e.g.*, *Young v. City of*

---

[6] The First Circuit has not yet opined on the issue, *see Sinapi v. R.I. Bd. of Bar Exam'rs*, 910 F.3d 544, 552 (1st Cir. 2018), but district courts within that circuit have followed the consensus rule, *see, e.g.*, *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 314 (D. Mass. 2010).

20a

*Chicago*, 202 F.3d 1000, 1000–01 (7th Cir. 2000) (awarding fees to plaintiffs who won a preliminary injunction allowing them to protest at a convention, which was the only relief they sought). In these cases, the courts have explained, "although the plaintiff never secured a final judgment granting permanent injunctive relief, the preliminary injunction ended up affording all the relief that proved necessary." *Higher Taste*, 717 F.3d at 717; *see also Select Milk Producers*, 400 F.3d at 948.

To be sure, the fact that *Smyth* now represents a minority view of one does not by itself make it incorrect. But we take seriously the legal developments in the years since we decided *Smyth*. Our sister circuits have carefully and thoughtfully engaged with this question and come to a contrary consensus – and the Supreme Court, we note, has not intervened, except to flag the question as one it has left open. *See Sole*, 551 U.S. at 86. Ultimately, we find ourselves persuaded that *Smyth*'s categorical bar goes too far, and that some preliminary injunctions may suffice to confer prevailing party status.

3.

Finally, one more practical observation impacts our thinking. Congress enacted § 1988(b), we have noted, "in furtherance of the policy of facilitating access to judicial process for the redress of civil rights grievances." *Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019). Our circuit rule, however, may undermine that policy by

21a

allowing government defendants to game the system. Faced with a suit challenging a potentially or even very probably unlawful practice, a defendant may freely litigate the case through the preliminary injunction phase, hoping for the best or, perhaps, to outlast an indigent plaintiff. And when the court confirms the likely merit of the plaintiff's claim, the government will have ample time to cease the challenged conduct, moot the case, and avoid paying fees. That leaves the plaintiff, who likely devoted considerable resources to obtaining the preliminary injunction, holding the bag. The predictable outcome of this gamesmanship is fewer attorneys willing to represent civil rights plaintiffs in even clearly meritorious actions – particularly those whose urgent situations call for interim relief. And that result, instead of furthering the goals of § 1988(b), contravenes the statute's entire purpose. *See Buckhannon*, 532 U.S. at 607 (observing that the Supreme Court interprets § 1988(b) in light of its legislative purpose).

This case illustrates the point. The plaintiffs here secured a preliminary injunction based on a "clear showing" that Va. Code § 46.2-395 was likely unconstitutional. *Stinnie*, 355 F. Supp. 3d at 527–31. And after years of "long, contentious, and no doubt costly" litigation, the plaintiffs were eager to proceed to summary judgment. *Stinnie*, 396 F. Supp. 3d at 660. But over the plaintiffs' protests, the Commissioner secured a stay so that the General Assembly could repeal the statute and moot the case. *Id.* at 661. Moreover, the Commissioner provided

22a

significant input on how to structure the repeal –
including a draft bill – so that it would "result in the
pending litigation being dismissed, relieving" the
government's obligation to "incur costly legal fees."
J.A. 968–69. And because Virginia is in the Fourth
Circuit and not anywhere else in the country, the
Commonwealth could rest assured that this eleventh-
hour capitulation would insulate it from a fee award.
As this case so unfortunately demonstrates, instead of
opening the courthouse doors to meritorious civil
rights claimants, *Smyth*'s rule gives the government
the key, allowing it to lock out civil rights plaintiffs
whenever their success seems imminent. This cannot
have been Congress's intent in passing § 1988.

## III.

We turn now to the crux of this appeal. Having
overruled *Smyth*, we must articulate a new standard
to take its stead. In our view, a simple, workable test
follows directly from Supreme Court precedent:
When a preliminary injunction provides the plaintiff
concrete, irreversible relief on the merits of her claim
and becomes moot before final judgment because no
further court-ordered assistance proves necessary,
the subsequent mootness of the case does not
preclude an award of attorney's fees.

## A.

We begin with the Supreme Court's definition
of a prevailing party: one who receives "actual relief

23a

on the merits of his claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12. On the face of this formulation, there appears to be no aspect a preliminary injunction cannot satisfy. After all, "the granting of a preliminary injunction assuredly changes the legal relationship between the parties" by modifying the defendant's behavior. *McQueary v. Conway*, 614 F.3d 591, 600 (6th Cir. 2010). Indeed, this is "typically the whole point of an injunction": to force the defendant, for the benefit of the plaintiff, to do something he otherwise would not. *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013). For this reason, the Supreme Court has "repeatedly held" that a *permanent* injunction will "usually satisfy that test." *Lefemine*, 568 U.S. at 4.

Preliminary relief, however, differs from its permanent form in important ways. It does not require a final judicial determination that a plaintiff's claim is meritorious, and it is, "by its very nature, intended to be temporary." *Higher Taste*, 717 F.3d at 716. As we have discussed, these two differences proved determinative for our court in *Smyth*. But other courts, rejecting *Smyth*'s bright-line rule, have been required to address a set of "recurrent questions . . . when making prevailing-party determinations in this context." *Id*. We turn to those questions, and their resolution by our sister circuits, for guidance.

24a

1.

First, does a preliminary injunction provide the plaintiff "*actual* relief" by ordering a "*material* alteration" of the parties' legal relationship? On this prong, for a plaintiff to prevail, he must practically "achieve[] some of the benefit" he ultimately "sought in bringing suit." *Hensley*, 461 U.S. at 433 (internal quotation marks omitted). So merely surviving a motion to dismiss or securing reversal of a directed verdict, for example – even if accompanied by a "favorable judicial statement of law," *Hewitt v. Helms*, 482 U.S. 755, 763 (1987) – cannot support an award of fees. Such interim victories, which provide no concrete relief beyond another day in court, are simply "not the stuff of which legal victories are made." *Id.* at 760; *see also id.* ("Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail.").

In some cases, as illustrated here, there will be little question that a preliminary injunction's "alteration of the legal relationship of the parties" satisfies this standard. The plaintiffs brought this suit, at least in part, to secure reinstatement of their suspended licenses. The court's preliminary injunction ordered precisely that relief. *See Stinnie*, 355 F. Supp. 3d at 532. True, as the *Smyth* court anticipated, this relief was ordered on a provisional basis. 282 F.3d at 276. And we return to the question of what makes preliminary relief sufficiently "enduring" in a moment. But no matter

25a

what happened at the conclusion of the litigation, this injunction, for the time it remained in effect, allowed the plaintiffs to again drive to their jobs and personal engagements, providing concrete, irreversible economic and non-economic benefits that the plaintiffs sought in bringing suit. *Cf. Select Milk Producers*, 400 F.3d at 942 (noting that, where a preliminary injunction preventing enforcement of a proposed federal regulation saved the plaintiffs millions of dollars, this relief was "concrete and irreversible").[7]

---

[7] The Commissioner's attempts to distinguish *Select Milk Producers* are unavailing. There, the district court preliminarily enjoined enforcement of a proposed agency rule that would have caused the plaintiffs a "substantial monetary loss." 400 F.3d at 943. While the injunction was in place, it saved the plaintiffs an "estimated $5,000,000" that "could not have been recovered." *Id.* (internal quotation marks omitted). The government then abandoned the proposed rule, mooting the case before final judgment. And the D.C. Circuit held that the "concrete and irreversible redress" the preliminary injunction provided during the time it was in effect satisfied the prevailing party standard. *Id.* at 942.

This case is on all fours with *Select Milk Producers*. The Commissioner contends that unlike the "irreversible" monetary savings in *Select Milk Producers*, the plaintiffs' relief here was "temporary and reversible." But the concrete benefits of license reinstatement, which were provided directly by the preliminary injunction and reaped each day it remained in effect, were no less permanent and irrevocable than the plaintiffs' monetary savings in *Select Milk Producers*. And inasmuch as the Commissioner posits a distinction between the economic benefits in *Select Milk Producers* and the non-pecuniary relief at issue in this case, that contention misses the mark. For one, the district court here made specific findings of fact regarding the direct

We caution, however, that some preliminary injunctions will not satisfy this standard. "The traditional office of a preliminary injunction," we have observed, "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit," thus "preserv[ing] the court's ability to render a meaningful judgment on the merits." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (internal quotation marks omitted). These so-called status quo injunctions, which simply maintain the "last uncontested status between the parties," *id.* at 320 (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012)), may not provide the plaintiff any of the relief he ultimately seeks at the conclusion of the litigation. And as many courts of appeals have concluded, winning a simple "holding-pattern injunction," *McQueary*, 614 F.3d at 601, that does not provide some of the benefit the plaintiff ultimately seeks in bringing suit cannot confer prevailing party status.[8]   But here – where the

---

financial burdens of license suspension on the plaintiffs. *See Stinnie*, 355 F. Supp. 3d at 520–23. And more importantly, the Supreme Court has emphasized that the prevailing party inquiry in no way turns on the monetary nature of the relief involved, but rather on whether the plaintiffs "achieve[d] some of the benefit [they] sought in bringing suit." *Garland*, 489 U.S. at 791–92 (internal quotation marks omitted).

[8] *See, e.g.*, *McQueary*, 614 F.3d at 601; *Select Milk Producers*, 400 F.3d at 984; *N. Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753–54 (6th Cir. 2002). As courts and commentators have observed, distinguishing between status quo and non-status quo injunctions – and identifying the "last uncontested status

27a

district court enjoined a longstanding statute and ordered affirmative relief, much to the plaintiffs' concrete benefit – this first requirement is easily satisfied.

2.

So a preliminary injunction may, in appropriate circumstances, provide the necessary "actual relief" to render a party prevailing. But is that relief sufficiently *on the merits* to justify prevailing party status? Here, too, we think the answer is clear. In *Buckhannon*, the Supreme Court held that relief "on the merits" requires a "*judicially sanctioned* change in the legal relationship of the parties." 532 U.S. at 605 (emphasis added). It thus rejected the "catalyst theory," which allowed fee awards when a plaintiff "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" without any court-ordered relief. *Id.* at 600. Such a voluntary change in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the

---

between the parties" – often proves difficult. *See, e.g., Chi. United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006) (Posner, J.) (describing the formulation as "much, and rightly, criticized"); Thomas R. Lee, *Preliminary Injunctions and the Status Quo*, 58 Wash. & Lee L. Rev. 109, 157–66 (2001). For our purposes, however, what matters is whether the injunction itself provided "some of the benefit" the plaintiff ultimately "sought in bringing suit." *Hensley*, 461 U.S. at 433 (internal quotation marks omitted).

28a

necessary judicial *imprimatur* on the change." *Id.* at 605.

Importantly, the plaintiffs here do not rely on the catalyst theory. Their claim to fees rests entirely on their victory at the preliminary injunction stage, and not on the General Assembly's subsequent repeal of § 46.2-395. There is little question that a preliminary injunction entails a "judicially sanctioned change" in the parties' legal relationship. *Id.* at 605. And any concerns we had about this judicially sanctioned change resting only on the equities and not "on the merits," *see Smyth*, 282 F.3d at 276–77, were addressed by the Supreme Court in *Winter*, *see* 555 U.S. at 22 (requiring plaintiff seeking preliminary relief to show likelihood of success on the merits).[9]

Today, we may expect all preliminary injunctions to be solidly merits-based – as was the case here, with the district court granting preliminary relief only after a "clear showing" that the plaintiffs' claim was likely meritorious. *Stinnie*, 355 F. Supp. 3d at 527–31. Accordingly, we conclude, following other courts of appeals, that "[a] preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*." *Higher Taste*, 717 F.3d at 716 (internal quotation marks omitted); *see, e.g.,*

---

[9] Further mitigating this concern is the "heightened standard of review" we apply to injunctions that upend, rather than maintain, the status quo. *Pashby*, 709 F.3d at 319–20 (noting that, when reviewing such injunctions, our "exacting standard of review is even more searching" (internal quotation marks omitted)).

29a

*Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *Select Milk Producers*, 400 F.3d at 946.

The Commissioner, echoing our reasoning in *Smyth*, insists that a preliminary injunction is only an "initial prediction" and not a guarantee that the plaintiffs would have prevailed on the merits had their case proceeded to final adjudication. But that simply begs the question now before us: whether a plaintiff who wins a preliminary injunction has *already* "prevailed" for purposes of § 1988.[10] The plaintiffs, that is, do not allege that they *would have* prevailed on the merits had the district court denied the Commissioner's stay motion and allowed their case to go to final judgment. Instead, they claim that they *did* prevail on the merits when the district court awarded them concrete, judicially sanctioned relief, in the form of reinstated licenses, by way of a preliminary injunction. Nor is it the case, as the Commissioner suggests, that court-ordered relief cannot satisfy *Buckhannon* without a final determination of liability on the merits. Instead, *Buckhannon* itself recognized that a consent decree, even without "an admission of liability by the defendant, . . . nonetheless is a court-ordered change

---

[10] The Commissioner's passive-voice framing also elides the *reason* the plaintiffs' case did not proceed to final adjudication: The Commissioner obtained a stay, over the plaintiffs' objection, so that the legislature could moot the plaintiffs' case by repealing the challenged statute. What the Commissioner really means to say is that a preliminary injunction is not equivalent to the hypothetical final judgment that its own litigation strategy put out of reach

30a

in the legal relationship between the plaintiff and the defendant" that may be the basis for a fee award. 532 U.S. at 604 (cleaned up). A merits-based preliminary injunction amounts to no less of a "court-ordered change in the legal relationship," *id.*, and confers the same "judicial imprimatur," *id.* at 605. [11]

---

[11] In the dissent's view, this understanding conflicts not only with *Smyth* but also with our recent panel decision in *Ge v. U.S. Citizenship & Immigration Services*, 20 F.4th 147 (4th Cir. 2021). *See* Diss. Op. at 54. It would be unremarkable if this were so; in overruling *Smyth*, we also "overrule [any] casesrelying upon its reasoning." *United States v. Lancaster*, 96 F.3d 734, 736 (4th Cir. 1996) (en banc). But as it happens, *Ge* is not such a case. *Ge* did not involve a preliminary injunction but instead a district court order remanding a case to a federal agency for further consideration. And the panel sensibly held that a remand order, like any interlocutory procedural victory, provides neither actual relief on the merits nor a material alteration of the parties' legal relationship and so cannot confer prevailing party status. *Ge*, 20 F.4th at 155–57. This straightforward ruling presents no conflict with – and in fact directly tracks – our reasoning here.

The dissent focuses not on *Ge*'s holding but instead on its observation that a party "must obtain . . . a judgment, consent decree, *or similar order*" to prevail. *Id.* at 153 (emphasis added); *see Buckhannon*, 532 U.S. at 604–05 (listing "enforceable judgments on the merits and court-ordered consent decrees" as "examples" of orders that "create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees" (internal quotation marks omitted)). Because a preliminary injunction is not "like a judgment or a consent decree," the dissent believes, our holding today conflicts with *Ge*. Diss. Op. at 54. But our holding, of course, is that a preliminary injunction – unlike a remand order – *is* "similar" to a final judgment and a consent decree for *Buckhannon* purposes, because it can effectuate the necessary "material alteration" of the parties' legal relationship.

31a

3.

Preliminary relief thus appears capable of satisfying the basic requirements of prevailing party status: A preliminary injunction may provide concrete and irreversible relief on the merits of a plaintiff's claim, as the result of a judicially ordered change in the parties' relationship. But because of its preliminary nature, such relief implicates one further requirement: that the "court-ordered change in the legal relationship" be "enduring" rather than "ephemeral." *Sole v. Wyner*, 551 U.S. 74, 86 (2007); *see also Higher Taste*, 717 F.3d at 717.

A preliminary injunction, after all, might always be undone in later proceedings. That is what happened in *Sole*: A plaintiff won a preliminary injunction allowing her to stage a public antiwar display featuring nudity, but when she sought a permanent injunction for future displays, the district court reversed course and entered final judgment for the state defendant. 551 U.S. at 79–82. That plaintiff, the Supreme Court held, had not "prevailed" under § 1988 – notwithstanding preliminary relief that allowed for her first display – because her "initial victory was ephemeral," resting "on a premise the District Court ultimately rejected." *Id*. at 85–86. When preliminary relief is later "reversed, dissolved, or otherwise undone by the final decision in the same case," the Supreme Court

---

The dissent may disagree, but that holding is fully consistent with *Ge*.

32a

reasoned, that "eventual ruling on the merits . . . supersede[s] the preliminary ruling" and the plaintiff cannot be said to have "prevailed." *Id.* at 83–85.

In the mine-run of cases, *Sole*'s straightforward holding will begin and end the inquiry. Generally speaking, a preliminary injunction – even one that provides actual relief on the merits – will be revisited by a final decision in the same case. Under *Sole*, if the plaintiff loses at final judgment, she cannot prevail; if she wins, she prevails without recourse to her initial victory. But there is a third possibility, as this case illustrates: Sometimes, after a plaintiff wins preliminary relief, her case will become moot before final judgment, as her preliminary injunction will have "ended up affording all the relief that proved necessary." *Higher Taste*, 717 F.3d at 717. Because the case is moot, there can be no subsequent final judgment superseding the preliminary ruling. *Cf. Sole*, 551 U.S. at 84–85. And in those cases, courts regularly conclude that the plaintiffs have recovered sufficiently "enduring" relief to make them prevailing parties under *Sole*.

In some of those cases, a preliminary injunction provides concrete relief on the merits, and what moots the case is only "court-ordered success and the passage of time." *McQueary*, 614 F.3d at 599. The canonical example is a plaintiff who wins a preliminary injunction permitting a protest at a specific event. After the event ends, the litigation will be dismissed as moot, but only because the plaintiff has received all the court-ordered assistance required. Our sister circuits have little difficulty

33a

finding prevailing party status in such circumstances. *See id.* (describing cases). In others, the fact pattern mimics the one before us now: A plaintiff wins preliminary relief enjoining a statute or practice, but the policy is permanently repealed or abandoned before final judgment. And in this scenario, too, courts have held that the plaintiff may qualify as a prevailing party under § 1988. *See*, *e.g.*, *Common Cause*, 554 F.3d at 1355–56; *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 913 (8th Cir. 2012); *Select Milk Producers*, 400 F.3d at 943.

We agree. What these two sets of cases have in common is that in each, a preliminary injunction has provided the plaintiff with precisely the merits-based relief she needs for precisely as long as she needs it – for the would-be protester, for as long as the event lasts; for the challenger to a statute, for as long as the statute remains on the books. *See Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005) (reviewing cases finding prevailing party status where case becomes moot only "after the preliminary injunction had done its job" (internal quotation marks omitted)). In each, the relief the plaintiff receives is as "enduring" as if she had received a permanent injunction to the same effect. *See Higher Taste*, 717 F.3d at 717. And in each, mootness means that the material and concrete preliminary relief awarded cannot be superseded by a contrary final judgment on the merits in the same case. *See Sole*, 551 U.S. at 83; *Dupuy*, 423 F.3d at 723 ("The relief the

34a

plaintiffs had obtained through the preliminary injunction therefore was not defeasible for the same reason that the case was moot.").

It is true that, "as a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019). But unlike an adverse decision on the merits, this matter-of-course vacatur does not negate the "change in the legal relationship" already effected by the preliminary injunction. *Id.* at 539–40. In *Sole*, the plaintiff's preliminary victory was deemed "fleeting" not because it failed to reach final judgment, but because the plaintiff's "temporary success rested on a premise the District Court ultimately rejected" when it granted final judgment to the defendant. 551 U.S. at 85. This conclusion follows logically from *Buckhannon*: A reversal on the merits repudiates the earlier judicial mandate for a change in the parties' legal relationship, so that any preliminary relief obtained by the plaintiff – even if concrete and irreversible – no longer has "the necessary judicial *imprimatur*" to support a fee award. *Buckhannon*, 532 U.S. at 605; *see Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011).

But when a case is dismissed as moot because a preliminary injunction has done all it needed, the injunction is not "dissolved for lack of entitlement." *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see Planned Parenthood*, 931 F.3d at 540 ("[V]acatur at that juncture . . . does not

35a

represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*."). No court ever "issue[s] an order undermining the district court's assessment of the merits" or "repudiat[ing] the favorable change in the parties' legal relationship." *Kan. Jud. Watch*, 653 F.3d at 1240 & n.4. On the contrary, the plaintiff's victory is now sure to be enduring, as there is no longer any risk that the court-ordered relief will lose its judicial imprimatur.[12]

\*   \*   \*

Consistent with our reasoning above, we hold that the Supreme Court's "generous formulation" for prevailing party status, *Hensley*, 461 U.S. at 433, is satisfied when a plaintiff obtains a preliminary

---

[12] This reasoning, the dissent suggests, is "little more than a new spin on the catalyst theory": Because a case becomes moot only through a "non-judicial act" – here, the legislative repeal of the challenged statute – the dissent posits that our holding relies on a "non-judicial decision" to "anoint a prevailing party." Diss. Op. at 52. But sometimes, as we have described above, it is not a "non-judicial decision" but only "court-ordered success and the passage of time" that moots a case. *McQueary*, 614 F.3d at 599. And in any event, as we have explained, this case simply does not implicate the catalyst theory, with or without a spin. Under the standard we adopt today, a plaintiff prevails not because her preliminary injunction "catalyzes" some subsequent mooting event, like a legislative repeal, but because the preliminary injunction *itself* provides her with concrete, irreversible relief. The case's subsequent mootness – however it arises – simply guarantees that this enduring, merits-based relief will not lose its judicial imprimatur.

36a

injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be "reversed, dissolved, or otherwise undone" by a later decision. Because the plaintiffs here satisfy these baseline criteria, they cross the "statutory threshold," *id.*, to qualify as prevailing parties whom "the court, in its discretion, may allow . . . a reasonable attorney's fee," 42 U.S.C. § 1988(b).

We believe this straightforward approach is not only faithful to Supreme Court guidance but also reflective of the broad consensus in our sister circuits. As noted, though other federal courts of appeals are unanimous in their rejection of *Smyth*'s categorical rule, there are some differences in the way they assess prevailing party status and frame their inquiries in this context. But we have done our best to synthesize the case law and capture the dominant approach. And we think the requirements we articulate today – that the plaintiff receive "concrete and irreversible judicial relief" from the preliminary injunction itself, *Select Milk Producers*, 400 F.3d at 948; that the preliminary injunction rest on an "unambiguous indication of probable success on the merits," *Kan. Jud. Watch*, 653 F.3d at 1238; and that the "plaintiff's initial victory [be] enduring rather than ephemeral," in that it lasts for as long as it is needed and may not be undone by a final ruling on the merits, *Higher Taste*, 717 F.3d at 718 – fairly encapsulate the weight of the authority.

37a

We recognize that a few circuits impose additional, fact-specific barriers to prevailing party status. *See Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) (requiring showing that preliminary injunction caused defendant to moot an action); *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 230 n.4 (3d Cir. 2011) (en banc) (requiring a heightened showing on the merits); *McQueary*, 614 F.3d at 601 (outlining a "contextual and case-specific inquiry"). In our view, however, the majority approach better conforms to the Supreme Court's emphasis on judicial administrability when it comes to the threshold question of fee eligibility. *See Garland*, 489 U.S. at 790. At this early stage of the § 1988 inquiry, the Supreme Court advises, courts should avoid, where possible, "unstable" standards and fact-dependent criteria that would reliably "spawn a second litigation." *Id* at 791. The threshold standard we have enunciated here, we think, tracks the precedents of the Supreme Court without sacrificing clarity or administrability.

And it still leaves room at the *next* stage of the § 1988 inquiry – a district court's discretionary assessment of a "reasonable" fee – for consideration of all the relevant facts and circumstances. *See Hensley*, 461 U.S. at 429 ("The *amount* of the fee, of course, must be determined on the facts of each case." (emphasis added)).

## B.

Our decision today is a narrow one. We hold

38a

only that when a preliminary injunction meets the criteria outlined above, the plaintiff satisfies the statutory definition of a prevailing party. But
as we have emphasized, that "brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433. In other words, that the plaintiffs here are prevailing parties means that they are "eligible for, rather than entitled to, an award of attorney's fees." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005). What constitutes a "reasonable fee" in this case is committed to the district court's "broad discretion." *Daly v. Hill*, 790 F.2d 1071, 1085 (4th Cir. 1986).

Our deference to district courts in determining a reasonable fee is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437; *id.* at 430 n.3 (outlining twelve-factor test courts employ to calculate fees). In this field, the district courts have longstanding expertise and "enjoy a decided advantage over appellate courts." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). Indeed, though the Commissioner expresses some doubt about the administrability of anything other than *Smyth*'s bright-line bar on fee recovery in this context, we note that district courts in other circuits – all of which have long allowed preliminary injunctions to confer prevailing party status – appear to have no trouble applying the usual factors to fee awards based on preliminary relief.

39a

*See, e.g., P.G. v. Jefferson Cnty.*, No. 5:21-CV-388, 2023 WL 3496363, at *3–4 (N.D.N.Y. May 17, 2023); *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2022 WL 576554, at *6 (M.D. Tenn. Feb. 25, 2022), *aff'd sub nom. Memphis A. Philip Randolph Inst. v. Hargett*, 2023 WL 411381 (6th Cir. Jan. 26, 2023); *Brakebill v. Jaeger*, No. 1:16-CV-008, 2020 WL 10456884, at *4 (D.N.D. May 7, 2020), *aff'd sub nom. Spirit Lake Tribe v. Jaeger*, 5 F.4th 849 (8th Cir. 2021); *Miller v. Davis*, 267 F. Supp. 3d 961, 979 (E.D. Ky. 2017); *Ne. Ohio Coal. for Homeless v. Brunner*, 652 F. Supp. 2d 871, 886 (S.D. Ohio 2009), *modified on reconsideration sub nom. Ne. Ohio Coal. for the Homeless v. Brunner,* No. C2-06-896, 2009 WL 10663619 (S.D. Ohio July 30, 2009).

And, importantly, a district court's multi-factored assessment of what constitutes a "reasonable" fee is capacious and flexible enough to account for many of the concerns that have been raised about allowing preliminary relief to support a fee award at all. The Commissioner, for instance, argued strenuously that the preliminary injunction here should not confer prevailing party status in part because it gave the plaintiffs so little of what they wanted: The named plaintiffs sought not only reinstatement of their own licenses, but also class certification, a declaratory judgment that § 46.2-395 was unconstitutional, and hence permanent license reinstatement for hundreds of thousands of Virginians. Those are precisely the kinds of considerations that bear on the "extent of a plaintiff's success" – a critical factor in assessing a reasonable

40a

fee award in *any* fee litigation under § 1988. *See Hensley*, 461 U.S. at 439–40; *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013), *as amended* (Jan. 23, 2014).[13]   We of course express no view on the merits of the Commissioner's argument or the extent of the plaintiffs' success.  But we are confident that on remand, the district court, with its "ringside view of the relevant conduct of the parties and of the underlying dispute," *Alexander v. Mayor & Council of Cheverly*, 953 F.2d 160, 162 (4th Cir. 1992), will take account of all of the relevant facts and circumstances in exercising its discretion to order a "reasonable attorney's fee," 42 U.S.C. § 1988(b).

The district court, bound by *Smyth*'s categorical rule, had no choice but to deny the plaintiffs prevailing party status, rendering them ineligible for fees at the threshold.  For the reasons given above, we have reconsidered *Smyth*'s bright-line rule and replaced it with a standard under which the plaintiffs qualify as prevailing parties eligible for fees.  We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## IV.

---

[13] These considerations, however, have no relevance to the legal question before us of whether a party has prevailed in the first place.  As the magistrate judge here observed, "the limited nature of the relief granted is accounted for not by denying a fee award altogether, but rather by adjusting the amount of fees awarded."  *Stinnie*, 2021 WL 627552, at *11; *see Farrar*, 506 U.S. at 114 ("[T]he *degree* of the plaintiff's success does not affect eligibility for a fee award." (internal quotation marks omitted)).

41a

The district court order denying the plaintiffs' fee petition is vacated and the case remanded for further proceedings.

*VACATED AND REMANDED*

42a

QUATTLEBAUM, Circuit Judge, with whom Judges AGEE, RICHARDSON, and RUSHING join, dissenting:

Section 1988 of Title 42 in the United States Code permits awards of attorney's fees to a "prevailing party" in certain civil rights cases. The question presented in this appeal is whether a party that obtains a preliminary injunction is a prevailing party. To the majority, the answer is yes if "a plaintiff obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be reversed, dissolved, or otherwise undone by a later decision." Maj. Op. at 29. In reaching that conclusion, the majority overrules our *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), decision. But the text of § 1988(b) and Supreme Court guidance make clear that temporary relief is insufficient. A court must resolve at least one issue once and for all on the merits, not merely predict how issues are likely to be resolved. Finally, the relief must come from a judicial decision, not the voluntary act of the opposing party, so that it is enforceable by the court. Obtaining a preliminary injunction does not meet these requirements. In my view, the majority's decision misconstrues the meaning of "prevailing party" under § 1988(b) and strays from Supreme Court precedent. In contrast, *Smyth* is faithful to both. So, I respectfully dissent.

43a

I.

This case arises from a challenge to the constitutionality of Virginia Code § 46.2- 395, which has since been repealed. That statute authorized a state court to order the suspension of a driver's license if a person convicted of any violation of the law of the Commonwealth, the United States or any valid local ordinances failed to pay any fine, costs, forfeiture, restitution or penalty or make installment payments as ordered by the court. Va. Code § 46.2- 395 (B). The plaintiffs brought a class action complaint against Richard D. Holcomb in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles alleging that the DMV suspended the plaintiffs' licenses immediately upon their default without a hearing or consideration of inability to pay court debts under § 46.2-395.

The plaintiffs sought a declaratory judgment that § 46.2-395 violated the Constitution's Due Process Clause, as well as various forms of injunctive relief. They also moved for a preliminary injunction. The district court granted the motion, concluding that "Plaintiffs are likely to succeed on the merits of their procedural due process claim because the Commissioner suspends licenses without an opportunity to be heard." J.A. 820. The order (1) "preliminarily enjoined [the Commissioner] from enforcing Virginia Code § 46.2- 395 against the plaintiffs unless or until the Commissioner or another entity provides a hearing regarding license suspension[];" (2) required the Commissioner to

44a

remove any current suspensions of the plaintiffs' driver's licenses imposed under Virginia Code § 46.2-395; and (3) enjoined the Commissioner from charging a fee to reinstate the plaintiffs' drivers' licenses if there were no other restrictions on their licenses. J.A. 843. The district court made no determination as to the plaintiffs' motion to certify a class. And it did not determine that "final injunctive relief or corresponding declaratory relief [was] appropriate respecting the class as a whole." J.A. 843. Thus, the order only applied to the named plaintiffs.

The case proceeded to discovery. Subsequently, the Virginia General Assembly passed a budget amendment that prohibited the suspension of drivers' licenses for failure to pay court fines and costs but did not repeal the statute. In response, the Commissioner moved to dismiss the case as moot or alternatively to stay the proceedings because of pending legislative action to rescind the statute. The district court denied the motion to dismiss. It found that the budget amendment did not moot the case because the statute remained on the books meaning it was possible that it could still be enforced. But over the plaintiffs' objections, it granted the motion to stay. Then, during its next regular session, the Virginia General Assembly passed legislation that eliminated § 46.2-395 and required the Commissioner to reinstate, without payment of fees, driving privileges that had been suspended by courts under § 46.2-395. Based on that legislative action, the parties stipulated to the dismissal of the case as

45a

moot. But the plaintiffs asserted they were entitled to attorney's fees under 42 U.S.C. § 1988(b), so the parties jointly requested the district court retain jurisdiction to determine whether to award attorney's fees.

The district court referred the plaintiffs' petition for attorney's fees to a magistrate judge for a report and recommendation. The magistrate judge recommended denying the petition, finding our *Smyth* decision controlling on the question of whether a plaintiff who won a preliminary injunction under the facts presented is a "prevailing party" under § 1988. The district court overruled the plaintiffs' objections and denied the petition, finding no error in the magistrate judge's reasoning and ultimately concluding that "whether the Fourth Circuit would overrule *Smyth* today is, at best, unclear." J.A. 1264.

The plaintiffs timely appealed.

## II.

### A.

Section 1988(b) allows a district court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in certain civil rights cases. 42 U.S.C. § 1988(b). But while this provision provides an exception to the "American Rule"—where each party in a lawsuit ordinarily bears its own attorney's fees unless there is express statutory authority otherwise, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)—the

46a

statute itself does not define "prevailing party." Instead, Congress employed the "the legal term of art 'prevailing party'" in many statutes in addition to the one at issue here. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). As Justice Scalia recognized in his concurrence in *Buckhannon*, "'prevailing party' is not some newfangled legal term invented for use in late-20th-century fee-shifting statutes." *Id.* at 610.

In interpreting statutes, we define terms based on their meaning at the time Congress enacted the statute. *Perrin v. U.S.*, 444 U.S. 37, 42 (1979) (describing this principle as a "fundamental canon of statutory construction"); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, 69–92 (2012). At the time Congress enacted the Civil Rights Attorney's Fee Award Act of 1976, the term "prevailing party" was understood in the law. Black's Law Dictionary's defined "prevailing party" as "one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of his original contention." Prevailing Party, *Black's Law Dictionary* (rev. 4th ed. 1968). *Black*'s added that a "prevailing party" is "[t]he one in whose favor the decision or verdict is rendered and judgment entered."[1] *Id.* And it further

---

[1] This is very close to the definition cited by the Supreme Court in *Buckhannon*. There, the Court cited the 1999 seventh edition of Black's Law Dictionary which "define[d] 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Buckhannon*, 532 U.S. at 603.

47a

explains that prevailing party is "[t]he party ultimately prevailing when the matter is finally set at rest." *Id*. Offering more clarity, *Black*'s told us that "[t]o be [a prevailing party] does not depend upon the degree of success at different stages of the suit, but whether at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it." *Id*.

These definitions reveal that to prevail, a party must achieve final, not temporary, success. Absent that, it is not clear whether a party has "successfully prosecute[d]" an action. Without final success, no "decision or verdict is rendered and judgment entered" and the matter is not "set at rest." In sum, *Black*'s tells us to look to the "end of the suit" to see if a party has "successfully maintained" a claim, not to interim events.

### B.

But we have more than legal dictionaries to help us understand what it means to be the prevailing party. The Supreme Court has interpreted the phrase "prevailing party" from § 1988(b) on numerous occasions. A quick tour through those decisions provides additional guidance on the meaning of a prevailing party. And the guidance makes clear—contrary to the majority's reading— that while a prevailing party need not obtain relief on every claim asserted, it must obtain enduring judicially-sanctioned relief.

In *Hensley*, the plaintiffs challenged the

48a

constitutionality of conditions and treatment of those involuntarily confined at a state hospital. 461 U.S. at 426. While the plaintiffs did not succeed on all their claims, the district court held that an involuntarily committed patient has a constitutional right to minimally adequate treatment. *Id.* at 427. The district court determined that the plaintiffs were prevailing parties under §1988(b) even though they had not succeeded on every claim. The court of appeals affirmed. The Supreme Court granted certiorari and then vacated and remanded for further proceedings so that the district court could determine the proper fee award in relation to the results obtained by the plaintiffs. The Court did not settle on one particular standard for defining "prevailing party." Its primary concern was clarifying the "proper standard for setting a fee award where the plaintiff has achieved only limited success." *Id.* at 431. But in holding that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award for attorney's fees under 42 U.S.C. § 1988," it made clear that a party need not prevail on all its claims to be a prevailing party. *Id.* at 440. And in explaining this, the Court stated that success on any significant issue that achieves some of the benefits the parties sought in bringing suit was a "generous formulation" that might bring a party "only across the statutory threshold." *Id.* at 433. So, from *Hensley* we learn that complete victory on all claims is not required. Even so, the partial relief that conferred prevailing party status was a judgment finding constitutional violations following a three-week trial on the merits.

49a

In *Hewitt v. Helms*, 482 U.S. 755 (1987), an inmate brought a § 1983 action against prison officials alleging that a Pennsylvania correctional facility failed to give him a prompt hearing on misconduct charges and convicted him of misconduct in violation of his due process rights. *Id.* at 757. After his release, the district court granted summary judgment in favor of the prison officials on the constitutional claims without ruling on qualified immunity. *Id.* at 758. The Third Circuit reversed, holding the facility violated the inmate's due process rights and ordered the district court to grant summary judgment for the inmate on a claim on remand. *Id.* at 758. But before that could happen, the Supreme Court granted certiorari and held that the prisoner's administrative segregation did not violate the due process clause. *Id.* When the case returned to the district court, it granted summary judgment on the basis of qualified immunity. *Id.* After the plaintiff appealed, the Pennsylvania Bureau of Corrections revised its regulations for inmate disciplinary proceedings. *Id.* at 759. The inmate then sought attorney's fees under § 1988(b). The Supreme Court rejected the Third Circuit's conclusion that its holding that the inmate's constitutional rights were violated prior to the Supreme Court's decision was a form of judicial relief. The Court held that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 760. It then explained that the plaintiff there received no damages award, injunction or declaratory judgment.

50a

*Id.* at 760. And it added that "[t]he most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim [,but] that is not the stuff of which legal victories are made." *Id. Hewitt* is quite different from our case. Unlike the plaintiff there, the plaintiffs here obtained a preliminary injunction. But the Supreme Court made clear that relief on the merits is required for a party to prevail and its examples of such relief—a damages award, an injunction or a declaratory judgment—indicate that provisional relief precludes eligibility. *Id.* The Court's inclusion of "injunction" does not suggest otherwise. Read in context with the rest of the opinion, the Court's insistence of relief on the merits and its inclusion of injunction along with damages awards and declaratory judgments indicates that by referencing injunctions, it meant permanent injunctions that result in final judgments. *Id*. In fact, the Court explained that the fact that the plaintiff obtained the benefit of the new procedures "can hardly render him, retroactively, a 'prevailing party' in this lawsuit, even though he was not such when the final judgment was entered." *Id*. at 764. Thus, the Court seems focused on final judgments.

Next, in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782 (1989), several teachers' unions brought a § 1983 action challenging the constitutionality of the school district's communications policy. The school district obtained summary judgment on a number of the claims, but not all. And as to other claims, the

51a

teachers' unions were awarded summary judgment. *Id.* at 787. The teachers' unions then filed for attorney's fees under § 1988. *Id.* The Supreme Court held that although they only prevailed on some of their claims, the unions were nevertheless prevailing parties. *Id.* at 793. The Court explained that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–93. And it reasoned that the teachers' union prevailed "on a significant issue in the litigation and [had] obtained some of the relief they sought," in obtaining "*a judgment* vindicating the rights of public employees in the workplace." *Id.* at 793 (emphasis added). *Texas State Teachers Association* confirms that complete victory is not required to be a prevailing party. But importantly, while the unions' success was limited, it was final—they received a final judgment on the merits of some of their claims. To be sure, the Court said "pendente lite" relief might suffice in addition to relief afforded at "the conclusion of the litigation." *Id.* at 791. But read as a whole, the opinion makes clear that such relief must necessarily be based on a party establishing his entitlement to relief on the merits. *Id.* at 790.

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court held that a civil rights plaintiff who receives a nominal damages award is a "prevailing party" eligible to receive attorney's fees under § 1988. *Id.* at 112. While the Court affirmed the denial of fees in that particular case, it held that a plaintiff

52a

receiving only nominal damages was in fact a prevailing party. *Id*. at 105. The Court clarified that a "plaintiff must obtain at least some relief on the merits of his claim." *Id*. at 111. It added that a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id*. at 111–12. Continuing, the Court explained that a civil rights plaintiff must obtain at least some relief on the merits of his claim. *Id*. And giving specific guidance as to what type of relief is needed, the Court instructed that "[n]o material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Id*. at 113. So, *Farrar* reiterates *Texas State Teachers Association*'s standard of materially altering the legal relationship between the parties and adds "by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id*. at 111–12. But importantly, it clarifies that a material alteration does not occur until the plaintiff becomes entitled to enforce "a judgment, consent decree, or settlement against the defendant." *Id*. at 113.

That brings us to *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001). In that case, the Court addressed the question of whether "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the

53a

lawsuit brought about a voluntary change in the defendant's conduct" is a prevailing party. *Id.* at 600. The Supreme Court said no. There, West Virginia's state fire marshal shut down assisted living facilities operated by a corporation because, as required by state law, certain residents were incapable of moving themselves in the event of imminent danger. *Id.* at 600. The corporation sued claiming the state self-preservation requirement violated the American with Disabilities Act and the Fair Housing Amendments Act. *Id.* at 601. After the litigation began, West Virginia eliminated the self-preservation requirement. *Id.* And after the district court granted a motion to dismiss the case as moot, the corporation then sought attorney's fees arguing that that it was the "catalyst" for the change in West Virginia law. *Id.* Specifically, the corporation argued that it was entitled to fees as a prevailing party because the lawsuit brought about a voluntary change in the defendant's conduct. *Id.* at 601. The Supreme Court disagreed emphasizing the need for a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. After reviewing prior decisions involving § 1988(b), it explained "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604 (internal quotation marks and citation omitted). And it held that the catalyst theory "falls on the other side of the line from these examples." *Id.* at 605. *Buckhannon* provides important guidance about the meaning of a

54a

prevailing party. First, it makes clear that the alteration of the parties' legal relationship must be a judicial act, not the voluntary conduct of the parties or a third party. And following *Farrar*, it instructs that the judicial act needs to be akin to "a judgment on the merits or a court-ordered consent decree." *Id.* at 600.[2]

In *Sole v. Wyner*, 551 U.S. 74 (2007), the Court addressed a single question: "[d]oes a plaintiff who gains a preliminary injunction after an abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication on the merits, qualify as a 'prevailing party' within the compass of § 1988(b)?" *Id.* at 77. The Supreme Court again said no. There, Wyner applied to conduct an anti-war event on Valentine's Day in a public park where participants, while nude, would form a peace symbol. Florida officials advised her that they could only do so if the participants complied with the state's "Bathing Suit Rule," which required patrons in Florida's state park to wear at least bathing suit-type clothing. *Id.* at 78. In response, Wyner sued claiming the restrictions the state imposed on the proposed event violated the First Amendment. She requested an injunction against the restrictions at the proposed event and

---

[2] Recall that *Farrar* held that a settlement could confer prevailing party status. *Farrar*, 506 U.S. at 113. *Buckhannon* did not explicitly overrule that part of *Farrar* but clarified that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon*, 532 U.S. at 604. And its requirement of a judicial act and emphasis on relief on the merits makes clear that settlements generally would not qualify.

55a

future such events. *Id.* at 79. The district court granted the preliminary injunction, concluding the Bathing Suit Rule was overbroad since the state's interest in protecting the visiting public from nudity could be accomplished by requiring the display to take place behind a screen. *Id.* at 80. But in carrying out the peace display, the participants ignored the required barrier. So later, as Wyner pursued an injunction against state interference with future events, the district granted summary judgment to the defendants ruling that the participants deliberate noncompliance with the screen requirement established that the Bathing Suit Rule was not overbroad after all. *Id.* at 80-81.

Despite losing at summary judgment, Wyner sought attorney's fees claiming that she was a prevailing party under § 1988(b) since she earlier obtained the preliminary injunction that allowed the peace display to go forward without the bathing suit requirement. The Supreme Court disagreed. *Id.* at 81. Characterizing the preliminary injunction as "fleeting success," *id.* at 83, the Court explained that "Wyner had gained no enduring 'chang[e] [in] the legal relationship' between herself and the state officials she sued." *Id.* at 86 (quoting *Texas State Tchr's. Ass'n*, 489 U.S. at 792). *Sole* is different from our case because the preliminary injunction here was never altered or rescinded. In fact, the Supreme Court indicated that it was expressing no view on whether "in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may

56a

sometimes warrant an award of counsel fees." *Id.* at 86.[3] But it also made clear that obtaining the benefit of a preliminary injunction that was later overturned—in that case, the ability to participate in a peace display nude—did not convey prevailing party status because that "initial victory was ephemeral." *Id.* at 76.

Finally, in *Lefemine v. Wideman*, 568 U.S. 1 (2012), the Supreme Court, in a per curiam opinion concluded that a protester who secured a permanent injunction but no monetary damages was a prevailing party. *Id.* at 2. The Court held "a plaintiff 'prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Id.* at 4 (quoting *Farrar*, 506 U.S. at 111–12). It then explained that an "injunction or declaratory judgment, like a damages award, will usually satisfy [the *Farrar*] test." *Id.* at 4. While *Lefemine* does not explicitly address a preliminary injunction, its explanation that a permanent injunction is like a damages award indicates the judicial act must provide final, permanent relief.

C.

Considering these Supreme Court cases

---

[3] In leaving the question open, *Sole* also confirms that *Hewitt*'s reference to an injunction and *Texas State Teachers Association*'s reference to pendente lite relief had not answered the question either.

57a

interpreting § 1988(b), several principles emerge. To prevail, a party must first obtain a judicial decision that is like a judgment or a consent decree. The Court's language from *Farrar* says this explicitly. And *Buckhannon*, in particular, reinforces it. True, *Buckhannon* did not expressly state that judgments on the merits and court-ordered consent decrees were the only types of relief that provide prevailing party status. *Buckhannon*, 532 U.S. at 604. But *Farrar* was clear as to that point, and the focus of *Buckhannon* was rejecting the "catalyst theory" by emphasizing that prevailing party status is dependent on a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.

Second, the judicial decision must irreversibly alter the legal rights of the parties. While the Supreme Court may not have expressly said that relief must be final, it has never approved a claim for attorney's fees under § 1988(b) for temporary relief. Also, the Court rejected the claim for fees in *Sole* where the preliminary injunction had not permanently altered the rights of the parties calling it "ephemeral." *Sole*, 551 U.S. at 86. And in *Hewitt*, it held judicial pronouncement of a constitutional violation without relief does not entitle a party to prevailing party status and looked to the final judgment as the basis for determining which party prevailed. *Hewitt*, 482 U.S. at 764.

Relatedly, the judicial decision must resolve at least one issue on the merits. The Supreme Court has consistently emphasized this requirement. *See Hewitt,* 482 U.S. at 760; *Texas State Tchrs. Ass'n,* 489

58a

U.S. at 786; *Sole*, 551 U.S. at 86. And resolving an issue on the merits means deciding who ultimately wins.

On the other hand, if the final determination of the legal rights of the parties is decided by the voluntary conduct of the defendant, the party does not prevail. Also, if the judicial decision provides practical benefits to the moving party, even substantial practical benefits, but does not resolve at least one issue on the merits, the party does not prevail. Last, if the judicial decision provides provisional rather than ultimate relief, the party has not prevailed.

Of significance, current Fourth Circuit law virtually mirrors these requirements. While not in the context of a preliminary injunction, we have framed the inquiry about prevailing party as a four-part test, requiring a plaintiff seeking fees to "obtain (1) a judgment, consent decree, or similar order, (2) that grants him some relief on the merits, (3) that materially alters the legal relationship between him and the defendant, and (4) that is enforceable by the court." *Ge v. U.S. Citizenship & Immigr. Servs.*, 20 F.4th 147, 153 (4th Cir. 2021).

### D.

This brings us, at last, to the ultimate question presented by this appeal—does a preliminary injunction satisfy the requirements of a prevailing party? Simply put, no.

We start by considering what a preliminary

injunction is and, more importantly, is not. Consider the Supreme Court's decision in *University of Texas v. Camenisch*, 451 U.S. 390 (1981). There, a deaf college student sued the University of Texas under the Rehabilitation Act for not providing a sign-language interpreter. *Id.* at 392. During the course of the case, the student obtained a preliminary injunction requiring the school provide the interpreter. *Id.* Relevant here, in granting the preliminary injunction, the trial court was required to consider the likelihood of success on the merits and found that the student established that he was. *Id.* The school appealed challenging the injunction. But during the appeal, the school provided the interpreter and then the student graduated. These events implicated the issue of whether the case was moot. Complicating the mootness question was the fact that not only did the student seek injunctive relief; he also sought to recover the amount he spent on interpreters prior to the school's decision to provide them. *Id.* at 393.

The Supreme Court held that the question of whether a preliminary injunction should have been issued was moot "because the terms of the [preliminary] injunction . . . ha[d] been fully and irrevocably carried out." *Id.* at 398. But it also held the question of whether the university should pay for the interpreter remained for a trial on the merits. *Id.* Said differently, the preliminary injunction did not resolve the question of the student's entitlement to recover interpreter fees. Instead, the Court explained, "a preliminary injunction is customarily granted on the basis of procedures that are less

60a

formal and evidence that is less complete than in a trial on the merits." *Id*. at 395. A party is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court in granting a preliminary injunction are not binding at a trial on the merits. *Id*. "In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Id*. at 395. The Court continued, "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Id*. at 396.

While the analysis was not under § 1988(b), *Camenisch* shows why preliminary injunctions—by their very nature—are insufficient to confer prevailing party status. They are provisional. That's why they are called *preliminary* injunctions. And that's why they are not binding at the trial on the merits. True, this decision pre-dates *Winter* which moved a showing on the merits to a more central role in obtaining a preliminary injunction. But that does not change the provisional nature of a preliminary injunction.[4]

---

[4] Importantly, much like the *Winter* test, the plaintiff in *Camenisch* had to and did prove a likelihood of success. But the Supreme Court still held that to be insufficient to make a final determination on who should bear the costs. The same logic applies here.

61a

After all, for a preliminary injunction, a plaintiff need only show a "mere 'likelihood of success.'" *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (en banc). Showing a likelihood of success on the merits is a far cry from the "actual success" needed to obtain a permanent injunction. *Id.* A showing only predicts the outcome of a future decision. *See Smith v. Univ. of N. Carolina*, 632 F.2d 316, 347 (4th Cir. 1980). It does not definitively decide the merits of anything.

If anyone doubts that there is a difference between actually prevailing and having a likelihood of success, just ask the Atlanta Falcons—or better yet, their fans. Mid-way through the third quarter of the 2017 Super Bowl, the Falcons had achieved a great deal of success. They led the New England Patriots 28-3 and were dominating every facet of the game. By any measure, the Falcons were likely to succeed. But they had not prevailed. And since one and one-half quarters still had to be played, the Patriots still had time to come back. And they did. They Patriots came back to win 34-28, the largest comeback in Super Bowl history. Likelihood of success is just not the same thing as prevailing. The cases defining "prevailing party" make clear the importance of finality. This makes sense. Until the final whistle blows, fortunes can change—as it did for the Falcons.

And *Camenisch* shows that preliminary injunctions—by their nature—do not provide finality. Admittedly, in this case, the fortunes did not change after the preliminary injunction. The plaintiffs

62a

ultimately got what they wanted. But they did not get what they wanted because a federal court decided the merits of their challenge. They got what they wanted because the General Assembly of Virginia decided to change the law. Although § 46.2-395 had been rescinded by the end of the case, no judicial decision permanently altered the legal rights of the parties. So, the plaintiffs cannot be prevailing parties. *Buckhannon* is crystal clear on this point. The plaintiffs' claim to prevailing party status is little more than a new spin on the catalyst theory.

### E.

Last, my conclusion here conforms with the canon that statutes in derogation of the common law should be construed narrowly and not extended beyond their express terms. *Farish v. Courion Indus., Inc.*, 754 F.2d 1111, 1115 (4th Cir. 1985). Our precedent has been to follow that canon with other statutes modifying the American Rule that each party ordinarily bears its own attorney's fees. *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) ("[I]f Congress wishes to overcome either premise underlying the American Rule, it must express its intent to do so clearly and directly."). To be sure, § 1988(b) represents Congress' intent to modify the American Rule in part. But only as to prevailing parties. Nothing in § 1988(b) indicates an intent to expand that modification to parties that do not obtain enduring judicially sanctioned relief.

### III.

63a

The majority, of course reaches the opposite conclusion. In an attempt to "synthesize the case law and capture the dominant approach," it holds that a plaintiff is a prevailing party if she "obtains a preliminary injunction that (a) provides her with concrete, irreversible relief on the merits of her claim by materially altering the parties' legal relationship, and (b) becomes moot before final judgment such that the injunction cannot be 'reversed, dissolved, or otherwise undone' by a later decision." Maj. Op. at 29. To me, that conclusion strays from the text of § 1988(b) and the guidance from the Supreme Court in at least five ways.

First, while claiming otherwise, the majority's new standard allows a non-judicial decision to anoint a prevailing party. The majority states that plaintiffs' "claim to fees rests entirely on their victory at the preliminary injunction stage, and not on the General Assembly's subsequent repeal of § 46.2-395." Maj. Op at 22. But the second part of the majority's test—that the claim "becomes moot before final judgment such that the injunction cannot be 'reversed, dissolved, or otherwise undone' by a later decision," Maj. Op. at 29—necessitates a non-judicial act. Why this runaround? Because either way the majority turns, its conclusion conflicts with Supreme Court precedent. The majority claims to rely on only the preliminary injunction. Yet the relief that the plaintiffs received under the preliminary injunction is every bit as "ephemeral" as the relief afforded in *Sole*. *See* 551 U.S. at 86. The majority needs

64a

something more. What does it have? The fact that the injunction was never "undone."[5] Maj. Op. at 29. But that is only the case because the Virginia General Assembly changed the law. To rely on that legislative, not judicial, action would conflict with *Buckhannon*'s holding that a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon,* 532 U.S. at 605. In short, the majority points to the preliminary injunction but that cannot make the plaintiffs prevailing parties because it did not give them permanent relief. So the majority turns to the fact that the preliminary injunction was not "undone." But it was not "undone" because the case became moot. And that means that the lasting change did not come from the court.

Second, the majority points to *Farrar* for the Supreme Court's definition of a prevailing party as "one who receives 'actual relief on the merits of his claim' that 'materially alters the legal relationship between the parties by modifying the defendant's

---

[5] That said, even the majority acknowledges that "'as a matter of course, an injunction may dissolve when a case becomes moot.'" Maj. Op. at 27 (quoting *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019)). But, the majority says, "this matter-of-course vacatur does not negate the 'change in the legal relationship' already effected by the preliminary injunction." *Id.* (quoting *Planned Parenthood*, 931 F.3d at 542). To the contrary, it seems to me, if the preliminary injunction has been vacated, then we know with absolute certainty that any lasting change must arise from somewhere else.

65a

behavior in a way that directly benefits the plaintiff.'" Maj. Op. at 18 (quoting *Farrar*, 506 U.S. at 111–12). I agree that language sets out part of the analysis required under § 1988(b). But it omits the Court's explanation, in the very same case, of the limited circumstances that qualify as a material alteration of the legal relationship between the parties. *Farrar*, 506 U.S. at 113. More specifically, the Supreme Court instructed that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim . . .[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees or sought, [] or comparable relief though a consent decree or settlement." *Id.* at 111. And *Buckhannon* reiterated the need for such relief. Despite that, the majority all but ignores this strong guidance.

In so doing, without saying as much, the majority undermines part of our *Ge* decision. Following *Buckhannon* and *Farrar* by extension, we held in *Ge* that to convey prevailing party status, relief must be like an enforceable judgment or consent decree. *Ge*, 20 F.4th at 154. Significantly, that decision post-dated *Winter*. And we recently reaffirmed it in *Cities4Life, Inc. v. City of Charlotte*, 52 F.4th 576, 580 (4th Cir. 2022), a § 1988(b) attorney's fees case. So, the majority's decision today kills two birds with one stone. With the stroke of a pen, we wipe away *Smyth* and undermine *Ge* and *Cities4Life*.

In my view, we should follow our precedent and the Supreme Court's guidance requiring a judicial

66a

decision like a judgment or a consent decree. And as already discussed, a preliminary injunction is not like either of those.

Third, the majority's analysis, in my view, waters down the Supreme Court's and our requirement that relief conferring prevailing party status be on the merits. To the majority, since *Winter* requires a showing of likely success on the merits to obtain a preliminary injunction, "we may expect all preliminary injunctions to be solidly merits-based." Maj. Op. at 23. But I'm not sure what "solidly merits-based" means. Under *Winter*, the most it can mean is that a party is likely to succeed on the merits. And *Camenisch* tells us that is not enough. "On the merits" means a court actually makes a final decision. In other words, it does not just forecast success; it determines success. And once again, a preliminary injunction does not do that.

Fourth, in adopting its broader view of prevailing party, the majority relies on its belief that *Smyth*'s rule "allow[s] government defendants to game the system." Maj. Op at 16. Maybe it does. But even if true, this rationale is not a legal interpretation of prevailing party; it is a policy argument for a different rule. If the meaning of prevailing party leads to unintended consequences, it is Congress' job to fix it, not ours. Our role is to apply the law, not rewrite it when it produces outcomes we do not like.

What's more, rather than relying on legislative intent to expand the definition of prevailing party, we should require clear and direct expression of

67a

intent in interpreting statutes that modify the common law. *In re Crescent City Estates, LLC*, 588 F.3d at 826. Congress did not provide such an expression that § 1988(b) applies to parties that obtain preliminary injunctions.

Fifth and finally, the Supreme Court admonished in *Buckhannon* that "[a] request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609. The bright line rule from *Smyth* furthers that important interest. In contrast, the majority's approach will lead to collateral litigation on attorney's fees. What is concrete relief? What is irreversible relief? How much discussion of the merits is necessary? Is any event that makes a claim moot enough? Make no mistake, the majority may feel its approach "straightforward." Maj. Op. at 29. But creative lawyers haggling over fees will contest these and likely other issues undoubtedly bringing about what *Buckhannon* sought to avoid—"a second major litigation."

## IV.

I recognize decisions from our sister circuits do not follow *Smyth*'s bright-line rule that a party that obtains a preliminary injunction is not a prevailing party under § 1988(b). *See e.g., Planned Parenthood Southwest Ohio Region v. Dewine*, 931 F.3d 530, 539 (6th Cir. 2019) (concluding that the preliminary injunction there represented an unambiguous indication of probable success on the merits, particularly where the Sixth Circuit had already

68a

upheld part of the injunction after reviewing the merits of the claims); *Dearmore v. City of Garland*, 519 F.3d 517, 521–22 (5th Cir. 2008) (finding three-prong test for prevailing party status satisfied where the district court's merit-based order clearly informed the city that certain provisions of its ordinance violated the Fourth Amendment); *Select Milk Producers, Inc. v. Johanns,* 400 F.3d 939, 948 (D.C. Cir. 2005) (noting that the likelihood of success on the merits was never seriously in doubt and that the preliminary injunction resulted in irreversible and substantial monetary savings to the milk producers); *Young v. City of Chicago*, 202 F.3d 1000, 1001 (7th Cir. 2000) (per curiam) (recognizing that case mootness does not alter prevailing party status); *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1095 (9th Cir. 2002) (concluding that "having won the preliminary injunction, the plaintiffs were prevailing parties notwithstanding the subsequent mooting of their case"). And in candor, that causes me to pause. But for two reasons, that does not convince me to join any of their approaches.

First, the standards and reasoning from those decisions are quite diverse. As the Fifth Circuit noted in *Dearmore*, "[w]ithout a Supreme Court decision on point, circuit courts considering this issue have announced fact-specific standards that are anything but uniform." *Dearmore*, 519 F.3d 517, 521–22 (5th Cir. 2008) (recognizing that "several circuits have determined that a preliminary injunction that merely preserves the status quo temporarily will not confer 'prevailing party' status on a party," while others

69a

"incorporate some combination of [] factors," which touch on the merits-based nature of a decision.). So, let's be clear. There is no unanimity of the circuit courts on this issue.

And today, we add a new standard to the mix. Admittedly, our new rule resembles the Sixth Circuit's approach. But it is not the same. In that sense, we add to the disparate ways courts will interpret § 1988(b). As an aside, such variety is hardly surprising. Counter- textual statutory interpretations, like kudzu, often creep unpredictably.

Second, decisions from our sister circuits should be carefully considered and indeed, we can learn a lot from our federal appellate court colleagues. But, as we learned as children, just because others are doing something, that does not make it right. And for many of the same reasons explained with respect to the majority's new test, to me, those other approaches are inconsistent with text of § 1988(b) and the Supreme Court's decisions on prevailing party. I would resist the temptation to follow the crowd.

V.

Over 20 years ago in *Smyth*, we established a bright line rule that preliminary injunctions do not convey prevailing party status. In my view, that rule is faithful to the text of § 1988(b) and the Supreme Court's decisions. I would not overrule it. And as a result, I would affirm the district court's denial of the plaintiffs' petition for

70a

attorney's fees.

Respectfully, I dissent.

71a

FILED: August 9, 2022

UNITED STATES COURT OF APPEALS FOR THE
FOURTH CIRCUIT

_____

No. 21-1756

(3:16-cv-00044-NKM-JCH)

_____

DAMIAN STINNIE; MELISSA ADAMS; ADRAINNE
JOHNSON; WILLIEST BANDY; BRIANNA
MORGAN, individually, and on behalf of all others
similarly situated

Plaintiffs - Appellants

v.

RICHARD D. HOLCOMB, in his official capacity as
the Commissioner of the Virginia Department of
Motor Vehicles

Defendant - Appellee

- - - - - - - - - - - - - - - - - - - ·

AMERICAN CIVIL LIBERTIES UNION OF
VIRGINIA, ET AL

Amicus Supporting Appellant

INSTITUTE FOR JUSTICE

Amicus Supporting Rehearing Petition

72a

---

### O R D E R

---

A majority of judges in regular active service and not disqualified having voted in a requested poll of the court to grant the petition for rehearing en banc,

IT IS ORDERED that rehearing en banc is granted.

The parties and any amici curiae shall file 16 additional paper copies of their briefs and appendices previously filed in this case within 10 days. Copies of amici briefs relating to a petition for rehearing or rehearing en banc are not required. The parties may move, or the court may sua sponte order, the filing of supplemental en banc briefs pursuant to Local Rule 35(d).

For the Court

/s/ Patricia S. Connor, Clerk

73a

**PUBLISHED**

UNITED STATES COURT OF APPEALS FOR THE
FOURTH CIRCUIT

No. 21-1756

DAMIAN STINNIE; MELISSA ADAMS;
ADRAINNE JOHNSON; WILLIEST BANDY;
BRIANNA MORGAN, individually, and on behalf of
all others similarly situated,

Plaintiffs – Appellants,

v.

RICHARD D. HOLCOMB, in his official capacity
as the Commissioner of the Virginia Department
of Motor Vehicles,

Defendant – Appellee.

- - - - - - - - - - - - - - - - - - - -

AMERICAN CIVIL LIBERTIES UNION OF
VIRGINIA, ET AL,

Amicus Supporting Appellant.

Appeal from the United States District Court for
the Western District of Virginia, at Charlottesville.
Norman K. Moon, Senior District Judge. (3:16-cv-

74a

00044-NKM-JCH)

―――――――――

Argued: May 4, 2022      Decided: June 27, 2022

―――――――――

Before THACKER, HARRIS, and QUATTLEBAUM, Circuit Judges.

―――――――――

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Harris and Judge Quattlebaum joined. Judge Harris wrote a concurring opinion.

―――――――――

75a

**ARGUED:** Tennille Jo Checkovich, SMITHFIELD FOODS, INC., Smithfield, Virginia, for Appellants. Trevor Stephen Cox, HUNTON ANDREWS KURTH, LLP, Richmond, Virginia, for Appellee. **ON BRIEF:** Jonathan T. Blank, Benjamin P. Abel, Charlottesville, Virginia, John J. Woolard, MCGUIREWOODS LLP, Richmond, Virginia; Angela A. Ciolfi, Charlottesville, Virginia, Patrick Levy-Lavelle, LEGAL AID JUSTICE CENTER, Richmond, Virginia; Leslie Kendrick, Charlottesville, Virginia; Michael Stark, Smithfield, Virginia, for Appellants. Mark R. Herring, Attorney General, Donald D. Anderson, Deputy Attorney General, Julie M. Whitlock, Senior Assistant Attorney General & Transportation Section Chief, Janet W. Baugh, Senior Assistant Attorney General, Christian A. Parrish, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Maya M. Eckstein, David M. Parker, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellee. Theodore A. Howard, WILEY REIN LLP, Washington, D.C., for Amici Curiae.

---

76a

THACKER, Circuit Judge:

This fee dispute arises from a putative class-action challenge to a now-repealed Virginia statute that triggered the automatic suspension of the driver's licenses of Damian Stinnie, Demetrice Moore, Robert Taylor, Neil Russo (collectively, "Appellants"), and numerous other Virginia residents for nonpayment of court costs and fines. After Appellants obtained a preliminary injunction, the Virginia General Assembly passed a law repealing the challenged statute. Appellants stipulated that dismissal of the underlying lawsuit was therefore appropriate but claimed that they were nonetheless entitled to attorney's fees pursuant to 42 U.S.C. § 1988 because they secured the preliminary injunction.

The district court denied Appellants' petition for attorney's fees, citing our decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), wherein we held that preliminary injunctions do not confer the requisite "prevailing party" status required for an award of fees pursuant to § 1988. On appeal, Appellants contend that *Smyth* is not controlling because it is untenable with subsequent Supreme Court decisions.

We conclude *Smyth* remains the law of this circuit. And, pursuant to *Smyth*, Appellants are not prevailing parties. Accordingly, we affirm the district court's denial of their petition for attorney's fees and litigation expenses.

77a

I.

In 2016, Appellants initiated a civil action against Richard Holcomb (the "Commissioner") in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles, challenging the constitutionality of Virginia Code § 46.2-395. The now-repealed statute provided, in relevant part:

> (B)     . . . [W]hen any person is convicted of any violation of the law of the Commonwealth or of the United States or of any valid local ordinance and fails or refuses to provide for immediate payment in full of any fine, costs, forfeitures, restitution, or penalty lawfully assessed against him, or fails to make deferred payments or installment payments as ordered by the court, the court shall forthwith suspend the person's privilege to drive a motor vehicle on the highways in the Commonwealth . . .

> (C)     Before transmitting to the Commissioner a record of the person's failure or refusal to pay all or part of any fine, costs, forfeiture, restitution, or penalty . . . the clerk of the court that convicted the person shall provide or cause to be sent to

78a

> the person written notice of the
> suspension of his license or privilege
> to drive a motor vehicle in Virginia,
> effective 30 days from the date of
> conviction, if the fine, costs,
> forfeiture, restitution, or penalty is
> not paid prior to the effective date of
> the suspension as stated on the
> notice . . . .

*Stinnie v. Holcomb*, 734 F. App'x 858, 860 (4th Cir.
2018) (quoting Va. Code § 46.2-395 (repealed 2020)).
In their complaint, Appellants claimed that the
Commissioner enforced § 46.2-395 in a manner
that violated the Due Process and Equal
Protection clauses by "unfairly punish[ing] them for
being poor." *Id.* at 680 (internal quotation marks
omitted).[1] In December 2018, the district court
issued a detailed memorandum opinion granting
Appellants a preliminary injunction. *See generally
Stinnie v. Holcomb*, 355 F. Supp. 3d 514 (W.D. Va.
2018). As is relevant here, the district court applied
the four-part test from *Winter v. National Resources
Defense Council, Inc.*, 555 U.S. 7 (2008), and
concluded that Appellants "demonstrate[d] a
likelihood of success on their claim that § 46.2-395

---

[1] Initially, the district court granted the Commissioner's
motion to dismiss the case for lack of subject matter
jurisdiction, but, on appeal, we remanded the case to the
district court with instructions to allow Appellants to amend
their complaint.

79a

violate[d] procedural due process" because "§ 46.2-395, on its face, [did] not provide a meaningful opportunity to be heard regarding license suspension." *Id.* at 531. Accordingly, the district court preliminarily enjoined the Commissioner from enforcing § 46.2-395 against Appellants.

Three months later, in March 2019, former Virginia Governor Ralph Northam proposed Budget Amendment No. 33, which suspended the enforcement of § 46.2-395 going forward and required the Commissioner to reinstate, without fees, driving privileges for persons whose licenses were previously revoked pursuant to the statute. Press Release, Va. Off. of the Governor, Governor Northam Announces Budget Amend. To Eliminate Driver's License Suspensions for Nonpayment of Ct. Fines & Costs (Mar. 26, 2019), https://www.governor.virginia.gov/newsroom/all-releases/2019/march/headline-839710- en.html. The Virginia General Assembly passed the Amendment "by votes of 70 to 29 in the House and 30 to 8 in the Senate." *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019). Thereafter, upon motion from the Commissioner and over Appellants' objections, the district court stayed the proceedings pending the 2020 session of Virginia's General Assembly. *See id.* at 659–60. The district court reasoned that staying the "long, contentious, and no doubt costly" litigation was appropriate because the General Assembly's support of the Budget Amendment "indicate[d] political hostility toward[]

§ 46.2-395," and the Commissioner "testified that the process of drafting legislation to codify the Budget Amendment ha[d] begun." *Id.* at 658.

During its 2020 regular session, the Virginia General Assembly eliminated § 46.2- 395 from the Code of Virginia. Accordingly, in May 2020, the parties filed a stipulation of dismissal. In the stipulation, the parties expressly reserved any argument as to Appellants' entitlement to attorney's fees and expenses. Appellants then petitioned the district court for attorney's fees and expenses pursuant to 42 U.S.C. § 1988. Appellants argued that the 2018 preliminary injunction conferred upon them "prevailing party" status, making them eligible for a discretionary award of fees and expenses.

The district court denied the petition. Specifically, the district court reasoned that pursuant to our decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), Appellants cannot be prevailing parties and therefore are not eligible for an award of attorney's fees and expenses. In doing so, the district court rejected Appellants' argument that *Smyth* is untenable with the Supreme Court's decisions in *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008) and *Lefemine v. Wideman*, 568 U.S. 1 (2012) (per curiam) and is no longer controlling law in the Fourth Circuit.

## II.

We review de novo a district court's "prevailing party" determination. *Grabarczyk v. Stein*, 32 F.4th 301,

81a

306 (4th Cir. 2022). "[I]t is well-settled that a panel of this court is bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision." *United States v. Seigler*, 990 F.3d 331, 336 n.6 (4th Cir. 2021) (internal quotation marks omitted); *see also McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) ("A number of cases from this court have stated the basic principle that one panel cannot overrule a decision issued by another panel.").

Because our decision in *Smyth* is not untenable with any Supreme Court decisions, it is binding upon this panel and requires us to affirm the decision of the district court. *United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022).

## III.

Pursuant to 42 U.S.C. § 1988(b), the "prevailing party" in certain civil rights proceedings may recover attorney's fees. "The term 'prevailing party' is a legal term of art," *Reyuzuddin v. Montgomery Cnty.*, 988 F.3d 794, 796 (4th Cir. 2021), which means a party that has "been awarded some relief by the court," *Sky Cable, LLC v. DIRECTV, Inc.*, 23 F.4th 313, 317 (4th Cir. 2022) (internal quotation marks omitted). The term "some relief" refers to "relief that creates the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Sky Cable, LLC*, 23 F.4th at 317–18

82a

(internal quotation marks and alterations omitted).

In *Smyth*, we explicitly held "the preliminary injunction entered by the district court does not satisfy the prevailing party standard of § 1988(b)." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 277 (4th Cir. 2002). We reasoned that the preliminary injunction framework is "an unhelpful guide to the legal determination of whether a party has prevailed," considering the "preliminary, incomplete nature of the merits examination" and the fact that "in granting a preliminary injunction a court is guided not only by its assessment of the likely success of the plaintiff's claims, but also by other considerations, notably a balancing of likely harms." *Id.* at 276–77. As a result, *Smyth* is controlling and determinative here. Nonetheless, Appellants, seeking to avoid the fatal implications of this reality, urge us to conclude that *Smyth* is untenable or inconsistent with the Supreme Court's decisions in *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008), and *Lefemine v. Wideman*, 568 U.S. 1 (2012) (per curiam). But that is not so.

As is relevant here, *Winter* altered our test for preliminary injunctions. "Before the Supreme Court issued its ruling in *Winter*, this Court used a 'balance-of-hardship test' that allowed it to disregard some of the preliminary injunction factors if it found that the facts satisfied other factors." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (quoting *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir. 1977)). "However, in light of *Winter*, this Court recalibrated that test, requiring that each

83a

preliminary injunction factor be 'satisfied as articulated.'" *Id.*; *see also Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009) (recognizing "[o]ur *Blackwelder* standard . . . stands in fatal tension with the Supreme Court's 2008 decision in *Winter*"), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

But our decision in *Smyth* primarily turned on the **nature** of preliminary injunctions -- which remains unchanged -- not the **standard** for obtaining a preliminary injunction. For example, we emphasized "[a] district court's determination that such a showing [of likelihood of success on the merits] has been made is best understood as a prediction of a probable, but necessarily uncertain, outcome" and "[t]he fact that a preliminary injunction is granted in a given circumstance, then, by no means represents a determination that the claim in question will or ought to succeed ultimately." *Smyth*, 282 F.3d at 276. *Winter* did not change these realities. Also relevant to our conclusion in *Smyth* that preliminary injunctions do not confer prevailing party status, and also unchanged by *Winter*, is "[t]he interplay of the[] equitable and legal considerations . . . that are part of the preliminary injunction context" that we reasoned "belie the assertion that the district court's decision to grant a preliminary injunction was an 'enforceable judgment[ ] on the merits or something akin to one for prevailing party purposes.'" *Id.* at 277. In sum, because our decision

84a

in *Smyth* was not based on our old *Blackwelder* standard for preliminary injunctions, Appellants' argument that *Smyth* is untenable considering the changed merits standard following *Winter* is unpersuasive.

Appellants' argument based on *Lefemine* fares no better. In *Lefemine*, the Supreme Court held that we erred in determining that a plaintiff who secured a permanent injunction, but no monetary damages, was not a "prevailing party" for the purposes of § 1988(b). 568 U.S. at 2. The Court reasoned that the district court's permanent injunction prohibiting police officers from threatening Lefemine with sanctions for protesting "worked the requisite material alteration in the parties' relationship" necessary to support an award of attorney's fees. *Id.* at 5. In doing so, the Supreme Court emphasized "that an injunction or declaratory judgment, like a damages award, will usually satisfy" the test outlined in *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) for determining when a party "prevails." *Id.* at 4 (citing *Rhodes v. Stewart,* 488 U.S. 1, 4 (1988)).

Appellants contend *Lefemine* "clarified" that "monetary relief is not required; injunctive relief standing alone can be sufficient" to support an award of attorney's fees pursuant to § 1988(b). Appellants' Opening Br. at 25. But, in summarizing the applicable standard in *Lefemine*, the Supreme Court relied on *Farrar*, which predates *Smyth*. Thus, as the district court observed, "the Supreme Court's brief per curiam decision implies that *Lefemine* involved a straightforward application of precedent,"

85a

not a clarification of any sort. *Stinnie v. Holcomb*, No. 3:16-CV-00044, 2021 WL 2292807, at *5 (W.D. Va. June 4, 2021). Moreover, "a permanent injunction (like the one granted in *Lefemine*) differs from a preliminary injunction [like the injunctions granted here and in *Smyth*] because it is based on a finding of success on the merits[--]not the *likelihood* of such success." *Id.* (emphasis in original).

The changed merits standard following *Winter* and the Supreme Court's decision in *Lefemine* explicitly holding that the issuance of a permanent injunction alone is sufficient to support an award of attorney's fees do not make *Smyth* untenable. Indeed, "[w]e do not lightly presume that the law of the circuit has been overturned, especially where, as here, the Supreme Court opinion and our precedent can be read harmoniously." *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (internal quotation marks omitted). "Adhering to our longstanding rule that a panel of this court is bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision demands nothing less." *Id.* (internal quotation marks omitted); *see also United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) ("A panel of this Court cannot overrule a precedential decision."); *Warfield v. Icon Advisers, Inc*, 26 F.4th 666, 670 n.3 (4th Cir. 2022) ("[S]itting as a panel we cannot overrule a prior panel decision."); *United States v. Moses*, 23 F.4th 347, 359 (4th Cir. 2022) (King, J., dissenting in part and concurring in the judgment) ("[N]o panel of this Court is entitled to circumscribe or undermine

86a

an earlier panel decision.").[2]

In sum, at this juncture, we are bound by *Smyth* because it is directly on point and is neither distinguishable from nor untenable with any Supreme Court decision. *See McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) ("[O]ne panel cannot overrule a decision issued by another panel.").

IV.

For the foregoing reasons, the district court's denial of Appellants' petition for attorney's fees and litigation expenses is

*AFFIRMED.*

---

[2] Our recent *Grabarczyk* decision -- which holds "when a plaintiff wins judicial relief on the merits in the district court, and that ruling causes a state legislature to remedy the violation of federal law identified by the district court," it is a prevailing party -- does not lead us to a different result. *Grabarczyk v. Stein*, 32 F.4th 301, 310 (4th Cir. 2022). "Grabarczyk remain[ed] a prevailing party entitled to attorney's fees . . . because the legislature amended the challenged law [--] and thereby mooted his case [--] only *after* he won a final judgment on the merits and *because* of that judgment." *Id.* (emphasis in original). Unlike Grabarczyk, Appellants never obtained a final judgment on the merits. *See Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) ("'The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'").

87a

PAMELA HARRIS, Circuit Judge, concurring:

I join in full the majority's opinion, which cogently explains why our decision in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), remains binding upon this panel and requires us to affirm the decision of the district court. I write separately to suggest that for two reasons, our circuit may wish to reconsider *Smyth* in the appropriate case.

First, although subsequent Supreme Court cases have not superseded *Smyth*, one of them – *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) – has gone a long way toward addressing its concerns. At the time *Smyth* was decided, courts in this circuit could grant preliminary injunctions on equitable grounds without a showing of likely success on the merits. *See Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co.*, 550 F.2d 189, 195–96 (4th Cir. 1977); *Smyth*, 282 F.3d at 276–77 (describing *Blackwelder*'s sliding-scale approach). And the court in *Smyth* quite sensibly worried about according "prevailing party" status to a plaintiff who had obtained a preliminary injunction based primarily on a balancing of likely harms, without a rigorous assessment of the merits of the plaintiff's claim. *See* 282 F.3d at 276–77.

Today, however, under *Winter*'s more stringent standard, a plaintiff can obtain a preliminary injunction *only* by first establishing a likelihood of success on the merits. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th

88a

Cir. 2009) ("The *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement."), *vacated on other grounds*, 559 U.S. 1089 (2010). That does not mean, as the majority opinion explains, that *Winter* has rendered our decision in *Smyth* untenable. *See* Maj. Op. Part III. Indeed, *Smyth* was carefully written to survive just this change in the law of preliminary injunctions. *See* 282 F.3d at 277 n.8. But it does mean that we could reconsider our rule in *Smyth* without opening the door to the risk that so concerned the court in that case: that a plaintiff could be deemed a prevailing party, and thus entitled to fees, by virtue of a preliminary injunction that had little or nothing to do with the merits of her claim. *Id.* at 277.

Second, the rule set out in *Smyth* is a complete outlier. As the Commissioner forthrightly concedes, ours is the only circuit in the country in which a preliminary injunction never may serve as the basis for prevailing party fees under § 1988. Every other circuit to consider the issue has held that a plaintiff whose case is mooted after she obtains a preliminary injunction – so that the preliminary injunction by definition cannot be reversed or undone by a final decision in the case – may qualify as a prevailing party in appropriate circumstances. *See Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 909–10 (8th Cir. 2012); *Kan. Jud. Watch v. Stout*, 653 F.3d

89a

1230, 1238 (10th Cir. 2011); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005); *Haley v. Pataki*, 106 F.3d 478, 483–84 (2d Cir. 1997).*

In most circuits, the preliminary injunction will suffice so long as it rests on a finding of probable success on the merits and orders a change in the legal relationship between the parties. *See, e.g.*, *Planned Parenthood*, 931 F.3d at 542; *Higher Taste*, 717 F.3d at 716; *Kan. Jud. Watch*, 653 F.3d at 1237–38; *Select Milk Producers*, 400 F.3d at 948; *Haley*, 106 F.3d at 483. In one circuit, it seems, the merits-based preliminary injunction also must have been the *cause* of the case's subsequent mootness, as the impetus for a defendant's decision to cease the challenged conduct or otherwise moot the case. *See Dearmore*, 519 F.3d at 524; *see also People Against Police Violence*, 520 F.3d at 233 (affirming fee award where defendant revised challenged ordinance in response to preliminary injunction). But in no circuit other than ours is there a bright-line rule that a

---

* The First Circuit has not directly addressed this issue, *see Sinapi v. R.I. Bd. of Bar Exam'rs*, 910 F.3d 544, 552 (1st Cir. 2018), but district courts within it have followed the consensus rule, *see, e.g.*, *Tri-City Cmty. Action Program, Inc. v. City of Malden*, 680 F. Supp. 2d 306, 314 (D. Mass. 2010).

90a

preliminary injunction *never* can satisfy the prevailing party standard. And the Supreme Court has explicitly left this question open. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007) ("We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees.").

On the facts of this case, the plaintiffs would almost certainly qualify as prevailing parties were it not for our categorical rule to the contrary. To begin, there is no question that their preliminary injunction was solidly merits-based. After a comprehensive assessment of the strength of the plaintiffs' case, informed by an evidentiary hearing and oral argument, the district court found that the plaintiffs had made a "clear showing" of a likelihood of success on the merits. *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 527–31 (W.D. Va. 2018). Although the court went on to find that the remaining preliminary injunction factors also weighed in favor of the plaintiffs, *id.* at 532, the crux of its opinion was the merits analysis. "In other words, this is not a case in which a preliminary injunction was based less on the trial court's view of the merits than on a perceived hardship to the plaintiff[s]." *Select Milk Producers*, 400 F.3d at 948. Rather, the plaintiffs "secured a preliminary injunction in this case largely because their likelihood of success on the merits was never seriously in doubt." *Id.*

It is true, as we explained in *Smyth*, that this merits analysis was necessarily provisional. *See* 282

91a

F.3d at 276; Maj. Op. Part III. But for the time it was in effect, the preliminary injunction materially altered the parties' legal relationship, prohibiting the Commissioner from enforcing the challenged provision against the plaintiffs. *See, e.g.*, *Higher Taste*, 717 F.3d at 716 & n.1 (distinguishing injunctions that merely maintain the status quo). And the reason this preliminary injunction never advanced past the provisional stage is that the *Commissioner* mooted the case, heading off a final judgment. The *plaintiffs* were eager to go forward to summary judgment. But over their objection, the Commissioner secured several stays, which he used to successfully lobby the legislature to repeal section 46.2-395 – with the express aim, in part, of avoiding the payment of attorney's fees. *See, e.g.*, J.A. 968–69 (letter from Commissioner to state senator asking legislature to address the matters at issue in the *Stinnie* litigation to avoid "costly legal fees"). So even in a circuit requiring a causal link between a preliminary inunction and the mooting of a case, the plaintiffs here would be prevailing parties eligible for attorney's fees.

Our circuit rule, by contrast, allows defendants to game the system. Faced with a suit against a potentially or even very probably illegal provision or practice, there is no downside to litigating through the preliminary injunction stage: If and when a court confirms the likely merit of the plaintiff's claim, there will be time enough for the defendant to cease the challenged conduct (or persuade the legislature to do so), moot the case, and

92a

avoid the payment of fees. And the plaintiff, who almost certainly will have devoted considerable effort and resources to obtaining a preliminary injunction, is left holding the bag, with no way to recover those costs. The predictable result is fewer attorneys willing to take on even the most meritorious civil rights suits on behalf of indigent plaintiffs – a result in direct contravention of the whole point of § 1988, which is to ensure "effective access" to the judicial system for all persons with civil rights grievances. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)).

It is of course possible, as the Commissioner assures us, that *Smyth* is right and every other circuit is wrong. But that is the kind of question that seems worth considering as an en banc court. *See* Fed. R. App. P. 35(b) advisory committee's note to 1998 amendment ("[A] situation that may be a strong candidate for a rehearing en banc is one in which the circuit persists in a conflict created by a pre-existing decision of the same circuit and no other circuits have joined on that side of the conflict."). Until then, as the majority opinion sets out, we have no choice but to affirm the district court's denial of attorney's fees. *See United States v. Seigler*, 990 F.3d 331, 336 n.6 (4th Cir. 2021) ("[I]t is well-settled that a panel of this court is bound by prior precedent from other panels in this circuit absent contrary law from an en banc or Supreme Court decision." (internal quotation marks omitted)). I therefore concur in the court's opinion.

93a

**UNITED STATES DISTRICT COURT WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| |
|---|
| DAMIAN STINNIE, et al., |
| *Plaintiffs*, |
| v. |
| RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES, |
| *Defendant*. |

CASE NO. 3:16-cv-00044

<u>ORDER</u>

JUDGE NORMAN K. MOON

Before the Court are Plaintiffs' petition for attorneys' fees and litigation expenses, Dkt. 234, Magistrate Judge Joel C. Hoppe's report and recommendation ("R&R"), Dkt. 243, and Plaintiffs' objections to the R&R, Dkt. 247. For the reasons set forth in the accompanying Memorandum Opinion, the Court

1. **ADOPTS** the R&R, Dkt. 243, as set forth in the accompanying Memorandum Opinion;

2. **OVERRULES** Plaintiffs' objections to the R&R, Dkt. 247; and

3. **DENIES** Plaintiffs' petition for

94a

attorneys' fees and litigation expenses, Dkt. 234.

The Clerk of Court is directed to send this Order and the accompanying Memorandum Opinion to all counsel of record and to Magistrate Judge Hoppe.

It is so **ORDERED**.

Entered this ⎯4th⎯ day of June, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

95a

## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| |
|---|
| DAMIAN STINNIE, et al., |
| *Plaintiffs*, |
| v. |
| RICHARD D. HOLCOMB, in his official capacity as the Commissioner of the VIRGINIA DEPARTMENT OF MOTOR VEHICLES, |
| *Defendant*. |

CASE NO. 3:16-cv-00044

<u>MEMORANDUM OPINION</u>

JUDGE NORMAN K. MOON

Plaintiffs have filed a petition for attorneys' fees and litigation expenses. Dkt. 234. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the magistrate judge for proposed findings of fact and a recommended disposition. In his report and recommendation ("R&R"), the magistrate judge determined that a plaintiff who won a preliminary injunction that was not reversed or otherwise modified, but whose case was later dismissed as moot, is not a "prevailing party" entitled to attorneys' fees under 42 U.S.C. § 1988, and he recommended

96a

denying Plaintiffs' petition for attorneys' fees. Dkt. 243. Plaintiffs filed timely objections, Dkt. 247, obligating the Court to review *de novo* the portions of the R&R to which Plaintiffs objected. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982).

Plaintiffs object to the magistrate judge's conclusion that this Court is bound to follow the Fourth Circuit's holding in *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002), that a plaintiff who wins a preliminary injunction is not a prevailing party under § 1988. Dkt. 247 at 2; *see also* Dkt. 243 at 24–27. Plaintiffs urge the Court to "recognize[] that *Smyth* is no longer good law" and conclude that Plaintiffs are prevailing parties entitled to attorneys' fees. Dkt. 247 at 2.

Because it finds no error in the magistrate judge's reasoning or conclusion, the Court will overrule Plaintiffs' objections to the R&R and adopt the R&R as set forth herein. Accordingly, the Court will deny Plaintiffs' petition for attorneys' fees and litigation expenses.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's R&R within fourteen days. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). The district court conducts a *de novo* review of those portions of a magistrate judge's R&R to which the party made specific objections. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C);

97a

*Orpiano*, 687 F.2d at 48. The Court may give a magistrate judge's R&R "such weight as its merit commands and the sound discretion of the judge warrants," *United States v. Raddatz*, 447 U.S. 667, 682–83 (1980) (internal quotations omitted). The district court may accept, reject, or modify the recommended disposition based on its *de novo* review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

Although civil litigants bear their own attorneys' fees by default, *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370–71 (2019), a court may award attorneys' fees where a "specific and explicit" statutory provision authorizes fee shifting, *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). In certain civil rights actions, 42 U.S.C. § 1988(b) authorizes district courts to award "a reasonable attorney's fee" to the "prevailing party," other than the United States. A "prevailing party" is one who "receive[s] at least some relief on the merits" of the litigation. *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). That relief on the merits must (1) "materially alter[] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992)), and (2) be "marked by 'judicial *imprimatur*,'" as "when a plaintiff secures an 'enforceable judgment on the merits' or a 'court-ordered consent decree,'" *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016) (quoting *Buckhannon Bd. & Care Home, Inc.*

98a

*v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001)) (cleaned up) (emphasis in original).

## II.    THE R&R

The magistrate judge's reasoning in the R&R proceeded in six steps.

First, the magistrate judge analyzed the reasoning underlying *Smyth*'s holding "that the grant of a preliminary injunction does not give rise to prevailing party status for an attorneys' fees petition." Dkt. 243 at 12 (citing *Smyth*, 282 F.3d at 277). As the magistrate judge explained, the Fourth Circuit's conclusion that preliminary injunction winners are not prevailing parties under § 1988 was based on "the now-outdated formulation of the preliminary injunction standard articulated in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189, 195 (4th Cir. 1977)." *Id.* at 14. Under the *Blackwelder* standard, "[a] plaintiff's burden to show a likelihood of success on the merits . . . varie[d] according to the harm the plaintiff would be likely to suffer absent an injunction." *Id.* (quoting *Smyth*, 282 F.3d at 276). Thus, in his view and considering "the inconsistent and abbreviated nature of the merits inquiry, the flexible 'interplay' of the *Blackwelder* factors, and the 'incorporation (if not the predominance) of equitable factors,'" the *Smyth* court announced a bright line rule that preliminary injunctions do not make plaintiffs prevailing parties under § 1988. *Id.* at 16 (quoting *Smyth*, 282 F.3d at 277 & n.8).

99a

Second, the magistrate judge acknowledged Plaintiffs' contention that the Supreme Court's holding in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), altered the preliminary injunction standard in the Fourth Circuit by requiring a plaintiff to "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." Indeed, the Fourth Circuit later recognized that "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *and aff'd in relevant part*, 607 F.3d 355 (4th Cir. 2010) (emphasis in original).

Third, the magistrate judge concluded that the Supreme Court has not squarely decided the issue before the Court. In *Sole v. Wyner*, the Supreme Court held that "[a] plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision *if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded.*" 551 U.S. 74, 78 (2007) (emphasis added). And in *Lefemine v. Wideman*, 568 U.S. 1 (2012) (per curiam), the Supreme Court held that a *permanent* injunction

100a

based on a finding on summary judgment "that the defendants had violated [the plaintiff's] rights," *id.* at 5, and "order[ing] the defendant officials to change their behavior in a way that directly benefited the plaintiff," *id.* at 2, "worked the requisite material alteration in the parties' relationship," *id.* at 5, making the plaintiff a prevailing party under § 1988. Neither case, however, addressed whether a merits-based preliminary injunction that is *not* later undone makes a plaintiff a prevailing party under § 1988. Dkt. 243 at 17–18.

Fourth, the magistrate judge addressed Plaintiffs' argument that the Fourth Circuit's decision in *Smyth* is out of step with the holdings of other circuit courts. The magistrate judge noted that "almost every circuit agrees that a merits-based preliminary injunction that is not undone or otherwise modified by a later court order may confer prevailing party status entitling the plaintiff to an award of attorneys' fees." Dkt. 243 at 19; *see id.* at 19–21 (collecting cases).[1] Still, he concluded that

---

[1] *See, e.g., Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 542 (6th Cir. 2019), *cert. denied sub nom. Yost v. Planned Parenthood Sw. Ohio Region*, 141 S. Ct. 189 (2020); *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013); *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233 (3d Cir. 2008); *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008); *Dupuy v. Samuels*, 423 F.3d 714, 723 n.4 (7th Cir. 2005); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 948 (D.C. Cir. 2005); *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997).

101a

"out-of-circuit precedent is not binding upon this [C]ourt" and that "this Court is required to follow controlling Fourth Circuit law." *Id.* at 21.

Fifth, the magistrate judge examined this Court's preliminary injunction in this case. *Id.* at 2–7; 22–24 (citing *Stinnie v. Holcomb*, 355 F. Supp. 3d 514 (W.D. Va. 2018)). He concluded that the preliminary injunction, which was granted under the *Winter* standard, "was thoroughly merits- based" and "was an enforceable court order, carrying all the necessary judicial imprimatur, . . . that 'materially altered the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefited' Plaintiffs." *Id.* at 22 (quoting *Lefemine*, 568 U.S. at 4) (internal citation omitted). The magistrate judge explicitly rejected Defendant's arguments that Plaintiffs cannot achieve prevailing party status because the preliminary injunction (1) granted only some of the relief Plaintiffs requested, *id.* at 23, and (2) could (or would) have been reversed if the case had not been mooted by legislation repealing the statute that Defendants were enjoined from enforcing against Plaintiffs, *id.* at 23–24.

Finally, the magistrate judge concluded that, despite Plaintiffs' argument "that the rationale supporting the Fourth Circuit's decision in *Smyth* has been materially undermined by the Supreme Court's later decisions in *Winter* and *Lefemine*," *id.* at 24, this Court is nevertheless bound to follow *Smyth*, which "has not been explicitly overruled by either the Fourth Circuit or by the Supreme Court" and

102a

"remains controlling law in this Circuit," *id.* at 25.

## III.   ANALYSIS

Plaintiffs object to the final step of the magistrate judge's reasoning in the R&R. Plaintiffs argue that the Supreme Court's holdings in *Winter* and *Lefemine* "fatally undermine[]" *Smyth*'s "underpinnings" and that this Court is no longer bound to follow *Smyth*. Dkt. 247 at 11. Specifically, Plaintiffs contend that *Winter*'s requirement that a plaintiff show a likelihood of success on the merits to obtain a preliminary injunction "pulled the chair out from under *Smyth*," whose holding "revolved around concerns regarding the 'necessarily abbreviated' nature of preliminary injunctions at the time." *Id.* at 12 (quoting *Smyth*, 282 F.3d at 276). In light of intervening precedent, Plaintiffs opine, the Fourth Circuit would rule differently—and in their favor—if it faced this question today. *Id.* at 13.

A published Fourth Circuit decision is binding on this Court unless the Fourth Circuit overrules its prior decision or the Supreme Court issues a superseding decision. *See United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020) ("A decision of a panel of this court becomes *the law of the circuit* and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court.") (citation omitted) (emphasis added); *see also Warfaa v. Ali*, 811 F.3d 653, 661 (4th Cir. 2016) ("One panel's decision is binding, not only *upon the district*

103a

*court*, but also upon another panel of this court—unless and until it is reconsidered *en banc*.") (internal quotation marks and citation omitted) (emphasis added). Neither is the case here. No Fourth Circuit opinion has overruled *Smyth*. Nor has the Supreme Court issued a superseding decision.

Plaintiffs argue, however, that the Supreme Court's decisions in *Winter* and *Lefemine* undermine *Smyth*'s reasoning. This may be so. But even if it agreed with Plaintiffs' argument, the Court must follow binding circuit precedent. Plaintiffs have cited no authority permitting this Court to disregard the Fourth Circuit's binding precedent in *Smyth*.

Moreover, the Court is not persuaded that *Winter* and *Lefemine* have so directly undermined *Smyth*'s reasoning that this court should disregard *Smyth*. In *Smyth*, the Fourth Circuit acknowledged that some preliminary injunctions involved a showing on the merits nearly identical to—or even stronger than—the one the Supreme Court later articulated in *Winter*:

> At the most, a party seeking a preliminary injunction may have to demonstrate a strong showing of likelihood of success or a substantial likelihood of success by clear and convincing evidence in order to obtain relief.... A district court's determination that such a showing has been made is best understood as a prediction of a probable, but necessarily uncertain, outcome....The fact that a preliminary

104a

injunction is granted in a given circumstance, then, by no means represents a determination that the claim in question will or ought to succeed ultimately; that determination is to be made upon the deliberate investigation that follows the granting of the preliminary injunction.

282 F.3d at 276 (internal quotation marks and citations omitted). *Winter* changed the preliminary injunction analysis by requiring a plaintiff to "establish that he is likely to succeed on the merits." 555 U.S. at 20. Thus, while a Fourth Circuit plaintiff at the time *Smyth* was decided *may have* shown that he was likely to succeed on the merits to obtain a preliminary injunction under the *Blackwelder* test, he was not *required* to do so until after *Winter*.

But the *Smyth* court clearly considered—and rejected—the plaintiffs' argument that "*some* preliminary injunctions are sufficiently based on the merits to serve as a basis for an award of attorneys' fees." 282 F.3d at 277 n.9 (emphasis added). Indeed, the Fourth Circuit denied plaintiffs' request for attorneys' fees even though the district court granted the preliminary injunction in *Smyth* after finding "that the denial of benefits for noncooperation because of a claimant's inability to identify the father of her children contradicted the plain language of then-applicable federal regulations, and that the plaintiffs were thus *likely to succeed on the merits*." *Id.* at 272 (emphasis added). Instead, the *Smyth* court adopted

105a

a bright line rule that preliminary injunction awardees are not prevailing parties under § 1988: "The preliminary injunction inquiry, because of the preliminary, incomplete examination of the merits involved and the incorporation (if not the predominance) of equitable factors, is ill-suited to guide the prevailing party determination *regardless of how it is formulated*."[2] *Id.* at 277 n.8 (emphasis added). This statement is just as true of the *Winter* inquiry as it is of the *Blackwelder* one.

Furthermore, although *Lefemine* was decided after *Smyth*, the Supreme Court's brief per curiam decision implies that *Lefemine* involved a straightforward application of precedent in *Farrar v. Hobby*—which was decided a decade before *Smyth*.

---

[2] The *Smyth* court made this statement in response to Judge Luttig's concurrence in *Safety- Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 868–70 (4th Cir. 2001) (Luttig, J., concurring). 282 F.3d at 277 n.8. In *Safety-Kleen*, Judge Luttig argued that *Blackwelder* "contravene[d] Supreme Court precedents by overvaluing the inquiry into the relative equities of granting and denying a requested injunction to an extent that essentially denies any value whatsoever to the inquiry into the likelihood of success on the merits," thereby "virtually eliminat[ing] altogether the inquiry into the likelihood of success on the merits—in doctrine, though, . . . no longer in practice. . . ." 274 F.3d at 868. Significantly, the *Smyth* court considered Judge Luttig's critique and determined that "[w]hatever the merits of this argument, *it does not alter our conclusion here*"—that is, even if the preliminary injunction standard required an inquiry into the likelihood of success on the merits, the *Smyth* court would still conclude that a preliminary injunction does not confer prevailing party status under § 1988. 282 F.3d at 277 n.8.

106a

*See Lefemine*, 568 U.S. at 4 (quoting *Farrar*, 506 U.S. at 111–12). In addition, a permanent injunction (like the one granted in *Lefemine*) differs from a preliminary injunction because it is based on a finding of success on the merits— not the *likelihood* of such success. Again, nothing in *Lefemine* alters the *Smyth* court's reasoning that the preliminary injunction merits showing "is best understood as a prediction of a probable, but necessarily uncertain, outcome" and that the granting of a preliminary injunction "by no means represents a determination that the claim in question will or ought to succeed ultimately." 282 F.3d at 276.

Therefore, whether the Fourth Circuit would overrule *Smyth* today is, at best, unclear. But in any event, the Fourth Circuit is the court to make that determination, not this Court.

## IV.    CONCLUSION

For these reasons, the Court will overrule Plaintiffs' objections and adopt the R&R as set forth herein. Accordingly, the Court will deny Plaintiffs' petition for attorneys' fees and litigation expenses.

An appropriate Order will issue.

It is so **ORDERED**.    NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

Entered this  4th  day of June, 2021.

No. 23-___

# In the
# Supreme Court of the United States

GERALD F. LACKEY, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE VIRGINIA DEPARTMENT OF MOTOR VEHICLES,

*Petitioner*,

v.

DAMIAN STINNIE, ET AL.,

*Respondents*.

*On Petition for a Writ of Certiorari to the
United States Court of Appeals for the Fourth Circuit*

## CERTIFICATE OF COMPLIANCE

As required by Supreme Court Rule 33.1(h), I, Andrew N. Ferguson, a member of the bar of this Court, certify that the accompanying Petition for Writ of Certiorari contains 8,590 words, excluding the parts of the document that are exempted by Supreme Court Rule 33.1(d).

Executed on November 20, 2023.

/s/ Andrew N. Ferguson
ANDREW N. FERGUSON
SOLICITOR GENERAL
VIRGINIA OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704
AFerguson@oag.state.va.us
SolicitorGeneral@oag.state.va.us

No. 23-___

---

**In the**
**Supreme Court of the United States**

---

Gerald F. Lackey, in his Official Capacity as the Commissioner of the Virginia Department of Motor Vehicles,

*Petitioner,*

v.

Damian Stinnie, et al.,

*Respondents.*

---

*On Petition for a Writ of Certiorari to the*
*United States Court of Appeals for the Fourth Circuit*

---

**CERTIFICATE OF SERVICE**

---

As required by Supreme Court Rule 29.5(b), I, Andrew N. Ferguson, a member of the bar of this Court, hereby certify that, on this 20th day of November, 2023, all parties required to be served have been served copies of the Petition for Writ of Certiorari in this matter by overnight courier to the addresses on the attached service list.

/s/ Andrew N. Ferguson
Andrew N. Ferguson
Solicitor General
Office Of The Virginia Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704
AFerguson@oag.state.va.us
SolicitorGeneral@oag.state.va.us

## SERVICE LIST

<u>Counsel for Respondent</u>

JONATHAN T. BLANK
MCGUIREWOODS LLP
323 Second Street SE, Suite 700
Charlottesville, VA 22902
T: (434) 977-2509
F: (434) 980-2258
*jblank@mcguirewoods.com*

JOHN J. WOOLARD
EVAN X. TUCKER
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4355
F: (804) 698-2055
*jwoolard@mcguirewoods.com*
*etucker@mcguirewoods.com*

TENNILLE J. CHECKOVICH
MICHAEL STARK
SMITHFIELD FOODS, INC
200 Commerce Street
Smithfield, VA 23430
T: (757) 357-8151
F: (757) 365-3018
*tcheckovich@smithfield.com*
*mstark@smithfield.com*

ANGELA A. CIOLFI
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
T: (434) 529-1810
F: (434) 977-0558
*angela@justice4all.org*

PATRICK LEVY-LAVELLE
LEGAL AID JUSTICE CENTER
626 East Broad Street
Richmond, VA 23219

T: (804) 643-1086
F: (804) 643-2059
*pat@justice4all.org*

LESLIE KENDRICK
UNIVERSITY OF VIRIGINIA SCHOOL OF LAW
580 Massie Rd.
Charlottesville, VA 22903
T: (434) 243-8633
F: (434) 924-7536
*kendrick@virginia.edu*